# 24-2312

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

PATRICIA HARAN,

*Plaintiff-Counter-Defendant-Appellant,*

—against—

ORANGE BUSINESS SERVICES INC.,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## VOLUME I OF III
## (Pages JA1 to JA295)

AMY J. TRAUB
JUSTIN A. GUILFOYLE
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
(212) 589-4200

*Attorneys for Defendant-Counter-
   Claimant-Appellee*

MICHAEL TAUBENFELD
LIANE FISHER
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
(212) 571-0700

*Attorneys for Plaintiff-Counter-
   Defendant-Appellant*

# TABLE OF CONTENTS

PAGE

District Court Docket Sheet ............................................. JA1

Defendant's Notice of Motion for Summary Judgment,
dated February 13, 2024 .......................................... JA12

Defendant's Memorandum of Law in Support of Motion for Summary
Judgment, dated February 13, 2024 ................................ JA15

Declaration of Amy J. Traub, for Defendant, in Support of Motion
for Summary Judgment, dated February 13, 2024 ................... JA44

    Exhibit A to Traub Declaration—
    Orange Business Services' Policy Against Unlawful
    Discrimination and Harassment................................... JA47

    Exhibit B to Traub Declaration—
    Excerpts from Deposition Transcript of Non-Party
    Adam Kimmick, dated October 5, 2023 ........................... JA51

    Exhibit C to Traub Declaration—
    Excerpts from Deposition Transcript of Non-Party
    Eddy Youkhanna, dated October 4, 2023 ........................ JA121

    Exhibit D to Traub Declaration—
    Excerpts from the Deposition Transcript of Patricia Haran,
    dated April 26, 2023 .......................................... JA141

    Exhibit E to Traub Declaration—
    Acknowledgement of Employee Handbook....................... JA203

    Exhibit F to Traub Declaration—
    Family and Medical Leave Act (FMLA) Policy................... JA205

    Exhibit G to Traub Declaration—
    Acknowledgement of Notice of Employee Rights
    and Responsibilities under the Family and Medical Leave Act..... JA211

ii

PAGE

Exhibit H to Traub Declaration—
Patricia Haran's First Half 2020 Performance Evaluation ......... JA215

Exhibit I to Traub Declaration—
Patricia Haran's Second Half 2020 Performance Evaluation ....... JA226

Exhibit J to Traub Declaration—
February 24, 2021 Termination Letter ........................... JA237

Exhibit K to Traub Declaration—
Microsoft Teams chats with former coworker Peter Singh
on February 10, 2021 .......................................... JA241

Exhibit L to Traub Declaration—
Microsoft Teams chats with former coworker Peter Singh
on February 1, 2021 ........................................... JA244

Exhibit M to Traub Declaration—
Microsoft Teams chats with former coworker Xavier Pichon
on February 24, 2021 .......................................... JA249

Exhibit N to Traub Declaration—
Objections and Responses to Defendant's First Set
of Interrogatories ............................................. JA252

Exhibit O to Traub Declaration—
Microsoft Teams chats with former supervisor Adam Kimmick
Singh on October 8, 2020 ...................................... JA258

Defendant's Statement of Undisputed Facts, dated February 13, 2024 .. JA261

Plaintiff's Memorandum of Law in Opposition to Motion
for Summary Judgment, dated March 26, 2024 ................... JA272

Plaintiff's Response to Statement of Material Facts,
dated March 26, 2024 .......................................... JA304

Declaration of Patricia Haran, dated March 26, 2024 .................. JA783

iii

PAGE

Declaration of Liane Fisher, for Plaintiff, in Opposition to Motion
for Summary Judgment, dated March 26, 2024 .................... JA788

Defendant's Reply Memorandum of Law in Further Support
of Motion for Summary Judgment, dated April 19, 2024 .......... JA790

Defendant's Response to Counterstatement of Facts,
dated April 19, 2024 .......................................... JA804

Declaration of Justin A. Guilfoyle, for Defendant, in Further Support
of Motion for Summary Judgment, dated April 19, 2024 .......... JA821

Exhibit A to Guilfoyle Declaration—
Microsoft Teams chats with supervisor Adam Kimmick,
on August 21, 2020 ........................................... JA822

Exhibit B to Guilfoyle Declaration—
Email Chain .................................................. JA824

Opinion and Order of the Honorable Dale E. Ho, dated July 29, 2024 .. JA833

Plaintiff's Notice of Appeal, dated August 26, 2024 ................. JA845

JA1

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,CASREF,ECF,MEDTFR4

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21-cv-10585-DEH-JW

| | |
|---|---|
| Haran v. Orange Business Services Inc. | Date Filed: 12/10/2021 |
| Assigned to: Judge Dale E. Ho | Jury Demand: Both |
| Referred to: Magistrate Judge Jennifer E. Willis | Nature of Suit: 445 Civil Rights: Americans |
| Cause: 42:12102 Americans with Disabilities Act (ADA) Disability | with Disabilities - Employment |
| Definition | Jurisdiction: Federal Question |

**Plaintiff**

**Patricia Haran**           represented by    **Liane Fisher**
Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007
(212) 571-0700
Fax: (212) 505-2001
Email: liane@fishertaubenfeld.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Orange Business Services Inc.**      represented by    **Justin Anthony Guilfoyle**
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
212-589-4200
Email: jguilfoyle@bakerlaw.com
*ATTORNEY TO BE NOTICED*

**Saima Zuberi Sheikh**
Baker & Hostetler LLP (NYC)
45 Rockefeller Plaza
New York, NY 10111
212-589-4200
Fax: 212-589-4201
Email: ssheikh@bakerlaw.com
*TERMINATED: 04/22/2022*

**Amy Joy Traub**
Baker & Hostetler LLP (NYC)
45 Rockefeller Plaza
New York, NY 10111
(212) 589-4200
Fax: (212) 589-4201

**JA2**

Email: atraub@bakerlaw.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Orange Business Services Inc.**                    represented by    **Amy Joy Traub**
*TERMINATED: 11/27/2023*                                                (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Patricia Haran**                                   represented by    **Liane Fisher**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Orange Business Services Inc.**                    represented by    **Saima Zuberi Sheikh**
*TERMINATED: 11/27/2023*                                                (See above for address)
                                                                       *TERMINATED: 04/22/2022*

                                                                       **Amy Joy Traub**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Patricia Haran**                                   represented by    **Liane Fisher**
                                                                       (See above for address)
                                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/10/2021 | 1 | COMPLAINT against Orange Business Services Inc.. (Filing Fee $ 402.00, Receipt Number ANYSDC-25453275)Document filed by Patricia Haran..(Fisher, Liane) (Entered: 12/10/2021) |
| 12/10/2021 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to Orange Business Services Inc., re: 1 Complaint. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 12/10/2021) |
| 12/10/2021 | 3 | **FILING ERROR - DEFICIENT CIVIL COVER SHEET - SIGNATURE ERROR -** CIVIL COVER SHEET filed..(Fisher, Liane) Modified on 12/13/2021 (sj). (Entered: 12/10/2021) |
| 12/13/2021 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT CIVIL COVER SHEET. Notice to attorney Liane Fisher to RE-FILE Document No. 3 Civil Cover Sheet. The filing is deficient for the following reason(s): Civil Cover Sheet not signed. Re-file the document using the event type Civil Cover Sheet found under the event list Other Documents and attach the correct PDF. Use civil cover sheet issued by S.D.N.Y. dated October 1, 2020. The S.D.N.Y. Civil Cover Sheet dated October 1, 2020 is located at http://nysd.uscourts.gov/file/forms/civil-cover-sheet. (sj)** (Entered: 12/13/2021) |

| 12/13/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Vernon S. Broderick. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(sj) (Entered: 12/13/2021) |
|---|---|---|
| 12/13/2021 | | Magistrate Judge Kevin Nathaniel Fox is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (sj) (Entered: 12/13/2021) |
| 12/13/2021 | | Case Designated ECF. (sj) (Entered: 12/13/2021) |
| 12/13/2021 | 4 | ELECTRONIC SUMMONS ISSUED as to Orange Business Services Inc...(sj) (Entered: 12/13/2021) |
| 02/08/2022 | | Magistrate Judge Jennifer Willis is so redesignated. (laq) (Entered: 02/08/2022) |
| 02/25/2022 | 5 | NOTICE OF APPEARANCE by Saima Zuberi Sheikh on behalf of Orange Business Services Inc...(Sheikh, Saima) (Entered: 02/25/2022) |
| 02/25/2022 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent Orange SA for Orange Business Services Inc.. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 02/25/2022) |
| 02/25/2022 | 7 | WAIVER OF SERVICE RETURNED EXECUTED. Orange Business Services Inc. waiver sent on 12/27/2021, answer due 2/25/2022. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 02/25/2022) |
| 02/25/2022 | 8 | ANSWER to 1 Complaint with JURY DEMAND., COUNTERCLAIM against Patricia Haran. Document filed by Orange Business Services Inc.. (Attachments: # 1 Exhibit A-Confidentiality Proprietary Rights & Non-Solicitation Agreement).(Traub, Amy) (Entered: 02/25/2022) |
| 02/25/2022 | 9 | ORDER OF AUTOMATIC REFERRAL TO MEDIATION (See M-10-468 Second Amended Standing Order). Please reference the Pilot Discovery Protocols, attached, and the Mediation Program Procedures (https://nysd.uscourts.gov/programs/mediation-adr). E-mail MediationOffice@nysd.uscourts.gov, telephone 212-805-0643. Mediator to be Assigned by 3/7/2022. (Signed by Judge Loretta A. Preska on 10/1/2015) (jpt) (Entered: 02/28/2022) |
| 03/03/2022 | | NOTICE OF MEDIATOR ASSIGNMENT - Notice of assignment of mediator. Mediator Schedule due by 4/4/2022.(rpr) (Entered: 03/03/2022) |
| 03/17/2022 | 10 | REPLY to Defendant-Counterclaim Plaintiff's Counterclaims. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/17/2022) |
| 03/18/2022 | 11 | AMENDED ANSWER to 1 Complaint with JURY DEMAND., COUNTERCLAIM against Patricia Haran. Document filed by Orange Business Services Inc.. (Attachments: # 1 Exhibit A-Agreement).(Sheikh, Saima) (Entered: 03/18/2022) |
| 04/15/2022 | | FIRST MEDIATION CONFERENCE. Mediation Conference scheduled for 5/19/2022 at 10:00 AM in telephone or video conference.(mnp) (Entered: 04/15/2022) |
| 04/21/2022 | 12 | PROPOSED ORDER FOR WITHDRAWAL OF ATTORNEY. Document filed by Orange Business Services Inc...(Sheikh, Saima) (Entered: 04/21/2022) |

| 04/21/2022 | 13 | NOTICE OF APPEARANCE by Justin Anthony Guilfoyle on behalf of Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 04/21/2022) |
|---|---|---|
| 04/22/2022 | 14 | ORDER GRANTING WITHDRAWAL OF APPEARANCE OF SAIMA Z. SHEIKH re: 12 Proposed Order for Withdrawal of Attorney filed by Orange Business Services Inc.. In accordance with Local Civil Rule 1.4, and upon consideration of the annexed declaration of Saima Z. Sheikh, of Baker & Hostetler LLP, is hereby withdrawn as counsel for Defendant Orange Business Services, Inc. SO ORDERED. Attorney Saima Zuberi Sheikh terminated. (Signed by Judge Vernon S. Broderick on 4/22/2022) (kv) (Entered: 04/22/2022) |
| 05/20/2022 | 15 | ORDER AND NOTICE OF INITIAL CONFERENCE: This case has been assigned to me for all purposes. It is hereby: ORDERED that, in light of the public health crisis, the Court will not be holding an initial pretrial conference. IT IS FURTHER ORDERED that, by June 3, 2022, the parties submit a joint letter, not to exceed three (3) pages. IT IS FURTHER ORDERED that the parties also jointly submit to the Court a proposed case management plan and scheduling order. A template for the order is available at http://nysd.uscourts.gov/judge/Broderick. The status letter and the proposed case management plan should be filed electronically on ECF, consistent with Section 13.1 of the Courts Electronic Case Filing (ECF) Rules & Instructions, available at https://nysd.uscourts.gov /rules/ecf-relatedinstructions. (And as further set forth herein.) SO ORDERED. (Signed by Judge Vernon S. Broderick on 5/20/2022) (jca) (Entered: 05/20/2022) |
| 05/20/2022 | 16 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 05/20/2022) |
| 05/20/2022 | 17 | DECLARATION of Justin A. Guilfoyle in Support re: 16 Proposed Clerk's Certificate of Default. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 05/20/2022) |
| 05/23/2022 | 18 | **Vacated as per Judge's Order dated 6/27/2022, Doc. #26** CLERK'S CERTIFICATE OF DEFAULT as to PATRICIA HARAN. (tp) Modified on 6/27/2022 (kv). (Entered: 05/23/2022) |
| 05/23/2022 | 20 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Vernon S. Broderick from Liane Fisher dated 5-23-22. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 05/23/2022) |
| 05/23/2022 | 21 | LETTER addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated May 23, 2022 re: Response to Plaintiff's Letter Motion dated May 23, 2022. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 05/23/2022) |
| 05/26/2022 | 22 | LETTER addressed to Judge Vernon S. Broderick from Amy J. Traub dated May 26, 2022 re: Opposition to Plaintiff's Letter Motion to Vacate the Clerk's Certificate of Default. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 05/26/2022) |
| 05/27/2022 | 23 | LETTER MOTION for Extension of Time to File Answer re: 20 LETTER MOTION for Extension of Time to File Answer addressed to Judge Vernon S. Broderick from Liane Fisher dated 5-23-22., 22 Letter addressed to Judge Vernon S. Broderick from Liane Fisher dated 5-27-22. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 05/27/2022) |
| 06/03/2022 | 24 | JOINT LETTER addressed to Judge Vernon S. Broderick from Amy J. Traub dated June 3, 2022 re: Status Letter. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 06/03/2022) |

| 06/03/2022 | 25 | PROPOSED CASE MANAGEMENT PLAN. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 06/03/2022) |
| --- | --- | --- |
| 06/27/2022 | 26 | OPINION AND ORDER re: 23 LETTER MOTION for Extension of Time to File Answer re: 20 LETTER MOTION for Extension of Time to File Answer addressed to Judge Vernon S. Broderick from Liane Fisher dated 5-23-22., 22 Letter addressed to Judge Vernon filed by Patricia Haran, 20 LETTER MOTION for Extension of Time to File Answer addressed to Judge Vernon S. Broderick from Liane Fisher dated 5-23-22. filed by Patricia Haran. For the foregoing reasons, Plaintiff's motion to vacate the default, (Doc. 20), is GRANTED. Plaintiff is directed to file her response to Defendant's amended answer and counterclaims within seven (7) days of the entry of this Order. The Clerk of Court is respectfully directed to terminate the motions at Docs. 20 and 23. SO ORDERED. (Signed by Judge Vernon S. Broderick on 6/27/2022) (kv) (Entered: 06/27/2022) |
| 06/29/2022 | 27 | CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried to a jury. Deposition due by 9/9/2022. Expert Deposition due by 11/30/2022. Fact Discovery due by 9/30/2022. Expert Discovery due by 11/30/2022. Telephone Conference set for 12/7/2022 at 03:30 PM before Judge Vernon S. Broderick. The parties have conferred and their present best estimate of the length of trial is 4 days. SO ORDERED. (Signed by Judge Vernon S. Broderick on 6/29/2022) (ks) (Entered: 06/29/2022) |
| 07/04/2022 | 28 | ANSWER to 11 Counterclaim. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 07/04/2022) |
| 09/28/2022 | 29 | JOINT LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated September 28, 2022. Document filed by Orange Business Services Inc.. (Attachments: # 1 Exhibit Proposed Revised Case Management Plan and Scheduling Order).(Guilfoyle, Justin) (Entered: 09/28/2022) |
| 09/29/2022 | 30 | ORDER granting 29 Letter Motion for Extension of Time to Complete Discovery. APPLICATION GRANTED. SO ORDERED.. (Signed by Judge Vernon S. Broderick on 9/29/2022) (kv) (Entered: 09/29/2022) |
| 09/29/2022 | 31 | REVISED CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried to a jury. The parties have conferred and their present best estimate of the length of trial is 4 days. Depositions shall be completed by December 9, 2022. Deposition due by 2/28/2023. Fact Discovery due by 12/30/2022. Expert Discovery due by 2/28/2023. Discovery due by 2/28/2023. Telephone Conference set for 3/7/2023 at 03:00 PM before Judge Vernon S. Broderick. The dial-in number is 888-3634749 and the conference code is 2682448. (Signed by Judge Vernon S. Broderick on 9/29/2022) (kv) Modified on 10/6/2022 (kv). (Entered: 09/29/2022) |
| 12/16/2022 | 32 | PROPOSED STIPULATION AND ORDER. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 12/16/2022) |
| 12/19/2022 | 33 | STIPULATED CONFIDENTIALITY AGREEMENT & PROTECTIVE ORDER:...regarding procedures to be followed that shall govern the handling of confidential material. And as set forth herein. SO ORDERED. (Signed by Judge Vernon S. Broderick on 12/19/2022) (ama) (Entered: 12/19/2022) |
| 12/27/2022 | 34 | LETTER MOTION for Extension of Time to Complete Discovery addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated December 28, 2022. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 12/27/2022) |

| 12/27/2022 | 35 | PROPOSED CASE MANAGEMENT PLAN. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 12/27/2022) |
|---|---|---|
| 12/28/2022 | 36 | REVISED CASE MANAGEMENT PLAN AND SCHEDULING ORDER granting 34 Letter Motion for Extension of Time to Complete Discovery. All parties do not consent to conducting all further proceeding before a United States Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is to be tried to a jury. The Court will conduct a telephonic post-discovery conference on June 9, 2023 at 4:00p.m.. The dial-in number is 888-3634749 and the conference code is 2682448. The parties have conferred and their present best estimate of the length of trial is 4 days. Depositions shall be completed by March 9, 2023.. (Signed by Judge Vernon S. Broderick on 12/28/2022) (kv) (Entered: 12/28/2022) |
| 12/28/2022 | | Set/Reset Hearings:( Telephone Conference set for 6/9/2023 at 04:00 PM before Judge Vernon S. Broderick.), Set/Reset Deadlines: ( Deposition due by 5/29/2023., Discovery due by 5/29/2023., Expert Discovery due by 5/29/2023., Fact Discovery due by 3/30/2023.) (kv) (Entered: 12/28/2022) |
| 05/03/2023 | 37 | FIRST LETTER MOTION to Compel Defendants to produce documents addressed to Judge Vernon S. Broderick from Liane Fisher, Esq. dated 5/3/2023. Document filed by Patricia Haran. (Attachments: # 1 Exhibit Plaintiff's Discovery Requests, # 2 Exhibit Plaintiff's Deficiency Letter, # 3 Exhibit Defendant's Reply to Deficiency Letter).(Fisher, Liane) (Entered: 05/03/2023) |
| 05/04/2023 | 38 | ORDER OF REFERENCE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Jennifer E Willis. Motions referred to Jennifer E Willis. (Signed by Judge Vernon S. Broderick on 5/4/2023) (kv) (Entered: 05/04/2023) |
| 05/08/2023 | 39 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Jennifer Willis from Justin A. Guilfoyle dated May 8, 2023 re: 37 FIRST LETTER MOTION to Compel Defendants to produce documents addressed to Judge Vernon S. Broderick from Liane Fisher, Esq. dated 5/3/2023. . Document filed by Orange Business Services Inc... (Guilfoyle, Justin) (Entered: 05/08/2023) |
| 06/01/2023 | 40 | JOINT LETTER addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated June 1, 2023 re: Status of Case. Document filed by Orange Business Services Inc... (Guilfoyle, Justin) (Entered: 06/01/2023) |
| 06/02/2023 | 41 | ORDER granting 37 Letter Motion to Compel. This Court reviewed submissions in support of and in opposition to Plaintiff's Motion and rules as follows: Plaintiff's request to extend fact discovery and related deadlines for 45-days until July 13, 2023 is GRANTED. Plaintiff's request for comparator evidence with respect to Global Account Directors and Integration Services Specialists is GRANTED. Plaintiff's request for an itemized computation of damages regarding Defendant's counterclaims is GRANTED. As further set forth by this Order. Plaintiff's request to compel is GRANTED. The Clerk of the Court is respectfully requested to close the motion at Dkt. No. 37. SO ORDERED. (Signed by Magistrate Judge Jennifer E Willis on 6/2/2023) (tg) (Entered: 06/02/2023) |
| 06/02/2023 | | Set/Reset Deadlines: Fact Discovery due by 7/13/2023. (tg) (Entered: 06/02/2023) |
| 06/05/2023 | 42 | ORDER Discovery in this case has been extended to July 13, 2023. (Doc. 41.) Accordingly, the post-discovery conference currently scheduled for June 9, 2023, at 4:00 p.m., is hereby adjourned to July 18, 2023, at 2:00 pm. SO ORDERED. (Telephone Conference set for 7/18/2023 at 02:00 PM before Judge Vernon S. Broderick.) (Signed by Judge Vernon S. Broderick on 6/5/2023) (jca) (Entered: 06/05/2023) |

| 07/12/2023 | 43 | LETTER MOTION for Extension of Time to Complete Discovery addressed to Magistrate Judge Jennifer Willis from Liane Fisher, Esq. dated 7/12/2023. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 07/12/2023) |
|---|---|---|
| 07/13/2023 | 44 | ORDER granting 43 Letter Motion for Extension of Time to Complete Discovery. GRANTED. SO ORDERED. Discovery due by 8/28/2023. (Signed by Magistrate Judge Jennifer E Willis on 7/13/2023) (tg) (Entered: 07/13/2023) |
| 07/17/2023 | 45 | JOINT LETTER MOTION to Adjourn Conference *re: Post-Discovery Conference Scheduled for July 18, 2023* addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated July 17, 2023. Document filed by Orange Business Services Inc... (Guilfoyle, Justin) (Entered: 07/17/2023) |
| 07/17/2023 | 46 | ORDER: granting 45 Letter Motion to Adjourn Conference. Application Granted. The post-discovery conference currently scheduled for July 18, 2023, is hereby adjourned to August 31, 2023, at 4:00 p.m. SO ORDERED. Telephone Conference set for 8/31/2023 at 04:00 PM before Judge Vernon S. Broderick. (Signed by Judge Vernon S. Broderick on 7/17/2023) (ama) (Entered: 07/17/2023) |
| 08/18/2023 | 47 | ORDER: The post-discovery conference scheduled for August 31, 2023, is hereby adjourned to August 29, at 4:00 p.m. SO ORDERED., ( Telephone Conference set for 8/29/2023 at 04:00 PM before Judge Vernon S. Broderick.) (Signed by Judge Vernon S. Broderick on 8/18/2023) (ama) (Entered: 08/18/2023) |
| 08/25/2023 | 48 | JOINT LETTER MOTION for Extension of Time */Adjournment of the Discovery End Date* addressed to Magistrate Judge Jennifer Willis from Justin A. Guilfoyle dated August 25, 2023. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 08/25/2023) |
| 08/28/2023 | 49 | JOINT LETTER MOTION to Adjourn Conference *Scheduled for August 29, 2023* addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated August 28, 2023. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 08/28/2023) |
| 08/28/2023 | 50 | ORDER granting 49 Letter Motion to Adjourn Conference. In light of the discovery adjournment requested by parties, (Doc. 48), the post-discovery conference scheduled for August 29, at 4:00 p.m., is hereby adjourned to October 4, 2023, at 2:00 p.m. The parties shall submit a joint status letter updating the Court on any outstanding discovery issues by September 29, 2023. Telephone Conference set for 10/4/2023 at 02:00 PM before Judge Vernon S. Broderick. (Signed by Judge Vernon S. Broderick on 8/28/2023) (rro) (Entered: 08/28/2023) |
| 08/30/2023 | 51 | ORDER granting 48 Letter Motion for Extension of Time. GRANTED. SO ORDERED. Discovery due by 9/27/2023. (Signed by Magistrate Judge Jennifer E Willis on 8/30/2023) (tg) (Entered: 08/30/2023) |
| 09/29/2023 | 52 | JOINT LETTER MOTION for Extension of Time to Complete Discovery addressed to Magistrate Judge Jennifer Willis from Liane Fisher, Esq. dated 9/29/2023. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 09/29/2023) |
| 10/03/2023 | 53 | ORDER: In light of the discovery adjournment requested by parties, (Doc. 52), the post-discovery conference scheduled for October 4, at 2:00 p.m., is hereby adjourned to November 16, 2023, at 12:30 p.m. The parties shall submit a joint status letter updating the Court on any outstanding discovery issues by October 27, 2023. Telephone Conference set for 11/16/2023 at 12:30 PM before Judge Vernon S. Broderick. (Signed by Judge Vernon S. Broderick on 10/03/2023) (rro) (Entered: 10/03/2023) |

| 10/04/2023 | 54 | ORDER granting 52 Letter Motion for Extension of Time to Complete Discovery. This request is GRANTED. The discovery period in this action is extended to October 27, 2023. SO ORDERED. Discovery due by 10/27/2023. (Signed by Magistrate Judge Jennifer E Willis on 10/4/2023) (tg) (Entered: 10/04/2023) |
| --- | --- | --- |
| 10/27/2023 | 55 | JOINT LETTER addressed to Judge Vernon S. Broderick from Justin A. Guilfoyle dated October 27, 2023 re: Status of Outstanding Discovery. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 10/27/2023) |
| 10/31/2023 | | NOTICE OF CASE REASSIGNMENT to Judge Dale E Ho. Judge Vernon S. Broderick is no longer assigned to the case. (vba) (Entered: 10/31/2023) |
| 11/08/2023 | 56 | NOTICE OF REASSIGNMENT: This case has been reassigned to the undersigned. All counsel must familiarize themselves with the Court's Individual Practices, which are available at https://nysd.uscourts.gov/hon-dale-e-ho. Unless and until the Court orders otherwise, all prior orders, dates, and deadlines shall remain in effect notwithstanding the case's reassignment. Nothing herein shall affect the scope of the existing reference to the Magistrate Judge. Any conference or oral argument before or directed by the Magistrate Judge will proceed as ordered. Additionally, by November 22, 2023, the parties are hereby ORDERED to file on ECF a joint letter, described below, updating the Court on the status of the case. The joint letter shall provide the following information, to the extent it is relevant, in separate paragraphs: As further set forth in this order. An order issued October 3, 2023, scheduled a post-discovery conference for November 16, 2023. That conference is ADJOURNED to December 1, 2023, at 11:30 A.M. EST. The conference will be held over Microsoft Teams. The parties shall join the conference by dialing (646) 453 4442, and entering the Conference ID: 282 868 998, followed by the pound sign (#). SO ORDERED. (Signed by Judge Dale E Ho on 11/8/2023) ( Status Conference set for 12/1/2023 at 11:30 AM before Judge Dale E Ho.) (ks) (Entered: 11/08/2023) |
| 11/22/2023 | 57 | PROPOSED STIPULATION AND ORDER. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 11/22/2023) |
| 11/22/2023 | 58 | JOINT LETTER addressed to Judge Dale E. Ho from Justin A. Guilfoyle dated November 22, 2023 re: Status Update. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 11/22/2023) |
| 11/27/2023 | 59 | JOINT STIPULATION OF DISMISSAL WITH PREJUDICE: Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Defendant Orange Business Services NA, Inc. ("OBS") and Plaintiff Patricia Haran ("Plaintiff") hereby stipulate to the dismissal of all counterclaims asserted by OBS against Plaintiff in this matter with prejudice. Each party agrees to bear its or her own attorneys' fees and costs.SO ORDERED., Orange Business Services Inc. and Orange Business Services Inc. terminated. (Signed by Judge Dale E. Ho on 11/27/2023) (ama) (Entered: 11/27/2023) |
| 11/27/2023 | 60 | MEMO ENDORSEMENT: on re: 58 Letter filed by Orange Business Services Inc. ENDORSEMENT: The parties shall file a further status letter by November 30, 2023, at 5:00 P.M. EST. Such letter shall state whether any party intends to file a dispositive motion and shall briefly describe the grounds for such motion. The letter shall also state what efforts the parties have made atsettlement and whether they request a referral for settlement discussions through the District's Mediation Program or before Magistrate Judge Willis (or another randomly-assigned Magistrate Judge). So Ordered. (Signed by Judge Dale E. Ho on 11/27/2023) (ama) (Entered: 11/27/2023) |
| 11/30/2023 | 61 | JOINT LETTER addressed to Judge Dale E. Ho from Justin A. Guilfoyle dated November 30, 2023 re: Status Update Pursuant to November 27, 2023 Order. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 11/30/2023) |

| 12/01/2023 | | Minute Entry for proceedings held before Judge Dale E. Ho: Status Conference held on 12/1/2023 via Microsoft Teams teleconference. Attorney Liane Fisher present for Patricia Haran. Attorney Justin Guilfoyle present for Defendant Orange Business Services Inc. (nm) (Entered: 12/07/2023) |
|---|---|---|
| 12/04/2023 | 62 | ORDER: A conference was held on December 1, 2023. For the reasons discussed at the conference, it is hereby ORDERED that the parties shall brief Defendants' anticipated motion for summary judgment as follows: Defendants shall file their opening brief by January 30, 2024. Plaintiff shall file its brief in opposition by February 27, 2024. Defendants shall file their reply by March 12, 2024. The parties shall otherwise comply with the Court's Individual Rules regarding motions. SO ORDERED. (Signed by Judge Dale E. Ho on 12/1/2023) ( Motions due by 1/30/2024., Responses due by 2/27/2024, Replies due by 3/12/2024.) (ks) (Entered: 12/04/2023) |
| 01/24/2024 | 63 | LETTER MOTION for Extension of Time *re Briefing Schedule on Motion for Summary Judgment* addressed to Judge Dale E. Ho from Justin A. Guilfoyle dated Janaury 24, 2024. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 01/24/2024) |
| 01/25/2024 | 64 | ORDER granting 63 Letter Motion for Extension of Time. Application GRANTED. The parties shall brief Defendant's motion in accordance with their proposed briefing schedule. So Ordered. (Signed by Judge Dale E. Ho on 1/25/2024) (ks) (Entered: 01/25/2024) |
| 01/25/2024 | | Set/Reset Deadlines: Motions due by 2/13/2024. Responses due by 3/12/2024 Replies due by 3/26/2024. (ks) (Entered: 01/25/2024) |
| 02/13/2024 | 65 | MOTION for Summary Judgment . Document filed by Orange Business Services Inc... (Traub, Amy) (Entered: 02/13/2024) |
| 02/13/2024 | 66 | MEMORANDUM OF LAW in Support re: 65 MOTION for Summary Judgment . . Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 02/13/2024) |
| 02/13/2024 | 67 | DECLARATION of Amy J. Traub in Support re: 65 MOTION for Summary Judgment .. Document filed by Orange Business Services Inc.. (Attachments: # 1 Exhibit A- Defendant's Policy Against Unlawful Discrimination and Harassment, # 2 Exhibit B- Deposition Transcript of Adam Kimmick, # 3 Exhibit C- Deposition Transcript of Eddy Youkhanna, # 4 Exhibit D- Deposition Transcript of Plaintiff Patricia Haran, # 5 Exhibit E- Plaintiff's Acknowledgement of Defendant's Employee Handbook, # 6 Exhibit F- Defendant's Family and Medical Leave Act (FMLA) Policy, # 7 Exhibit G- Defendant's Notice of Employee Rights and Responsibilities, # 8 Exhibit H- Plaintiff's First Half 2020 Performance Evaluation, # 9 Exhibit I- Plaintiff's Second Half 2020 Performance Evaluation, # 10 Exhibit J- Plaintiff's February 24, 2021 Termination Letter, # 11 Exhibit K- Plaintiffs Microsoft Teams Chats with Peter Singh on February 10, 2021, # 12 Exhibit L- Plaintiff's Microsoft Teams Chats with Peter Singh on February 1, 2021, # 13 Exhibit M- Plaintiff's Microsoft Teams Chats with Xavier Pichon on February 24, 2021, # 14 Exhibit N- Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories, # 15 Exhibit O- Plaintiff's Microsoft Teams chats with Adam Kimmick Singh on October 8, 2020).(Traub, Amy) (Entered: 02/13/2024) |
| 02/13/2024 | 68 | RULE 56.1 STATEMENT. Document filed by Orange Business Services Inc...(Traub, Amy) (Entered: 02/13/2024) |
| 03/07/2024 | 69 | LETTER MOTION for Extension of Time to File *Opposition to Defendants' Motion* addressed to Judge Dale E. Ho from Liane Fisher, Esq. dated 3/7/2024. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/07/2024) |
| 03/08/2024 | 70 | ORDER granting 69 Letter Motion for Extension of Time to File. Application GRANTED. The parties shall file the remaining briefs related to Defendant's motion for summary |

| | | judgment in accordance with their proposed schedule. No further extensions will be granted absent compelling circumstances. So Ordered. (Signed by Judge Dale E. Ho on 3/8/2024) (ks) (Entered: 03/08/2024) |
|---|---|---|
| 03/08/2024 | | Set/Reset Deadlines: Responses due by 3/26/2024 Replies due by 4/12/2024. (ks) (Entered: 03/08/2024) |
| 03/26/2024 | 71 | MEMORANDUM OF LAW in Opposition re: 65 MOTION for Summary Judgment . . Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/26/2024) |
| 03/26/2024 | 72 | COUNTER STATEMENT TO 68 Rule 56.1 Statement. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/26/2024) |
| 03/26/2024 | 73 | DECLARATION of Patricia Haran in Opposition re: 65 MOTION for Summary Judgment .. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/26/2024) |
| 03/26/2024 | 74 | DECLARATION of Liane Fisher in Opposition re: 65 MOTION for Summary Judgment .. Document filed by Patricia Haran..(Fisher, Liane) (Entered: 03/26/2024) |
| 04/08/2024 | 75 | LETTER MOTION for Extension of Time *to Submit Reply in Further Support of Motion for Summary Judgment* addressed to Judge Dale E. Ho from Justin A. Guilfoyle dated April 8, 2024. Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 04/08/2024) |
| 04/09/2024 | 76 | MEMO ENDORSEMENT on re: 75 LETTER MOTION for Extension of Time *to Submit Reply in Further Support of Motion for Summary Judgment* addressed to Judge Dale E. Ho from Justin A. Guilfoyle dated April 8, 2024. filed by Orange Business Services Inc., ENDORSEMENT: Application GRANTED. Defendant shall file its reply by April 19, 2024. So Ordered. (Signed by Judge Dale E. Ho on 4/9/2024) ( Replies due by 4/19/2024.) (ks) (Entered: 04/09/2024) |
| 04/19/2024 | 77 | REPLY MEMORANDUM OF LAW in Support re: 65 MOTION for Summary Judgment . . Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 04/19/2024) |
| 04/19/2024 | 78 | RESPONSE re: 72 Counter Statement to Rule 56.1 . Document filed by Orange Business Services Inc...(Guilfoyle, Justin) (Entered: 04/19/2024) |
| 04/19/2024 | 79 | DECLARATION of Justin A. Guilfoyle in Support re: 65 MOTION for Summary Judgment .. Document filed by Orange Business Services Inc.. (Attachments: # 1 Exhibit A-Microsoft Teams Chats, # 2 Exhibit B-E-Mails).(Guilfoyle, Justin) (Entered: 04/19/2024) |
| 07/29/2024 | 80 | OPINION AND ORDER re: 65 MOTION for Summary Judgment . filed by Orange Business Services Inc.. For the reasons given above, Defendant's motion is GRANTED. Summary judgment is granted to Defendant on the FMLA claims. The Court declines to exercise supplemental jurisdiction over the NYCHRL claim, so it is dismissed without prejudice to re-filing in state court. The Clerk of Court is respectfully directed to close the motion at ECF. No. 65. SO ORDERED (Signed by Judge Dale E. Ho on 7/29/2024) (ks) (Entered: 07/29/2024) |
| 08/28/2024 | 81 | NOTICE OF APPEAL from 80 Memorandum & Opinion,,. Document filed by Patricia Haran. Filing fee $ 605.00, receipt number ANYSDC-29812949. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit Order).(Fisher, Liane) (Entered: 08/28/2024) |
| 08/28/2024 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 81 Notice of Appeal.(km) (Entered: 08/28/2024) |

| 08/28/2024 | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 81 Notice of Appeal, filed by Patricia Haran were transmitted to the U.S. Court of Appeals.(km) (Entered: 08/28/2024) |
|---|---|

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/05/2024 13:04:22 | | |
| **PACER Login:** | teamrpacc | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-10585-DEH-JW |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA HARAN,

*Plaintiff,*

-against-

ORANGE BUSINESS SERVICES INC.,

*Defendant.*

---

CASE NO.: 1:21-CV-10585-DEH-JW

**<u>DEFENDANT'S NOTICE OF MOTION
FOR SUMMARY JUDGMENT</u>**

**PLEASE TAKE NOTICE** that, upon the Notice of Motion for Summary Judgment, the Memorandum of Law in Support of Defendant Orange Business Services U.S. Inc.'s[1] ("Defendant's") Motion for Summary Judgment, Defendant's 56.1 Statement of Undisputed Material Facts, the Declaration of Amy J. Traub, Esq. with annexed exhibits, and all of the pleadings and proceedings had herein, Defendant will move this Court before the Honorable Dale E. Ho at the United States Courthouse, Southern District of New York, 40 Foley Square, New York, New York 10007, for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York granting summary judgment to Defendant with respect to the Complaint filed by the plaintiff in this action on the grounds that there are no genuine issues of material fact in need of trial and that Defendant is entitled to judgment as a matter of law.

---

[1] Plaintiff incorrectly sued "Orange Business Services Inc." At all relevant times, Orange Business Services U.S., Inc. was Plaintiff's employer.

**WHEREFORE**, Defendant respectfully requests that the Court: (i) dismiss the plaintiff's lawsuit in its entirety, with prejudice; (ii) grant Defendant's summary judgment on all claims; and (iii) award any other relief the Court deems to be just and proper.

Dated: February 13, 2024
      New York, New York

**BAKER & HOSTETLER LLP**

 / s /   *Amy J. Traub*      
Amy J. Traub
Justin A. Guilfoyle
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: jguilfoyle@bakerlaw.com

*Attorneys for Defendant*
*Orange Business Services U.S. Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing Defendant's Notice of Motion for Summary Judgment and the documents in support thereof were served on counsel for the plaintiff via the Court's electronic filing system.

Dated:  February 13, 2024          / s /   *Amy J. Traub*
                                                         Amy J. Traub

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA HARAN,

*Plaintiff,*

-against-

ORANGE BUSINESS SERVICES INC.,

*Defendant.*

CASE NO.: 1:21-CV-10585-DEH-JW

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BAKER & HOSTETLER LLP**

Amy J. Traub
Justin A. Guilfoyle
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: jguilfoyle@bakerlaw.com

*Attorneys for Defendant
Orange Business Services U.S. Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................. 2

LEGAL STANDARD ................................................................................................... 2

LEGAL ARGUMENT .................................................................................................. 3

    I.     Summary Judgment Is Warranted on Plaintiff's FMLA Interference Claim
          Because She Cannot Satisfy Her Prima Facie Burden. ................................. 3

          A.    Plaintiff Failed to Follow Defendant's FMLA Notice Procedures, and
               Therefore, She Cannot Establish the Fourth Element of Her Prima
               Facie Case. ............................................................................... 4

          B.    Plaintiff Was Given All of the Time Off She Requested, and
               Therefore, She Cannot Establish the Fifth Element of Her Prima
               Facie Case. ............................................................................... 5

    II.    Summary Judgment Is Warranted on Plaintiff's FMLA Retaliation Claim
          Because She Cannot Carry Her Prima Facie Burden or Prove Pretext. ................. 7

          A.    Plaintiff Cannot Carry Her Prima Facie Burden. ................................. 8

               1.    Plaintiff Never Exercised Rights Protected by the FMLA, and
                    Therefore, She Cannot Establish the First Element of Her
                    Prima Facie Case. ....................................................... 8

               2.    Plaintiff Was Not Qualified for Her Position. ......................... 8

                3.    There Is No Causal Connection Between Plaintiff's Time Off
                    and the Termination of Her Employment, and Therefore,
                    She Cannot Carry Her Burden with Respect to the Fourth
                    Element of Her FMLA Retaliation Claim. ............................... 9

          B.    Defendant Indisputably Had Legitimate Non-Retaliatory Reasons
               for Terminating Plaintiff's Employment. ........................................ 11

          C.    The Record Is Devoid of any Evidence of Pretext. ........................... 13

    III.    Finally, Summary Judgment Is Warranted on Plaintiff's NYCHRL "Familial
          Status" Discrimination Claim ......................................................... 13

A.    Plaintiff Cannot Prove a Prima Facie Case of Caregiver Discrimination. ...................................................................15

1.    Plaintiff Was Not Qualified for her Position. ...................15

2.    There Is No Evidence of Discriminatory Animus. .........................15

B.    Even if Plaintiff Could Carry her Prima Facie Burden, Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating her Employment. ...................................................................17

C.    Plaintiff Cannot Prove Pretext. .........................................17

CONCLUSION ...............................................................................19

## TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Aldrich v. Randolph Cent. Sch. Dist.*,
963 F.2d 520 (2d Cir. 1992), *cert. denied*, 506 U.S. 965 (1992) ....................................................... 2

*Amley v. Sumitomo Mitsui Banking Corp.*,
2021 WL 4429784 (S.D.N.Y. Sept. 27, 2021)................................................................................. 4, 7, 8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................................................ 2

*Baker v. Goldberg Segalla LLP*,
2017 WL 1243040 (S.D.N.Y. Apr. 5, 2017) ....................................................................................... 5

*Baptiste v. Cushman & Wakefield*,
2007 WL 747796 (S.D.N.Y. Mar. 7, 2007)........................................................................................ 16

*Bernard v. J.P. Morgan Chase Bank N.A.*,
2010 WL 423102 (S.D.N.Y. Feb. 5, 2010) ........................................................................................ 14

*Bickerstaff v. Vassar Coll.*,
196 F.3d 435 (2d Cir. 1999) ................................................................................................................ 16

*Bliss v. MXK Rest. Corp.*,
220 F. Supp. 3d 419 (S.D.N.Y. 2016)................................................................................................. 16

*Bodget v. 22 S. St. Opers.*,
2019 WL 2913844 (D. Conn. July 8, 2019), *aff'd*, 828 Fed. App'x 1 (2d Cir. 2020) ................. 6

*Brierly v. Deer Park Union Free Sch. Dist.*,
359 F. Supp. 2d 275 (E.D.N.Y. 2005)................................................................................................. 18

*Carris v. First Student, Inc.*,
2018 WL 3747844 (N.D.N.Y. Aug. 7, 2018) ..................................................................................... 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................................2, 3

*Clark Cnty. Sch. Dist. v. Breden*,
532 U.S. 268 (2001) .............................................................................................................................. 11

*Deebs v. ALSTOM Transp., Inc.,*
  346 Fed. App'x 654 (2d Cir. 2009).................................................................18

*Deshpande v. Medisys Health Network, Inc.,*
  2010 WL 1539745 (E.D.N.Y. Apr. 16, 2010)...............................................14

*DiGiovanna v. Beth Israel Med. Ctr.,*
  651 F. Supp. 2d 193 (S.D.N.Y. 2009)............................................................3

*Dixon v. Int'l Fed'n of Accountants,*
  416 Fed. App'x 107 (2d Cir. 2011)................................................................11

*Dorcely v. Wyandanch Union Free Sch. Dist.,*
  665 F. Supp. 2d 178 (E.D.N.Y. 2009)...........................................................11

*Drew v. Plaza Constr. Corp.,*
  688 F. Supp. 2d 270 (S.D.N.Y. 2010)...........................................................14

*E.E.O.C. v. Bloomberg L.P.,*
  967 F. Supp. 2d 816 (S.D.N.Y. 2013)...........................................................17

*El Sayed v. Hilton Hotels Corp.,*
  627 F.3d 931 (2d Cir. 2010)...........................................................................13

*Ellison v. Chartis Claims, Inc.,*
  178 A.D.3d 665 (2d Dep't 2019)...................................................................18

*Forrester v. Corizon Health, Inc.,*
  278 F. Supp. 3d 618 (E.D.N.Y. 2017)...........................................................14

*Gambello v. Time Warner Commc'ns, Inc.,*
  186 F. Supp. 2d 209 (E.D.N.Y. 2002)............................................................9

*Garcia v. Lewis Tree Servs., Inc.,*
  2022 WL 717861 (W.D.N.Y. Mar. 10, 2022) ................................................7

*Garrett v. Garden City Hotel,*
  2007 WL 1174891 (E.D.N.Y. Apr. 19, 2007)...............................................10

*Gobin v. N.Y.C. Health & Hosp. Corp.,*
  2006 WL 2038621 (S.D.N.Y. July 19, 2016) ...............................................18

*Goenaga v. March of Dimes Birth Defects Found.,*
  51 F.3d 14 (2d Cir. 1995)................................................................................3

*Gonzalez v. City of N.Y.,*
   845 Fed. App'x 11 (2d Cir. 2021) ..................................................................13

*Greenberg v. State Univ. Hosp. – Downtown Med. Ctr.,*
   838 Fed. App'x 603 (2d Cir. 2020) ................................................................. 6

*Gue v. Suleiman,*
   2012 WL 4473283 (S.D.N.Y. Sept. 27, 2012) ................................................16

*Hahn v. Office & Prof'l Emps. Int'l Union, Local 153,*
   2016 WL 4120517 (S.D.N.Y. July 22, 2016) ................................................6, 7

*Hawkins v. Astor Home for Children,*
   1998 WL 142134 (S.D.N.Y. Mar. 25, 1998) ................................................... 9

*Henry v. N.Y.C. Health & Hosp. Corp.,*
   18 F. Supp. 3d 396 (S.D.N.Y. 2014) ..............................................................16

*Holt v. KMI-Continental, Inc.,*
   95 F.3d 123 (2d Cir. 1996)............................................................................. 9

*Hughes v. Derwinski,*
   967 F.2d 1168 (7th Cir. 1992) .......................................................................11

*Johnson v. Schmid,*
   750 Fed. App'x 12 (2d Cir. 208) ....................................................................11

*Joseph v. Owens & Minor Distrib., Inc.,*
   5 F. Supp. 3d 295 (E.D.N.Y. 2014), *aff'd,* 594 Fed. App'x 29 (2d Cir. 2015) ..............................12

*Julius v. Dep't of Human Res. Admin.,*
   2010 WL 1253163 (S.D.N.Y. Mar. 24, 2010) ................................................14

*Kelly v. Hartford Fin. Servs. Group, Inc.,*
   818 Fed. App'x 83 (2d Cir. 2020) ................................................................... 5

*Lawson v. Getty Terminals Corp.,*
   866 F. Supp. 793 (S.D.N.Y. 1994) ................................................................. 9

*LeeHim v. New York City. Dep't of Educ.,*
   2017 WL 5634128 (S.D.N.Y. Nov. 21, 2017)................................................16

*Ludwig v. Rochester Psychiatric Ctr.,*
   550 F. Supp. 2d 394 (W.D.N.Y. 2008).........................................................13

*Marro v. Nicholson,*
2008 WL 699506 (E.D.N.Y. Mar. 12, 2008) ...................................................................10

*McGuiness v. E. W. Indus.,*
857 F. Supp. 2d 259 (E.D.N.Y. 2012) .............................................................................7

*McLee v. Chrysler Corp.,*
109 F.3d 130 (2d Cir. 1997) ...........................................................................................9

*McQueen-Starling v. UnitedHealth Grp., Inc.,*
654 F. Supp. 2d 154 ......................................................................................................12

*Melman v. Montefiore Med. Ctr.,*
946 N.Y.S.2d 27 (1st Dep't 2012) ................................................................................14

*Nicastro v. Runyon,*
60 F. Supp. 2d 181 (S.D.N.Y. 1999) .............................................................................10

*Perry v. NYSARC, Inc.,*
424 Fed. App'x 23 (2d Cir. 2011) ..................................................................................9

*Potash v. Florida Union Free Sch. Dist.,*
972 F. Supp. 2d 557 (S.D.N.Y. 2013) ..........................................................................16

*Potenza v. City of N.Y.,*
375 F.3d 165 (2d Cir. 2004) ...........................................................................................7

*Ragsdale v. Wolverine World Wide, Inc.,*
535 U.S. 81 (2002)..........................................................................................................5

*Revere v. Bloomingdale's, Inc.,*
2006 WL 3314633 (E.D.N.Y. Nov. 14, 2006)..............................................................18

*Richards v. N.Y.C. Dep't of Educ.,*
2015 WL 4164746 (S.D.N.Y. July 10, 2015) .................................................................4

*Richmond v. ONEOK, Inc.,*
120 F.3d 205 (10th Cir. 1997) ......................................................................................11

*Robles v. Medisys Health Network, Inc.,*
2020 WL 3403191 (E.D.N.Y. June 19, 2020).................................................................8

*Ruhling v. Tribune Co.,*
2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) .....................................................................10

*Saad v. ASML US, LLC,*
   2200 WL 12904711, at *5 (D. Conn. Sept. 4, 2020) ........................................... 5

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,*
   183 F.3d 155 (2d Cir. 1999) ...........................................................................6, 7

*Sedhom v. SUNY Downstate Med. Ctr.,*
   2018 WL 6587001 (Sup. Ct. N.Y. Cty. Dec. 14, 2018) ..................................... 17

*Slattery v. Swiss Reins. Am. Corp.,*
   248 F.3d 87 (2d Cir. 2001) ............................................................................... 15

*Slaughter v. Am. Bldg. Maint. Co. of N.Y.,*
   64 F. Supp. 2d 319 (S.D.N.Y. 1999) .................................................................. 4

*Stofsky v. Pawling Cent. Sch. Dist.,*
   635 F. Supp. 2d 272 (S.D.N.Y. 2009) .............................................................. 14

*Tanay v. St. Barnanas Hosp.,*
   2001 WL 262695 (S.D.N.Y. Mar. 15, 2001) ..................................................... 12

*Taylor v. Polygram Records,*
   1999 WL 124456 (S.D.N.Y. Mar. 8, 1999) ....................................................... 18

*Telesford v. N.Y.C. Dep't of Educ.,*
   2021 WL 456201 (E.D.N.Y. Jan. 6, 2021) ........................................................ 11

*Tenenbein v. N.Y.C. Dep't of Educ.,*
   178 A.D.3d 510 (1st Dep't 2019) ..................................................................... 16

*Thomson v. Saatchi & Saatchi Holdings (USA), Inc.,*
   958 F. Supp. 808 (W.D.N.Y. 1997) .................................................................. 12

*Thornley v. Penton Publ'g, Inc.,*
   104 F.3d 26 (2d Cir. 1997) ............................................................................... 9

*Vandel v. Standard Motor Prods., Inc.,*
   1999 WL 1295332 (2d Cir. 1999) ..................................................................... 12

*Venti v. EDS,*
   236 F. Supp. 2d 264 (W.D.N.Y. 2002) ............................................................. 18

*Wolf v. Time Warner, Inc.,*
   2012 WL 4336232 (S.D.N.Y. Sept. 17, 2011) .................................................. 17

*Workneh v. Pall Corp.*,
    897 F. Supp. 2d 121 (E.D.N.Y. 2012) ............................................................... 10

**Statutes**

29 U.S.C. § 2612(d)(2)(B) ............................................................................................ 6

29 U.S.C. § 2615(a)(1) .................................................................................................. 3

N.Y.C. Admin. Code § 8-107(1)(a) ........................................................................... 14

**Rules**

Fed. R. Civ. P. 56 ................................................................................................... 1, 14

Fed. R. Civ. P. 56(a) .................................................................................................... 2

Local Rule 56.1 ............................................................................................................ 2

**Regulations**

29 C.F.R. § 825.302(d) ................................................................................................. 4

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Defendant's Policy Against Unlawful Discrimination and Harassment |
| B | Excerpts from Deposition of Adam Kimmick ("Kimmick Dep.") |
| C | Excerpts from Deposition of Eddy Youkhanna ("Youkhanna Dep.") |
| D | Excerpts from Deposition of Plaintiff Patricia Haran ("Pl. Dep.") |
| E | Plaintiff's Acknowledgement of Defendant's Employee Handbook |
| F | Defendant's FMLA Policy |
| G | Plaintiff's Acknowledgement of Notice of FMLA Rights |
| H | Plaintiff's First Half 2020 Performance Evaluation |
| I | Plaintiff's Second Half 2020 Performance Evaluation |
| J | Plaintiff's Termination Letter |
| K | Microsoft Teams Chats (1) |
| L | Microsoft Teams Chats (2) |
| M | Microsoft Teams Chats (3) |
| N | Excerpts from Plaintiff's Objections and Responses to Interrogatories |
| O | Microsoft Teams Chats (4) |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Orange Business Services U.S. Inc. ("Defendant") respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment, seeking the dismissal of Plaintiff Patricia Haran's ("Plaintiff's") claims against it, in their entirety, with prejudice.[1]

## **PRELIMINARY STATEMENT**

Plaintiff asserts claims of Family and Medical Leave Act ("FMLA") interference, FMLA retaliation, and "familial status" discrimination pursuant to the New York City Human Rights Law ("NYCHRL"). Plaintiff's FMLA interference and retaliation claims fail as a matter of law because: (1) she never requested FMLA leave; (2) she never took FMLA leave; and (3) Defendant provided Plaintiff with all of the time off she wanted (with pay). Plaintiff's "familial status" discrimination claim also fails because Defendant terminated her employment following Plaintiff's demonstrated inability to create and maintain a sales pipeline with sufficient velocity to make a profit for Defendant in her sales position, as well as the fact that she was inadequately performing with respect to her interactions with Defendant's clients and co-workers – all as confirmed in her written performance evaluations leading up to the termination decision. Nonetheless, Plaintiff contends that Defendant made the decision to terminate her employment because she took a handful of days off several months prior to her termination. There is not a shred of evidence to support this claim, or any of Plaintiff's claims. As a result, summary judgment is warranted.

---

[1] Plaintiff incorrectly sued "Orange Business Services Inc." At all relevant times, Orange Business Services U.S., Inc. was Plaintiff's employer.

## STATEMENT OF FACTS

Defendant relies upon the facts set forth in its Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF") and incorporates those facts herein.

## LEGAL STANDARD

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the Court must construe the facts of the case in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must also resolve all ambiguities and draw all reasonable inferences against the moving party. *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992), *cert. denied*, 506 U.S. 965 (1992). However, when a motion for summary judgment is properly supported by documentary and testimonial evidence, the non-moving party may not rest on the allegations or denials of her pleadings alone and must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). If the non-moving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment should be granted. *Anderson*, 477 U.S. at 249-50. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the non-moving party has failed to make a sufficient showing on an essential element of her case for which she has the burden of proof, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be no genuine issues as

to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if it can point to absence of evidence to support essential element of non-moving party's claims).

Where, as here, there is no genuine issue of material fact and no reasonable jury could return a verdict for Plaintiff, summary judgment is warranted.

## LEGAL ARGUMENT

**I.**    **Summary Judgment Is Warranted on Plaintiff's FMLA Interference Claim Because She Cannot Satisfy Her *Prima Facie* Burden.**

To succeed on a claim of FMLA interference, a plaintiff must show that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise [] any right provided under this subchapter.").  To establish a *prima facie* case of FMLA interference, Plaintiff must prove that: (i) she is an eligible employee under the FMLA; (ii) Defendant constitutes an employer under the FMLA; (iii) she was entitled to leave under the FMLA; (iv) she gave notice to Defendant of her intention to take leave; and (v) Defendant denied her benefits to which she was entitled under the FMLA. *DiGiovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 199 (S.D.N.Y. 2009).  Plaintiff cannot carry her burden with respect to the fourth and fifth elements of her *prima facie* case.

3

A.     **Plaintiff Failed to Follow Defendant's FMLA Notice Procedures, and Therefore, She Cannot Establish the Fourth Element of Her *Prima Facie* Case.**

As an initial matter, Plaintiff's FMLA interference claim is subject to dismissal because she failed to give notice to Defendant of her intention to take leave in accordance with the requirements of Defendant's FMLA policy.  Specifically, Defendant's FMLA policy, contained in its employee handbook and acknowledged by Plaintiff, required her to (i) submit a request in writing (ii) to both her direct supervisor and to Human Resources (iii) on Defendant's FMLA form.  (SUMF ¶ 8; Exhibit F to the Declaration of Amy J. Traub, Esq., dated February 13, 2024 ("Traub Decl.")).  Plaintiff did none of this.

The FMLA regulations confirm that "[a]n employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave absent unusual circumstances.  For example, an employer may require **written notice** that sets forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave." 29 C.F.R. § 825.302(d) (emphasis added).  This section further provides that "[a]n employee also may be requested by an employer's policy to contact a specific individual." *Id.*

Plaintiff's failure to comply with Defendant's clear and legally permissible notice requirements is fatal to her FMLA interference claim, as it rendered her ineligible for FMLA in the first instance. *See Amley v. Sumitomo Mitsui Banking Corp.*, 2021 WL 4429784, at *11 (S.D.N.Y. Sept. 27, 2021) (dismissing FMLA interference claim where plaintiff did not comply with employer's FMLA notification procedures) (citing *Slaughter v. Am. Bldg. Maint. Co. of N.Y.*, 64 F. Supp. 2d 319, 327-28 (S.D.N.Y. 1999)); *Richards v. N.Y.C. Dep't of Educ.*, 2015 WL

4164746, at *14 n.20 (S.D.N.Y. July 10, 2015) (plaintiff not entitled to FMLA leave where he

failed to comply with employer's requirements for requesting FMLA leave); *Saad v. ASML US,*

*LLC*, 2200 WL 12904711, at *5 (D. Conn. Sept. 4, 2020) ("Failure to comply with an employer's

policy governing notice, absent unusual circumstances, is grounds for denial of FMLA leave.").

Notably, even where a plaintiff provides verbal notification of the intention to take

FMLA leave (which, incidentally, Plaintiff also did not provide), an FMLA interference claim will

still fail where, as here, the employer's policy requires that the request be in writing.  Indeed,

in *Kelly v. Hartford Fin. Servs. Group, Inc.*, the Second Circuit, citing to Section 825.302(d), held

that the employer "did not deny [plaintiff] any benefit to which he was entitled under the

FMLA" as he "never once applied for leave through the established procedures."  818 Fed.

App'x 83, 85 (2d Cir. 2020).  And this was true even though the plaintiff had "verbally notified

his managers" of his "intent to take FMLA leave[.]" *Id.*

For this first reason then, Plaintiff's FMLA interference claim fails as a matter of law.

**B.      Plaintiff Was Given All of the Time Off She Requested, and Therefore, She
         Cannot Establish the Fifth Element of Her *Prima Facie* Case.**

Even if Plaintiff could somehow establish the fourth element of her *prima facie* case –

which she cannot – her FMLA interference claim would still fail because she cannot establish

the fifth element of her claim.  Section 2617 of the FMLA, which creates a private right of

action for employees who were damaged by an employer's violation of the statute, forecloses

relief "unless the employee has been prejudiced by the violation."  *Ragsdale v. Wolverine*

*World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Baker v. Goldberg Segalla LLP*, 2017 WL 1243040, at

*3-4 (S.D.N.Y. Apr. 5, 2017) (no viable FMLA interference claim where plaintiff was not prejudiced by alleged lack of notice of FMLA rights).

The FMLA provides that "an employer may require the employee[] to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for [FMLA] leave." 29 U.S.C. § 2612(d)(2)(B). Courts throughout the Second Circuit have routinely held that an employee's FMLA interference claim fails in circumstances, such as here, where an employer granted the employee the time off as sick leave, personal leave, or some other sort of leave. *See, e.g.*, *Greenberg v. State Univ. Hosp. – Downtown Med. Ctr.*, 838 Fed. App'x 603, 606 (2d Cir. 2020) (affirming dismissal of FMLA interference claim where plaintiff was given time off as sick leave); *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir. 1999) (no interference with FMLA rights where plaintiff received time off); *Hahn v. Office & Prof'l Emps. Int'l Union, Local 153*, 2016 WL 4120517, at *4 (S.D.N.Y. July 22, 2016) (use of sick days for sought after time off rendered FMLA interference meritless); *Bodget v. 22 S. St. Opers.*, 2019 WL 2913844, at *5 (D. Conn. July 8, 2019), *aff'd*, 828 Fed. App'x 1, 5 (2d Cir. 2020) (same). Here, Plaintiff admits that she was able to take all of the time off that she needed. (SUMF ¶¶ 57-60).

Defendant nonetheless anticipates that Plaintiff will try to make something of the fact that Defendant did not provide her with a secondary notice of her rights under the FMLA at the time she mentioned to her direct supervisor, Adam Kimmick ("Kimmick"), that her daughter was ill. But this is nothing more than a red herring. "[T]he Second Circuit has explicitly rejected an independent right of action for a technical failure to provide notice of FMLA rights, as long as the plaintiff was ultimately given the leave (whether FMLA or

substituted sick, personal, or vacation leave) that [s]he requested." *Amley*, 2021 WL 4429784, at *12 (citing *Sarno*, 193 F.3d at 162); *Hahn*, 2016 WL 4120517, at *4; *see also Garcia v. Lewis Tree Servs., Inc.*, 2022 WL 717861, at *6 (W.D.N.Y. Mar. 10, 2022).

Here, Plaintiff admits, and the undisputed record confirms, that she was always given the time off that she requested. (SUMF ¶¶ 57-60). As a result, her FMLA interference claim is meritless for this second reason and must be dismissed.

**II.   Summary Judgment Is Warranted on Plaintiff's FMLA Retaliation Claim Because She Cannot Carry Her *Prima Facie* Burden or Prove Pretext.**

FMLA retaliation claims are examined under the three-step *McDonnell Douglas* burden-shifting framework. *See McGuiness v. E. W. Indus.*, 857 F. Supp. 2d 259, 265-66 (E.D.N.Y. 2012). Only if the plaintiff establishes a *prima facie* case does the burden shift to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Id.* Once the employer satisfies this step, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for retaliation. *Id.*

To establish a *prima facie* case of FMLA retaliation, Plaintiff bears the burden of providing evidence demonstrating that: (i) she exercised rights protected under the FMLA; (ii) she was qualified for the position; (iii) she suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of N.Y.*, 375 F.3d 165, 168 (2d Cir. 2004).

Here, Plaintiff's FMLA retaliation claim fails because she cannot satisfy her burden with respect to the first, second, and fourth elements of her *prima facie* case, and she also cannot prove pretext.

> **A.     Plaintiff Cannot Carry Her *Prima Facie* Burden.**

> > **1.     *Plaintiff Never Exercised Rights Protected by the FMLA, and Therefore, She Cannot Establish the First Element of Her* Prima Facie *Case.***

Plaintiff cannot carry the initial burden of a prima facie case of FMLA retaliation because she did not exercise rights under the FMLA. Two notable facts are undisputed. First, Plaintiff never requested FMLA leave. (SUMF ¶ 63). Second, Plaintiff never took FMLA leave. (SUMF ¶ 64). Rather, Plaintiff used accrued paid time off for the handful of days she took off to be with her daughter. (SUMF ¶¶ 57-60). It is axiomatic that since Plaintiff never exercised rights under the FMLA, she cannot maintain an FMLA retaliation claim, as a matter of law. *See Amley*, 2021 WL 4429784 at *12-13 (summary judgment granted as to FMLA retaliation claim where plaintiff did not exercise rights under FMLA); *Robles v. Medisys Health Network, Inc.*, 2020 WL 3403191, at *18 (E.D.N.Y. June 19, 2020) (dismissing FMLA retaliation claim where plaintiff failed to establish that he requested or took leave under FMLA).

> > **2.     *Plaintiff Was Not Qualified for Her Position.***

Assuming, *arguendo*, that Plaintiff exercised rights under the FMLA (which she did not), her FMLA retaliation claim would still fail because she was not qualified for her sales role at Defendant. Indeed, Plaintiff's job performance was unacceptable with respect to her ability

to create and maintain a sales pipeline with enough velocity to achieve her future sales goals.[2] (SUMF ¶¶ 21-22, 28, 41-42; Exhibits H & I to Traub Decl.).  *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (affirming grant of summary judgment dismissing discrimination claim, finding plaintiff not qualified for position where performance evaluation showed deficiencies); *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 221 (E.D.N.Y. 2002) (evidence of poor job performance confirms plaintiff was not qualified for position); *Lawson v. Getty Terminals Corp.*, 866 F. Supp. 793, 801 (S.D.N.Y. 1994) (same).

Because Plaintiff was not qualified for her role, as confirmed by her most recent performance evaluations, her FMLA retaliation claim fails.

### 3. There Is No Causal Connection Between Plaintiff's Time Off and the Termination of Her Employment, and Therefore, She Cannot Carry Her Burden with Respect to the Fourth Element of Her FMLA Retaliation Claim.

Even assuming Plaintiff could establish the other *prima facie* elements of her FMLA retaliation claim (which she cannot), where, as here, a plaintiff fails to prove a "causal connection between the protected activity and the adverse employment action," the retaliation claim fails.  *Perry v. NYSARC, Inc.*, 424 Fed. App'x 23, 26 (2d Cir. 2011) (quoting *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996)).  Here, there is a complete dearth of evidence supporting any connection between Plaintiff's time off from work and Defendant's decision to terminate her employment.  Indeed, Plaintiff is unable to point to any statements,

---

[2] *See Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997) (absent bad faith, employer may determine whether job performance is satisfactory based on its own criteria, and employer need not submit reasonableness of its good faith employment criteria to judge's or jury's assessment); *Hawkins v. Astor Home for Children*, 1998 WL 142134, at *4 (S.D.N.Y. Mar. 25, 1998) (employer may establish any non-discriminatory performance standards it chooses).

actions, or retaliatory animus connecting her alleged protected activity and Defendant's decision to terminate her employment. (SUMF ¶¶ 53-58). To the contrary, Plaintiff's direct supervisor, who made the decision to terminate her employment, at all times encouraged Plaintiff to take all the time off that she needed. (SUMF ¶ 50; Exhibit O to Traub Decl.). Plaintiff's inability to present any evidence of retaliatory animus is fatal to her retaliation claim. *See, e.g., Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 135-36 (E.D.N.Y. 2012); *Marro v. Nicholson*, 2008 WL 699506, at *9-10 (E.D.N.Y. Mar. 12, 2008) (dismissing retaliation claim where there was lack of evidence of decisionmaker's retaliatory animus against plaintiff).

To the extent Plaintiff attempts to rely on temporal proximity to establish an inference of FMLA retaliatory animus (and assuming the several days she took off are somehow credited as FMLA leave – which they should not be), these PTO days in October 2020 are not, as a matter of law, close enough in time to the termination of her employment in February 2021 – a period of over four months. *See Garrett v. Garden City Hotel*, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases); *Ruhling v. Tribune Co.*, 2007 WL 28283, at *23 (E.D.N.Y. Jan. 3, 2007) ("passage of two months between the protected activity and the adverse employment action seems to be the dividing line"); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed

when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.")[3]

Without any direct or indirect evidence of retaliatory intent, Plaintiff cannot establish a *prima facie* claim of FMLA retaliation.

### B. Defendant Indisputably Had Legitimate Non-Retaliatory Reasons for Terminating Plaintiff's Employment.

Assuming, *arguendo*, that Plaintiff can establish a *prima facie* FMLA retaliation claim (which she cannot), Defendant has satisfied its burden to present a legitimate non-retaliatory reason for its actions. Specifically, Plaintiff's unsatisfactory performance, *i.e.*, her inability to create and maintain a sales pipeline with enough velocity to achieve her going-forward sales goals, resulted in the decision to terminate her employment.[4] (SUMF ¶¶ 21-22, 28, 41-42; Exhibit H & I to Traub Decl.). "Poor performance is unquestionably a legitimate reason for termination." *Telesford v. N.Y.C. Dep't of Educ.*, 2021 WL 456201, at *4 (E.D.N.Y. Jan. 6, 2021); *see also Johnson v. Schmid*, 750 Fed. App'x 12, 18 (2d Cir. 208) (poor performance constitutes legitimate non-retaliatory reason); *Dixon v. Int'l Fed'n of Accountants*, 416 Fed. App'x 107, 110 (2d Cir. 2011) (same); *Dorcely v. Wyandanch Union Free Sch. Dist.*, 665 F. Supp. 2d 178, 217 (E.D.N.Y. 2009) (same).

---

[3] Further, the Supreme Court has approvingly cited two circuit court decisions, which held that a three-to-four-month gap between protected activity and the alleged retaliation was insufficient to draw an inference of causation. *See Clark Cnty. Sch. Dist. v. Breden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)).

[4] Notably, Plaintiff herself recognized that her job was in jeopardy prior to her termination while chatting online with a co-worker. (SUMF ¶¶ 44-45; Exhibit L to Traub Decl.).

Additionally, Kimmick also considered issues regarding Plaintiff's professional and interpersonal shortcomings that were brought to his attention by Defendant's clients and Plaintiff's co-workers when making the decision to terminate her employment. (SUMF ¶¶ 23-25, 36-37, 41; Exhibit H to Traub Decl.). And these issues were included in Plaintiff's written performance evaluations and addressed with Plaintiff at other times by Kimmick. (SUMF ¶¶ 23-25; Exhibit H to Traub Decl.). Interpersonal issues with an employer's employees also constitute legitimate, non-retaliatory reasons for an adverse action. *See Vandel v. Standard Motor Prods., Inc.*, 1999 WL 1295332, at *1 (2d Cir. 1999) ("interpersonal difficulties" are legitimate, non-discriminatory reasons for termination); *McQueen-Starling v. UnitedHealth Grp., Inc.*, 654 F. Supp. 2d 154, 164-65 (complaints about managerial style are legitimate reasons); *Tanay v. St. Barnabas Hosp.*, 2001 WL 262695, at *7 (S.D.N.Y. Mar. 15, 2001) (conflict with co-worker was legitimate, non-discriminatory reason for adverse action). Likewise, customer complaints also constitute legitimate, non-retaliatory reasons for an adverse action. *See Carris v. First Student, Inc.*, 2018 WL 3747844, at *12 (N.D.N.Y. Aug. 7, 2018) ("Plaintiff's termination due to customer dissatisfaction is a legitimate, non-discriminatory reason."); *Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 312-13 (E.D.N.Y. 2014), *aff'd*, 594 Fed. App'x 29 (2d Cir. 2015) (customer's dissatisfaction with plaintiff's performance is a legitimate, non-retaliatory reason); *Thomson v. Saatchi & Saatchi Holdings (USA), Inc.*, 958 F. Supp. 808, 822 (W.D.N.Y. 1997) (complaint about plaintiff's personality from client constitutes legitimate, non-discriminatory reason).

Because Defendant has proffered legitimate non-retaliatory reasons for the decision to terminate Plaintiff's employment, the burden shifts back to Plaintiff to present evidence that Defendant's reasons were merely pretext for retaliation – something she cannot do.

### C.     The Record Is Devoid of any Evidence of Pretext.

Plaintiff cannot point to any evidence of retaliatory animus or pretext.  Defendant anticipates that Plaintiff will attempt to rely on the temporal proximity between her non-FMLA time off from work and the termination of her employment.  However, it is well-established that a plaintiff cannot rely on temporal proximity alone to establish pretext. *See Gonzalez v. City of N.Y.*, 845 Fed. App'x 11, 15 (2d Cir. 2021) ("temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"); *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (affirming grant of summary judgment where plaintiff "produced no evidence other than temporal proximity in support of his charge that the proffered reason for his discharge was pretextual"); *Ludwig v. Rochester Psychiatric Ctr.*, 550 F. Supp. 2d 394, 399 (W.D.N.Y. 2008) ("temporal proximity alone is insufficient to establish pretext").  Plaintiff is unable to maintain an FMLA retaliation claim against Defendant for this additional reason.

### III.     Finally, Summary Judgment Is Warranted on Plaintiff's NYCHRL "Familial Status" Discrimination Claim.[5]

Although the NYCHRL requires an independent liberal construction analysis, discrimination claims under the NYCHRL are nonetheless still analyzed under the *McDonnell*

---

[5] Because there is no such cause of action for familial status discrimination under the NYCHRL, Defendant presumes, for purposes of this motion, that Plaintiff is asserting a caregiver discrimination claim thereunder.

*Douglas* burden-shifting framework. *Bernard v. J.P. Morgan Chase Bank N.A.*, 2010 WL 423102, at *9 (S.D.N.Y. Feb. 5, 2010). Furthermore, "[w]hile claims under the NYCHRL are more liberally construed than claims under [federal and state law], the NYCHRL 'does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56.'" *Deshpande v. Medisys Health Network, Inc.*, 2010 WL 1539745, at *22 (E.D.N.Y. Apr. 16, 2010) (quoting *Julius v. Dep't of Human Res. Admin.*, 2010 WL 1253163, at *5 (S.D.N.Y. Mar. 24, 2010)). Under the NYCHRL, the plaintiff must still "come forward with ... evidence – either direct or circumstantial – from which it could be inferred that ... discrimination was a motivating factor, even in part, for [the defendant's] treatment of her." *Forrester v. Corizon Health, Inc.*, 278 F. Supp. 3d 618, n.9 (E.D.N.Y. 2017) (quoting *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 41 (1st Dep't 2012)).

A *prima facie* case of employment discrimination requires Plaintiff to demonstrate that: (i) she is a member of a protected class; (ii) she was qualified for the position she held; (iii) she suffered an adverse employment action; and (iv) the adverse employment action took place under circumstances giving rise to the inference of discrimination. *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 281 (S.D.N.Y. 2010). In order to satisfy this burden, Plaintiff must "introduce[] evidence that raises a reasonable inference that action taken by her employer was based on an impermissible factor." *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 297 (S.D.N.Y. 2009). To establish a *prima facie* case of caregiver discrimination under the NYCHRL, a plaintiff must demonstrate a causal link between her caregiver status and the employer's conduct. *See* N.Y.C. Admin. Code § 8-107(1)(a) (unlawful for employer to terminate employee because of employee's caregiver status).

Plaintiff cannot establish all of the elements of a *prima facie* case of caregiver discrimination, nor can she prove pretext.

### A.    Plaintiff Cannot Prove a *Prima Facie* Case of Caregiver Discrimination.

#### 1.    Plaintiff Was Not Qualified for her Position.

Initially, Plaintiff had a documented record of prolonged poor job performance throughout 2020, which necessitated the termination of her employment. (SUMF ¶¶ 21-32, 36-37, 41-42; Exhibits H & I to Traub Decl.). Plaintiff's unsatisfactory work performance confirms that she was not qualified for her sales position, and as such, Plaintiff is unable to satisfy the second prong of her *prima facie* case. (*Supra* at Section II.A.2).

#### 2.    There Is No Evidence of Discriminatory Animus.

Even if she was qualified for her position (which Plaintiff was not), the record is devoid of any evidence that Defendant commented about Plaintiff's alleged caregiver status, discussed her alleged caregiver status in connection with the termination of her employment, or criticized Plaintiff in any way because of her alleged caregiver status. The only purported "evidence" upon which Plaintiff appears to base her NYCHRL caregiver discrimination claim is Kimmick's alleged comment during Plaintiff's annual performance review that she had a "lack of focus" generally.[6] (Complaint [Dkt. No. 1] at ¶ 30; SUMF ¶ 31; Exhibit I to Traub Decl.). This innocuous comment – wholly unrelated to Plaintiff's status as a mother to a minor child or a daughter to elderly mother – is insufficient, as a matter of law, to support a claim of caregiver discrimination under the NYCHRL. *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 n.2

---

[6] Indeed, Plaintiff admitted that she lacked the requisite focus to satisfactorily perform her job towards the end of 2020. (SUMF ¶ 32).

(2d Cir. 2001) (courts decline to address remarks that are protected-class neutral or "stray remarks" unrelated to termination); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410 (S.D.N.Y. 2014) (remarks not about at-issue protected class fail to support claim of discrimination); *see also Tenenbein v. N.Y.C. Dep't of Educ.*, 178 A.D.3d 510, 511 (1st Dep't 2019) (comments not based upon plaintiff's protected class do not support discrimination claim).

Further, Plaintiff's subjective belief that she may have been discriminated against (SUMF ¶¶ 51-52) fails to satisfy her burden at this stage. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 436 (2d Cir. 1999) (plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination); *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 589 (S.D.N.Y. 2013) ("Plaintiff's 'mere subjective belief that [s]he was discriminated against because of [her] [gender] does not sustain a [gender] discrimination claim.'") (citing *Gue v. Suleiman*, 2012 WL 4473283, at *8 (S.D.N.Y. Sept. 27, 2012) (quoting *Baptiste v. Cushman & Wakefield*, 2007 WL 747796, at *7 (S.D.N.Y. Mar. 7, 2007) (alterations in original)).

Because the record is devoid of any evidence that Defendant's decision to terminate Plaintiff's employment was motivated by Plaintiff's status as a mother or a daughter who occasionally took time off from work to care for family members – less than nine days from October 2020 through her separation (SUMF ¶ 49; Exhibit N to Traub Decl.), Plaintiff is unable to satisfy her burden at the *prima facie* stage of her NYCHRL caregiver discrimination claim. *See Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 424 (S.D.N.Y. 2016) (under the NYCHRL, plaintiff must show that defendant's conduct was "caused by discriminatory motive"); *LeeHim v. New York City. Dep't of Educ.*, 2017 WL 5634128, at *9 (S.D.N.Y. Nov. 21, 2017) (same); *see*

also *Sedhom v. SUNY Downstate Med. Ctr.*, 2018 WL 6587001, at *8 (Sup. Ct. N.Y. Cty. Dec. 14, 2018) (caregiver discrimination claim will be dismissed where, as here, it is "completely devoid of any factual allegations–except for conclusory assertions–that plaintiff's caregiver status had any negative impact on her employment status.").

**B.    Even if Plaintiff Could Carry her *Prima Facie* Burden, Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating her Employment.**

Assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of caregiver discrimination (which she cannot), as set forth in detail above, Defendant had legitimate non-discriminatory reasons for terminating Plaintiff's employment, which satisfies Defendant's burden at the second step of the *McDonnell Douglas* burden-shifting analysis.  (*Supra* at Section II.B.).

**C.    Plaintiff Cannot Prove Pretext.**

Once again, the record is entirely devoid of any evidence that Defendant's reasons for terminating Plaintiff's employment were false and that Defendant's discriminatory motivations and animus against Plaintiff because she took off a few days to care for her daughter or mother were the real reasons why she was terminated.  *See Wolf v. Time Warner, Inc.*, 2012 WL 4336232, at *9 (S.D.N.Y. Sept. 17, 2011) ("In other words, a reason cannot be proved to be pretext for discrimination unless it is shown **both** that the reason was false **and** that discrimination was the real reason.") (emphasis added); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 859-61 (S.D.N.Y. 2013) (summary judgment warranted where no evidence rebutted defendant's stated reason).

Plaintiff's subjective belief that the termination of her employment was motivated by her caregiver status fails to defeat Defendant's entitlement to summary judgment. *See Deebs v. ALSTOM Transp., Inc.*, 346 Fed. App'x 654, 656 (2d Cir. 2009) ("[S]elf-serving testimony ... is insufficient to defeat summary judgment."); *Revere v. Bloomingdale's, Inc.*, 2006 WL 3314633, at *8 (E.D.N.Y. Nov. 14, 2006) (plaintiff cannot establish pretext by blaming her job performance on employer's discriminatory agenda); *see also Ellison v. Chartis Claims, Inc.*, 178 A.D.3d 665, 669 (2d Dep't 2019) (dismissing NYCHRL discrimination claim while holding that plaintiff's speculation as to employer's discriminatory motives were insufficient at summary judgment stage).

Further, Plaintiff's contentions that she believes she was performing adequately in her role or that Defendant was wrong in its assessment of her performance are irrelevant at this stage. *See Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 297 (E.D.N.Y. 2005) ("A plaintiff's subjective perceptions of [her] own abilities are not sufficient to show pretext and avoid summary judgment on [her] discrimination claims.") (citing *Venti v. EDS*, 236 F. Supp. 2d 264, 276 (W.D.N.Y. 2002)); *Taylor v. Polygram Records*, 1999 WL 124456, at *10 (S.D.N.Y. Mar. 8, 1999) ("[F]aulting others for, or otherwise rationalizing, problems legitimately perceived by [an] employer does not establish pretext."); *Gobin v. N.Y.C. Health & Hosp. Corp.*, 2006 WL 2038621, at *7 (S.D.N.Y. July 19, 2016) ("an employer may terminate an employee for a good reason, bad reason, or no reason at all, provided such reason is not discriminatory").

Given the dearth of evidence that Defendant terminated Plaintiff's employment because she took a few approved days of paid time off to be with her daughter or mother, Plaintiff's NYCHRL caregiver discrimination is subject to dismissal at this juncture.

## **CONCLUSION**

For the reasons set forth above, as well as in Defendant's Statement of Undisputed Material Facts, the Affirmation of Amy J. Traub, Esq. with attached exhibits, and all of the pleadings and proceedings had herein, Defendant respectfully submits that its Motion for Summary Judgment should be granted in its entirety.

Dated: February 13, 2024
New York, New York

**BAKER & HOSTETLER LLP**

_/ s /   Amy J. Traub_
Amy J. Traub
Justin A. Guilfoyle
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: jguilfoyle@bakerlaw.com

_Attorneys for Defendant_
_Orange Business Services U.S. Inc._

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIA HARAN,

*Plaintiff,*

-against-

ORANGE BUSINESS SERVICES INC.,

*Defendant.*

---

CASE NO.: 1:21-CV-10585-DEH-JW

**DECLARATION OF AMY J. TRAUB, ESQ.
IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

I, Amy J. Traub, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am an attorney admitted to practice in, among other courts, the courts of the State of New York and the United States District Court for the Southern District of New York. I also am a Partner in the law firm of Baker & Hostetler LLP, counsel for Defendant Orange Business Services U.S. Inc.[1] ("Defendant") in this action.  As such, I am fully familiar with the facts and circumstances set forth herein.

2.      A true and accurate copy of Defendant's Policy Against Unlawful Discrimination and Harassment is annexed hereto as Exhibit A and bears Bates numbers OBS_000241-243.

3.      True and accurate copies of excerpts from the deposition transcript of non-party Adam Kimmick, dated October 5, 2023 is annexed hereto as Exhibit B.

4.      True and accurate copies of excerpts from the deposition transcript of non-party Eddy Youkhanna, dated October 4, 2023 is annexed hereto as Exhibit C.

---

[1] Plaintiff incorrectly sued "Orange Business Services Inc."  At all relevant times, Orange Business Services U.S., Inc. was Plaintiff's employer.

5.      True and accurate copies of excerpts from the deposition transcript of Plaintiff Patricia Haran, dated April 26, 2023 is annexed hereto as <u>Exhibit D</u>.

6.      A true and accurate copy of Plaintiff's Acknowledgement of Defendant's Employee Handbook is annexed hereto as <u>Exhibit E</u> and bears Bates number OBS_000013.

7.      A true and accurate copy of Defendant's Family and Medical Leave Act (FMLA) Policy  as set forth in its Employee Handbook is annexed hereto as <u>Exhibit F</u> and bears Bates numbers OBS_000261-265.

8.      A true and accurate copy of Plaintiff's Acknowledgement of Defendant's Notice of Employee Rights and Responsibilities under the Family and Medical Leave Act (FMLA) is annexed hereto as <u>Exhibit G</u> and bears Bates numbers OBS_000052-54.

9.      A true and accurate copy of Plaintiff's First Half 2020 Performance Evaluation is annexed hereto as <u>Exhibit H</u> and bears Bates numbers OBS_000334-343.

10.     A true and accurate copy of Plaintiff's Second Half 2020 Performance Evaluation is annexed hereto as <u>Exhibit I</u> and bears Bates numbers OBS_000344-353.

11.     A true and accurate copy of Plaintiff's February 24, 2021 Termination Letter is annexed hereto as <u>Exhibit J</u> and bears Bates numbers OBS_000381-383.

12.     A true and accurate copy of Plaintiff's Microsoft Teams chats with former co-worker Peter Singh on February 10, 2021 is annexed hereto as <u>Exhibit K</u> and bears Bates numbers OBS_000926-927.

13.     A true and accurate copy of Plaintiff's Microsoft Teams chats with former co-worker Peter Singh on February 1, 2021 is annexed hereto as <u>Exhibit L</u> and bears Bates numbers OBS_000922-925.

14.    A true and accurate copy of Plaintiff's Microsoft Teams chats with former co-worker Xavier Pichon on February 24, 2021 is annexed hereto as <u>Exhibit M</u> and bears Bates numbers OBS_000930-31.

15.    True and accurate copies of excerpts from Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories is annexed hereto as <u>Exhibit N</u>.

16.    A true and accurate copy of Plaintiff's Microsoft Teams chats with former supervisor Adam Kimmick Singh on October 8, 2020 is annexed hereto as <u>Exhibit O</u> and bears Bates numbers OBS_000575-576.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: February 13, 2024
       New York, New York                      / s /   *Amy J. Traub*
                                                  Amy J. Traub, Esq.

# EXHIBIT A

For all U.S.-Based Employees of
Orange Business Services                                             Employee Handbook

# 1    Employment at the Company

## 1.1    At-Will Employment

All employees of the Company are at-will employees. An employee may resign for any reason or for no reason at all at any time, either with or without advance notice. Likewise, the Company has the right to terminate its employment relationship with an employee for any reason or for no reason at all at any time, either with or without advance notice. No one has authority to enter into any agreement to the contrary or to modify the Company's at-will employment policy except an authorized Company manager or an authorized representative of the Company's Human Resources Department, who may do so only in writing.

## 1.2    Policy Against Unlawful Discrimination and Harassment

The Company is committed to maintaining a work environment that supports human dignity and personal respect and that is free from unlawful discrimination and harassment. The Company encourages employees who feel that they have been subjected to, or have witnessed, any type of harassment or discrimination to report the conduct using the complaint procedure described below. All complaints will be taken seriously and any employee found to have violated this Policy Against Unlawful Discrimination and Harassment will be subject to such disciplinary action as the Company deems appropriate, up to and including immediate termination of employment.

Scope of Policy: This policy not only covers interactions between and among employees and prospective employees of Orange Business Services U.S., Inc., but it also extends to employee interactions with customers, vendors, and visitors. Employees are prohibited from subjecting any customer, vendor, or visitor of the Company to harassment of any nature. Furthermore, no employee will be required to suffer harassment by any customer, vendor, or visitor of the Company. Employees should immediately report any unwelcome sexual overtures or other forms of unlawful harassment advanced by any customer, vendor, or visitor of the Company by using the Complaint Procedure described within this section.

Equal Employment Opportunity and Non-Discrimination: It is the Company's policy to provide equal employment opportunity for all applicants and employees. The Company does not unlawfully discriminate on the basis of race, color, religion, sex (including pregnancy), gender (which includes gender identity and related medical conditions), national origin, ancestry, age, disability, marital status, sexual orientation, veteran status, genetic information, or any other basis protected by applicable federal, state or local laws. Any form of discrimination or harassment related to these factors is expressly prohibited. This policy applies to all terms and conditions of employment, including, but not limited to, hiring, placement, transfer, promotion, termination, layoff, leaves of absence, compensation, and training.

Harassment: The Company does not and will not permit harassment of its employees based on race, color, religion, sex (including pregnancy), gender (which includes gender identity and related medical conditions), national origin, ancestry, age, disability, marital status, sexual orientation, veteran status, genetic information, or any other classification protected by applicable federal, state, or local laws. Harassment will not be tolerated in any form, whether it is committed by managers, employees, or non-employees (i.e., temporary employees, contractors, vendors, clients, etc.). All managers and supervisors are responsible for preventing and eliminating harassment.

Harassment is verbal or physical conduct that denigrates or shows hostility toward an individual or conduct that creates an intimidating, hostile, or offensive working environment for an individual because of his/her race, color, religion, sex (including pregnancy), gender (which

---

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.                    November 5, 2018
Internal Use Only                                                             7 of 57

For all U.S.-Based Employees of
Orange Business Services                                           Employee Handbook

includes gender identity and related medical conditions), national origin, ancestry, age, disability, marital status, sexual orientation, veteran status, genetic information or any other classification protected by applicable federal, state or local laws. Harassment may include, but is not necessarily limited to, epithets, slurs, jokes, or other verbal or physical conduct relating to one or more of the legally protected classifications listed above.

Sexual harassment consists of unwelcome physical contact, sexual advances, requests for sexual favors and other inappropriate communications or verbal or physical conduct of a sexual nature when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; or

- Submission to or rejection of such conduct by an individual is used as the basis for an employment decision affecting such individual; or

- Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

The following are examples of sexually harassing conduct that the Company absolutely prohibits:

a. Unwanted or unwelcome physical contact or conduct of any kind, including, patting, pinching, brushing up against, hugging, cornering, kissing, fondling, or any other similar physical contact;

b. Verbal abuse of a sexual nature, including sexual flirtations, advances, propositions, sexual innuendoes, or sexually suggestive, insulting or graphic comments, noises, or sounds;

c. Sexually explicit, suggestive or offensive jokes, comments or language;

d. Demeaning, insulting, intimidating, or sexually suggestive comments about an individual's dress, body, appearance, or personal life;

e. The display or distribution in the workplace of demeaning, insulting, intimidating, or sexually suggestive objects or images, including nude photographs, drawings, or magazine pictures; and

f. Demeaning, insulting, intimidating, or sexually suggestive written, recorded, or electronically transmitted messages.

The above list is only illustrative of types of conduct that would violate this policy and, as such, does not represent an exhaustive list of conduct or types of conduct that could lead to disciplinary action, up to and including termination of employment. Offensive and inappropriate behavior need not rise to the level of sexual harassment within the meaning of applicable state and federal law to be deemed a violation of this policy. Please note that conduct that has the effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment may be "sexual harassment" whether or not the person engaging in the conduct intends to create that effect.

Complaint Procedure: Any employee who believes that he or she has been subjected to discrimination or harassing conduct in violation of this policy should report such conduct immediately to his or her supervisor or to their designated HR Consultant. Similarly, an employee who witnesses conduct that violates this policy should report it immediately to his or her manager or to the designated HR Consultant. If for any reason an employee is uncomfortable approaching his or her manager (for example, if the manager is the person the employee believes to be engaging in the offensive conduct), or if the employee feels that the matter is not being addressed adequately, he or she should promptly bring it to the attention of

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.                        November 5, 2018
Internal Use Only                                                      8 of 57

For all U.S.-Based Employees of
Orange Business Services                                    Employee Handbook

the next level of management or their designated HR Consultant. Managers who receive complaints of harassment or discrimination from an employee must forward them immediately to their designated HR Consultant.

<u>Retaliation Prohibited</u>: Retaliation or reprisal against an employee who reports an alleged violation of this policy or who provides information in any investigation related thereto is strictly prohibited and shall constitute a violation of this policy.

<u>Investigation and Confidentiality</u>: The Company will promptly investigate any complaints of violations of this policy. Employees are required to cooperate fully in any investigation. Although the Company cannot guarantee complete confidentiality in conducting investigations of complaints of harassment and discrimination, it will maintain information obtained in connection with the investigation in as confidential a manner as possible under the circumstances.

<u>Discipline and Other Consequences</u>: If the Company's investigation confirms that harassment, discrimination or other conduct in violation of this policy has occurred, the Company will take prompt and effective action to ensure that the offending conduct or act(s) do not continue. Anyone found to have engaged in conduct prohibited by this policy will be subject to discipline, up to and including termination of employment. Moreover, in addition to facing disciplinary measures, individuals who engage in acts of unlawful harassment or discrimination may be subject to civil and criminal penalties. The Company does not consider conduct in violation of this policy to be within the course and scope of employment or the direct consequence of the discharge of one's duties. Accordingly, to the extent permitted by law, the Company reserves the right not to provide a defense or pay damages assessed against employees for conduct in violation of this policy.

## 1.3    Accommodating Employees With Disabilities

The Company is committed to providing equal employment opportunities to qualified individuals with disabilities, and the Company will make reasonable accommodations for the known physical or mental disabilities of an otherwise qualified individual unless doing so would result in an undue hardship to the Company.

Any applicant or employee who requires a reasonable accommodation in order to perform the essential functions of the job should contact a manager or their designated HR Consultant to request such an accommodation.

## 1.4    Employment Classifications

It is the intent of the Company to clearly define employment classifications so that employees understand their employment status and benefits eligibility. These classifications do not guarantee employment for any specified period of time. An employee's classification cannot be modified except upon written notification by a Human Resources representative.

At the time of hire and as duties and responsibilities may change from time to time, employees will be designated as either non-exempt or exempt for purposes of federal and state wage and hour laws.

- <u>Non-exempt employees</u> are entitled to overtime pay under applicable provisions of federal and state laws.

- <u>Exempt employees</u> are not entitled to overtime pay under applicable provisions of federal and state wage and hour laws.

In addition to the above categories, each employee is assigned to one of the following employment categories:

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

Confidential                                                                          OBS_00243

# EXHIBIT B

Adam Overton Kimmick
October 05, 2023

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

PATRICIA HARAN,

                    Plaintiff,


          -against-


ORANGE BUSINESS SERVICES INC.,

                    Defendant.

-----------------------------------------X




                    October 5th, 2023
                    10:03 a.m.



          REMOTE DEPOSITION of ORANGE

BUSINESS SERVICES, INC., by ADAM OVERTON

KIMMICK, the Defendant in the

above-entitled action, taken on behalf of

the Plaintiff, held remotely via video

teleconference, taken before Stefanie

Calabria, a Reporter and Notary Public

within and for the State of New York.

Adam Overton Kimmick
October 05, 2023

```
 1    A P P E A R A N C E S :

 2

 3    FISHER TAUBENFELD, LLP
           Attorney for Plaintiff
 4         225 Broadway - Suite 1700
           New York, New York 10007
 5         (646) 741-3490
      BY: LIANE FISHER, ESQ.
 6    E-MAIL: liane@fishertaubenfeld.com

 7

 8    BAKER HOSTETLER
           Attorney for Defendant
           45 Rockefeller Plaza
 9         New York, New York 10111
           (212) 589-4200
10    BY: JUSTIN GUIFOYLE, ESQ.
      E-MAIL: jguilfoyle@bakerlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Adam Overton Kimmick
October 05, 2023

```
1                   A. KIMMICK

2    managing clients and the future of the

3    business and revenue.

4        Q.    Did you hire Patty?

5        A.    Yes.

6        Q.    Did you set her rate of pay?

7        A.    Yes.

8        Q.    Did you assign her job duties?

9        A.    Yes.

10       Q.    Did you supervise her work?

11       A.    Yes.

12       Q.    Did she report to anyone else

13   other than you?

14       A.    Not that I recall.  And the

15   reason I say that is because I changed

16   jobs frequently and there were periods of

17   time where I had managers and managers and

18   so I don't believe so, but I wouldn't

19   testify under oath that that's the case.

20            MS. FISHER:  Just bear would me,

21       I'm going to put a document in the

22       chat.  Give me one second.  It's not

23       loading.  Give me one second.

24       Q.    Do you see a document posted to

25   the chat window?
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2        A.    Yes.

 3        Q.    Did he meet his quota during

 4   that time period?

 5        A.    I don't recall.

 6        Q.    Other than Ms. Haran, have you

 7   terminated anyone else from your team from

 8   2017 to present?

 9        A.    Yes.

10        Q.    Who?

11        A.    I don't recall all of them.

12   Certainly the people that were integration

13   service specialists.  Jennifer Rossdale

14   was terminated for cause, I believe.

15   Boyne Kim was terminated for cause, I

16   believe.  There were others.

17        Q.    Do you recall the names of

18   anyone else?

19        A.    Not at this time.

20        Q.    Why was Jennifer Rossdale

21   terminated?

22        A.    Under performance, and she had

23   issues with her client relationships and

24   some relationships with her piers, her

25   work was inconsistent.
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2    terminate Jennifer Rossdale, did you

 3    memorialize the basis for your decision in

 4    any document?

 5         A.    I don't recall.

 6         Q.    When terminating Boyne Kim, did

 7    you memorialize the basis for your

 8    decision in any document?

 9         A.    I don't recall.

10         Q.    Have you participated in any

11    training on discrimination in the

12    workplace at Orange?

13         A.    Yes.

14         Q.    How many times have you

15    participated in such training?

16         A.    Once a year.  I don't recall

17    when it started.

18         Q.    When was the most recent

19    training you had?

20         A.    October 7th of --

21         Q.    Of 2022?

22         A.    No, I did it yesterday or the

23    day before.

24         Q.    So October 3rd or 4th?

25         A.    What's the date today?  It's the
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2    5th today?  So it would be -- it would be

3    Tuesday or -- Tuesday or Wednesday this

4    week.

5         Q.    What did that training include?

6         A.    A program on discriminatory

7    behavior and sexual harassment in New York

8    and New York City.

9         Q.    How long is the training?

10        A.    About two hours.

11        Q.    Is it virtual or in person?

12        A.    Virtual.

13        Q.    Did you participate in a similar

14   training in 2020?

15        A.    I don't recall exactly, but most

16   likely, yes.

17        Q.    What is your understanding of

18   discrimination in the workplace?

19             MR. GUIFOYLE:  Objection.

20        A.    It is not tolerated by Orange.

21        Q.    I'm sorry?

22        A.    It is not tolerated by Orange or

23   me.

24        Q.    What is discrimination,

25   according to your understanding?
```

Adam Overton Kimmick
October 05, 2023

```
 1                A. KIMMICK

 2    of the Family Medical Leave Act.

 3        A.    My understanding is people

 4    should have the time and the ability to

 5    take time off from work if they' required

 6    in order to support a family member,

 7    that's my general understanding.

 8        Q.    Anything else?

 9        A.    Only how I would act.

10        Q.    What do you mean by that?

11        A.    Like I said, if anybody came to

12    me and asked for it, I would immediately

13    assume it was valid without question and

14    refer them to HR.

15        Q.    Did Patty ask you to take time

16    off work under the FMLA, under the Family

17    Medical Leave Act?

18        A.    No, not to my knowledge.

19        Q.    Did she ever take any time off

20    work to care for a family member?

21        A.    I believe so, yes.  She asked

22    for paid leave, paid time off.

23        Q.    Which family member did she take

24    time off of work to care for?

25        A.    I believe it was her daughter.
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2        Q.    Do you know the circumstances of

 3   her daughter -- of her daughter's

 4   sickness?

 5        A.    It was quite some time ago, but

 6   I believe it was an infection of some

 7   kind.  I don't know all of details, I

 8   don't recall, but -- but I believe it was

 9   an infection of some kind.

10        Q.    Did Patty come to you and ask

11   you if she could take time off work to

12   care for her daughter?

13        A.    As I said, yes.  I believe she

14   did, yes.

15        Q.    What did you do?

16        A.    I gave her time off.  I told her

17   to take whatever time she needed.

18        Q.    Did you refer her to HR?

19        A.    I didn't know that the -- the --

20   the scale or what -- or how much time she

21   needed, I just assumed that she would

22   manage that if she needed to take more

23   time off, she would come to me, and I

24   would grant paid time off up to the limit,

25   and if she -- if she decided that she
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2     territory, and we sat on an annual basis

3     goals and objectives that she needed to

4     achieve, some of those were discussed in a

5     semiannual review and more detail might

6     have been provided at the time.

7                  MS. FISHER:  This document is

8          being marked as Kimmick 3 and it's

9          bates stamped OBS_00406 to 00407.

10                 (Whereupon, a job description

11         bates stamped OBS_00406 to 00407 was

12         marked as Kimmick Exhibit 3 for

13         identification as of this date by the

14         Reporter.)

15         Q.    What was Ms. Haran's title at

16    the time she was hired?

17         A.    I don't recall.  I believe it

18    was senior account manager farmer, but I

19    would need to validate that with HR.

20         Q.    Did you ever promote her?

21         A.    Not to my knowledge.

22         Q.    Did you ever recommend that she

23    be given additional job responsibilities?

24         A.    No.

25         Q.    Did you ever recommend that she
```

Adam Overton Kimmick
October 05, 2023

```
 1                A. KIMMICK

 2   have responsibilities taken away?

 3        A.    She asked for more

 4   responsibilities in a different role or a

 5   different type of a role and at her

 6   request I tried to make that happen.  It

 7   wasn't a more senior role, it -- just a

 8   different set of accounts with a different

 9   set of responsibilities, I did this at her

10   request, but it was not a more senior

11   role, it did not have any less or more

12   responsibility, and it was not a

13   promotion.

14        Q.    How did the accounts differ?

15        A.    She was hired to manage what we

16   call B-end accounts, these are accounts

17   that are headquartered outside of the

18   United States and her initial territory it

19   was typically French-based multinationals

20   who made some of their decisions in the

21   United States, those accounts were managed

22   by an account director for the most part

23   or an account manager that was outside the

24   United States who had overall

25   responsibility for the global account, her
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2    responsibilities were to deliver and drive

 3    new business and maintain revenue streams

 4    and the relationship within the United

 5    States for those accounts, she requested

 6    to be on accounts that allowed her to be

 7    more in control of the overall

 8    relationship of those accounts, she wanted

 9    to be an A-end account manager on accounts

10    that she managed globally herself and so I

11    attempted to make that change for her.

12        Q.    What A-end accounts were

13    assigned to her?

14        A.    I don't recall all of them.

15        Q.    And when did you make the

16    change?

17        A.    I don't recall the exact date.

18        Q.    Do you remember the year?

19        A.    I believe that it was -- it was

20    -- it was the year that she departed.  I

21    am not -- again, I mean, I'm not -- I'm

22    not entirely sure of the dates and the

23    reason I'm not sure of the dates is

24    because Covid played a major part in that

25    transition.  She was managing a territory,
```

Adam Overton Kimmick
October 05, 2023

```
 1                     A. KIMMICK

 2   the blurb on Page 2?

 3       A.    I believe I did.

 4       Q.    So as of the first half of 2019,

 5   Patty Haran was fully successful in her

 6   job duties?

 7       A.    In her current territory at that

 8   time she was showing appropriate results

 9   for those accounts.  These accounts were

10   -- were traditionally B-end accounts that

11   were being managed by a person outside of

12   the United States and Patty was the U.S.

13   representative.

14       Q.    Do you see where it says  "fully

15   successful"?

16       A.    Yes.

17       Q.    Did you write that?

18       A.    Yes.

19       Q.    Okay.  So she was fully

20   successful in managing her accounts at

21   that time, correct?

22       A.    Correct.

23             MS. FISHER:  I'm going to put

24       another document in the chat.

25       Q.    Just let me know when you have
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK
 2    had a chance to review this other
 3    document.
 4        A.    Okay.
 5        Q.    Okay.  Do you recognize this
 6    document?
 7        A.    Yes.
 8        Q.    What do you recognize it to be?
 9        A.    This appears to be Patty's
10    second half 2020 performance review.
11        Q.    Did you write this?
12        A.    Yes.
13        Q.    Okay.  And did this memorialize
14    all of the issues in her performance at
15    the time?
16        A.    That's a very broad statement.
17    Can you clarify?
18        Q.    Were there any other performance
19    issues that Patty exhibited that are not
20    memorialized in this blurb?
21        A.    Yes.
22        Q.    What were the other performance
23    issues?
24        A.    There were some other behaviors
25    that I talked to her about about client
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2        Q.    Did you address the issues with

3   Patty?

4        A.    I did.

5        Q.    When?

6        A.    I had -- during the review

7   process and part of our weekly and monthly

8   cadences; in fact, I typically have

9   30-minute sessions with my account

10  managers, I had ended up scheduling an

11  hour or even an hour-and-a-half with Patty

12  to make sure that she understood the

13  requirements and what was going on with

14  her piers and the customers.

15       Q.    What did you tell her

16  specifically about these issues?

17       A.    I tried to give guidance about

18  what I thought needed to happen.

19       Q.    Well, what was the issue that

20  the customer complained about?

21       A.    Clarity of communication,

22  responsiveness, the ability to deliver

23  timely responses to their complaints,

24  again, all of this was hearsay.

25       Q.    What do you mean by  "hearsay"?
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2       A.    This was a dialogue that was

 3   between the customer and myself and that

 4   needed to be shared with Patty, and I was

 5   under the impression that she could

 6   hopefully correct some of those issues,

 7   and she didn't.

 8       Q.    How didn't she -- why do you say

 9   she did not correct the issue?

10       A.    The customer did not sign on for

11   more business, and they were -- and they

12   were, as I said in this review, hasn't

13   resulted in increased proposed services,

14   the pipeline isn't currently sufficient to

15   meet her budgets, customers were unwilling

16   to talk about new opportunities with her

17   because she was unable to address the

18   things that were their issues.

19       Q.    Which customer are you talking

20   about?

21       A.    I don't recall.

22       Q.    We can leave a blank in the

23   record so that you can fill that in later.

24   (INSERT):_____.

25       Q.    Did you speak with Patty again
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2       Q.    What were the issues with her

 3   piers that you discussed with her?

 4       A.    Again, this was hearsay.  I

 5   don't have anything in writing.  These

 6   were individuals who came to me to express

 7   dissatisfactions about how Patty was

 8   asking for their help and the way in which

 9   she pressured them to be part of the team.

10       Q.    Who were the individuals who

11   expressed this to you?

12       A.    I don't recall.

13       Q.    Okay.  We can leave a blank in

14   the record for the names of those

15   individuals as well.

16   (INSERT):_____.

17       Q.    So how was it -- what was it

18   that they told you about how Patty was

19   asking for her help that was problematic?

20       A.    I don't recall all of the

21   detail.

22       Q.    Do you remember any of the

23   details?

24       A.    These were conversations that I

25   had with them either in person or on the
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2    phone and it was about the way that she

3    was communicating with them that made it

4    an uncomfortable work environment.

5         Q.    What about the way she was

6    communicating with them made it

7    uncomfortable?

8         A.    I can't speak for them.

9         Q.    Well, what did they tell you?

10        A.    They were uncomfortable and that

11   I needed to speak to Patty about her

12   behavior.

13        Q.    Well, what did they tell you

14   made them uncomfortable?

15        A.    I can't recall the detail.

16        Q.    You don't have anything in

17   writing about this issue?

18        A.    No.

19        Q.    And you don't have anything in

20   writing about the issues that the customer

21   had brought to you about Patty's

22   performance, correct?

23        A.    No.

24        Q.    Is it typically your practice to

25   memorialize in writing performance issues?
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2    piers, did you deem those to be factual,

3    yes or no?

4         A.    It didn't matter.

5         Q.    What do you mean?

6         A.    When somebody comes to me with

7    an issue that says that somebody on the

8    team is uncomfortable and it's reported to

9    me, as her manager, leading by example, I

10   want to make sure that everybody on the

11   team has a mission that understands the

12   direction and the goals associated with

13   what needs to happen on the team and if

14   that is being distracted in any way by the

15   way that somebody is asking for work to be

16   done or how these things are being

17   approached then I want to make sure that

18   everyone on the team has a common

19   direction and is a productive employee,

20   and I would love to have everybody on the

21   team be happy and productive.

22        Q.    Okay.  Were issues from her

23   piers reported to you on more than one

24   occasion?

25        A.    Yes.
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK
 2        Q.    Were they reported to you by
 3   more than one person?
 4        A.    Yes.
 5        Q.    And yet you didn't see it fit to
 6   document any of that?
 7        A.    It was not a hostile work
 8   environment, these were behaviors.
 9        Q.    All right.  So something would
10   have to be a hostile work environment for
11   you to document it, yes or no?
12        A.    Yes.
13        Q.    Okay.
14        A.    Well, I did document this in her
15   review.
16        Q.    That she was having problems
17   with her piers?
18        A.    I believe in one of her reviews
19   I made a comment with customers and piers,
20   yes, I did.  I would imagine that it came
21   up, it had to have.  If it didn't come up
22   in writing it would certainly come up as a
23   verbal discussion.
24        Q.    But you didn't document it in
25   this -- in this document that's here --
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2     to June 30th, 2020.

 3             (Whereupon, a performance review

 4     bates stamped OBS_00334 and 00343 was

 5     marked as Kimmick Exhibit 6 for

 6     identification as of this date by the

 7     Reporter.)

 8     Q.    Could you review this and let me

 9  know when you are done, please?

10     A.    Okay.

11     Q.    What was -- is this Patty's

12  performance review for the time period of

13  January 1st, 2020 to June 30th, 2020?

14     A.    Yes.

15     Q.    Did you write this performance

16  review for her?

17     A.    Yes.

18     Q.    Did you discuss this performance

19  review with her?

20     A.    Yes, I did.

21     Q.    Okay.  And what was her overall

22  rating for this performance review?

23     A.    Fully successful.

24             MS. FISHER:  And this document

25     is bates stamped OBS_335 through 343.
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2   between what I said in the redacted

 3   document and this one.

 4        Q.    Let me just ask you:  Is this

 5   the performance review for the time period

 6   of July 1st, 2020 to December 31st, 2020?

 7        A.    It appears so, yes; however, the

 8   manager's comments look to be the same as

 9   the ones on the redacted document.

10        Q.    Are you done reviewing this?

11        A.    Yes.

12        Q.    Okay.  What is the overall

13   rating that Patty received on this

14   performance review?

15        A.    Improvement needed.

16        Q.    All right.  And did you

17   determine that improvement was needed?

18        A.    Yes.

19        Q.    Is this a performance review

20   that you filled out for Patty?

21        A.    Yes.

22        Q.    Did you discuss it with her?

23        A.    Yes.

24        Q.    When did you discuss it with

25   her?
```

Adam Overton Kimmick
October 05, 2023

```
 1                 A. KIMMICK

 2   this document.  I couldn't personally

 3   testify to that, no, but this is what it

 4   says in the document.  I'm assuming that

 5   that is the date.

 6        Q.    Did you memorialize the reasons

 7   form Ms. Haran's termination in any

 8   document?

 9        A.    Not that I recall.

10        Q.    What were the reasons for her

11   termination?

12        A.    That's a very broad question.

13   Can you be more specific?

14        Q.    Why did you decide to terminate

15   Ms. Haran?

16        A.    Nonperformance.

17        Q.    What specifically?

18        A.    As documented in her review, she

19   was unable to produce enough business for

20   the -- enough new pipeline for the

21   business to be healthy in the future, the

22   opportunities were not moving through the

23   -- the pipeline in a sufficient velocity,

24   and she had issues with her piers and

25   customers.
```

Adam Overton Kimmick
October 05, 2023

```
 1               A. KIMMICK

 2        Q.    The issues with her piers and

 3  customers are the issues that you don't

 4  recall that you testified to earlier?

 5        A.    That is correct, and I believe

 6  in one of the documents that you had sent,

 7  I believe this is the performance review

 8  from -- sorry, I have to go back to look

 9  at the actual performance review again.

10  One of the reviews I said she had issues

11  with her piers and that that was feedback

12  from her customers.  I am looking for it

13  in the documents.

14        Q.    Well, I can make it easy, so the

15  --

16        A.    So I said,  "She has not yet

17  built an agreed consensus on strategy with

18  her team in response to these difficult

19  situations, and this has lead to some

20  miscommunication.  There was also a

21  miscommunication with a client"  --

22        Q.    Are those the issues --

23        A.    --  "These episodes results some

24  concern that Patty may not be fully

25  understanding feedback, or has not had the
```

Adam Overton Kimmick
October 05, 2023

```
 1                  A. KIMMICK

 2   time to  'read between the lines'

 3   regarding indirect or nonverbal cues which

 4   are critical for a sales leader."

 5        Q.    So are these the issues that are

 6   referring to when you made the decision to

 7   terminate her?

 8        A.    This is one of the many.

 9        Q.    Okay.  Are there any other pier

10   and customer issues that you considered

11   when making the decision to terminate her

12   that are not reflected on that performance

13   review?

14        A.    This performance review is a

15   generalization of performance overall and

16   there was -- those situations were

17   addressed as they came up; and, no, there

18   is no documentation.

19        Q.    Did you give Patty a quota for

20   2021?

21        A.    Yes.

22        Q.    When did you give her a quota

23   for 2021?

24        A.    So I believe for 2021 she had --

25   she had at least two territories so she
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2   B-end account manager because she had less

 3   responsibility, and she was -- it was a

 4   slightly different kind of a territory

 5   from a communication requirements

 6   perspective that her performance clearly

 7   was more ineffective as an A-end account

 8   manager.

 9        Q.    So let's take her B-end

10   performance, how was her performance on

11   her B-end accounts as of February of 2021?

12        A.    I believe in February of 2021

13   she had responsibilities for both.

14        Q.    How was her performance on her

15   B-end accounts as of February of 2021?

16        A.    I can't recall.

17        Q.    Were there any deals she failed

18   to close on her B-end accounts?

19        A.    I can't recall.

20        Q.    Were there any deals on her

21   A-end accounts that she failed to close?

22        A.    I can't recall that detail.

23        Q.    When you testified earlier that

24   based on her pipeline she would not have

25   made the budget, what do you mean by that?
```

Adam Overton Kimmick
October 05, 2023

```
 1                 A. KIMMICK

 2        A.    She identified pipeline, and she

 3   had identified opportunities with some

 4   customers, but those opportunities were

 5   not maturing, they weren't moving through

 6   the pipeline, they weren't being proposed

 7   or negotiating, they weren't moving

 8   towards closure and, therefore, there was

 9   a low expectation that she would make her

10   target and, therefore, make the needs of

11   the business and, yeah, I mean, these --

12   the projects she was working on were long

13   shots, and she wasn't doing what was

14   necessary to move them forward.

15        Q.    Did she have a chance to do that

16   before she was terminated?

17        A.    That's the job.

18        Q.    Well, when she --

19        A.    That's what an account manager

20   is hired to do.

21        Q.    When she presented her plan to

22   you to increase her pipeline from that

23   time until the time she was terminated,

24   did she have an opportunity to pursue the

25   opportunities she outlined?
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2   was beyond a normal injury, right, but

 3   there was no way for me to know what those

 4   procedures might be or how severe it was.

 5       Q.    Were you -- did Patty tell you

 6   she needed to take time off work on an

 7   ongoing basis for her daughter?

 8       A.    She said she needed to take some

 9   time off, and I told her take whatever

10   time she needed.

11       Q.    Okay.  In 2021, during the

12   months of January and February while she

13   was still employed, did she inform you

14   that she needed to take any more time off

15   work for her daughter?

16       A.    I can't recall the dates.  I

17   don't believe that she sent me anything in

18   writing.

19       Q.    Did you ask her to send you

20   anything in writing?

21       A.    No.  I told her to take whatever

22   time she needed.  She was -- she was

23   having difficulty with her daughter, and I

24   wanted her to be doing what she needed to

25   do for her family.
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2              MS. FISHER:   Okay.  I just put

 3         another document in the chat.  This

 4         will be Kimmick 16 and bates stamped

 5         OBS_0575 to 576.

 6              (Whereupon, a chat bates stamped

 7         OBS_00575 to 00576 was marked as

 8         Kimmick Exhibit 16 for identification

 9         as of this date by the Reporter.)

10         Q.    Just let me know when you have

11    had a chance to review this.

12         A.    Okay.  So this looks like I -- I

13    more than likely called Eddi to tell her

14    what's happening based on the training

15    class.

16         Q.    Okay.  Hold on.  Let me just ask

17    some specific questions.  You recognize

18    this?

19         A.    No, but it -- it appears to be a

20    text conversation between me and Patty.

21         Q.    Okay.  And the date of the

22    conversation is October 8th, 2020 as

23    reflected on this document; is that

24    correct?

25         A.    Yes.
```

Adam Overton Kimmick
October 05, 2023

```
 1                A. KIMMICK

 2       Q.    And in this conversation you

 3   state at 3:06 p.m., "I'll let Eddy know"

 4   in response to Patty telling you that she

 5   needs to take time off work for her

 6   daughter's surgery, correct?

 7       A.    She says her daughter's

 8   situation, she doesn't say surgery, and

 9   she asked me whether she -- she should let

10   Eddi know about whether somebody else

11   should fill the spot, and I told her at

12   time that I haven't told Eddi or anyone

13   about her daughter yet, and I told her

14   obviously, here, I said, that if you can't

15   join, I will let him know, and he would

16   understand, I'm sure he did, and I told

17   her to take the time.

18       Q.    Right.  Do you see the --

19       A.    And I --

20       Q.    Sorry.  Go ahead.

21       A.    Okay.

22       Q.    Do you see at 3:06 where she

23   wrote, "me either.  he just needed to

24   fill some training spots so he asked and

25   at that time I thought I could participate
```

Adam Overton Kimmick
October 05, 2023

```
1              A. KIMMICK
2    but today we found out she will need
3    surgery and it will likely be on wed,"  do
4    you see that?
5         A.    I do.
6         Q.    Okay.  So she did inform you
7    that her daughter would need surgery?
8         A.    It appears so, yes.
9         Q.    And then in response you wrote,
10   "just take the time Patty I'll let Eddy
11   know;"  and then after that you wrote,
12   "just called Eddy,"  do you see that?
13        A.    Yes.
14        Q.    So, in fact, you spoke to Eddi
15   about Patty taking time off work for her
16   daughter's illness?
17        A.    This seems all in line.  I don't
18   -- I mean, I didn't recall it at the time,
19   but this sounds like something I would do,
20   absolutely.
21        Q.    When -- actually, who
22   participated in the decision to terminate
23   Ms. Haran?
24        A.    It was me, and I conferred with
25   Eddi and Jen Lawson and it had to be
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2      form.   The recommendation or the

 3      decision?  You asked for both in that

 4      question.

 5              MS. FISHER:  Okay.  Well, let me

 6      break it down.

 7      Q.     So when did you make the

 8  recommendation that she be terminated?

 9      A.     I don't recall the date.

10      Q.     When was the decision made to

11  terminate her?

12      A.     I don't recall the actual date.

13      Q.     Did you have a meeting jointly

14  with Eddi and Jen Lawson about Ms. Haran's

15  termination?

16      A.     I don't recall if we were all on

17  the same call at once.

18      Q.     What did you tell Eddi were the

19  reasons why you recommended Ms. Haran's

20  termination?

21      A.     She was a -- a person who is not

22  creating enough volume for the future

23  business, that she had issues with her

24  team and with her clients, and that she

25  was continually on the bottom of the list
```

Adam Overton Kimmick
October 05, 2023

```
 1              A. KIMMICK

 2   for people who are having difficulty and

 3   having performance issues, not just

 4   meeting the target, but also making sure

 5   that the business is healthy and were

 6   maintaining good relationships and leading

 7   a global team.

 8       Q.    What list are you referring to?

 9       A.    All of the people on my team.

10       Q.    Is there an actual list that you

11   have that she was on the bottom of?

12       A.    No.

13       Q.    And when you say she was on the

14   bottom of the list, is that in terms of

15   her quota, meeting her quota?

16       A.    No, not that alone.

17       Q.    What else are you talking about?

18       A.    I believe I already answered

19   that question.

20       Q.    Well, let me ask it again.

21            MR. GUIFOYLE:  I will object to

22       the extent it has been asked and

23       answered.

24       Q.    What -- how else was she on the

25   bottom of the list?
```

Adam Overton Kimmick
October 05, 2023

```
1                    A. KIMMICK

2        A.    Her interactions with her piers

3   and her customers, the issues that she had

4   had with her piers and her customers, and

5   the impact that her work was having on the

6   act to deliver the results that the

7   business expected in the future.

8        Q.    What impact was her work having

9   on the ability to deliver the results that

10  the business expected in the future?

11       A.    Insufficient.

12       Q.    Was there anything else that put

13  her on the bottom of the list?

14       A.    No.

15       Q.    In 2019 when she was fully

16  successful, was she at the bottom of the

17  list?

18       A.    If not at the bottom, it was

19  close, and I would say that this is a --

20  this is a discussion between me and my

21  manager that was referring to personnel

22  issues, not a formal process.

23       Q.    What do you mean?

24       A.    He asked on a regular basis are

25  these the right people to achieve our
```

Adam Overton Kimmick
October 05, 2023

```
1              A. KIMMICK

2   results, do you have the right people to

3   achieve the results and, of course, it

4   takes time and effort to replace

5   individuals and that can be very difficult

6   to choose to let somebody go; but in this

7   case, she continually appeared at the

8   bottom and Eddi and I came to the

9   conclusion that we should probably try to

10  manage her out of the business.  This

11  discussion happened, as I said, it

12  probably began earlier than the Summer of

13  2020, and I don't know when the decision

14  was made in fact.

15      Q.    Did anyone replace Patty?

16      A.    Her territory was split up into

17  pieces and so nobody took exactly the same

18  territory that she had, no.

19      Q.    Had any other employees who have

20  reported to you at Orange complained about

21  discrimination?

22      A.    No, not to my knowledge.

23      Q.    Have any employees who report to

24  you complain about violations with the

25  Family Medical Leave Act?
```

Adam Overton Kimmick
October 05, 2023

```
 1                    A. KIMMICK

 2     A.    No, not to my knowledge.

 3           MS. FISHER:  All right.  Let's

 4     take a quick break.  I'm going to

 5     review my outline.  I might be done.

 6     If not, we're close.  Let's come back

 7     in, I think, five minutes should be

 8     fine so 2:20.

 9           MR. GUIFOYLE:  Okay.

10           (Whereupon, a short recess was

11     taken.)

12           MS. FISHER:  I have put another

13     document in the chat.  I think this is

14     Kimmick 17 and it's marked OBS_00982

15     to 938.

16           (Whereupon, handwritten notes

17     bates stamped OBS_00982 to 00938 were

18     marked as Kimmick Exhibit 17 for

19     identification as of this date by the

20     Reporter.)

21     Q.    Would you take a look at this

22     document and let me know when you are

23     done?

24     A.    Okay.

25     Q.    Do you recognize this?
```

**CHANGES AND SIGNATURE PAGE**

WITNESS NAME:          ADAM OVERTON KIMMICK
DATE OF DEPOSITION:    October 5, 2023

| PAGE / LINE | CHANGE | REASON FOR CHANGE |
|---|---|---|
| 9:12 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 9:13 | Change "E-d-d-i-Y-o-u-k-h-a-n-n-a" to "E-d-d-y-Y-o-u-k-h-a-n-n-a" | Transcription Error / Word |
| 9:25 | Change "Eddi" to Eddy" | Transcription Error / Word |
| 10:16 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 16:3 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 18:8, 9, 18, 22 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 19:8 | Change "piers" to "peers" | Transcription Error / Word |
| 19:9, 10 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 23:24 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 42:13 | Change "Tabool" to "Teboul" | Transcription Error / Word |
| 50:8, 13, 17 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 50:18 | Change "she" to "we" | Transcription Error / Word |
| 54:24 | Change "piers" to "peers" | Transcription Error / Word |
| 69:2 | Change "sat" to "set" | Transcription Error / Word |
| 76:3 | Change "piers" to "peers" | Transcription Error / Word |
| 77:14 | Change "piers" to "peers" | Transcription Error / Word |
| 85:19 | Change "piers" to "peers" | Transcription Error / Word |
| 98:24 | Change "piers" to "peers" | Transcription Error / Word |

| 99:11 | Change "piers" to "peers" | Transcription Error / Word |
|---|---|---|
| 114:9 | Change "reviewed" to "renewed" | Transcription Error / Word |
| 114:16 | Change "seven" to "several" | Transcription Error / Word |
| 116:2 | Delete "is" before "of" | Transcription Error / Word |
| 120:9 | Change "possibly" to "possibility" | Transcription Error / Word |
| 121:25 | Change "I" to "I've" | Transcription Error / Word |
| 123:15 | Delete "or" before "a" | Transcription Error / Word |
| 134:10 | Change "piers" to "peers" | Transcription Error / Word |
| 135:9 | Change "to" to "for" | Transcription Error / Word |
| 136:18 | Delete "send" before "sent" | Transcription Error / Word |
| 139:17, 20 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 140:2 | Change "have" to "had" | Transcription Error / Word |
| 143:13 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 144: 3, 10, 12 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 145: 14, 25 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 146: 16, 19 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 150: 14, 18 | Change "Eddi" to "Eddy" | Transcription Error / Word |
| 152:2, 4 | Change "piers" to "peers" | Transcription Error / Word |
| 153:8 | Change "Eddi" to "Eddy" | Transcription Error / Word |

Adam Overton Kimmick

```
 1              A. KIMMICK

 2        Q.    Mr. Kimmick, thank you for your

 3   time here today.

 4        A.    Okay.

 5              THE REPORTER:  Counsel, are you

 6   ordering a copy of the transcript?

 7              MR. GUIFOYLE:  I'll take an

 8   electronic copy.

 9              (Whereupon, at 2:22 p.m., the

10   examination of this witness was

11   concluded.)

12

13              _____
                 ADAM OVERTON KIMMICK

14

15

16   Subscribed and sworn to before me

17   this 13 day of November 2023.

18

19   _____
              NOTARY PUBLIC

20

21            JESSICA P McNULTY
        NOTARY PUBLIC, STATE OF NEW YORK
22        Registration No. 01MC6392623
            Qualified in Suffolk County
         My Commission Expires   11/3/27

23

24

25
```

Adam Overton Kimmick
October 05, 2023

```
1                  C E R T I F I C A T E

2

3    STATE OF NEW YORK        )
                              ss.:
4    COUNTY OF NEW YORK       )

5

6

7            I, STEFANIE CALABRIA, a Notary

8    Public for and within the State of New

9    York, do hereby certify:

10           That the witness whose

11   examination is hereinbefore set forth was

12   duly sworn and that such examination is a

13   true record of the testimony given by that

14   witness.

15           I further certify that I am not

16   related to any of the parties to this

17   action by blood or by marriage and that I

18   am in no way interested in the outcome of

19   this matter.

20           IN WITNESS WHEREOF, I have

21   hereunto set my hand this 5th day of

22   October, 2023.

23

24                   _____
                         STEFANIE CALABRIA
25
```

Adam Overton Kimmick
October 05, 2023

---

## Exhibits

EX PLF-
0001 Adam Kim
mick 010523
 35:25 36:2,
14 157:9

EX PLF-
0002 Adam Kim
mick 010523 (
1)
 66:19 157:12

EX PLF-
0003 Adam Kim
mick 010523
 69:12 157:14

EX PLF-
0004 Adam Kim
mick 010523
 73:22 157:16

EX PLF-
0005 Adam Kim
mick 010523
 86:17 157:18

EX PLF-
0006 Adam Kim
mick 010523
 88:5 157:20

EX PLF-
0007 Adam Kim
mick 010523
 89:11 157:22

EX PLF-
0008 Adam Kim
mick 010523
 97:19 158:5

EX PLF-
0009 Adam Kim
mick 010523
 107:18 158:8

EX PLF-
0010 Adam Kim
mick 010523
 110:6 158:10

EX PLF-
0011 Adam Kim
mick 010523
 119:9 158:14

EX PLF-
0012 Adam Kim
mick 010523
 122:17
 158:16

EX PLF-
0013 Adam Kim
mick 010523
 129:20
 158:17

EX PLF-
0014 Adam Kim
mick 010523 (
1)
 134:22
 158:20

EX PLF-
0015 Adam Kim
mick 010523
 136:8 158:24

EX PLF-
0016 Adam Kim
mick 010523
 143:8 159:5

EX PLF-
0017 Adam Kim
mick 010523
 154:18 159:7

---

### 0

0
 120:7
00019
 97:18
00234
 110:5
00343
 88:4
00353
 89:8,10
00407
 69:9,11

00576
 143:7
00710
 73:19,21
00713
 107:15,17
00718
 86:16
00938
 154:17
01089
 134:21 135:5
01272
 129:16,19

---

### 1

1
 32:10 35:22,
 25 36:2,7,14
 97:5,7
10
 8:9 64:22
 109:25 110:6
 119:15
100
 112:17
 115:20,21
 116:9 130:11
 131:17,22
 133:4 134:5,
 6
100.58
 111:20
101
 120:6
11
 116:3 119:5,
 9 132:20
11.33
 128:17
11771
 5:14
11:30
 65:14
11:40
 65:15

12
 28:5 122:17
13
 129:14,20
14
 134:18,22
15
 119:15 120:6
 136:4,8
16
 143:4,8
17
 154:14,18
18
 18:11,12,19
 22:19
1986
 21:10
1999
 21:15
1st
 87:25 88:13
 89:22 90:6
 108:23 123:7

---

### 2

2
 66:15,19
 73:10 74:2
20
 5:13 44:7
2004
 23:9
2009
 23:9
2017
 29:7 38:14
 39:4 42:3,20
 51:23 52:6,
 14 53:4,19
 54:8
2019
 17:21 73:16
 74:4 152:15
2020
 9:2 17:19

Adam Overton Kimmick
October 05, 2023

42:3 44:9,
11,18 45:19
59:14 75:10
86:6,7 87:25
88:2,13
89:22,23
90:6 101:16,
17 107:11
108:21,24
110:3,13
111:13,23
113:15
115:18
117:7,17
122:16,23
123:7,13,23
124:12 127:3
128:22
129:12
133:24
134:14 135:9
137:15
143:22
147:5,8
153:13
**2021**
24:2,7 42:4,
21 51:23
52:6,15
53:5,19
92:2,25
93:23 94:7
95:20 97:24
100:20,23,24
101:3,12,19,
21,23 102:2,
7,10,18
104:2
105:11,12,15
142:11
148:4,10
**2022**
24:7 58:21
**2023**
156:17
**234**
110:2

**24th**
97:24 148:3,
4
**25A**
5:13
**28th**
92:2
**2:20**
154:8
**2:22**
156:9

---

**3**

**3**
37:14 69:8,
12
**30-minute**
77:9
**30th**
88:2,13
**31st**
89:22 90:6
108:20,24
111:13
130:24
**343**
88:25
**3:06**
144:3,22
**3rd**
58:24

---

**4**

**4**
28:24,25
29:4 35:2
37:15,16,24
38:5 73:22
**40**
138:16
**4th**
7:17,18
10:12,13
58:24

---

**5**

**5**
29:10 32:10
37:19 38:2,
11 86:14,17
87:3
**50**
133:3,8,12
**576**
143:5
**5th**
59:2

---

**6**

**6**
38:23 87:22
88:5
**61.87**
135:14

---

**7**

**7**
89:7,11
**7th**
58:20

---

**8**

**8**
97:2,13,14,
15,19
**8th**
143:22

---

**9**

**9**
107:14,18
**938**
154:15

---

**A**

**A-END**
71:9,12
72:23 87:7
104:24
105:7,21
114:22 137:9
**ability**
6:21,25 44:4
50:3 57:8,
12,22 62:4
77:22 152:9
**able**
36:18 51:4
56:25 72:4
95:5 107:8
129:2 132:16
**absolutely**
132:23
145:20
**accept**
15:21
**acceptable**
133:5
**accepted**
15:17
**accepting**
95:24
**accommodate**
6:8
**accomplishment**
116:3
**account**
29:5,14,16,
19,21,24,25
30:3,10,11
31:7,8 32:2,
5,8,12,17,
20,21 33:11,
15,16,24,25
34:4,5,7,10
35:3,5
38:10,12,19
39:9,14

Adam Overton Kimmick
October 05, 2023

40:4,10,11,
17,19,20,25
41:2,5,6,7,
8,13,21,24
42:8,9,17
43:5 45:5,6,
7 46:2,3,4
48:2,8,10,
13,15,17,18,
21 49:10,11,
16,21,22,23
50:3,24
51:7,12 53:6
57:14,15
68:20 69:18
70:22,23,25
71:9 77:9
105:2,7
106:19
125:11
131:8,19
132:4,14,15
137:7,10

**accounts**
23:7 47:16,
22 50:11,19,
20 70:8,14,
16,21 71:5,
6,8,9,12
72:7,9,21,24
74:9,10,20
87:6,7,14
94:21 104:24
105:11,15,
18,21 111:16
112:3,5,7
113:8,12
114:4 118:6,
11,12 122:7,
10,11,24,25
123:9,24
124:3,5
125:6,9,13,
15,20 132:19
147:13

**accuracy**
37:9

**accurate**
28:22 37:12
109:11 113:9
124:11,15,
17,21

**achieve**
69:4 93:18
95:3 103:2
115:17
118:15,21
120:18
134:5,6
152:25 153:3

**achieved**
111:20
120:20

**achievement**
110:20,22,25
111:4,6,9
120:25
121:19
125:18

**acknowledged**
91:15

**acquired**
133:19

**act**
60:19,22
61:9,23
62:2,9,17
65:8 152:6
153:25

**actions**
141:9

**activity**
57:19

**actual**
99:9 103:9,
10 148:5
150:12
151:10

**Adam**
5:11 14:25
29:6,20
156:13

**Adams**
146:5

**additional**
37:2 69:23
102:25

**address**
5:12 77:2
78:17

**addressed**
100:17

**adequate**
19:5

**adjust**
118:21

**adjusted**
117:9

**adjustment**
112:15

**adjustments**
72:15

**administratio
n**
148:14

**administrative**
48:22 125:10

**advantage**
130:18

**advise**
13:16

**advisement**
93:12

**affect**
6:21,25
114:6

**aforementione
d**
36:10 66:16
129:17

**afraid**
34:18

**ago**
12:5 18:4,
11,12,19
49:19 63:5

**agreed**
99:17 103:4,
16,17

**agreement**
49:23,25
50:6

**ahead**
15:6 20:2
23:17 68:13
129:11
132:17
144:20

**allowed**
71:6 123:5
140:3

**Americas**
23:7,20,21

**amount**
40:6

**amounts**
133:11

**Angela**
129:7,18,25
130:2

**announced**
140:2

**announcing**
136:18

**annual**
69:2 91:2,5
110:20
111:4,9
120:2,25
121:19

**answer**
6:3,13
13:16,19
15:2,3
27:20,25
30:8 48:7
49:6,7 56:4
94:11 109:15
141:11

**answered**
14:15 24:25
151:18,23

**answering**
79:8

**anybody**
35:12 62:11

Adam Overton Kimmick
October 05, 2023

anyone
  7:24 20:4,7,
  12 25:8
  26:12 54:7,
  18 56:6
  72:10 94:22
  102:16,18
  113:15
  115:16
  128:20
  138:12
  144:12
  153:15
appeared
  153:7
appears
  67:8,17,19,
  20 68:20,21
  73:14 75:9
  89:14 90:7
  96:22 107:10
  108:19,23
  109:16
  110:10
  119:25
  122:22 123:6
  129:6 135:7
  136:17
  137:16
  143:19 145:8
applies
  13:25 14:24
apply
  29:23
appreciate
  61:20
approached
  84:17
appropriate
  74:8 76:3,5
  112:10
appropriately
  72:5 112:11
  114:25
approve
  146:8
approved
  123:21 146:2

approximate
  137:21
approximately
  33:10,23
  91:19
April
  103:8,20
  132:9
area
  22:24
areas
  114:17
argument
  14:17
Arias
  129:7,19,25
arises
  61:3
around
  60:11 68:3,
  5,9 113:25
arrive
  149:17
arrived
  149:15
arts
  21:5,7
asked
  19:10 29:4,
  18 33:4
  62:12,21
  64:3 70:3
  115:3,8,10
  118:5 125:8
  140:4,8
  144:9,24
  150:3 151:22
  152:24
asking
  5:19 6:12
  12:25 13:22
  14:22 23:11
  60:4,5,6
  61:19,20,21,
  25 79:25
  81:8,19
  84:15 95:15

  127:7 128:4
  140:24
asks
  38:23
assign
  26:8 130:21
assigned
  50:18 71:13
  101:2 114:5
  125:5
associated
  47:24 84:12
  121:18
  123:23 132:3
assume
  16:21 61:15
  62:13
assumed
  63:21
  139:12,14
assuming
  98:4
assumption
  16:22
attainment
  120:2
attempt
  83:18
attempted
  71:11
attention
  28:4 125:13
attorney
  7:14 8:4,5,7
  9:18 16:15
  27:13,20
attorneys
  7:8,21 9:22
  11:2,6,8
  12:12,24
  15:20 16:2
  27:16
August
  102:24
aware
  55:24 56:5,
  6,15,16

  139:4,6,7,9
  140:19,20,
  22,25 141:4
  148:15

_____

**B**

B-END
  70:16 72:9
  74:10 87:6
  104:23
  105:2,9,11,
  15,18 112:5,
  7 114:22
bachelors
  21:5,7
back
  10:22 21:22
  65:15 87:2
  94:5,11 99:8
  104:21 154:6
baked
  132:9
Baker
  7:15 13:15
Barnes
  52:9,11
base
  38:9
based
  35:2 57:6
  68:25 105:24
  113:22
  125:17 130:4
  132:10
  143:14
basis
  58:3,7 69:2
  142:7 152:24
bates
  69:9,11
  73:18,21
  86:16 88:4,
  25 89:7,10
  97:2,18
  107:14,17
  109:7 110:5

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| 119:8 | 86:7 93:25 | **break** | 10 153:10 |
| 129:15,19 | 95:17 97:5 | 6:6 65:2,14, | |
| 134:20 | 99:5,7 | 23 150:6 | **C** |
| 136:4,6 | 100:24 | 154:4 | |
| 143:4,6 | 105:12 | **bringing** | **cadence** |
| 154:17 | 107:14 | 12:12,25 | 41:11 146:19 |
| **Bay** | 142:17 | **broad** | **cadences** |
| 5:13 | 146:6,10 | 75:16 98:12 | 77:8 |
| **bear** | 151:18 | **brought** | **calendar** |
| 26:20 109:7 | **below** | 82:21 | 44:9,11,18 |
| **began** | 133:3,4,8,11 | **budget** | 45:19 131:6 |
| 147:7 148:20 | **besides** | 103:12 104:5 | **call** |
| 153:12 | 30:20 | 105:25 | 19:14 70:16 |
| **begin** | **best** | 132:5,10,16 | 93:8 101:9 |
| 14:16 102:23 | 6:5 61:16 | **budgets** | 110:11 |
| **beginning** | 147:16 | 78:15 102:23 | 137:23 |
| 24:3,4 101:3 | **better** | 103:4,21 | 150:17 |
| 112:5,9 | 83:7,17 | **building** | **called** |
| 117:7 121:3, | **bit** | 96:11 | 122:8 143:13 |
| 5 124:8 | 72:11 | **built** | 145:12 |
| **begun** | **black-and-** | 99:17 | **calls** |
| 149:3 | **white** | **business** | 79:3,7 |
| **behavior** | 48:7 49:6 | 21:12 22:24 | **Cap** |
| 59:7 82:12 | **blank** | 25:7 26:3 | 123:5 |
| **behaviors** | 78:22 81:13 | 40:21 46:20, | **care** |
| 75:24 83:4,6 | **blurb** | 24 48:25 | 62:20,24 |
| 85:8 | 73:11 74:2 | 49:4 50:6 | 63:12 64:15, |
| **behind** | 75:20 | 55:5 56:3, | 18 126:15 |
| 65:24 139:8 | **book** | 10,14 57:8, | 138:2,9,13 |
| 140:10 | 122:7 123:10 | 11,13,17 | **career** |
| **believe** | **boss** | 66:4 68:17 | 22:2 |
| 7:16 10:4,12 | 146:5 | 71:3 72:11 | **carry** |
| 15:17 17:20 | **bottom** | 78:11 80:15 | 131:10 |
| 24:24 25:20 | 119:2 121:10 | 83:9,20 | **carrying** |
| 26:18 30:2 | 150:25 | 93:18 96:12 | 120:17 |
| 42:5,8 43:5 | 151:11,14,25 | 98:19,21 | **case** |
| 44:19 45:10 | 152:13,16,18 | 103:3,23,24 | 9:16 10:17 |
| 49:14,19 | 153:8 | 104:18 | 11:14,17,19, |
| 50:22 51:3, | **box** | 106:11 | 22,25 12:4, |
| 5,6,11,24 | 110:18 | 113:25 | 13,25 17:3, |
| 53:6,20 | **Boyne** | 114:2,15 | 25 18:7,10 |
| 54:14,16 | 53:13,15 | 116:2 117:14 | 20:10,14 |
| 62:21,25 | 54:15 56:17 | 126:18 | 26:19 27:14 |
| 63:6,8,13 | 57:21 58:6 | 135:20 | 46:17,18 |
| 64:17 68:10, | 65:24 | 146:4,24 | 51:11 83:5 |
| 14 69:17 | **brands** | 147:3 149:9, | 111:11 |
| 71:19 72:13 | 50:22 | 13 150:23 | 121:16 153:7 |
| 74:3 85:18 | | 151:5 152:7, | |

Adam Overton Kimmick
October 05, 2023

cases
  49:7 83:4
categories
  91:10 118:16
  124:13
  129:24
  133:13
  135:11
category
  116:7
Celeste
  52:22,25
cell
  120:5
cells
  121:5
Central
  22:16
certain
  33:4 48:12
  131:24
certainly
  54:12 85:22
  101:16
  104:25
challenges
  96:11
chance
  75:2 89:5
  95:23 96:21
  106:15
  122:21 135:2
  143:11
change
  31:24 33:7
  71:11,16
  113:14
  117:16
  123:18 124:4
  136:19
  137:14
changed
  25:23,24
  26:15
  117:23,24
  124:5 125:16

changes
  133:21
chat
  26:22,25
  35:24 36:17
  66:22,24
  73:3 74:24
  86:12 87:21
  89:3 96:19
  107:6,25
  108:14
  118:24
  122:15
  128:25
  134:17 136:3
  143:3,6
  154:13
check
  133:20
  138:24
child
  138:9,14
children
  138:6
choose
  153:6
circumstance
  30:14
circumstances
  44:15 45:23
  57:24 63:2
  65:24
City
  59:8
claim
  61:12
clarification
  s
  37:4
clarify
  12:22 33:14
  65:22 66:10
  75:17 94:13
  95:9 102:8
  128:4
Clarity
  77:21

class
  135:22
  143:15
classes
  60:10
clearly
  105:6
client
  22:21 25:5
  54:23 75:25
  76:8 99:21
  147:15
clients
  26:2 76:10,
  12 95:12
  150:24
close
  56:7 104:19
  105:18,21
  112:17
  114:13
  152:19 154:6
closing
  104:7,12
closure
  106:8
College
  21:8
column
  119:11,22,23
  120:23 121:5
come
  10:22 33:8
  63:10,23
  65:15 85:21,
  22 124:4,6
  154:6
comes
  61:2 84:6
  130:21
comfortable
  79:23
comment
  85:19
comments
  9:16 10:17
  90:8 91:10,

12 92:13
  95:8,10
committee
  15:16,24
  16:13
common
  84:18
communicated
  101:20
  102:11
communicating
  82:3,6
communication
  77:21 105:5
company
  16:5 60:13
  133:9
compelling
  113:3
compensate
  112:22
compensated
  112:11
  114:25 118:2
  123:4 131:10
compensation
  103:6,8,10,
  16,17
  108:20,25
  109:11
  110:4,11,14
  113:6 116:18
  118:17
  120:14,19
  121:17
  123:19
  124:7,20
  125:18 127:4
  129:7,18
  132:7 133:2,
  7,17,21
  134:19 135:8
complain
  153:24
complained
  77:20 153:20

Adam Overton Kimmick
October 05, 2023

complaint
  60:14
complaints
  60:12 76:10
  77:23
complete
  126:7
complex
  132:13
complexities
  132:12
complying
  5:2
concern
  99:24
concerned
  141:15
concerns
  140:5
concluded
  156:11
conclusion
  153:9
condition
  137:19
  138:14
  139:23
conditions
  56:8
conferred
  145:24
consensus
  99:17
considerable
  92:20
consideration
s
  55:9
considered
  100:10 115:2
  128:18
contents
  17:9,10
continually
  150:25 153:7
continue
  115:25

continued
  149:5,6
  155:24
continues
  29:9 37:18
contract
  130:16,19,
  21,22,24
  131:4,16
  132:11
contracts
  41:11
control
  71:7
conversation
  12:17,18
  13:3,21
  14:20,22
  19:9,16,19,
  21,23 20:5
  50:17 64:10
  79:23 141:23
  143:20,22
  144:2
conversations
  17:24 81:24
  140:11
  147:4,7
  148:21
copy
  156:6,8
core
  113:17,19
  114:13
  124:14
corporate
  43:15 44:6
correct
  7:22 16:23
  29:11 30:18
  32:3,4 38:7,
  16 46:12
  74:21,22
  78:6,9 79:2
  82:22 86:6
  89:20 97:22
  99:5 111:3,
  22 132:22

136:22
  137:4,5,11
  143:24 144:6
correctly
  19:14
counsel
  11:12,13
  13:14,15,18
  14:4 156:5
couple
  147:3
course
  116:10 153:3
court
  5:25 6:10,14
  20:25 94:3
  128:2
cover
  72:4 108:22
  125:9
coverage
  94:21
covered
  125:19
covering
  68:2 113:23
Covid
  44:12 71:24
  72:10 112:20
  115:7 118:7
  125:21
  126:13
created
  96:8
creating
  150:22
critical
  100:4
crosstalk
  68:12 127:24
cues
  100:3
current
  22:12 23:13
  24:10 74:7
  104:6 114:15
  115:23

customer
  76:16,21,24
  77:20 78:3,
  10,19 80:23
  82:20 100:10
  115:23,24
  130:23 134:9
customers
  19:8 40:5
  41:12 57:7
  76:17 77:14
  78:15 85:19
  98:25 99:3,
  12 106:4
  114:8 123:10
  152:3,4
cycles
  40:21

_____

D

Daniel
  52:23,25
Danielle
  134:20
  135:8,11
date
  7:16 12:6
  24:8 36:15
  41:25 50:15
  53:21 56:25
  58:25 66:20
  68:22 69:13
  71:17 73:23
  86:18 88:6
  89:12 91:4,
  21,25 92:5
  97:20,23
  98:5 107:19
  110:7,24
  111:8 119:10
  122:18
  123:9,11
  129:21
  134:23 136:9
  137:20
  143:9,21
  147:23

Adam Overton Kimmick
October 05, 2023

150:9,12
154:19
**dates**
11:23 24:18
25:16 51:4,
10 71:22,23
94:15 102:4
142:16
**daughter**
62:25 63:3,
12 64:15,19
137:18
138:20
139:4,13
140:18
141:3,21
142:7,15,23
144:13 145:7
**daughter's**
63:3 139:18,
22 144:6,7
145:16
**day**
58:23 156:17
**deal**
132:12
**dealing**
40:3,4
**deals**
96:9 104:7,
9,12,20
105:17,20
**December**
89:22 90:6
108:20
111:12 135:9
**decide**
98:14
**decided**
45:25 46:21
63:25 133:9
136:20
**deciding**
16:5
**decision**
15:14,16,24
16:12,13

55:17 57:3,
6,25 58:3,8
100:6,11
145:22
147:19
148:22
149:7,15,18
150:3,10
153:13
**decisions**
70:20 87:8,
12
**deem**
84:2 130:13
132:21,25
135:17
**deemed**
83:11 128:21
**defendant**
20:16
**defendant's**
35:19 36:7,
11
**defensive**
79:19 80:2,6
**Defiance**
79:14
**define**
29:16
**defining**
46:18
**definitely**
65:2
**definition**
60:3,6,24
**deliver**
71:2 77:22
96:5 152:6,9
**delivered**
95:25 111:17
**delivering**
25:5
**delivery**
40:25
**demonstrate**
57:21

**demonstrated**
83:23
**departed**
71:20
**department**
9:19,20,22
11:15
**deposition**
7:5,21 8:11
20:21
**depth**
40:8 139:9
**described**
121:13
137:24
**description**
66:25 67:9,
10,13,19
68:21,23
69:10
**detail**
69:5 79:22
81:21 82:15
104:22
105:22 139:8
140:10
**details**
63:7 66:8
79:22,25
81:23
140:23,25
141:16
**determine**
89:25 90:17
**determined**
104:3
**diagnosed**
138:25
**diagnosis**
141:7
**dialogue**
78:2
**differ**
70:14 111:10
**difference**
39:8,12 41:6
127:18,19

**different**
22:7 39:21,
24 41:9
43:16,18,23
48:25 70:4,
5,8 89:20,25
105:4 121:12
122:9,11
128:9 131:25
**difficult**
72:12 99:18
118:7 126:14
132:6 153:5
**difficulty**
142:23 151:2
**digitally**
28:9 37:5
**direction**
46:19 49:2
84:12,19
**directly**
61:15
**director**
22:14 31:9
38:19 40:19
41:2 57:15
70:22
**directors**
34:4,5,8,11
38:13 40:17
41:14
**disappointed**
92:17,19
**discomfort**
83:15
**discontinue**
45:25
**discriminate**
60:10
**discriminatio**
**n**
58:11 59:18,
24 153:21
**discriminator**
**y**
59:6

Adam Overton Kimmick
October 05, 2023

discuss
 12:10,14
 13:9 15:7
 17:16 88:18
 90:22,24
 92:6 116:17
 146:15
discussed
 13:5,23 69:4
 81:3 103:3,
 21,22,23
discussing
 146:17 147:9
discussion
 85:23 152:20
 153:11
discussions
 17:2
dismiss
 46:8
dismissal
 19:3
dismissed
 46:10 47:15
 48:5
dissatisfacti
ons
 81:7
distracted
 84:14
doctor
 138:25
document
 15:12 26:21,
 24 27:4,9,17
 28:5,10,12,
 17,21 35:19,
 24 36:16,21,
 25 37:6,8,12
 58:4,8
 66:22,24
 67:6,8,24
 69:7 73:2,4,
 7,18 74:24
 75:3,6 85:6,
 11,14,24,25
 86:11,14

87:2,21
88:24 89:3,
6,15 90:3,9
91:7,8,25
92:14,16
93:9 95:13
96:19 98:2,
4,8 101:10
103:13
107:6,25
108:4,6,11,
14,18 109:5,
10 110:9,16
118:24
121:20
122:6,15
127:2,6,8
128:8,25
129:5 134:17
135:4 136:3
143:3,23
148:2
154:13,22
155:4,12
documentation
 24:17 31:10
 100:18
 128:12
documented
 95:13 98:18
documents
 8:10,13 9:5
 11:9 99:6,13
 125:24
 126:10,21,
 23,24
doing
 106:13
 112:12,23
 132:17
 142:24
double
 72:17
doubt
 148:11
drive
 71:2

dual
 50:9
due
 138:9
duly
 5:4
duties
 26:8 39:16,
 17,20,24
 74:6

——————————

E

——————————

E-D-D-I-Y-O-
U-K-H-A-N-N-A
 9:13
e-mail
 136:6,17
 137:2,13
earlier
 56:23 99:4
 105:23 108:7
 121:13
 153:12
early
 115:13
 116:23
 130:18 131:5
East
 22:15 25:21
Eastern
 23:15 24:14,
 23 25:9
easy
 72:10 99:14
Eddi
 9:12,25
 10:16 16:3
 18:8,9,18,22
 19:9,10
 23:24 50:8,
 13,17
 139:17,20
 143:13
 144:10,12
 145:14,25
 146:16,19

150:14,18
153:8
Eddy
 144:3
 145:10,12
edge
 132:2
education
 21:4
effective
 104:17
effectively
 132:16
effort
 80:17,21
 148:17 153:4
efforts
 148:16
eight
 121:4 148:24
either
 5:25 50:5
 66:3 81:25
 144:23
 146:25
electronic
 156:8
eliminate
 46:25
eliminated
 46:7 49:2,8
employed
 142:13
employee
 84:19 91:11
employees
 101:25
 102:22
 126:16
 147:10
 153:19,23
employment
 45:24 55:22
end
 24:3 120:14
 127:22
 130:20,22

Adam Overton Kimmick
October 05, 2023

ended
  27:16  77:10
ending
  45:24
enforced
  130:20
engaging
  12:11,24
ensure
  57:16
entail
  22:20
entire
  22:2  23:21
  42:22  51:25
entirely
  71:22
entitled
  35:19
environment
  82:4  83:14
  85:8,10
episodes
  99:23
equal
  60:9
era
  123:4
erode
  49:5
essentially
  147:9
estimate
  23:10  33:20,
  23  34:16,22
event
  137:24
  138:19
everybody
  84:10,20
everyone
  60:9  72:11
  84:18  140:15
evidence
  10:5  19:5
exact
  19:22  21:18

24:18  25:22
33:5,20
41:25  45:7
51:9  53:7
56:25  67:13
71:17
exactly
  31:22  43:4
  57:23  59:15
  121:2  130:16
  153:17
examination
  5:15  156:10
examined
  5:6
Excel
  119:5,7
excruciating
  79:22
excuse
  27:18  42:3
exhibit
  35:25  36:2,
  14  66:19
  69:12  73:22
  86:17  88:5
  89:11  97:19
  107:18  109:6
  110:6  119:9
  122:17
  129:20
  134:22  136:8
  143:8  154:18
exhibited
  75:19
exist
  30:12
existing
  50:11  124:3
  131:22
  132:11
expand
  132:18
expansion
  131:15
expat
  42:19

expect
  114:3,7
expectation
  39:13  40:9
  49:4  106:9
  115:20,24
  116:2,8
  131:17,21
  132:10,14
  134:4
expectations
  19:6  39:18,
  23  40:6  41:9
  43:23  55:4,7
  57:11  68:25
  133:6
expected
  114:20
  117:19
  152:7,10
experience
  39:11  43:17
expired
  49:23  50:2
expires
  130:17,19
explain
  15:24  39:25
  43:12  68:18
explained
  132:5
express
  81:6
expressed
  81:11
extend
  14:21
extent
  13:12,17
  14:2  151:22
extenuating
  44:14

_____

            F

fact
  10:16  18:20

41:8  51:10
77:8  87:16
96:3,4,14
118:19
123:16
145:14
153:14
factor
  128:17
factors
  134:7,10
factual
  83:2,12  84:2
fail
  104:19
failed
  79:2,6,11
  105:17,21
failure
  116:13
familiar
  41:17  42:14
  44:23  51:14
  52:8,22
  53:13  60:18
family
  56:7  60:18,
  22  61:3,7,9,
  13,22  62:2,
  6,16,20,23
  64:2  65:7
  136:21
  142:25
  153:25
farmer
  30:2,3  31:7
  32:12  69:18
farmers
  32:2,5,8,18,
  22  33:11,25
favor
  115:2,4
  118:6,11
  120:17
  125:8,19
February
  21:15  92:25

Adam Overton Kimmick
October 05, 2023

93:22 94:7
95:20,25
97:23 101:21
102:10,17
104:2
105:11,12,15
142:12
147:24
148:3,4,10

**feedback**
79:16 80:9
91:14 96:6
99:11,25

**fell**
131:2

**felt**
61:11 112:9
123:3 138:4

**fermented**
87:12

**figure**
72:8

**fill**
78:23 91:11
144:11,24

**filled**
90:20

**Financial**
68:7

**finding**
50:6

**fine**
14:11 33:22
64:5 154:8

**finish**
6:12 45:16
64:23,25

**fire**
44:4

**firm**
11:16 46:19

**first**
5:4 35:21
36:8,12
73:16 74:4
107:11
137:17

149:17,18

**FISHER**
5:16 13:20
14:5,12,18
15:3 26:20
35:18 36:4
64:24 65:4,
13,18 66:11,
21 69:7
72:25 73:17
74:23 86:10
87:18 88:24
89:6 93:7
94:4 96:18,
25 97:6,8,14
101:8 107:5,
13,24 108:13
109:9,18,25
118:23 119:4
122:14
128:24
129:14
134:16 135:4
136:2 143:2
150:5 154:3,
12 155:15,19

**fit**
85:5

**five**
29:10 30:21
33:13,15
34:15,21
38:21 47:11
121:4 154:7

**fix**
80:17,21

**fixed**
43:16

**FMLA**
62:16

**focus**
65:11

**focussing**
86:8

**folder**
97:11

**follow**
95:6

**follow-up**
149:7

**following**
24:4

**follows**
5:7

**force**
23:21

**form**
27:22,24
98:7 109:14
149:21 150:2

**formal**
91:8 103:13
152:22

**formalized**
103:7

**formally**
91:15
103:11,19

**format**
109:17
110:12

**forward**
46:21 83:20
106:14

**found**
145:2

**four**
33:19 34:21
38:25 39:2
118:16 121:3
124:13

**fourteen**
25:12 31:3

**fourth**
118:25

**France**
42:19 44:13

**fraught**
112:20

**French-based**
70:19

**frequently**
26:16

**front**
123:17

**full**
12:16,17
29:13 37:21
101:22,24
102:12
103:19
125:17
131:11
147:11

**fully**
74:5,14,19
88:23 99:24
132:8 152:15

**funnel**
96:10

**future**
22:23 25:7
26:2 57:17,
19 68:16
83:9 98:21
103:22
112:25
113:21
114:6,19
147:18
149:13
150:22
152:7,10

---

**G**

**gathered**
14:15

**gave**
6:5 11:2
63:16 68:25
102:16

**Gemini**
123:6

**general**
46:6 62:7
67:21

**generalizatio
n**
100:15

**generally**
67:25

Adam Overton Kimmick
October 05, 2023

generate
  57:8,13,18
get all
  31:11
getting
  131:9
give
  6:13,15
  10:10 24:17
  26:22,23
  34:2 65:4
  77:17 86:23
  87:18
  100:19,22
  101:5,24
  102:21
  109:18
  130:17
given
  20:19,22
  31:3 47:17
  69:23 76:24
  102:7,18
  125:15
global
  23:6 29:5,
  13,19,20,24
  30:11 38:12,
  19 70:25
  151:7
globally
  71:10
goal
  103:14
  111:21
  115:18
  117:2,6
  120:10,15
  122:8,16,23
  123:6,13,15,
  20,21,22,25
  124:5
goals
  69:3 84:12
  103:3
God
  138:11

goes
  148:17
going
  5:18 6:3
  10:21 13:10
  18:20 26:21
  35:23 46:20
  66:21 72:14,
  19,25 74:23
  77:13 83:20
  86:11 89:2
  93:7 101:8
  103:2 107:5
  108:10,13
  112:2 118:23
  128:24
  134:9,16
  140:5,21
  141:13,16
  154:4
good
  5:17 116:24
  147:2 151:6
graduate
  42:18 43:10,
  24
grant
  63:24
Great
  65:18 155:19
greater
  39:19
grow
  149:12
growing
  48:24 96:12
growth
  22:22
guarantee
  68:23
guess
  35:16 130:15
guessing
  23:10,25
  33:18
guidance
  77:17

guidelines
  103:8
Guifoyle
  7:10 13:12
  14:2,11,14,
  25 15:4
  27:23 35:25
  59:19 64:22
  65:3,16,19
  93:10 97:4,
  7,13,16
  109:4,13
  149:20,25
  151:21 154:9
  155:17 156:7

**H**

half
  73:16 74:4
  75:10 86:3,5
  107:11
  114:23
  125:20
hand
  116:4
handled
  47:16
handwriting
  155:3,6
handwritten
  154:16 155:9
happen
  70:6 77:18
  84:13 116:10
  123:19
  124:22
  130:15 141:9
  148:12 149:8
happened
  104:13
  121:16
  137:14
  138:23 141:6
  153:11
happening
  140:8 141:5

143:14
  147:12,13
happy
  6:7 84:21
Haran
  5:18 8:21
  15:9,15
  16:19 25:14
  27:21 37:23
  38:7 47:17
  48:5 54:6
  65:6,10
  67:11,13,23
  74:5 87:24
  89:21 98:15
  107:22
  109:2,12
  110:5,15
  111:2 120:4
  124:12
  145:23
  155:10
Haran's
  67:15 69:15
  97:23 98:7
  119:14 122:7
  128:16
  137:18
  139:18
  150:14,19
harassment
  59:7
Hartford
  21:8
head
  6:15 16:3,8
  22:15 23:6,
  14,19 24:13,
  22 25:9,20
  146:2,9
headquartered
  70:17
health
  22:23 40:24
  48:9,16
  57:17 80:15
  83:9 103:24
  137:18

Adam Overton Kimmick
October 05, 2023

138:14

**healthy**
25:7 83:19
96:12 98:21
151:5

**hear**
5:25

**hearings**
20:24

**hearsay**
76:7 77:24,
25 81:4

**held**
21:24 22:4,
17 23:12
24:9 30:4,5,
15 37:22
43:21 91:6
113:2

**help**
7:11 81:8,19

**helped**
126:18

**hesitating**
48:6 56:2

**high**
133:5

**higher**
40:9 117:10
118:22
124:20

**highest**
21:3

**hire**
26:4 44:4
118:8

**hired**
27:13 69:16
70:15 106:20

**history**
104:7,12

**hit**
131:5

**hold**
21:19 23:4
31:6 127:25
128:2 143:16

**horrible**
139:3

**horrified**
139:14

**hospital**
138:3

**Hostetler**
7:15

**hostile**
83:14 85:7,
10

**hour**
8:8 77:11

**hour-and-a-half**
77:11

**hours**
59:10

**HR**
9:19,21
11:15,18
13:21 14:23
16:2 24:17
31:10,23
32:24 57:2
61:2,7,15,17
62:14 63:18
64:6,12
69:19 83:15
96:23 146:2,
4,8,10
148:15

---

**I**

**IBM**
50:22

**ideally**
130:11

**identification**
36:14 66:19
69:13 73:23
86:18 88:6
89:12 97:20
107:19 110:7
119:9 122:18

129:21
134:23 136:8
143:8 154:19

**identified**
106:2,3

**identify**
29:5,19

**illness**
6:21 138:10
139:18
145:16

**imagine**
85:20 93:6
123:22,24

**immediately**
61:4,6,15
62:12 64:4
148:12

**impact**
16:5 152:5,8

**impacted**
64:19

**impossible**
125:2

**impression**
78:5

**improve**
92:24

**improvement**
90:15,17

**improving**
94:9

**include**
9:15 59:5
155:25

**including**
147:13

**inconsistent**
54:25

**incorrect**
30:11

**increase**
106:22

**increased**
78:13

**indicate**
114:11

**indicated**
124:7

**Indicating**
20:3

**indirect**
100:3

**indiscernible**
68:12 127:24

**individual**
28:15 46:17,
22 52:12
53:2,16
60:13

**individuals**
30:5,20
37:22 51:18,
22 60:8
81:6,10,15
121:9 146:7
153:5

**ineffective**
93:15 95:2,
18,22 96:16
105:7

**infection**
63:6,9

**inform**
65:6 139:17,
20 140:17
141:2,21
142:13 145:6

**information**
14:3,6,16,19
27:16 30:9,
13 89:15
122:3 140:9

**inhouse**
13:14

**initial**
22:4 37:20
70:18

**injured**
138:24

**injury**
140:22
141:6,8
142:2

Adam Overton Kimmick
October 05, 2023

input
 91:9
INSERT
 78:24 81:16
instant
 9:8,10,14,25
 10:15
instructions
 11:3
insufficient
 104:4 152:11
integration
 31:14 32:6
 34:23 35:4,
 5,8,12 38:8,
 24 39:2
 45:4,9 46:3,
 4 47:18,24
 48:11,14,19
 49:3 54:12
 121:10
 130:3,5
 135:12,19
intended
 95:4 120:15
interactions
 147:14,15
 152:2
interim
 23:19 72:6
interrogatori
es
 27:22 35:22
 36:9,13
 37:4,20
 38:15
interrogatory
 28:24 29:4
 35:2 37:14,
 16,24 38:2,
 5,11,23
 66:14,17
introduced
 108:6 109:6
involved
 134:8

irrelevant
 14:19
issue
 19:11 76:23
 77:19 78:9
 79:2,5,11
 80:2 82:17
 83:25 84:7
 135:22
 140:21
issues
 19:7 54:23
 55:25 75:14,
 19,23 76:9,
 15 77:2,16
 78:6,18
 80:18,21,24
 81:2 82:20,
 25 83:10,22
 84:22 95:11
 98:24 99:2,
 3,10,22
 100:5,10
 150:23 151:3
 152:3,22

_____

                J

January
 87:25 88:13
 92:2,25
 93:22 94:7
 95:19,25
 108:23,24
 122:23 123:7
 135:9 137:14
 142:12
Jen
 145:25
 146:3,4
 150:14
Jennifer
 11:20,21,24
 13:23 15:8
 17:2,16,25
 35:3,14
 51:14,17
 54:13,20

58:2
Jenny
 146:2,5,6,11
Jenny's
 146:6
job
 26:8 39:11,
 16,17,20,23
 48:18 57:10
 66:24 67:9,
 10,19 68:21,
 23,24 69:10,
 23 74:6
 106:17
 116:12
jobs
 24:18 26:16
 43:16
join
 144:15
jointly
 150:13
judge
 14:9
July
 89:22 90:6
 125:16
 130:24 131:2
June
 88:2,13
jurat
 155:25
justified
 18:24 19:2,
 12
justify
 148:13
Justin
 7:10,23,25
 8:7

_____

                K

keep
 114:2,7,14
 115:18
 123:2,5

128:16,21
 130:10
 131:13,19
keeping
 116:23
kept
 120:21
Kim
 53:13,15
 54:15 56:17
 57:21 58:6
Kim's
 65:25
Kimmick
 5:1,11,17
 6:1 7:1 8:1
 9:1 10:1
 11:1 12:1
 13:1 14:1
 15:1,5 16:1
 17:1 18:1
 19:1 20:1
 21:1 22:1
 23:1 24:1
 25:1 26:1
 27:1 28:1
 29:1,6,20
 30:1 31:1
 32:1 33:1
 34:1 35:1,22
 36:1,7,13,17
 37:1 38:1
 39:1 40:1
 41:1 42:1
 43:1 44:1
 45:1 46:1
 47:1 48:1
 49:1 50:1
 51:1 52:1
 53:1 54:1
 55:1 56:1
 57:1 58:1
 59:1 60:1
 61:1 62:1
 63:1 64:1
 65:1 66:1,
 15,18,23
 67:1 68:1

Adam Overton Kimmick
October 05, 2023

69:1,8,12
70:1 71:1
72:1 73:1,22
74:1 75:1
76:1 77:1
78:1 79:1
80:1 81:1
82:1 83:1
84:1 85:1
86:1,14,17
87:1,3,22
88:1,5 89:1,
7,11,23 90:1
91:1 92:1
93:1 94:1
95:1 96:1
97:1,13,14,
15,19,22
98:1 99:1
100:1 101:1
102:1 103:1
104:1 105:1
106:1 107:1,
14,18 108:1
109:1,25
110:1,6
111:1 112:1
113:1 114:1
115:1 116:1
117:1 118:1
119:1,5,9
120:1 121:1
122:1,17
123:1 124:1
125:1 126:1
127:1 128:1
129:1,14,20
130:1 131:1
132:1 133:1
134:1,18,22
135:1 136:1,
4,8 137:1
138:1 139:1
140:1 141:1
142:1 143:1,
4,8 144:1
145:1 146:1
147:1 148:1
149:1 150:1

151:1 152:1
153:1 154:1,
14,18 155:1
156:1,2,13
**kind**
40:7 63:7,9
105:4 125:12
134:10
**knew**
139:10
141:25
**know**
5:23 6:7
9:21 11:5,17
15:18,19
16:22 25:18
27:4 28:7,25
31:21 33:17
34:13,21
35:14 36:17
37:15 51:2
60:23 63:2,
7,19 65:25
66:6 67:4,7,
12 73:5,6,25
74:25 79:21
88:9 89:4
91:20,22,23
92:18 94:15
96:2,20
101:19
102:13,14
107:8 108:2,
15 109:15,23
116:19
119:19,22
120:7,23
121:7,23
122:2,20
123:14,17
125:3 126:12
128:11
129:2,23
130:11
132:15
133:6,22
134:3,12,25
136:11

139:11
141:9,12,15
142:3 143:10
144:3,10,15
145:11
146:9,19
147:22
148:19,22
153:13
154:22 155:6
**knowing**
16:24 109:8
**knowledge**
13:13,17
15:13 28:23
32:15 34:9
37:13 38:22
62:18 65:9
69:21 94:24
128:10,15
153:22 154:2
155:11

---

**L**

**label**
109:7
**labeled**
97:9
**labelled**
66:24 91:11
**lack**
65:11
**large**
41:5,12
107:11
**largely**
122:23
125:10,21
**larger**
40:5 44:5
131:20
132:12
**largest**
87:7
**Larry**
120:23

**latest**
108:3,16
**Lawson**
11:20,22,24
13:23 15:8
17:3,17,25
145:25
146:3,4
150:14
**lawsuit**
16:4 20:17
21:2
**lead**
60:15 99:19
**leader**
100:4 132:14
**leading**
84:9 151:6
**learn**
76:14 137:17
**learning**
13:18
**leave**
55:20 60:19,
22 61:7,9,23
62:2,17,22
64:2 65:8
78:22 81:13
136:21 147:2
153:25
**left**
18:15,16
23:24 110:19
136:25
**leg**
138:21
**legal**
60:24
**length**
19:22
**letter**
96:23 97:17
**level**
21:3 83:13
**limit**
50:2 63:24

Adam Overton Kimmick
October 05, 2023

line
  46:23 121:15
  145:17
lines
  47:20 48:12
  100:2
list
  29:10,13
  37:21 38:5,
  12 150:25
  151:8,10,14,
  25 152:13,17
listed
  30:21 32:10,
  13 38:21
  119:18 121:9
  123:25
lists
  122:6
little
  8:8
loading
  26:23
long
  6:8 8:6 18:4
  19:21 21:19
  22:17 49:19
  59:9 80:15
  106:12
longer
  14:7,8
look
  10:22 31:9
  60:2 90:8
  91:24 99:8
  104:21
  126:24
  130:10
  131:13,15
  134:6 136:10
  149:3 154:21
looked
  29:22,25
looking
  33:22 89:24
  99:12 119:23
  147:10

looks
  27:13 36:2
  37:2,19,25
  87:24 89:19
  120:4 143:12
loosely
  43:9,21
Lorna
  44:23 45:2,3
  46:10 47:6,
  15 48:3,5,10
  49:12,17
  50:23 51:7
  136:19,20
Lorna's
  137:3
lot
  73:8 148:14,
  17
love
  84:20
low
  106:9 116:4
  132:22,25
  135:18
lower
  117:5,9
  118:18
lowered
  112:16
LVMH
  123:5

---

**M**

---

M-HM
  87:15
made
  16:12 44:16
  55:17 57:3
  70:20 72:15
  82:3,6,14
  83:18 85:19
  87:8 92:13
  95:10 100:6
  104:5 105:25
  112:14 113:4

114:12
116:23
120:20
124:23
125:4,14
135:22 141:8
147:21
148:7,23
150:10
153:14
maintain
  40:15 41:13
  45:12 53:10
  57:19 71:3
  80:14
maintaining
  22:23 48:24
  60:12 151:6
major
  71:24
majority
  113:20
make
  66:12 70:6
  71:11,15
  72:16 77:12
  80:17,21
  84:10,17
  89:17 93:17
  99:14 106:9,
  10 112:10
  114:15,24
  115:14
  116:21
  117:25
  126:15
  132:17
  146:12,24
  149:12,18
  150:7
making
  13:5 25:6
  57:25 100:11
  151:4
manage
  22:24 63:22
  64:6 70:15
  72:3,8,12

112:7 118:6
153:10
managed
  44:2,6 70:21
  71:10 74:11
  83:17 104:16
  113:8,12
  118:10
management
  11:15,16
  18:6,7 20:8
  22:2 24:20
  125:11,12
manager
  22:8,9,13
  29:21 30:2,
  3,11,12
  31:7,8 32:2,
  5,8,12,17
  33:11,25
  35:4,5 38:10
  39:9,10,14,
  15 41:7,8,
  22,24 42:8,
  9,17 43:6
  45:6,7 46:3,
  5 48:14,15,
  21 49:10,11,
  16 50:24
  51:7 53:6
  57:15,16
  60:15,25
  68:21 69:18
  70:23 71:9
  84:9 105:2,8
  106:19
  126:14 131:8
  138:16
  152:21
manager's
  90:8 91:12
  95:8
managers
  26:17 29:5,
  14,17,19,24
  32:20,21
  33:15,16
  40:4,10,11

Adam Overton Kimmick
October 05, 2023

45:5 48:8
77:10
**managing**
25:4 26:2
47:25 60:12
71:25 72:7,
21,23 74:20
87:14 112:4,
8 114:22
115:5 118:12
146:23
**manipulated**
112:22
113:22
117:25
124:19
127:7,10,13,
17 128:6,7,
13
**manipulation**
114:21
124:22 126:2
**March**
103:7,18,20
132:9
**margin**
68:8
**mark**
108:10
**marked**
36:13 66:18
69:8,12
73:22 86:17
87:22 88:5
89:11 97:19
107:18
110:2,6
119:6,8
122:17
129:20
134:21 136:7
143:7
154:14,18
**master**
49:22,25
50:5
**matter**
84:4

**matter-of-**
**the-fact**
19:13
**mature**
131:25
**matured**
96:9
**maturing**
106:5
**mean**
10:18 12:21
15:25 17:4,
12 22:7
25:22 34:13,
14 35:14
39:25 43:22
46:15 55:2
57:13 61:10
62:10 67:14,
18 71:21
72:20 77:25
79:15,18
80:12 84:5
105:25
106:11
111:14
113:17
125:7,8
139:8,13,25
141:13,24
145:18 149:8
152:23
**meaning**
48:21 95:5
110:25
113:19
115:22
120:10
124:13
148:10
**means**
111:6
**measured**
80:11 103:9
**medical**
55:21,24
56:8 60:19,
22 61:7,9,22

62:2,17 65:7
139:22
153:25
**medications**
6:24
**meet**
8:6 19:6
44:7,20
45:14,18
52:5,19
53:11 54:3
55:4,6 78:15
104:4 116:13
117:19
**meeting**
7:25 11:7
57:9 92:2
150:13
151:4,15
**meetings**
94:19
**member**
61:13 62:6,
20,23
**members**
56:7 140:6,
13
**memorialize**
58:3,7 75:13
82:25 98:6
**memorialized**
15:11 28:17,
21 75:20
76:18
**memory**
10:19
**message**
19:10
**messages**
9:8,10,14,25
10:15
**met**
7:8,15,20,22
87:5 92:6,9
124:12
**mid**
112:15

116:21 147:4
**mid-year**
113:23
**midyear**
112:6 117:23
**mine**
91:14
**minimum**
133:18,22
134:12
**minute**
27:3
**minutes**
8:9 64:23
154:7
**mirrors**
37:19
**miscommunicat**
**ion**
99:20,21
**misremembered**
65:23
**mission**
84:11
**mistaken**
101:15 102:4
**mitigating**
134:7
**month**
91:22,23
148:10
**monthly**
77:7
**months**
12:5,8
18:11,12,19
22:19 23:18
142:12
148:25
149:24
**moodys**
50:25 87:7
136:18
137:7,9
**morning**
5:17

Adam Overton Kimmick
October 05, 2023

**move**
  44:13 86:25
  87:8 106:14
**moved**
  96:10
**moving**
  46:20 98:22
  106:5,7
**multinationals**
  70:19
**multiple**
  101:18
  104:13,20
  111:24
  113:13,24

———

**N**

**N&g**
  113:17
**name**
  5:9 7:11 8:3
  35:6,11,16
  41:18 119:14
**names**
  34:17 37:2
  54:17 81:14
**narrow**
  13:4
**nature**
  139:9
**necessarily**
  48:23 114:18
**necessary**
  106:14
**need**
  21:21 24:16
  31:9 32:24
  56:10 69:19
  102:25
  140:16
  145:2,7
**needed**
  46:25 63:17,
  21,22 64:2,
  11 69:3

77:18 78:4
82:11 90:15,
17 96:5
114:15
125:13
137:25 138:4
139:15,16
140:18
141:3,9,22
142:6,8,10,
14,22,24
144:23
**needs**
  84:13 91:15
  106:10 132:4
  133:18 144:5
**negotiating**
  106:7
**negotiation**
  96:10
**never**
  121:25
**nine**
  23:3 25:12
  31:3 121:4,5
**nod**
  6:14
**Nonperformance**
  98:16
**nonperforming**
  135:21
**nonverbal**
  100:3
**normal**
  140:22 142:2
  146:19
**Notary**
  5:5 156:19
**note**
  109:4
**notes**
  154:16
  155:10
**number**
  15:10,11,18
  16:18 33:21

112:22
113:22
114:4,12
118:14
131:19
132:21
133:11
146:18
148:21
**numbers**
  13:24 109:17
  114:14
  117:20
  118:18,21
  126:4 127:7,
  11,12,15
  128:7,14

———

**O**

**oath**
  5:20 26:19
**object**
  151:21
**objection**
  27:23 59:19
  109:5,13
  149:20,25
**objections**
  35:20 36:7,
  11
**objectives**
  69:3 87:5
  93:18,19
**OBS**
  68:22
**OBS'**
  66:13,17
**OBS_001006**
  119:6,8
**OBS_00233**
  110:2,5
**OBS_00334**
  88:4
**OBS_00344**
  89:8,10

**OBS_00406**
  69:9,11
**OBS_00575**
  143:7
**OBS_00659**
  136:5,7
**OBS_00708**
  73:19,21
**OBS_00711**
  107:15,17
**OBS_00714**
  86:16
**OBS_00982**
  154:14,17
**OBS_01088**
  134:21 135:5
**OBS_01271**
  129:15,19
**OBS_0575**
  143:5
**OBS_335**
  88:25
**obviously**
  39:12 139:3
  140:14
  144:14
**occasion**
  11:25 84:24
**occurred**
  146:18
**October**
  58:20,24
  143:22 147:6
**October/
november**
  103:5
**offer**
  13:5,7,10
  15:15 16:6,
  18
**offered**
  15:18
**offering**
  15:8
**official**
  20:22

Adam Overton Kimmick
October 05, 2023

okay
6:20 7:18
8:4 15:5
21:3 22:3
24:11 27:7,
8,15 28:6,20
29:3 30:7,19
31:5,13
33:10,24
34:10,23
35:17 36:20
37:17 38:11,
23 41:23
43:2 65:3,
13,18 66:9
67:5,22
73:11,17
74:19 75:4,
5,13 81:13
84:22 85:13
86:9 87:20
88:10,21
90:12 91:24
93:7 94:13
95:15 100:9
102:5
107:10,13,24
108:13,17
109:9,18,24
110:13,25
111:14
113:14
114:10
117:15 118:4
119:3,11,21
120:3,22
122:14 126:9
127:14
128:5,24
129:4,13
131:3,12
132:24
134:16
135:3,24
136:2,13
137:9 140:9
141:18
142:11
143:2,12,16,

21 144:21
145:6 150:5
154:9,24
155:19 156:4
once
6:11 18:16
58:16 92:21
101:4 149:8
150:17
one
7:12 8:2
11:25 19:25
25:14,17
26:22,23
28:18 32:11
34:2,18
35:15 38:3,
18 40:20
41:5 45:4
47:20 50:22
51:18,22
55:7,9 65:5
73:14 76:21,
23 84:23
85:3,18
86:24 87:18
90:3 91:9
92:9 94:20
99:6,10
100:8 107:6
108:8 109:18
112:2,3
113:7 120:5,
12 121:3,15
146:7
ones
8:18 9:7
90:9
ongoing
103:24 123:2
142:7
open
36:18 60:14
67:3 73:4
89:5 91:16
109:22
opened
108:9

opening
27:6
opportunities
78:16 80:13
96:8 98:22
104:16
106:3,4,25
opportunity
106:24
108:3,16
123:2
Orange
13:15 18:6,
15,16 21:12,
14,24 22:2,
5,10 23:25
24:21 27:21
33:8 42:18
43:10,24
45:21 46:10
50:24 55:22
57:20 58:12
59:20,22
65:25 66:6
67:8 115:25
136:21
153:20
Orange's
27:13
order
31:10 62:6
68:3,6,8,9
103:2 124:3,
6,19 129:24
132:18
ordering
156:6
orders
68:16
113:17,18
115:18
124:14
128:16,21
130:10
131:13
133:14,23
134:13

organization
41:3 43:18
original
36:3 122:22
outcome
50:16
outline
154:5
outlined
106:25
outside
13:15 30:9
70:17,23
74:11
overachieving
114:16
overlap
48:13 51:2
overlay
47:19 121:14
130:2
overrule
83:4
Overton
5:11 156:13
Oyster
5:13

---

**P**

p.m.
144:3 156:9
P00016
97:2,18
P00019
97:3
packet
10:5
page
28:5,25
29:10 37:6,
15,16,19
73:10 74:2
155:24
paid
62:22 63:24
72:17 112:17

Adam Overton Kimmick
October 05, 2023

118:12
125:17
126:19
127:12,22
**pain**
138:21
**Paine**
44:24 45:2,3
46:11 47:6,
15 49:12
50:23
**Paine's**
48:3
**paired**
111:2
**parent**
43:15
**part**
10:5 16:14,
15 19:8
42:18,23
43:10 44:5,
12 48:22
70:22 71:24
77:7 81:9
93:19 103:23
124:9 137:11
140:2
146:18,23
**participate**
20:4 59:13
144:25
**participated**
58:10,15
145:22
**particular**
79:5 112:19
131:2 141:24
**partner**
146:5
**parts**
43:18
**past**
113:5
**pat**
48:7

**pathway**
147:2
**Patricia**
5:18 15:8
27:21 37:23
38:7 119:14
155:10
**Patrick**
52:8,11
**Patty**
8:21 12:12,
25 13:6
18:17,20
25:14,16
26:4 30:2,6
47:17 48:5
49:15,16,20
50:9 51:3,5,
6 62:15
63:10 67:11,
13,15 68:15
72:14 74:5,
12 75:19
77:3,11
78:4,25 79:4
80:24 81:7,
18 82:11
87:13,24
89:21 90:13,
20 91:13,17,
19 92:6,23
96:23 99:24
100:19
107:22
109:2,12
110:4,15
111:2,20,23
112:4,8,11,
23 113:8
114:25
120:19
123:23 124:8
126:16
136:19 137:3
138:18
139:21
140:3,4,15,
17 141:2,12

142:5 143:20
144:4
145:10,15
146:13,21
153:15
**Patty's**
17:6 19:3
27:14 30:16
50:2,18
73:15 75:9
82:21 83:18
88:11 92:11
112:15 140:8
146:15
**Paul**
41:18,20
44:17
**pay**
26:6 118:22
131:8 133:3,
8,10
**payment**
57:9 110:4,
14 113:7
**payout**
117:10
**penalty**
5:21 131:8
**pending**
6:9
**people**
6:11 22:8,
10,25 25:11,
15 29:10
30:15,21,23
31:6,23
32:13 33:6,7
35:7 37:3,24
38:6,21,25
39:2 43:16
46:8,14,17
47:2,5 48:20
54:12 62:3
103:18 132:8
149:4 151:2,
9 152:25
153:2

**percent**
111:20
112:17
115:21
116:3,9
120:6,7
128:17
130:12
131:18,22
132:20
133:3,4,8,12
134:5,6
135:15
**percentage**
115:17
128:17,21
130:9,12
131:12
132:24
133:16,18,23
134:13
**percentages**
124:24
126:5,11
128:9,12
**performance**
8:19,20,22,
25 17:6,15
19:6 46:16
54:22 55:3
64:19 73:15,
20 75:10,14,
18,22 82:22,
25 83:8
86:3,5,15
87:23 88:3,
12,15,18,22
89:9 90:5,
14,19 92:12
99:7,9
100:12,14,15
104:25
105:6,10,14
107:16
114:19
127:21
147:2,14
151:3

JA111

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| **performer** | **personnel** | **plan** | 120:9 139:25 |
| 146:22 | 152:21 | 92:23 93:3, | **posted** |
| **performers** | **perspective** | 14,20 94:6, | 26:24 |
| 146:20,21,25 | 61:11 83:3,8 | 8,14,23,25 | **potential** |
| 149:4 | 105:6 113:3 | 95:6,16,17, | 16:4 17:13 |
| **performing** | 126:13 146:9 | 19,22,24 | **practice** |
| 125:23,25 | **Pfizer** | 96:2,3,5,16 | 82:24 |
| 126:11,22 | 49:12,17,20, | 103:6,16,17 | **preparation** |
| 127:9 | 22 87:7 | 106:21 | 8:11 11:9 |
| **period** | **ph** | 132:7,16 | **prepare** |
| 23:8,16 | 42:13 | 133:2,7,17 | 7:4,7,21 |
| 24:15 29:15 | **phone** | **played** | 10:25 |
| 30:17,25 | 14:10 82:2 | 71:24 | **present** |
| 32:7,14 | **picture** | **pleasant** | 7:24 29:7 |
| 33:4,6,12 | 147:11 | 137:25 | 39:5 54:8 |
| 34:12,20,25 | **piece** | **please** | 92:23 93:20 |
| 35:9 38:14, | 51:25 | 5:9,12 6:12, | 94:6,22 |
| 20 39:4,7 | **pieces** | 15 15:5 34:3 | **presented** |
| 40:22 42:3, | 17:14 107:11 | 68:19 88:9 | 93:14 94:23 |
| 7,22,24 | 153:17 | 136:12 | 95:16,17,19 |
| 51:13,25 | **pier** | **plucked** | 103:19 |
| 52:2,6,20 | 100:9 | 97:10 | 106:21 |
| 53:11,23 | **piers** | **policy** | 116:25 117:6 |
| 54:4 72:6, | 19:8 54:24 | 61:18 64:7 | **pressured** |
| 10,13,18 | 76:3 77:14 | **poor** | 81:9 |
| 87:25 88:12 | 81:3 83:10, | 146:21,22,25 | **presumed** |
| 89:20,22 | 22 84:2,23 | **populate** | 6:4 |
| 90:5 91:12, | 85:17,19 | 91:14 | **pretty** |
| 16 108:22 | 98:24 99:2, | **populated** | 12:21 13:4 |
| 111:18 118:7 | 11 134:10 | 121:6 122:3 | **price** |
| 130:22 | 152:2,4 | **posed** | 130:17 |
| **periods** | **pipeline** | 27:21 | **prior** |
| 26:16 43:16 | 57:18 78:14 | **position** | 24:12 95:11 |
| **perjury** | 92:24 94:9 | 21:16,23 | 131:20 |
| 5:21 | 98:20,23 | 22:3,4,20 | **privilege** |
| **person** | 102:25 | 23:12,13 | 13:24 14:9, |
| 8:3 39:18 | 103:22 | 24:6,12 | 21,24 |
| 41:3 44:2 | 104:3,6,8, | 25:18 68:7 | **privileged** |
| 59:11 72:2 | 14,15 105:24 | **positive** | 13:22 14:4, |
| 74:11 81:25 | 106:2,6,22 | 15:20 | 6,7 |
| 85:3 112:6 | 147:16,17 | **positively** | **privy** |
| 115:7 116:6 | **places** | 79:17 80:10 | 15:19 |
| 118:9 131:19 | 43:15 | **possible** | **probably** |
| 150:21 | **plaintiff's** | 101:22 120:9 | 12:9 92:9 |
| **personal** | 35:21 36:8, | 124:2 | 121:15 147:4 |
| 55:21 | 12 | **possibly** | 153:9,12 |
| **personally** | | 55:8,23 57:9 | |
| 98:2 133:3 | | | |

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| **problematic** | **projects** | 134:17 143:2 | 101:5 103:25 |
| 81:19 | 106:12 | 146:25 | 104:4 111:2, |
| **problems** | **promise** | 152:12 | 7 112:15,16 |
| 85:16 | 116:22 | 154:12 | 113:14 |
| **procedure** | 120:21 124:9 | **puts** | 116:14 |
| 140:20 | **promising** | 91:8 | 117:5,16,22, |
| **procedures** | 43:15 | **putting** | 24 124:12 |
| 6:18 60:11 | **promote** | 96:18 107:24 | 126:6 130:22 |
| 139:7,11 | 69:20 | 122:14 136:2 | 151:15 |
| 141:5,19 | **promotion** | | **quotas** |
| 142:4 | 70:13 | ——————— | 40:14 41:14 |
| **proceeding** | **proper** | | |
| 16:7 | 66:4 | **Q** | ——————— |
| **process** | **proposed** | | |
| 77:7 123:18 | 78:13 106:6 | **question** | **R** |
| 132:5 152:22 | **proposing** | 5:22,25 6:3, | |
| **produce** | 40:7 | 4,9,13 12:22 | **ragged** |
| 98:19 113:20 | **protected** | 13:4 24:25 | 132:2 |
| 124:19 | 60:10 | 29:17,18,22 | **ranking** |
| **produced** | **provide** | 33:14 45:17 | 147:10 149:6 |
| 9:17,22 | 27:15,19 | 49:6 56:12, | **rate** |
| 103:15 | 41:12 103:13 | 13,14 62:13 | 26:6 |
| 123:15,20 | 126:5 | 79:9 94:6,11 | **rating** |
| **producing** | **provided** | 95:21 98:12 | 88:22 90:13 |
| 104:17 | 28:16 30:13 | 117:21 | 147:9 |
| **product** | 69:6 126:3 | 126:20 | **read** |
| 46:22 47:20 | **public** | 141:18 150:4 | 17:12 68:24 |
| 48:12 | 5:5 20:24 | 151:19 | 94:5,11 95:8 |
| 121:15,18,19 | 156:19 | **questions** | 100:2 |
| **production** | **pull** | 5:19 6:16 | **reading** |
| 93:8 101:9 | 10:19 17:11 | 27:20 143:17 | 94:2 |
| **productive** | **pulled** | 155:16 | **real** |
| 84:19,21 | 121:17 | **quick** | 127:11,16 |
| **products** | **pursue** | 154:4 | **reason** |
| 47:23 113:19 | 106:24 | **quickly** | 26:15 71:23 |
| 114:2 130:5, | **put** | 118:9 | 116:14 |
| 7 131:25 | 26:21 35:23 | **quite** | 120:11 |
| 132:2 | 36:16 60:14 | 24:18 63:5 | **reasons** |
| **profitability** | 66:21 72:25 | 148:14,17 | 46:24 55:21 |
| 46:22 | 74:23 86:11, | **quota** | 98:6,10 |
| **profitable** | 22 87:20 | 42:10 43:7, | 150:19 |
| 22:22 | 89:2,17 | 21,25 44:7, | **recall** |
| **program** | 91:13 93:3, | 16,20 45:11, | 8:14,15,16, |
| 42:18 43:11, | 10 107:6 | 14,18 52:3, | 18,24 9:5 |
| 13,14,25 | 108:14 | 5,17,19 | 10:7,14 |
| 44:6 59:6 | 118:23 | 53:8,11,25 | 11:23 12:5, |
| | 128:25 | 54:3 55:6 | 16,17,20 |
| | | 57:9 72:16 | 13:3 15:10 |
| | | 100:19,22 | 16:14 17:18, |

Adam Overton Kimmick
October 05, 2023

22,24 18:3
19:14,16,22
20:15 21:18,
21 22:6
25:16,21
26:14 31:2
32:23 34:17
35:6,11
41:25 43:4
44:10,15,22
45:4,7,15,20
47:4,8,14
49:14,18,24
50:15,21
51:21 52:7,
16,21 53:7,
12,24 54:5,
11,17 55:8,
11,16,23
56:18,22
57:23 58:5,
9,16 59:15
63:8 64:16
65:12 66:8
69:17 71:14,
17 76:13,22,
25 78:21
80:22,24,25
81:12,20
82:15 91:4
93:5,13,25
96:17 98:9
99:4 102:3,
6,15,20
104:10
105:16,19,22
107:4 112:4
113:16
115:19
116:5,19
128:23
137:20,21
138:15
139:19,24
140:10,11
141:23
142:16
145:18
147:22

148:8,11
149:22
150:9,12,16
**received**
21:4 90:13
**recent**
12:3 58:18
**recess**
65:20 109:20
154:10
**recognize**
27:9,11
36:21,23
67:6 73:13
75:5,8
108:18
109:10
110:9,12
129:5 135:6
136:14,16
143:17
154:25
**recognized**
72:14,19
**recollection**
64:13
**recommend**
69:22,25
**recommendatio
n**
146:12
147:20 148:6
149:19
150:2,8
**recommended**
150:19
**record**
5:10 35:18
36:6 66:12
73:18 78:23
81:14 87:23
97:5 102:8
119:4
**recorded**
20:24 86:3
**records**
21:22

**rectify**
79:6,11
**redacted**
73:8 89:16
90:2,9
107:12,21
**redundancy**
66:3,8
**redundant**
135:23
**refer**
60:25 61:4,
6,14,17
62:14 63:18
64:12
**referred**
64:6 94:10
**referring**
100:6 127:2
151:8 152:21
**reflect**
67:15 111:25
113:11
117:10 123:8
125:25
126:8,21
**reflected**
67:24 100:12
117:5 143:23
**reflective**
113:7
**reflects**
128:8
**refresh**
10:18
**regarding**
80:24 94:8
100:3 107:22
155:10
**region**
16:3,8
**regular**
152:24
**relaid**
13:14 16:19
**related**
87:6

**relation**
125:11
**relationship**
19:7 40:8,23
47:22 57:7
71:4,8 76:11
**relationships**
22:22 25:5
54:23,24
76:2 134:9
151:6
**relay**
14:5
**relaying**
14:3
**release**
65:25 66:6
140:9
**relevant**
16:6 30:13
**reliant**
121:14
**remained**
49:9
**remains**
14:4
**remediation**
148:16
**remember**
8:3 16:25
24:2,8 64:9
71:18 81:22
137:23
138:17
**remind**
25:2
**removed**
135:20
**Renassia**
41:18,20
44:17
**renew**
114:3,5
116:9
**renewal**
116:14
130:15

Adam Overton Kimmick
October 05, 2023

**renewals**
  115:20,22
  130:6 131:20
  132:20,25
**renewed**
  131:4,7,17
**renewing**
  50:5 131:9
**renews**
  131:16
**repeat**
  6:2 108:6
**rephrase**
  5:24 27:18
  83:24
**replace**
  50:7 153:4,
  15
**report**
  25:17 26:12
  42:2,20,24
  107:16
  153:23
**reported**
  25:19 29:6,
  14,20 32:17
  33:6,11 37:3
  38:13,20
  83:15 84:8,
  23 85:2
  101:25
  138:12
  153:20
**reporter**
  5:8 6:2,10,
  14 20:25
  36:15 66:20
  69:14 73:24
  86:19 88:7
  89:13 94:3,
  12 97:21
  107:20 110:8
  119:10
  122:19 128:3
  129:22
  134:24 136:9
  143:9 154:20
  156:5

**reporting**
  23:2 25:8
  30:20,24
  31:14,18,24
  32:2,9,22
  34:11,24
  39:3 102:22
  115:16
**represent**
  5:18 110:23
  111:5 112:25
  137:2
**representatio
n**
  114:19,20
**representativ
e**
  74:13
**represented**
  80:2 97:25
  117:5
**representing**
  27:14 95:18
**request**
  50:18 70:6,
  10
**requested**
  61:5,7 71:5
  72:24 122:25
**required**
  62:5 68:16
  103:2 104:18
  148:15
**requirements**
  57:10 67:21
  77:13 102:24
  105:5
**requires**
  123:19
**reread**
  36:5
**reset**
  116:20,25
**Respect**
  60:8
**respond**
  5:20

**responded**
  38:15
**response**
  6:5 29:9
  38:25 79:13
  92:11,16
  99:18 144:4
  145:9
**responses**
  6:16 27:12,
  17,19 28:16,
  20 35:20
  36:8,11
  37:20 66:14,
  18 77:23
**responsibilit
ies**
  25:25 48:4,
  19,23 49:9
  67:16,18
  68:2 69:23
  70:2,4,9
  71:2 105:13
  117:14
  120:17
  126:17
  137:4,7
  146:23
**responsibilit
y**
  23:20 57:16
  60:15,24
  70:12,25
  87:13 105:3
**responsible**
  22:21 25:4,6
  40:11,18,23
  41:4,15
  42:11 43:8,
  25 47:19,21,
  23,25 48:9,
  11,16 50:4
  52:17 67:23
  122:12
**responsivenes
s**
  77:22

**result**
  80:11 83:3,7
  112:21
  118:21
  120:19
  124:4,19
**resulted**
  78:13
**results**
  74:8 83:18,
  23 86:8 95:3
  96:6,7 99:23
  104:17
  113:23
  120:13
  121:17
  124:18
  152:6,9
  153:2,3
**return**
  125:18
**revenue**
  22:22 25:5
  26:3 40:6,
  24,25 48:17,
  24 68:7 71:3
  111:14,15,21
  112:21
  114:6,7,12
  118:15
  119:25 123:3
  124:13
  129:24
  132:18
  133:14,19
  135:14
**revenues**
  57:19 113:21
**review**
  8:10,13,25
  9:4 17:19,21
  27:4 28:12
  31:10 36:18
  37:8 67:3
  69:5 73:15,
  20 75:2,10
  76:4,6 77:6
  78:12 85:15

Adam Overton Kimmick
October 05, 2023

86:15 87:4,
23 88:3,8,
12,16,19,22
89:5,9 90:5,
14,19 91:2,
25 92:7,12,
22 94:17
95:11,14,21
96:21 98:18
99:7,9
100:13,14
107:9,11
108:3,16
113:3 122:21
129:3 135:2
143:11 154:5
**reviewed**
10:9,11 73:5
96:3 114:9
**reviewing**
11:8 16:4
87:3 90:10
109:23
**reviews**
8:19,20,23
9:2 17:6,7,
15 68:15
85:18 91:5
99:10 126:3,
4
**revised**
101:3
**right**
10:9 14:12,
25 23:12
32:18 36:5
60:14 85:9
86:10 89:17
90:16 96:24
101:13
109:16 116:2
120:3 126:5,
6 134:11
142:2 144:18
148:4 152:25
153:2 154:3
**rights**
65:7

**risen**
83:13
**Rob**
16:9,10,11
**role**
43:24 46:5,
14,25 47:3,
18,19 49:8
50:9 66:3
70:4,5,7,11
118:10
**roles**
24:20 121:14
**Rossdale**
35:3 51:15,
17 54:13,20
58:2
**Route**
5:13
**Row**
120:5
**Rows**
119:15
**Roxanne**
42:13,16

—————

**S**

**salary**
39:11
**sales**
21:25 22:14,
15 23:14,19,
21 24:13,19,
22 25:9,20
40:12 41:3
67:21 100:4
108:19,25
109:11
110:3,10,14
113:6
116:12,17
127:3 129:6,
18 134:19
**salespeople**
57:14 121:6

**salesperson**
119:12 134:4
**sat**
69:2
**satisfactory**
131:14
**saying**
104:13 117:4
127:15,16
**says**
30:8 74:14
84:7 87:11
91:25 98:4
110:16,19
111:19
119:12 120:6
144:7
**scale**
63:20
**scheduled**
94:20
**scheduling**
77:10
**scope**
30:9 41:10
**scroll**
73:9 119:21
120:22
**second**
26:22,23
65:5 75:10
86:3,4,24
87:4,19
107:7 109:19
125:20
**section**
73:15 107:21
**see**
15:2 26:24
29:7 35:15
37:18 66:23
74:14 85:5
87:3,9,11
91:8 92:2
110:18
119:11,14
135:14

144:18,22
145:4,12
**seeks**
30:9
**selling**
47:20,23
48:12
**semiannual**
69:5
**send**
136:18
142:19
**senior**
11:16 18:6,7
20:8 22:13
24:20 30:3
31:8 32:2,5,
8,12,19
33:15,17,24
34:7 35:3
38:10 39:9,
14,18 40:4,
10 41:3,7,
21,24 42:9
45:6 46:4
57:15 69:18
70:7,10
**sentence**
87:4
**separated**
120:12,13
**series**
5:19 126:17
**seriously**
149:10
**service**
31:14 34:24
35:8,12
38:24 39:3
49:22,25
54:13 135:12
**services**
40:7 41:11
45:5,9 46:3,
4 47:24
48:14,20
49:3 50:5

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| 78:13 113:19 | showed | space | 121:8,24 |
| 121:10 | 80:6,9 | 96:9 | 123:14 |
| 130:3,5,6 | 146:21 148:3 | **speak** | **split** |
| 132:2 | **showing** | 11:18,21 | 153:16 |
| **sessions** | 74:8 | 18:9,13,18 | **spoke** |
| 77:9 94:20 | **shows** | 20:7,12 | 11:6,24 |
| **set** | 127:7,8 | 50:8,13 | 12:4,24 18:5 |
| 26:6 35:21 | **sickness** | 78:25 79:4, | 91:16 145:14 |
| 36:8,12 | 63:4 | 10 82:8,11 | **spoken** |
| 70:8,9 112:2 | **sign** | 91:18 | 11:13 18:16 |
| 113:8 120:12 | 28:9 37:5 | **speaking** | **sponsored** |
| 132:6,7,10 | 78:10 | 11:7 83:21 | 43:14 |
| **sets** | **significant** | **specialist** | **spot** |
| 60:11 113:25 | 141:25 | 35:4,5,13 | 144:11 |
| 120:11 | **signing** | 45:9 46:23 | **spots** |
| **settlement** | 28:13 37:9 | 47:18 49:3 | 144:24 |
| 13:8 16:18 | **similar** | 121:11 130:4 | **spreadsheet** |
| **seven** | 39:17 59:13 | 135:12 | 119:2,6,7 |
| 114:16 121:4 | 115:17 | **specialists** | 121:20 122:4 |
| **severe** | **simple** | 31:14 32:6 | **stamped** |
| 139:2,12 | 19:10 141:6 | 34:24 35:8 | 69:9,11 |
| 142:4 | **simply** | 38:9,24 39:3 | 73:18,21 |
| **sexual** | 112:2 | 48:11 54:13 | 86:16 88:4, |
| 59:7 | **situation** | 135:20 | 25 89:7,10 |
| **shake** | 61:3 144:8 | **specific** | 97:2,18 |
| 6:15 | **situations** | 10:15 68:3,9 | 107:15,17 |
| **share** | 99:19 100:16 | 98:13 141:19 | 110:5 119:8 |
| 140:4 | **size** | 143:17 | 129:15,19 |
| **shared** | 41:10 | **specifically** | 134:21 135:5 |
| 78:4 140:7 | **Sledge** | 10:2 23:11 | 136:4,7 |
| **sheet** | 146:7,11 | 77:16 83:21 | 143:4,6 |
| 103:14 117:2 | **slightly** | 93:5 98:17 | 154:17 |
| 122:8,16,23 | 25:24 39:24 | 117:23 | **start** |
| 123:7,13,15, | 41:9 105:4 | 118:25 | 21:13 |
| 20,21,22,25 | 121:12 | 140:12 | **started** |
| 124:6 | **small** | 141:20 | 58:17 148:25 |
| **sheets** | 73:11 | 149:14 | **starts** |
| 120:10 | **sold** | **specifics** | 28:25 |
| **short** | 130:7 | 17:4 18:3 | **state** |
| 65:20 109:20 | **sort** | **specified** | 5:5,9,12 |
| 154:10 | 149:6 | 95:7 | 144:3 |
| **shots** | **sounds** | **specifies** | **statement** |
| 106:13 | 145:19 | 95:11 | 75:16 111:12 |
| **show** | **source** | **specify** | **states** |
| 10:3,6 | 14:18 | 76:8 | 22:16 23:15 |
| 126:10 | **South** | **speculating** | 70:18,21,24 |
| | 22:15 | 119:20 120:9 | 71:5 74:12 |

Adam Overton Kimmick
October 05, 2023

87:5

**status**
125:16

**Stefanie**
36:6 66:11
86:13 94:4

**step**
72:2

**stepped**
126:16

**stop**
11:5

**strategic**
113:24,25
114:13
124:15
134:14

**strategy**
99:17

**streams**
71:3

**structure**
46:20

**struggling**
147:17 149:5

**subject**
5:21

**subjective**
131:24

**submitted**
94:14

**Subscribed**
156:16

**subsequent**
123:13

**subsequently**
147:6

**successful**
74:5,15,20
88:23 131:18
152:16

**sue**
18:21

**suffered**
55:25 56:7

**suffering**
6:20

**sufficient**
78:14 80:14
83:19 98:23

**summary**
108:20
109:2,11
110:4,14
111:24 113:7
116:18
118:17 127:4

**summer**
147:8 148:20
149:2 153:12

**supervise**
26:10

**supplemental**
35:20 36:2,
25 66:13,14,
17

**support**
61:13,16
62:6 83:6,19
140:15

**supported**
83:6

**supporting**
66:4

**supposed**
118:15

**sure**
10:20,21
14:17 15:4
17:5 25:6
66:7,12
71:22,23
72:16 77:12
84:10,17
89:17 112:10
114:24
116:21
117:25
126:15
132:17
144:16
146:24
149:12 151:4

**surgery**
139:5,10

140:18,23,25
141:3,20,22
144:6,8
145:3,7

**sworn**
5:5 20:19
156:16

---

**T**

**tab**
118:25

**Tabool**
42:13

**take**
6:6 27:3
38:3 61:12
62:5,15,19,
23 63:11,17,
22 64:10,14,
22 65:2,14
79:16 93:11
96:4 105:9
126:17
136:10
138:2,8,13
139:15,21
142:6,8,9,
14,21 144:5,
17 145:10
148:13
154:4,21
156:7

**taken**
6:24 48:25
55:20 65:21
70:2 89:15
109:21 132:4
148:24
154:11

**takes**
149:10 153:4

**taking**
80:9 126:15
137:3 145:15

**talk**
9:24 19:24

78:16 94:21
102:24
116:20

**talked**
17:5 75:25
92:20

**talking**
6:11 78:19
102:23
104:23 127:3
128:3 149:14
151:17

**target**
101:2,17,19,
23 102:7,12
106:10
111:7,16
113:5 115:21
116:3,20,25
117:12,20
118:14,17
124:23
125:4,15
130:25
131:5,11
132:6,8
151:4

**targets**
40:25 68:4,
6,8,9 93:19
101:18,24
102:17,19,22
103:9,11,19
120:11
121:12 130:4

**tasks**
48:22 125:10

**team**
44:3 51:19,
23 52:13
53:3,17,18
54:7 61:6
81:9 84:8,
11,13,18,21
95:12 99:18
140:5,6,7,12
147:15
150:24

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| 151:7,9 | 66:2,7 96:22 | 156:2 | 49:4,12,21 |
| **Teams** | 97:17,23 | **theoretically** | 50:23 51:7 |
| 9:9 | 98:7,11 | 122:10 | 52:6,20 |
| **telephone** | 146:16 148:6 | **they'** | 53:11,23 |
| 19:18 | 149:24 | 62:5 | 54:4,19 |
| **tell** | 150:15,20 | **thing** | 62:4,5,15, |
| 17:13 56:10, | **terms** | 89:18 | 19,22,24 |
| 25 65:10 | 68:16 151:14 | **things** | 63:5,11,16, |
| 77:15 80:20 | **territories** | 20:23 78:18 | 17,20,23,24 |
| 82:9,13 | 33:7 100:25 | 84:16 125:12 | 64:11,14,17 |
| 96:15 125:2 | 111:24 | 134:8 148:12 | 69:6,16 |
| 141:12 142:5 | 113:13,24 | **think** | 72:12 74:8, |
| 143:13 | **territory** | 29:18 34:14 | 21 75:15 |
| 150:18 | 25:24 34:20 | 35:6 60:16 | 87:25 88:12 |
| **telling** | 69:2 70:18 | 86:14 93:24 | 89:20,21 |
| 127:13 144:4 | 71:25 72:3, | 94:5 126:12 | 90:5 91:13, |
| **ten** | 5,15,22 74:7 | 133:4 154:7, | 16 92:9,10, |
| 47:13 | 105:4 111:17 | 13 | 21 100:2 |
| **tenure** | 112:3,13,14 | **third** | 102:17 |
| 22:10 | 113:2 114:4, | 110:18 | 106:23 107:3 |
| **term** | 22 115:6 | **thought** | 108:22 |
| 80:15 130:21 | 120:13 | 18:23,25 | 111:17 |
| **terminate** | 122:24 | 19:11 77:18 | 112:10 |
| 55:18 57:4 | 125:22 | 83:17 96:16 | 116:9,11 |
| 58:2 98:14 | 126:13 | 144:25 | 126:14 128:4 |
| 100:7,11 | 137:12 | **three** | 131:9 137:14 |
| 116:14 | 153:16,18 | 23:18 31:12 | 138:2,8 |
| 145:22 | **testified** | 33:19 35:7 | 139:15,21 |
| 147:20 | 5:6 12:23 | 121:3,9 | 140:15 |
| 148:7,25 | 18:2,5 20:13 | 124:12 | 142:6,9,10, |
| 150:11 | 31:19,25 | **threw** | 14,22 144:5, |
| **terminated** | 93:22 99:4 | 72:10 | 12,17,25 |
| 47:6,7 54:7, | 105:23 | **time** | 145:10,15,18 |
| 14,15,21 | **testify** | 6:6 7:16 | 146:10 |
| 55:10 56:17 | 6:22,25 7:13 | 12:3 16:4,9 | 148:13 153:4 |
| 57:24 66:5 | 26:19 31:22 | 21:17 23:8, | 156:3 |
| 101:21 | 33:5,9 51:4, | 16 24:15 | **timeframe** |
| 102:10 | 10 53:21 | 25:13,17,19 | 137:22 |
| 106:16,23 | 98:3 109:17 | 26:17 29:15, | **timeline** |
| 136:24 | **testifying** | 25 30:3,16, | 103:5 |
| 146:13 | 33:20 | 17,24 31:4 | **timely** |
| 147:24 | **testimony** | 32:7,13 | 77:23 |
| 149:16,19 | 20:20,23 | 33:5,12 | **times** |
| 150:8 | **text** | 34:12,25 | 58:14 |
| **terminating** | 143:20 | 35:9 38:4, | 104:13,20 |
| 58:6 128:18 | **thank** | 14,20 39:4,7 | 131:25 |
| **termination** | 65:3,19 | 42:3,7,23 | 146:18,22 |
| | 97:16 138:11 | 43:3,17 47:6 | |

Adam Overton Kimmick
October 05, 2023

| | | | |
|---|---|---|---|
| **title** | **tough** | **two** | 127:17,18 |
| 21:18,20 | 116:12 | 6:11 21:22 | 144:16 |
| 22:6,12,14, | **traditionally** | 35:7 47:9,20 | **understanding** |
| 18 23:4 | 74:10 | 55:14 56:21 | 16:17 59:17, |
| 24:9,10 | **training** | 59:10 100:25 | 25 60:5,7,21 |
| 25:22 29:21, | 58:11,15,19 | 120:10 121:3 | 61:8,22,24, |
| 25 30:4,6, | 59:5,9,14 | 122:25 | 25 62:3,7 |
| 10,16 32:16 | 143:14 | 129:24 | 99:25 |
| 37:22,25 | 144:24 | 135:10 146:6 | **understands** |
| 38:6,10 42:6 | **trampoline** | 149:23 | 84:11 |
| 43:2,5 45:5, | 138:22 141:7 | **type** | **understood** |
| 8 46:2,7,9 | **transcribe** | 70:5 128:3 | 6:4 77:12 |
| 51:20 52:14 | 6:11,14 | **typical** | 116:22 |
| 53:4,7,22 | **transcript** | 41:6 141:8 | **United** |
| 69:15 130:3 | 156:6 | **typically** | 22:16 23:15 |
| **titles** | **transferred** | 40:5,19 41:5 | 70:18,21,24 |
| 22:7 25:23 | 34:19 48:4, | 70:19 77:8 | 71:4 74:12 |
| 31:5,12,17, | 20 | 82:24 91:6 | **unpleasant** |
| 24 34:3 | **transition** | 102:21 | 138:19 |
| 40:14 | 71:25 | 130:10,14 | **unreasonable** |
| **today** | **transpire** | 131:7,15,18 | 133:7 |
| 5:20 6:22 | 40:22 | | **unwilling** |
| 7:2,5 10:25 | **treating** | | 78:15 |
| 11:9 58:25 | 60:9 | **U** | |
| 59:2 121:21 | **Trinity** | | |
| 145:2 155:13 | 21:8 | **U.S.** | **V** |
| 156:3 | **true** | 24:14,23 | |
| **told** | 28:19,21 | 25:9 72:4 | **vacating** |
| 18:23,25 | 87:16 101:11 | 74:12 | 118:10 |
| 63:16 64:10 | 136:21 | **unable** | **Vaguely** |
| 81:18 115:13 | **truthful** | 9:20 78:17 | 27:10 36:22 |
| 138:18 | 6:5 37:12 | 98:19 114:14 | 60:20 |
| 142:9,21 | **try** | **unacceptable** | **valid** |
| 144:11,12, | 80:21 124:9 | 128:22 | 61:16 62:13 |
| 13,16 | 130:14 153:9 | 130:13 | **validate** |
| **tolerated** | **trying** | 133:10 | 32:24 57:2 |
| 59:20,22 | 72:8 89:25 | 135:25 | 69:19 102:13 |
| **tool** | 114:23,24 | **uncomfortable** | **validated** |
| 121:17 | 120:18 | 82:4,7,10,14 | 28:18 |
| **top** | 126:15 | 84:8 | **validating** |
| 91:24 146:20 | 127:17,18 | **uncovering** | 16:20 |
| 149:4 | **Tuesday** | 80:14 | **validation** |
| **topic** | 59:3 | **underperformi** | 148:15 |
| 139:25 | **turn** | **ng** | **varied** |
| **topics** | 28:4 | 46:6,14,15 | 25:12 |
| 19:24 | **twice** | **understand** | **various** |
| **total** | 119:15,18 | 5:23 6:17 | 121:6 |
| 111:15 | | 28:2 117:21 | |

Adam Overton Kimmick
October 05, 2023

vast
  113:20
velocity
  98:23 104:15
verbal
  6:15 85:23
verbiage
  73:10
verify
  32:25
versus
  111:9 126:2
village
  20:22
violations
  153:24
virtual
  59:11,12
vis-a-vie
  148:5
volume
  39:23 150:22

**W**

wait
  6:12 11:4
want
  6:6 11:5
  35:16 64:23
  65:15 66:12
  84:10,17
  86:25 130:18
  140:4 149:12
wanted
  71:8 79:21
  140:14
  142:24
  146:19,24
warrant
  46:23
way
  16:20,23
  64:20 66:3,5
  81:8 82:2,5
  84:14,15
  109:7 142:3

ways
  39:22
wed
  145:3
Wednesday
  59:3
week
  59:4
weekly
  77:7 79:3,7
  94:19
went
  138:24
wide
  12:22
Willcock
  16:9,11
Willins
  134:20
  135:8,11
window
  26:25
withdrawn
  93:21
witness
  5:4 13:13,16
  14:14 155:18
  156:10
work
  26:10 50:3,
  10 53:18
  54:25 61:12
  62:5,16,20,
  24 63:11
  64:15,18
  72:17 82:4
  83:14 84:15
  85:7,10
  112:12,23
  132:18
  138:9,13
  139:21
  142:6,15
  144:5 145:15
  152:5,8
workbook
  110:11 126:8

129:7,18
  134:20 135:8
worked
  49:13,17
  50:23 51:8,
  12 52:12
  53:2,16
working
  21:11,13
  106:12
  125:6,10
workplace
  58:12 59:18
works
  65:16
write
  74:17 75:11
  76:3,6,17
  88:15 107:22
writing
  76:19 81:5
  82:17,20,25
  85:22 93:4,
  11 101:6
  142:18,20
written
  103:11
wrote
  73:25 92:15
  136:20
  144:23
  145:9,11

**Y**

yeah
  10:12,20
  18:11 64:24
  65:4 72:9
  73:9 106:11
  108:10
  110:12
  121:25
  134:11 138:4
  139:8
year
  9:2 21:22

23:22 24:2,
  3,5,9 40:22
  44:9,11,18,
  21 55:12
  56:19 58:16
  71:18,20
  101:4,16
  110:24
  111:7,8,25
  112:6,9,15,
  19,20 114:8,
  23 115:13
  116:21,23
  117:7 120:19
  124:8 125:21
  127:22
  128:22
  129:12
  130:25
  131:6,11
  133:21,24
  135:9 147:4,
  5
years
  8:22 17:16
  55:15 56:21
  138:16
yesterday
  7:22 8:9
  10:9 58:22
York
  5:6,14 25:21
  59:7,8
Youkhanna
  9:12 16:3
  18:8 23:24
  50:9 97:2,5,
  7,9,10,11
  139:17,20
YTD
  110:19,22

**Z**

Z10
  120:5

# EXHIBIT C

Eddie Youkhanna
October 04, 2023

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

In the Matter Between,

PATRICIA HARAN,

                          Plaintiff,

            -and-


ORANGE BUSINESS SERVICES INC.,

                          Defendants.
------------------------------------------X
                DATE: October 4, 2023
                TIME: 10:00 a.m.



        EXAMINATION BEFORE TRIAL of EDDIE YOUKHANNA, a non

party witness in the above-entitled matter, held before

Emily Glass, a Notary Public of the State of New York.

Eddie Youkhanna
October 04, 2023

```
1    A P P E A R A N C E S:

2

3    FISHER TAUBENFELD, LLP.
     Attorneys for the Plaintiff
4    225 Broadway, Suite 1700
     New York, New York 10007
5    BY: LIANE FISHER, ESQ.

6

     BAKER HOSTETLER
7    Attorneys for the Defendants
     45 Rockefeller Plaza
8    New York, New York 10111
     BY: JUSTIN A. GUILFOYLE, ESQ.

9

10                  *           *           *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Eddie Youkhanna
October 04, 2023

```
1        A.    1992 was when I finished so it would be from
2   1989 to 1992.
3        Q.    Did you earn a degree?
4        A.    Yes.
5        Q.    What degree did you obtain?
6        A.    AS art and science, it's not a four year
7   bachelors, it's a three year degree.
8        Q.    Where do you currently work?
9        A.    At Checkpoint Software.
10       Q.    How long have you worked there?
11       A.    One year and five months.
12       Q.    What was your start date?
13       A.    June 13, 2022.
14       Q.    What is your position?
15       A.    Vice President of Sales.
16       Q.    What are your job duties?
17       A.    I run sales for the central area of North
18   America for Checkpoint.
19       Q.    Where did you work before Checkpoint?
20       A.    At Orange Business Services.
21       Q.    What were your dates of employment for
22   Orange?
23       A.    I don't recall the exact start date.  I
24   finished June 13th, it would be around five years, so,
25   probably June of 2017 to June of 2022.
```

Eddie Youkhanna
October 04, 2023

```
 1        Q.    What were the circumstances of your ending of
 2    your employment with Orange?
 3        A.    Just wanted to move to cyber security.
 4        Q.    Did you resign?
 5        A.    Yes, I did.
 6        Q.    What was your position with Orange at the time
 7    that you left?
 8        A.    I was Vice President of North America Sales.
 9        Q.    What were your job duties that capacity?
10        A.    Running sales for North America.
11        Q.    What did that entail?
12        A.    That entailed managing five retail managers
13    that managed around probably anywhere between five and
14    seven account managers. We ran all aspects of sales and
15    engineering.
16        Q.    Was Adam Kimmick one of the retail managers
17    you managed?
18        A.    One of the regional managers, yes.
19        Q.    Did you say retail, five retail manageRs or
20    regional managers?
21        A.    Regional managers.
22        Q.    Okay. I apologize.
23        A.    Sorry I talked over you, yes regional
24    managers.
25        Q.    How long did you hold the position of VP of
```

Eddie Youkhanna
October 04, 2023

```
 1    North American sales for orange?
 2         A.    I held it for four and a half years.
 3         Q.    What was your position before that?
 4         A.    Head of IS sales which stands for Innovation
 5    Services Sales.
 6         Q.    While working for Orange did you receive any
 7    training on discrimination or retaliation in the
 8    workplace?
 9         A.    Yes.
10         Q.    When did you receive training?
11         A.    I don't recall.
12         Q.    Did receive training more than once?
13         A.    Yes.
14         Q.    When was the most recent training that you
15    received at Orange?
16         A.    I don't recall the exact dates.
17         Q.    Was it within the last year of your
18    employment?
19         A.    Honestly I don't remember.
20         Q.    What did the training entail?
21         A.    The training entailed videos that would show
22    sample work case scenarios you would have to answer at
23    the end multiple choice questions about what is right
24    and what is wrong.
25         Q.    What is your understanding of discrimination
```

Eddie Youkhanna
October 04, 2023

```
 1        A.    I believe her position was account manager.

 2        Q.    What were her job duties?

 3        A.    To handle the day-to-day activities and grow

 4   accounts, revenue on accounts.

 5        Q.    Who did she report to?

 6        A.    Adam Kimmick.

 7        Q.    Did you ever have a chance to observe her

 8   performance?

 9        A.    Yes.

10        Q.    When?

11        A.    I don't know the dates. It was a dinner with

12   one of her costumers and her.

13        Q.    Who was the costumer?

14        A.    Cap Gemini (phonetic).

15        Q.    Who was present at this dinner?

16        A.    Me and her and twelve, at least maybe ten to

17   twelve employees from Cap Gemini.

18        Q.    I know you don't know a date, was this within

19   the last year of her employment or prior to that?

20        A.    Prior to that.

21        Q.    What was it that you observed about her

22   performance?

23        A.    At the dinner she was quite.

24        Q.    Anything else?

25        A.    No.
```

Eddie Youkhanna
October 04, 2023

 1    Haran's daughter?

 2         A.    I do not recall.

 3         Q.    Okay. I have no further questions.

 4               EXAMINATION BY:

 5               MR. GUILFOYLE:  I have a couple.

 6         Q.    Do you remember being asked about your title

 7    when you were at or Orange?

 8         A.    During this call?

 9         Q.    Yes.

10         A.    Yes, I do.

11         Q.    Is it correct you had about 100 people

12    reporting to you in your role?

13         A.    Yes.

14         Q.    How many regional managers reported to you?

15         A.    Five or five, it varied.

16         Q.    Okay. Adam Kimmick was one of those regional

17    managers?

18         A.    Yes.

19         Q.    Ms. Haran reported to Mr. Kimmick in that

20    role?

21         A.    Yes.

22         Q.    So, would Mr. Kimmick be a source of

23    information regarding the reasons why Patty was

24    terminated?

25         A.    Yes.

### CHANGES AND SIGNATURE PAGE

WITNESS NAME:          EDDY YOUKHANNA
DATE OF DEPOSITION:    October 4, 2023

| PAGE / LINE | CHANGE | REASON FOR CHANGE |
|---|---|---|
| Global | "Eddie" to "Eddy" | Transcription Error / Word |
| 12:23 | Change "quite" to "quiet" | Transcription Error / Word |
| 13:3-6 | Unintelligible Transcription | Transcription Error / General |
| 16:1 | Change "than" to "then" | Transcription Error / Word |
| 17:2 | Change "baring" to "faring" | Transcription Error / Word |
| 17:25 | Change "their" to "they're" | Transcription Error / Word |
| 21:21 | Change "review ing" to "reviewing" | Transcription Error / Word |
| 32:15 | Change "five and five" to "four and five" | Transcription Error / Word |

Eddie Youkhanna
October 04, 2023

1

2        I hereby certify that having been first duly sworn

3     to testify to the truth, I gave the above testimony.

4

5        I FURTHER CERTIFY that the foregoing transcript is

6     a true and correct transcript of the testimony given by

7     me at the time and place specified hereinbefore.

8

9

10                            EY

11            _____

12                     Eddie Youkhanna

13

14

15        Subscribed and sworn to before me

16      this 16th day of

17     _____November_____ 2023___.

18     _____

19       NOTARY PUBLIC

20

21

22

23

24

25                  C E R T I F I C A T E

Eddie Youkhanna
October 04, 2023

```
 1    STATE OF NEW YORK         )

 2                              :  SS.:
      COUNTY OF RICHMOND        )
 3

 4         I, EMILY GLASS, a Notary Public for and within the

 5    State of New York, do hereby certify:

 6         That the witness whose examination is hereinbefore

 7    set forth was duly sworn and that such examination is a

 8    true record of the testimony given by that witness.

 9         I further certify that I am not related to any of

10    the parties to this action by blood or by marriage and

11    that I am in no way interested in the outcome of this

12    matter.

13         IN WITNESS WHEREOF, I have hereunto set my hand

14    this 16th day of October 2023.

15

16

17

18

19

20

21

22

23

24

25
```

Eddie Youkhanna
October 04, 2023

**1**

1
  24:25 25:12
100
  24:8 32:11
1003
  4:2
11:15
  33:2
13
  7:13
13th
  7:24
16
  25:2,12
19
  25:2,12
1989
  7:2
1992
  7:1,2
1994
  6:10
1995
  6:10

**2**

2
  26:9
2017
  7:25 11:24
2020
  15:15 21:8
  24:17,20
  26:8 31:14
2021
  21:4,5 25:20
2022
  7:13,25
24
  25:20

**3**

3
  30:13

**6**

60089
  4:3

**9**

982
  29:17
9983
  29:17

**A**

a.m.
  33:2
ability
  5:3,6
accommodate
  4:23
account
  8:14 12:1
  15:23,24
  16:3,5 17:16
  18:1 20:11,
  14 27:11
accounts
  12:4 15:21
  16:7,9,13
accused
  6:17
achieved
  6:21 28:4
achievement
  27:15,16,21
  28:2,3,5
acknowledge
  3:8,11
act
  11:14 31:5

actions
  10:13 11:4
activities
  12:3
activity
  17:18,20,23
Adam
  5:24 6:2
  8:16 12:6
  13:13 15:4
  32:16
address
  4:1
administered
  3:11
affect
  5:3,6
agree
  3:19
Agreed
  3:18
agreement
  3:16,17
ahead
  17:14
alright
  28:19 31:10
America
  7:18 8:8,10
American
  9:1
annual
  27:15 28:5
answer
  4:13,24 6:15
  9:22 10:3,
  15,16,19
  13:6 16:15
  17:8 23:21
  30:18,19
answers
  4:21
anticipated
  15:2
anyone
  5:10,16,18
  13:10 21:11

23:22 24:1,
  3,6,11,14
apologize
  8:22
appears
  25:19
approve
  16:16,19
  19:12,18
  22:2,4 23:25
  24:3,6,21
approved
  17:4 18:6,
  18,23 19:2,8
approving
  19:24 20:7
approximate
  21:3
area
  7:17
around
  7:24 8:13
  22:16 23:1
  26:19 31:18
arrangement
  3:15
art
  7:6
asked
  6:14 18:9
  32:6
asking
  4:5,21 27:25
aspect
  14:22 15:5
  16:21 18:9
aspects
  8:14
attend
  6:25 31:15,
  19
attorneys
  3:7
aware
  31:3,7

Eddie Youkhanna
October 04, 2023

**B**

bachelors
  7:7
back
  18:5 27:14
baring
  17:2
based
  16:20 17:4
  18:6 25:25
bate
  25:12 26:8
  29:16 30:12
bates
  26:14,16
beginning
  25:18
believe
  10:22 12:1
  14:17,21
  21:19
besides
  19:9
best
  4:14
better
  14:8,11
big
  30:3
bit
  29:12
black
  29:10,13
book
  28:16
box
  27:15
break
  4:22,25
  31:13
Buffalo
  4:2
building
  17:25

bunch
  29:10
Business
  7:20
butcher
  5:14

**C**

calendar
  21:8
call
  32:8
called
  3:1
camera
  3:22
Cap
  12:14,17
capacity
  8:9
care
  11:17 31:1
case
  5:25 6:11
  9:22
categories
  10:11
central
  7:17
chance
  12:7 13:6
chat
  24:23 25:1
  26:1 29:5,25
Checkpoint
  7:9,18,19
choice
  9:23
circumstances
  8:1 14:12
City
  10:20 11:3,4
claims
  6:3

clear
  26:19
close
  11:17
college
  6:22,24,25
come
  14:15 27:6,
  10 30:16
comes
  17:17
commission
  16:9
commissions
  16:6,12
community
  6:22
company
  15:25
compensation
  16:14 26:9
complained
  31:4,7
complication
  16:15
components
  18:25
concept
  11:13 15:20
concluded
  33:3
condition
  30:17
conditions
  11:6
consent
  3:14
considered
  10:12 19:16
  24:20
conversations
  30:22
copy
  3:19
correct
  18:7 28:22

32:11
costumer
  12:13
costumers
  12:12 17:19,
  21,24
counsel
  3:14
Country
  15:24,25
  16:1,4
Country's
  16:5
couple
  32:5
court
  4:12,16,19
covered
  29:10
cyber
  8:3

**D**

date
  7:12,23
  12:18 25:25
  27:21 28:2,
  3,4
dates
  7:21 9:16
  12:11
daughter
  30:17,20,23
  31:1,20,22
  32:1
day
  25:20 31:15
day-to-day
  12:3
deals
  14:9 15:9
decision
  16:16 17:4
  18:6 19:12,
  18 21:11,20
  24:21

Eddie Youkhanna
October 04, 2023

Defendant
  6:5
definition
  28:17
degree
  7:3,5,7
deposition
  3:8,9,10
  5:8,11
determine
  21:7
differ
  28:9
different
  16:4 18:24
  29:9
difficult
  24:9
dinner
  12:11,15,23
directors
  20:14
discriminatin
g
  6:17
discriminatio
n
  9:7,25 10:6
  11:9 31:8
discuss
  22:9,14,19
  23:6,9,12
discussion
  5:18
document
  19:16,21
  20:1 24:23
  25:1,5,9,13,
  15,18 26:1,
  7,11,23
  27:2,3,14,
  24,25 29:5,
  8,16,17,20,
  22,24 30:1,
  4,10,12,14
documents
  5:21 19:11,

14 26:19
doing
  18:14 19:2
download
  26:4
Drive
  4:2
dual
  27:7
duly
  3:2
duties
  7:16 8:9
  12:2

─────────────

        E

earlier
  18:5
earn
  7:3 16:6,9,
  12
Eddie
  3:25
education
  6:20
else's
  24:4
employee
  6:18 10:13
  11:5,17
  23:18
employees
  12:17 31:3,7
employer
  10:12 11:5
employment
  7:21 8:2
  9:18 10:13
  11:6 12:19
  13:20 14:13
  25:20 27:7
end
  9:23 15:21,
  23,24 16:2,
  3,7,9,12,13

ending
  8:1
engineering
  8:15
entail
  8:11 9:20
entailed
  8:12 9:21
entitled
  25:2
equate
  18:3
equivalent
  18:2
Everyone
  14:2
exact
  7:23 9:16
exactly
  11:10 15:3
  21:23 22:25
Examination
  3:5 32:4
  33:2
examined
  3:3
exist
  20:20
explain
  13:25 15:23

─────────────

        F

fact
  13:1 22:4
fail
  24:14
fairing
  23:12
familiar
  10:20,23
  11:1,2,8,13,
  20,22 15:20
  27:3
familiarize
  30:6,7

family
  11:13,17
  31:4
faring
  17:5 18:19
February
  25:20
federal
  11:8
feedback
  23:15
female
  10:8,10
fill
  14:10 27:7
finish
  4:21
finished
  7:1,24
first
  3:2 11:22
  25:19
Fisher
  3:6,18 4:4
  26:15,20
  28:1
five
  7:11,24
  8:12,13,19
  32:15
follows
  3:4
force
  19:15,17,20,
  23 20:2,10
form
  10:2,14 17:7
  23:20 27:23
forward
  14:9
four
  7:6 9:2
front
  25:6

Eddie Youkhanna
October 04, 2023

**G**

gap
  17:18
gave
  4:14
Gemini
  12:14,17
general
  27:25 28:1
getting
  10:7,9
give
  4:17 10:5
  19:13 23:15
  24:24 31:10
given
  6:7 15:14
goal
  17:2,6,18
  18:20 19:3
  28:4,8
going
  4:5,13 21:21
  24:23 26:1
  27:14 29:5,
  24
Good
  4:4
government-
issued
  3:21
Great
  25:8
Grove
  4:2
grow
  12:3
guess
  14:24 21:4
GUILFOYLE
  3:19 10:2,14
  17:7 20:9
  23:20 24:25
  26:13,18,21
  27:23 30:18

31:13 32:5

**H**

half
  9:2
handle
  12:3
handled
  16:10
handwriting
  29:11,19
happy
  4:23
Haran
  4:5 11:20
  14:15 15:9,
  14,17 16:7,
  10,17 20:3,
  7,25 21:12,
  24 23:1,16,
  18,23 24:4
  25:16 26:10
  30:23,25
  31:15,19
  32:19
Haran's
  14:13 20:4,
  22 22:7,9
  23:6,9 24:17
  27:6 28:16
  30:16 32:1
head
  4:17 9:4
headquarters
  15:25
hear
  4:11 26:20
held
  9:2 22:6
high
  16:22,23
  17:5,10
  18:10 19:6
highest
  6:20

Hobson
  4:2
hold
  8:25 26:4
  29:15
holding
  3:21
honest
  24:9
Honestly
  9:19
HR
  21:15,16,17,
  23
human
  10:21,23
  21:15

**I**

identificatio
n
  3:21
Illinois
  4:2
illnesses
  5:2
imagine
  21:4
incident
  6:13
increase
  15:17
indicate
  3:16
indicating
  3:23
inform
  31:18
information
  20:3,6,10,
  13,16,19
  32:23
ing
  20:7 21:21
Innovation

9:4
instant
  6:16
insufficient
  24:12
insufficientl
y
  18:19
Integration
  20:20
Intergration
  20:17

**J**

Jennifer
  21:19
job
  7:16 8:9
  12:2
June
  7:13,24,25
Junior
  6:22,24,25
Justin
  5:14,19
  26:17

**K**

keep
  29:3
Kimmick
  5:24 6:2
  8:16 12:6
  13:13 15:12
  22:7,21,24
  23:4,7,10,
  15,19,22
  24:1,7,11,14
  31:18,25
  32:16,19,22
kindly
  3:20
know
  4:9,12,23
  6:14 10:3,

Eddie Youkhanna
October 04, 2023

16,19,25
11:1,2,3,4,
7,10,11,16
12:11,18
13:18,24
15:3,9,14,
16,19 16:14,
15 17:8
19:21 20:18,
21 21:1,23
22:1,18
23:14,21,24
25:5 26:14
28:10,11,17,
20,23 29:6,
19 30:7,19
31:2

**L**

lack
 14:24,25
 15:1 16:22,
 23 17:5,10,
 11 18:10
 19:19
law
 10:21,24
 11:3,8
Lawson
 21:19,24
 22:6,10,15,
 19
Lawson's
 21:20 22:22
lawsuit
 6:5
lawyer
 6:14
learn
 13:9,17
 30:16,20
learned
 13:14
leave
 11:14 31:5

left
 8:7 27:18
letter
 25:2,19
level
 6:20
lieu
 3:11
line
 13:16 30:7
little
 29:12
long
 7:10 8:25
look
 14:3,5 26:17
 29:12,15
 30:5
looking
 21:7 26:19
 29:9
looks
 21:23
Lorraine
 27:11
loss
 6:12
lot
 26:19

**M**

made
 24:21
make
 14:10 21:21
 26:18
making
 19:11,17
male
 10:8,9
manage
 21:23
managed
 8:13,17 16:7

manager
 12:1 17:16
managers
 8:12,14,16,
 18,19,20,21,
 24 20:11
 32:14,17
managing
 8:12
manner
 3:15
marked
 25:11
mat
 27:3
matter
 6:16
mean
 11:10 13:2,
 25 14:5,23,
 25 16:23
 17:1,23 21:1
 28:2,3,6
 30:5
meaning
 11:1
means
 17:2 28:21,
 24
medical
 11:14 30:17
 31:4
medications
 5:5
meet
 24:15
meeting
 22:6
member
 11:18
met
 20:23 21:8
minute
 29:8 30:5
 31:10,13
Modesto
 6:24,25

moment
 25:8 30:2
month
 21:1 22:17
months
 7:11
morning
 4:4
move
 8:3
multiple
 9:23
mute
 25:3

**N**

name
 3:17,24 4:4
 5:15 26:10
 27:11
nature
 6:11
necessarily
 11:15
need
 4:22 22:2
 26:21
needs
 14:4,7 21:22
negative
 23:15
never
 27:2,24
 28:18
nods
 4:16
nonverbal
 4:17
North
 7:17 8:8,10
 9:1
Notary
 3:2
number
 14:2,5,6

Eddie Youkhanna
October 04, 2023

```
    16:25 26:14,
    16
numbers
    16:23 17:11
    18:11,13,17


        O

oath
    3:11 4:7
Objection
    10:2,14 17:7
    20:9 23:20
    27:23 30:18
objections
    3:15
OBS
    29:16
observe
    12:7
observed
    12:21
obtain
    7:5
October
    31:14
OEB
    13:6
Okay
    8:22 10:20
    17:9 18:5
    24:23 25:7,
    10 26:2,6
    27:21 28:11
    29:7 30:1,3,
    9 32:3,16
once
    4:20 9:12
one
    6:10 7:11
    8:16,18
    10:10 12:12
    18:22 19:1
    24:24 32:16
open
    25:5,7 29:7
```

```
opened
    29:6 30:1
opportunities
    17:25
opportunity
    14:3,6
orange
    7:20,22 8:2,
    6 9:1,6,15
    11:16 14:16,
    17 31:3,8
    32:7
order
    14:10
orders
    28:23 29:3
owns
    15:25


        P

P170
    30:13
P179
    30:13
page
    29:11
Pain
    27:11
paragraph
    25:19
part
    20:22
participants
    26:10
participate
    21:11
participating
    3:7
parties
    3:14
Patricia
    4:5 11:20
Patricia's
    6:3
```

```
Patty
    26:10 32:23
payment
    26:9
penalty
    3:12 4:7
pending
    4:24
people
    4:20 24:8
    32:11
perceive
    13:1
performance
    12:8,22
    13:9,15
    14:19,21,22
    15:1,6,7
    16:20,21
    17:16 18:7,
    10,25 19:14
    23:6 24:17,
    20
period
    21:3,6
perjury
    3:13 4:7
person
    3:12
phonetic
    5:25 12:14
physically
    3:8
pineline
    23:9
pipeline
    13:22 14:1,9
    15:10,18
    16:22,24
    17:5,11
    18:2,4,10
    19:6,20
    20:4,10,19
    24:12
place
    3:12
```

```
plan
    15:17 16:14
please
    3:16,19,24
    4:1,9,17,20
point
    15:1 17:6
    18:15
policy
    11:16
poor
    14:21 15:7
poorly
    19:2
PORPL
    13:6
POS
    13:5
position
    7:14 8:6,25
    9:3 11:25
    12:1
preparation
    5:10
prepare
    5:8
present
    3:9,20 5:18
    12:15 15:17
President
    7:15 8:8
presumed
    4:13
prevention
    6:12
prior
    12:19,20
    23:16
probably
    7:25 8:13
    11:24
problem
    13:22
procedures
    4:25
prohibited
    10:11
```

Eddie Youkhanna
October 04, 2023

| | | | |
|---|---|---|---|
| prohibits | read | refresh | resigned |
| 11:5 | 30:7 | 25:15,23 | 27:12 |
| promoted | reading | regarding | resources |
| 10:7,9 | 30:3 | 11:8 22:7 | 21:15 |
| provide | reason | 32:23 | responding |
| 4:21 | 14:18 19:5 | regional | 4:6 |
| Public | reasons | 8:18,20,21, | response |
| 3:2 | 17:10 18:22 | 23 32:14,16 | 4:15 10:18 |
| put | 19:1,8 32:23 | related | responses |
| 24:23 25:1 | recall | 18:3 | 4:17,18 |
| 26:1 29:5,24 | 7:23 9:11,16 | remember | retail |
| PWAOEPBG | 20:6,22,24 | 9:19 19:10, | 8:12,16,19 |
| 13:3 | 21:10 24:3, | 25 20:8 21:2 | retaliating |
| | 19,22 27:9, | 22:8,13,16, | 6:17 |
| | 13 31:6,9 | 17,20,25 | retaliation |
| **Q** | 32:2 | 23:5,17 | 9:7 11:9 |
| | receive | 24:8,9,13,16 | revenue |
| qualify | 9:6,10,12 | 28:25 29:2,4 | 12:4 16:23, |
| 17:15 | received | 30:24 31:17, | 25 17:11,17 |
| quality | 9:15 26:16 | 21,22,24 | 18:11,13,17 |
| 16:22,23 | recent | 32:6 | 27:18 28:11, |
| 17:5,11 | 9:14 | remotely | 17,20 |
| 18:10 19:6 | reck | 3:10 | review |
| quantify | 25:12 | repeat | 5:21 19:11, |
| 17:16 | recognize | 4:12 | 24 21:21 |
| question | 26:10 29:17 | rephrase | 24:17,18,20 |
| 4:8,11,13, | 30:10 | 4:9 17:9 | 25:8 26:23 |
| 14,24 10:4, | recollection | report | 29:8 30:2 |
| 16,17,19 | 25:15,23 | 12:5 24:14 | 31:11 |
| 11:11 17:8 | recommend | reported | reviewing |
| 18:5 23:21 | 15:12 21:24 | 15:4 23:18, | 20:6 |
| questions | recommended | 22 32:14,19 | right |
| 4:6,18,21 | 27:7 | reporter | 9:23 17:11 |
| 6:14 9:23 | record | 3:7,20 4:12, | 18:11 19:6 |
| 32:3 33:1 | 3:17,24 4:1 | 16,19 | 26:21 |
| quite | 25:11 26:7, | reporting | rights |
| 12:23 13:1,3 | 13,18 29:16 | 3:10,16 | 10:21,24 |
| quota | 30:12 | 24:1,7,8,11 | 31:4 |
| 14:2,10 | referred | 32:12 | role |
| 15:14 18:15 | 18:13 19:17 | represent | 21:20 27:8 |
| 20:22 21:8 | referring | 4:5 27:22 | 32:12,20 |
| 23:13 24:15 | 18:14 | 28:14 | room |
| | reflecting | represents | 3:9 |
| **R** | 19:14 | 28:12 | run |
| | reflects | resign | 7:17 |
| ran | 20:3 | 8:4 | Running |
| 8:14 | | | 8:10 |

Eddie Youkhanna
October 04, 2023

**S**

sales
7:15,17 8:8,
10,14 9:1,4,
5 14:2,23,
24,25 15:1,
2,7 16:6
17:15,17
18:25 19:15,
17,20,23
20:1,2,10
26:8 28:15,
16
sample
9:22
says
25:19 26:8
27:15,18
scenarios
9:22
science
7:6
second
24:24
security
6:13 8:3
see
17:9 25:2,
18,21 26:3
27:14,16,19
29:11
selling
16:1
sensation
14:13
sense
14:11
series
4:6
serious
30:17
Service
20:17,20
Services
7:20 9:5

seven
8:14
several
18:24
shakes
4:17
shoplifting
6:13
show
9:21
showing
19:19
shown
19:21
sick
30:20 31:1
similar
26:19
single
30:7
software
7:9 19:15
source
32:22
speak
5:10,13,16
22:21,24
23:4 31:25
Specialists
20:17,20
specific
11:11 27:25
specifically
14:20 19:23
28:21
spoken
5:24 6:2
stamp
26:8
stamped
25:12 29:16
30:12
stands
9:4
start
7:12,23

started
11:23
State
3:3,24 4:1
10:23
stating
3:16
stop
14:15
strategic
29:1
subject
4:7
suffering
5:2 30:17
summary
26:9
supporting
16:5
supposed
29:12
sure
15:5 21:21
26:5,15,16
surgery
31:20,23
sworn
3:2 6:7

**T**

take
4:22,25
11:17 25:8
29:8 30:2,5,
25
taken
5:5
taking
10:12 11:5
talked
8:23 17:17
talking
4:20
tell
10:5

ten
12:16 31:13
term
28:11
terminate
16:16 18:6
21:12
terminated
15:2,12
18:15,22
20:25 21:25
22:17 23:2,
19,23 25:16,
24 32:24
termination
15:10 17:4
18:19,23,24
19:2,9,12,
18,24 20:7,
23 21:6
22:2,4,7,9,
14,22 23:25
24:4,6,21
25:2
terms
11:6 18:17
testified
3:3 27:24
testify
5:3,6
testimony
6:7
thank
14:12
things
17:4 29:10,
13 31:11
think
21:5 26:15
31:10
third
27:15
three
7:7 31:15
tiff
13:4,5

Eddie Youkhanna
October 04, 2023

time
  4:22 6:2 8:6
  11:25 13:7
  15:10 18:18
  20:23 21:3,
  6,7 23:1,19,
  23 24:4
  27:6,10
  30:25 31:14,
  19
title
  32:6
today
  4:6 5:3,6,22
  26:24 29:22
  30:14
top
  26:8
total
  16:23,25
  18:11,13,17
  28:16
TPHEG
  13:4,5
training
  9:7,10,12,
  14,20,21
  31:16,19
transcribe
  4:19
true
  13:3
truthful
  4:15
try
  4:9
twelve
  12:16,17
two
  4:20 6:10
  17:4,10,13
  19:9 28:9
type
  4:16 13:16

U

unable
  31:19
understand
  4:8,25 10:17
  17:3
understanding
  9:25 18:18
understood
  4:14

V

variables
  17:13
varied
  32:15
verbal
  4:18
verification
  3:22
Vice
  7:15 8:8
videos
  9:21
violated
  31:5
VP
  8:25

W

wait
  4:20
waive
  3:15
want
  5:14 11:23
  17:3 31:11
wanted
  8:3 31:15
way
  13:4,5 14:8
  19:19

witness
  3:1,12,20,23
  33:3
word
  14:14
work
  7:8,19 9:22
  11:17 30:25
worked
  7:10
working
  9:6 14:15
workplace
  6:18 9:8
  10:1,6,13
  11:9
wrapping
  31:12
wrong
  9:24

Y

year
  7:6,7,11
  9:17 12:19
  13:19 15:15
  21:4,9 27:21
  28:2,3
years
  6:10 7:24
  9:2 28:7
York
  3:3 10:20,23
  11:3,4
Youkhanna
  3:25 24:25
  25:11 26:9
  30:13
YTD
  27:15

# EXHIBIT D

**In the Matter Of:**

*Haran vs*

*Orange Business Services Inc.*

*PATRICIA HARAN*

*April 26, 2023*



```
                                                          1
 1

 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    - - - - - - - - - - - - - - - - - - - - - - - -x
      PATRICIA HARAN,
 4

 5                                Plaintiff,

 6
                                  Index No.:
 7                                1:21-CV-10585-VSB

 8
                     -against-
 9

10
      ORANGE BUSINESS SERVICES INC.,
11

12
                                  Defendant.
13    - - - - - - - - - - - - - - - - - - - - - - - -x

14        IN-PERSON DEPOSITION

15                        OF

16

17        TAKEN ON:  April 26, 2023

18    - - - - - - - - - -- - - - - - - - - - - - - -x

19

20

21

22

23

24

25
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                              April 26, 2023

7

```
 1              A P P E A R A N C E S:

 2   FISHER TAUBENFELD LLP
           Attorneys for Plaintiff
 3         225 Broadway, Suite 1700
           New York, New York 10007

 4
      BY:  LIANE FISHER, ESQ.
 5            liane@fischertaubenfeld.com

 6

 7   BAKER HOSTETLER
           Attorneys for Defendant
 8         45 Rockefeller Plaza, 14th Floor
           New York, New York 10111

 9

10   BY:  JUSTIN A. GUILFOYLE, ESQ.
            jguilfoyle@bakerlaw.com

11
            AMY I TRAUB, ESQ.
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                               April 26, 2023

8

```
 1

 2                       - o 0 o -

 3

 4             P A T R I C I A    H A R A N,

 5        having been first duly sworn by a Notary

 6    Public of the State of New York was examined and

 7                   testified herein:

 8

 9                       - o 0 o -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                               April 26, 2023

24

```
1              P. HARAN

2    during your employment of Level 3 or

3    Lumen?

4         A.   No.

5         Q.   When were you hired by Orange

6    Business Services -- and just for the

7    record, I'm going to be referring to

8    Orange Business Services NA, Inc. as

9    Orange or OBS throughout the deposition;

10   is that okay?

11        A.   Yes.

12        Q.   So when were you hired by

13   Orange?

14        A.   I was hired -- I believe it

15   was May of 2017.

16        Q.   And what was the position for

17   which you were hired?

18        A.   Account manager.

19        Q.   Does it have a specific title

20   at Orange?

21        A.   I believe it was account

22   manager --

23        Q.   Okay.

24        A.   -- was the technical title.

25        Q.   Do you recall if you signed
```

Haran vs                                                      Patricia Haran
Orange Business Services Inc.                                 April 26, 2023

                                                                    26

```
 1                P. HARAN

 2    2017?

 3         A.   Yes.

 4         Q.   Did you always have the same

 5    role throughout your entire tenure at

 6    Orange?

 7         A.   Yes.

 8         Q.   So you never changed roles?

 9         A.   No.  As far as titles, you

10    know, if that's what you mean -- titles

11    is -- has -- did not change.

12         Q.   Did your responsibilities

13    change at any time while at Orange?

14         A.   Just accounts that I was

15    working on would have changed.

16         Q.   When did that change?

17         A.   Probably several times over my

18    tenure there.  You know, just sort of

19    like somebody resigned, so we need you

20    to take on these accounts, and also work

21    on your other accounts, we're going to

22    move that account to somebody else, that

23    kind of thing.

24         Q.   Did there ever come a time

25    where you started taking on more
```

Haran vs                                                            Patricia Haran
Orange Business Services Inc.                                       April 26, 2023

27

```
 1              P. HARAN

 2   responsibilities for A-end accounts?

 3       A.   Yeah.  Yeah.  That was part

 4   of -- somebody left, somebody resigned.

 5   And I was asked to handle some of her

 6   A-end accounts during -- because she had

 7   left the company.

 8       Q.   So that's not something that

 9   you requested to take on?

10       A.   Well, at that time it was

11   brought to me.  I mean, over the years I

12   had spoken about the potential of

13   working on A-end accounts, yes, but

14   these particular accounts, you know, I

15   was asked to work on them because the

16   person who had them had resigned from

17   the company.

18       Q.   Do you recall about when that

19   was?

20       A.   I recall not exactly sure, but

21   I want to say it was in the January

22   of 20 -- I guess it would have been

23   January of 2020 timeframe, I believe.

24       Q.   And who is the person that

25   left that you're referring to?
```

Haran vs                                                            Patricia Haran
Orange Business Services Inc.                                       April 26, 2023

                                                                        28

```
1                        P. HARAN

2           A.   Lorna Paine.

3           Q.   I'm going to show you the

4      documenter.  Mark this as Haran 2.

5      (Whereupon,  Bates  OBS13  was  marked  as

6      Exhibit  2  for  identification,  as   of

7      April 26th, 2023.)

8                MR. GUILFOYLE:  For the

9    record, this is a one-page document

10   bearing Bates OBS 13.

11          Q.   Ms. Haran, do you recognize

12     this document?

13          A.   Vaguely, I recognize it.  I

14     mean, it says Employee Handbook

15     acknowledgment for the United States.

16     So, I mean, I think there was a big pile

17     of paper that I signed when I went on

18     board and I'm sure this was one of them.

19     I don't specifically recall it, but it's

20     my signature.

21          Q.   Okay.  That's dated May 11,

22     2017?

23          A.   Yes.

24          Q.   I'm going to show you another

25     document that will be marked as Haran 3.
```

Haran vs                                                                 Patricia Haran
Orange Business Services Inc.                                            April 26, 2023

29

```
 1                    P. HARAN

 2    (Whereupon,  a  document  was  marked  as

 3    Exhibit  3  for  identification,  as   of

 4    April 26th, 2023.)

 5         Q.   And do you recognize this

 6    document as one of those documents you

 7    mentioned that you signed when you were

 8    onboarding?

 9         A.   I don't recognize it in

10    particular, but it is my signature and

11    like I said there was a big pile of

12    papers that I was asked to sign when I

13    was onboarded.

14         Q.   Okay.  That signature is dated

15    May 18, 2017?

16         A.   Yes.

17         Q.   Who did you report to during

18    your employment with Orange?

19         A.   I reported to Adam Kimmick.

20         Q.   Do you know Adam Kimmick's

21    title?

22         A.   Sales director.  Head of

23    sales, I think.  I'm not sure.

24         Q.   Okay.  What.

25    (Simultaneous speaking.)
```

Haran vs                                                                Patricia Haran
Orange Business Services Inc.                                           April 26, 2023

30

```
1                    P. HARAN

2        A.    Sales director.

3        Q.    Was that for a specific region

4   of the United States?

5        A.    He was responsible for the

6   northeast and the midwest regions.

7        Q.    Did you report to anyone else?

8        A.    No.

9        Q.    During your employment at

10  Orange, did you receive performance

11  evaluations?

12       A.    Yes.

13       Q.    Did you meet with anyone to

14  discuss those performance evaluations?

15       A.    Yes.

16       Q.    And who was that?

17       A.    Adam Kimmick.

18       Q.    Anyone else?

19       A.    No.

20       Q.    I'm going to show you a

21  document that will be marked as Haran 4.

22  (Whereupon,  BATES  OBS334  -   343    was

23  marked as Exhibit  4  for  identification,

24  as of April 26th, 2023.)

25             MR. GUILFOYLE:  And for the
```

Case 1:21-cv-10585-DEH-JW    Document 67-4    Filed 02/13/24    Page 12 of 62

Haran vs                                                           Patricia Haran
Orange Business Services Inc.                                      April 26, 2023

31

```
 1                      P. HARAN

 2    record this is a document bearing Bates

 3    OBS334 through 343.

 4            Q.   Ms. Haran, do you recognize

 5      this document?

 6            A.   Let me just take a look here.

 7            Q.   Take your time.

 8            A.   Okay.

 9            Q.   Okay.  And do you recognize

10      this document?

11            A.   I do.

12            Q.   And what is this document?

13            A.   A performance review.

14            Q.   And is this for the first half

15      of 2020?

16            A.   Yes.  It appears to be.

17            Q.   Do you know who created this

18      performance review?

19            A.   It was created by Adam Kimmick

20      and myself.

21            Q.   Okay.  And if I could just

22      bring your attention --

23            A.   I mean it was filled in, I

24      would say, by us.  It wasn't created by

25      us.  It was created by a company, I
```

Haran vs                                                                 Patricia Haran
Orange Business Services Inc.                                            April 26, 2023

```
                                                          32
 1                    P. HARAN

 2     assume.  It's a performance review plan

 3     that I think everybody fills in, but it

 4     was populated by myself and Adam.

 5          Q.   So the templates for the

 6     performance review was created by

 7     Orange?

 8          A.   Correct.

 9          Q.   And then the contents of what

10     went in there specific to you were

11     inputted by Adam and yourself?

12          A.   Correct, yes.

13          Q.   Okay.  If I can bring your

14     attention to page 8 of 10, if you look

15     on the lower right corner.

16          A.   Lower right corner.

17          Q.   Yes, so now if I bring your

18     attention to where it says manager's

19     comments, do you see that at the top of

20     the page?

21          A.   Yes.

22          Q.   Okay.  Could you read the

23     first two sentences under manager's

24     comments for me?

25          A.   Yes.  "First half 2020 was a
```

Haran vs
Orange Business Services Inc.

Patricia Haran
April 26, 2023

33

```
 1                    P. HARAN

 2     challenge for Patty in her new

 3     territory.  Results on revenue were in

 4     line with the expectations that fell

 5     short of target in both keep and new and

 6     get orders."

 7          Q.   What is the next sentence

 8     there?

 9          A.   "Her qualified pipeline is not

10     currently sufficient to meet her 2020

11     financial objectives, and the new

12     opportunities created in 2019 with her

13     B-end accounts exploring partnership and

14     sell with opportunities to expand our

15     portfolio, have not yet matured as ample

16     opportunities."

17          Q.   Okay.  What does it mean that

18     your qualified pipe library is not

19     currently sufficient to meet 2020

20     financial objectives?

21          A.   Well, I mean I'd be

22     speculating on what Adam means there; is

23     that what would you like for me to do?

24          Q.   Sure.  What is your

25     understanding of what that means?
```

Haran vs                                                              Patricia Haran
Orange Business Services Inc.                                         April 26, 2023

34

```
1              P. HARAN

2         A.   My understanding is that

3    pipeline is a sales forecast and

4    typically sales forecasts, you know, are

5    larger than what the quota is that's

6    assigned.  And so when he's saying that

7    he thinks that my pipeline is not, you

8    know, his words here, my pipeline is not

9    sufficient, then he doesn't feel that I

10   have enough opportunities in my sales

11   forecast to meet my target quota for

12   2020.

13        Q.   If we could turn to the next

14   page, please?

15   (Witness complies.)

16        Q.   And do you see where it says

17   acknowledgment by the employee the 30th

18   of July 2020?

19        A.   Yes.

20        Q.   Okay.  Do you recall having

21   completed the performance review on or

22   about July 30, 2020?

23        A.   Yes.

24        Q.   And is that typical for

25   first-half performance reviews to be
```

Haran vs                                                                          Patricia Haran
Orange Business Services Inc.                                                     April 26, 2023

35

```
1                         P. HARAN

2        done towards the end of July, in your

3        experience?

4             A.   I don't know.  I'd have to --

5        you know, I really don't know.  I mean

6        typically they'd be done somewhere

7        around the end of the first half, so it

8        seems a little late, but that's just,

9        you know, it's probably -- it's

10       probably, you know, it could be done

11       earlier in June or something, so, but,

12       you know, it's not -- it seems to be at

13       the end of July, so.

14            Q.   Okay.  I'm going to show you

15       another document.

16                 MR. GUILFOYLE:  For the

17       record, this will be Haran 5.

18       (Whereupon,  BATES  OBS344  -  353  was

19       marked as Exhibit  5  for  identification,

20       as of April 26th, 2023.)

21            Q.   I just ask that you take a

22       moment and look through that document,

23       please.

24                 MR. GUILFOYLE:  For the

25       record, it's OBS344 through 353.
```

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                    April 26, 2023

36

```
 1                    P. HARAN
 2        Q.   Do you recognize this
 3   document?
 4        A.   Yes.
 5        Q.   What do you recognize it to
 6   be?
 7        A.   A performance review.
 8        Q.   Do you know who input the
 9   substance of text within this review?
10        A.   Yes.
11        Q.   Who was that?
12        A.   Adam Kimmick and myself.
13        Q.   If I could bring your
14   attention to the page identified by nine
15   out of ten.  Can you tell me what the
16   overall rating is there?
17        A.   Yes.  The rating is two,
18   improvement needed.
19        Q.   Okay.  And with the evaluation
20   process at Orange, you were given the
21   opportunity to respond to your manager's
22   comments and conclusions in here, right?
23        A.   Correct.
24        Q.   Okay.  And it looks like you
25   did so below the manager's comments here
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                            April 26, 2023

37

```
 1                         P. HARAN

 2        on this page?

 3              A.   Yes.

 4              Q.   Okay.  Did you note anywhere

 5        in this performance review that you

 6        believed your improvement needed rating

 7        was due to you having taken time off in

 8        connection with your daughter's or your

 9        mother's illness?

10              A.   Could you repeat the question?

11              Q.   Sure.

12                   MR. GUILFOYLE:  Could you read

13    that back for me?

14        (Whereupon,  the  requested  portion   was

15        read back by the reporter.)

16              A.   No, it's -- I don't see that

17        in here.

18  BY MR. GUILFOYLE:

19              Q.   Do you see anything on this

20        page about your lack of focus?

21              A.   There's just a comment that

22        says, "urgent focus, it needs to be on

23        identifying new opportunities and moving

24        these progressively through the

25        pipeline."  It's the last sentence.
```

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                               April 26, 2023

42

```
 1                    P. HARAN
 2          A.   It was -- we did discuss it,
 3     yes.  I brought it up to him and said
 4     you know again like I've mentioned in my
 5     earlier statement, you know, I was
 6     dealing with the -- my mother -- my
 7     daughter's illness.  I was dealing with
 8     all of the events that were preceding
 9     that and that it was difficult for me
10     to, you know, juggle that along with
11     everything else that my responsibilities
12     were for the job.
13               MR. GUILFOYLE:  Okay.  I'm
14     going to move to strike the nonresponsive
15     answer.
16          Q.   The question was:  Did
17     Mr. Kimmick say anything about you
18     taking time off in connection with your
19     daughter's or mother's illness; not if
20     you said anything?
21          A.   He did not bring it up, but he
22     responded to my bringing it up, did
23     that --
24          Q.   Makes sense?
25          A.   Makes sense.
```

**JA160**

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                               April 26, 2023

43

```
1              P. HARAN

2         Q.   So what makes you think that

3    your two rating here has anything to do

4    with the days you take off in connection

5    with your daughter's illness in October?

6         A.   Well, the focus commentary

7    that we had, and in the conversation

8    that the lack of focus was his

9    assessment around why he thought that I

10   was not able to -- to meet the objective

11   in this -- in this overall rating.

12        Q.   And do you believe you had

13   a -- you did indeed have a lack of focus

14   during this time?

15        A.   Yeah, I mean, it was something

16   that was -- it was something that I was

17   trying to work through, and, you know,

18   balance as best as I could to do the

19   right thing for the company, to do the

20   right thing to advance all of my sales,

21   and also, you know, manage my daughter's

22   illness and all -- everything that was

23   associated with that, so yeah.

24        Q.   Let me show you another

25   document.
```

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

53

```
 1                    P. HARAN

 2        Q.   What do you recognize it to

 3   be?

 4        A.   I actually -- I mean, I

 5   recognize it now.  I hadn't -- it's been

 6   a while since, you know, I wrote this,

 7   so I recognize it to be a correspondence

 8   between Michelle Rocco and myself.

 9        Q.   Okay.  And in these emails did

10   you request any sort of leave for any

11   time off from Michelle Rocco?

12        A.   No.

13        Q.   Okay.  How did you come to

14   learn that your employment at Orange had

15   been terminated?

16        A.   I was invited to a call, I

17   believe it might have even been my

18   weekly -- I don't know, it was a call

19   that I was invited to by Adam Kimmick,

20   WebEx.

21        Q.   A virtual meeting type thing?

22        A.   Yes.

23        Q.   And do you recall when that

24   was?

25        A.   It was -- I believe, it was
```

Case 1:21-cv-10585-DEH-JW    Document 67-4    Filed 02/13/24    Page 22 of 62

Haran vs                                                           Patricia Haran
Orange Business Services Inc.                                      April 26, 2023

54

```
 1                    P. HARAN

 2   February 24, 2021.

 3        Q.   And do you know where Adam was

 4   during this meeting?

 5        A.   Physically?

 6        Q.   Yes.

 7        A.   I don't recall.

 8        Q.   Okay.  Was anyone else present

 9   at this meeting?

10        A.   Yes.

11        Q.   Who was that?

12        A.   Jennifer Lawson.

13        Q.   And who is Jennifer Lawson?

14        A.   She's a human resources

15   manager or associate.  I don't know her

16   title exactly.

17        Q.   And did they provide a reason

18   for your termination during that

19   meeting?

20        A.   There were two reasons

21   provided.

22        Q.   And what were those two

23   reasons?

24        A.   The reason number one, I

25   believe it was Adam who said -- well,
```

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                               April 26, 2023

                                                                    55

```
 1                    P. HARAN

 2   Jennifer first said, as I recall, when I

 3   asked her why I was terminated, she said

 4   it was because you didn't make your 2020

 5   quota or something along those lines.

 6   Don't quote me exactly, but it was that

 7   I didn't -- maybe it was my sales

 8   achievement I don't know how she said

 9   it, but it was my 2020 quota.  And then

10   Adam jumped in and said no, it's because

11   you don't have an adequate forecast for

12   2021.  But as I had mentioned earlier I

13   did not get a quota, and I said this to

14   him in that conversation, I was never

15   given a quota for 2021.

16        Q.   Okay.  And I believe you had

17   testified before that you only reported

18   to Adam Kimmick; is that correct?

19        A.   Correct.

20        Q.   And Ms. Lawson was not your

21   supervisor, correct?

22        A.   Correct.

23        Q.   Do you know who made the

24   decision to terminate your employment

25   from Orange?
```

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

```
                                                      56
 1                      P. HARAN

 2          A.   I could speculate, but I don't

 3     know if that makes sense to guess, you

 4     know, I mean -- I -- I'm not a hundred

 5     percent sure who made the decision, but

 6     I believe it was Adam Kimmick who made

 7     the decision.

 8             And I believe that he -- Eddy

 9     Youkhanna was also part of that decision

10     process.  He was a sales director that

11     Adam reported to.

12          Q.   Okay.  So he was one level

13     higher than Mr. Kimmick?

14          A.   Correct.

15          Q.   All right.  I'm going to show

16     you a document that will be marked as

17     Haran 9.

18     (Whereupon, Bates  OBS381  -  383   was

19     marked as Exhibit  9  for  identification,

20     as of April 26th, 2023.)

21             MR. GUILFOYLE:  And for the

22     record, this is a document bearing Bates

23     OBS381 through 383.

24          Q.   And Ms. Haran, I just ask that

25     you take a moment and review this
```

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

                                                                        57
```
 1                  P. HARAN

 2    document.

 3         A.    Okay.

 4         Q.    Do you recognize this

 5    document?

 6         A.    Yes.

 7         Q.    What do you recognize it to

 8    be?

 9         A.    It's a termination letter that

10    I received after -- after I was

11    terminated.

12         Q.    Do you recall on what date you

13    received this letter?

14         A.    I do not recall exactly what

15    date.  It was -- it has the 24th in the

16    letter.  I don't know if that's what --

17    it was emailed to me.  I don't remember

18    the day that it was emailed to me.

19         Q.    And did you receive this

20    letter after your meeting with

21    Mr. Kimmick and Ms. Lawson?

22         A.    Yes.

23         Q.    Prior to your termination, did

24    you ever feel that your employment could

25    be in jeopardy because of your
```

**JA166**

Haran vs                                                            Patricia Haran
Orange Business Services Inc.                                      April 26, 2023

                                                                          58
```
 1                       P. HARAN
 2    performance?
 3          A.    Yes.
 4          Q.    Okay.  Did you discuss that
 5    with anyone?
 6          A.    Yes.
 7          Q.    Who did you discuss that with?
 8          A.    Well, the question is who did
 9    I discuss the concerns that I had about
10    it being in jeopardy about my
11    employment?
12          Q.    Because of your performance.
13          A.    Because of my performance.
14                Well, I mean, when we say it
15    was because of my performance, it was
16    also because of the time off, you know,
17    that I was taking and the lack of focus,
18    and the perception that was there.  So
19    it wasn't just one thing, you know, it
20    was -- but performance was part of that.
21    So I just want to be careful about how
22    to answer that so that -- because
23    usually it was like a combined
24    conversation.  It was sort of like, Hey,
25    the performance is, you know, always an
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                              April 26, 2023

60

```
 1                    P. HARAN

 2           I talked to Marie-Cecile

 3    Deraedt about it.  I talked to Paul

 4    Reticker about it.  I talked to Phillipe

 5    Melegrito did about it, and I talked to

 6    M.J. Hubert about it.

 7        Q.   Let me show you a document

 8    that's going to be marked as Haran 10.

 9    (Whereupon,  a  document  was  marked  as

10    Exhibit  10  for  identification,  as  of

11    April 26th, 2023.)

12        A.   Okay.

13        Q.   Do you recognize this

14    document?

15        A.   I -- yeah, I mean, it's --

16    I've not seen it before, so -- but I

17    recognize, you know, the -- that it's --

18    looks like a Teams chat.

19        Q.   Okay.  Who is that Teams chat

20    between?

21        A.   Myself and Peter Singh.

22        Q.   Your email address while at

23    Orange was Patty.Haran@Orange.com?

24        A.   Yes.

25        Q.   Prior to your termination from
```

Haran vs                                                                                  Patricia Haran
Orange Business Services Inc.                                                              April 26, 2023

65

```
 1                    P. HARAN

 2            MR. GUILFOYLE:  I'm going to

 3    show you what'll be marked as Haran 11.

 4         For the record, it's a document

 5    bearing Bates OBS926 through 927.

 6      (Whereupon, Bates  OBS926 -  927   was

 7      marked as Exhibit 11  for  identification,

 8      as of April 26th, 2023.)

 9         Q.   I just ask that you take a

10    moment and review that document for me.

11         A.   Okay.

12         Q.   Do you recognize this

13    document?

14         A.   I have not seen this document

15    before, but it appears to be a -- a

16    Teams chat, again, between Peter Singh

17    and myself.

18         Q.   And it appears that these were

19    dated February 10, 2021; is that

20    correct?

21         A.   Yes.

22         Q.   Following being notified of

23    your termination from Orange, did you

24    speak about that termination with any

25    Orange employees?
```

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                              April 26, 2023

                                                              69

1                        P. HARAN

2        Q.   I'll show you what will be

3     marked as Haran 12.

4     (Whereupon,  Bates  OBS930  -   931    was

5     marked as Exhibit 12  for  identification,

6     as of April 26th, 2023.)

7                MR. GUILFOYLE:  For the

8     record, it's a two-page document bearing

9     Bates OBS930 through 931.

10       A.   Yes.

11       Q.   I just ask that you take a

12    moment and review that document and let

13    me know when you've had the opportunity

14    to do so.

15       A.   Okay.

16       Q.   Do you recognize this

17    document?

18       A.   This is the first time I'm

19    seeing this document, but it looks like

20    a text exchange that were a Teams

21    exchange I believe between Xavier Pichon

22    and myself.

23       Q.   Okay.  And who is Xavier

24    Pichon?

25       A.   Global account director at

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

74

```
 1                    P. HARAN

 2    inability to attend a training that he

 3    had wanted me to be apart of.  So he was

 4    aware of my daughter's condition, and he

 5    was aware of, you know, the time off

 6    that I needed to care for her.

 7         Q.   And when did you have that

 8    conversation with Mr. Youkhanna?

 9         A.   So I had a -- I don't remember

10    the exact date of the conversation, but

11    it was at some point in between --

12    between September and October before her

13    surgery.

14         Q.   And when was your daughter

15    diagnosed with her illness?

16         A.   Well, the diagnosis exact

17    date, I don't recall, but it was

18    somewhere in the late-September,

19    early-October timeframe.  And it was in

20    a series of discoveries, the diagnosis.

21    It was several different appointments

22    and things, you know, where we got bits

23    of information that added to the

24    diagnosis.

25         Q.   And that was in 2020?
```

**JA171**

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

                                                                              75

1                    P. HARAN

2        A.    Correct.

3        Q.    And who is Peter Singh?

4        A.    He's a technical director at

5    Orange.

6        Q.    Okay.  And what information do

7    you believe Mr. Singh has with regard to

8    your complaint?

9        A.    So, he was aware of the

10   increased pressure and stress and

11   scrutiny that I was under about

12   developing my quota and making my

13   numbers.  He was aware of -- that -- my

14   daughter's illness, and that -- my

15   belief that there was a connection and

16   that that was something that was, you

17   know, causing the increased pressure.

18   So, yeah, he was aware of all that.

19       Q.    Okay.  When did you have these

20   conversations with Mr. Singh?

21       A.    So, we had the Teams

22   conversations.  We also met in person

23   in -- in February.  I don't know the

24   exact date, but it was some time in

25   February.  We had coffee in New York

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

80

```
 1                    P. HARAN

 2    more quickly through the funnel and

 3    close things, you know that coincided

 4    with my daughter's, you know, medical

 5    activities.

 6         Q.   Why do you believe the

 7    increased pressure that you've mentioned

 8    a few times regarding getting sales

 9    closed and moving sales quickly, had

10    anything to do with your daughter's

11    condition?

12         A.   So, Adam felt that, as I

13    mentioned to your earlier, that I lacked

14    focus and so he'd think -- he thought --

15    his commentary was around the fact that

16    I wasn't as focused on developing, you

17    know, these accounts more quickly, and

18    that I could take off if I needed to

19    take off, but I needed to get this --

20    sales completed.  And so, you know, it

21    was just a real lack of -- a lack of,

22    you know, it was kind of just cold and,

23    you know, and unsympathetic like, you

24    know, you've got to get this done.

25              And, you know, I don't
```

Haran vs                                                              Patricia Haran
Orange Business Services Inc.                                         April 26, 2023

81

```
 1                    P. HARAN

 2    really -- it was like stonewalling, you

 3    know, any time I talked about, you know,

 4    needing time off.  It was kind of like,

 5    I don't want to hear about that, I just

 6    want you to close these sales.  And so

 7    that's why -- that was the situation

 8    that I was experiencing.

 9         Q.   Okay.  Did you believe that

10    your performance expectation should be

11    changed as a result of you needing to

12    take time off to care for your daughter?

13         A.   Did I believe that?  I thought

14    that I should be -- yeah, I mean given

15    some accommodation to account for, you

16    know, what I was -- what I -- trying to

17    juggle it all.  But it was also -- I

18    think that, you know, the expectations

19    were -- the expectations there were --

20    were heightened, you know, during the --

21    all of the episodes around my daughter's

22    condition.  It was kind of like, you

23    know, it changed at that time and became

24    more, you know, focused and more, you

25    know, persistent around, you know, the
```

Haran vs                                                                   Patricia Haran
Orange Business Services Inc.                                              April 26, 2023

                                                                              82
1                              P. HARAN

2           need for me to close those sales.

3                  Q.   Did those expectations

4           actually change because of your

5           daughter's illness?  I'm just trying to

6           understand.

7                       MS. FISHER:  Objection.

8    BY MR. GUILFOYLE:

9                  Q.   You can answer.

10                 A.   I -- you know, it's hard to

11          speculate on what, you know, whether or

12          not -- I just know that it was like, you

13          know --

14                 Q.   I'm not asking you to

15          speculate, I'm only asking what you

16          know.

17                 A.   Make sure I understand, repeat

18          the question again.

19                 Q.   Sure.  You had mentioned that

20          you believed expectations changed, and I

21          was asking if you were ever informed

22          that your sales or quota or your numbers

23          changed at any point in 2020?

24                 A.   No, my numbers didn't --

25          weren't changed in 2020.

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                               April 26, 2023

                                                                                    105

```
 1                    P. HARAN

 2    know, it was -- I don't know the all the

 3    exact times of the conversations, but I

 4    would say for the most part, yes.

 5         Q.   All right.  And in this

 6    lawsuit you have a claim of FMLA

 7    interference, how do you contend that

 8    Orange interfered with your FMLA rights?

 9         A.   So, I believe that when I took

10    the time off to care for my mother and

11    my daughter, that that time should have

12    been counted as FMLA.  It should have

13    been offered to me as an option at that

14    time and it was not, and it was held

15    against me and, you know, then I was

16    retaliated against by being terminated.

17         Q.   Is that all the ways that you

18    believe Orange interfered with your FMLA

19    rights?

20         A.   Yeah, I believe so.

21         Q.   Did Orange prohibit you from

22    taking any time off for your daughter's

23    procedure and recovery?

24         A.   No.

25         Q.   Okay.  For the days you took
```

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                               April 26, 2023

                                                                      106

```
 1                    P. HARAN

 2    off, you used paid time off or PTO; is

 3    that right?

 4         A.   Yeah, sometimes and then

 5    sometimes it was just, Just go do what

 6    you need to do, you know.  So, it was

 7    sometimes half days and partial days and

 8    things like that.  Because I was trying

 9    to, you know, juggle it all.

10         Q.   You were paid for those days

11    that you took off or the half days you

12    took off as well?

13         A.   Yeah, the system doesn't -- I

14    don't think has a way to pay for half

15    days.

16         Q.   So you were --

17         A.   It was salary not hourly.

18         Q.   So for all the days you took

19    off, you were paid for those days?

20         A.   Yes.

21         Q.   Did Orange prohibit you from

22    taking any time off to take your mother

23    to the eye doctor?

24         A.   No.

25         Q.   And for the days that you took
```

**JA177**

Haran vs                                                          Patricia Haran
Orange Business Services Inc.                                     April 26, 2023

                                                                        107

```
 1                      P. HARAN

 2     off or half days that you took off as

 3     well to take your mom to the eye doctor,

 4     did you use PTO for that?

 5          A.   Yes.

 6          Q.   So you were paid for those

 7     days off?

 8          A.   Yes.

 9               MR. GUILFOYLE:  I'm going to

10     show you what will be marked as Haran 13.

11     (Whereupon, Bates OBS575 - 576   was

12     marked as Exhibit 13  for  identification,

13     as of April 26th, 2023.)

14               MR. GUILFOYLE:  And for the

15     record, it's Bates OBS575 to 576.

16          Q.   I ask that you take a moment

17     and review that document and let me know

18     when you've had the opportunity to do

19     so?

20          A.   Okay.

21          Q.   Do you recognize that

22     document?

23          A.   It looks like a Teams exchange

24     between Adam and I.

25          Q.   It appears to be on
```

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                               April 26, 2023

108

```
 1                   P. HARAN

 2    October 8th of 2020?

 3        A.   Mh-hm.

 4        Q.   Okay.  And you also have a

 5    claim of FMLA retaliation in this case;

 6    how do you contend that Orange

 7    retaliated against you in violation of

 8    the FMLA?

 9        A.   By firing me.

10        Q.   Okay.  Is that all the ways

11    that you believe Orange retaliated

12    against you in violation of the FMLA?

13        A.   Yes.

14        Q.   Did you ever take FMLA leave

15    while at Orange?

16        A.   No.

17        Q.   Did you ever request FMLA

18    leave while employed at Orange --

19        A.   No.

20        Q.   -- so if we turn back to

21    Exhibit 7, your Interrogatory Responses

22    --

23        A.   Okay.

24        Q.   -- so Number 15 there.

25        A.   Fifteen?
```

Haran vs                                                                                        Patricia Haran
Orange Business Services Inc.                                                                April 26, 2023

109

```
 1                   P. HARAN

 2       Q.   Correct.

 3       A.   The person --

 4       Q.   Interrogatory Number 15.

 5  There's no page numbers it's a little

 6  difficult I appreciate that.

 7       A.   Number 15 --

 8       Q.   Do you see that this

 9  interrogatory asks you identify each day

10  off work you took to take your daughter

11  to doctor's appointments and for

12  treatment as alleged in the Paragraph 19

13  of the complaint.  Do you see that?

14       A.   Yes.

15       Q.   Do you see your response that

16  identifies October 14th half day,

17  October 15th through the 19th --

18       A.   Mh-hm.

19       Q.   November 11, December 18,

20  December 28th, December 30, and

21  February 12th; do you see that?

22       A.   Yes.

23       Q.   Okay.  Is that answer

24  accurate?

25       A.   I believe so; yeah, to the
```

Haran vs                                                              Patricia Haran
Orange Business Services Inc.                                         April 26, 2023

110

|    |                                              |
|----|----------------------------------------------|
| 1  | P. HARAN                                     |
| 2  | best of my knowledge.                        |
| 3  | Q.   If you turn to response                 |
| 4  | Interrogatory Number 8 within this           |
| 5  | document.                                    |
| 6  | And this interrogatory asks                  |
| 7  | you to identify each employee, agent or      |
| 8  | representative of defendant who you          |
| 9  | purport subjected you to discrimination      |
| 10 | or retaliation; do you see that?             |
| 11 | A.   Mh-hm, yes.                             |
| 12 | Q.   And you identified Adam                 |
| 13 | Kimmick and Eddy Youhanna (sic), which I     |
| 14 | believe should be Youkhanna; is that         |
| 15 | correct?                                     |
| 16 | A.   Yes.                                    |
| 17 | Q.   Okay.  Is that answer                   |
| 18 | accurate?                                    |
| 19 | A.   Yes.                                    |
| 20 | Q.   Okay.  You also have a claim            |
| 21 | for discrimination under the New York        |
| 22 | City Human Rights Law; how do you            |
| 23 | contend that Orange discriminated            |
| 24 | against you in violation of the New York     |
| 25 | City Human Rights Law?                       |

## JA181

Haran vs
Orange Business Services Inc.

Patricia Haran
April 26, 2023

                                                                    111

1                    P. HARAN

2          A.   So, my lawyer filed, you know,

3     the details.  You know, in summary

4     it's -- it's because of being a

5     caregiver to my mother and my daughter,

6     then needing to have accommodation to

7     take care of them.  And I believe that

8     that -- that's -- the contention is the

9     fact that I was terminated in

10    retaliation for taking that time off.

11    It's related to that New York State law

12    that you're referring to.

13         Q.   That claim is only for

14    discrimination and not retaliation; are

15    you aware of that?

16         A.   Okay.

17         Q.   And you mentioned an

18    accommodation; did you ever request an

19    accommodation from Orange?

20         A.   So, I didn't.  No, I didn't.

21         Q.   And when you were hired by

22    Orange, you were already a mother of two

23    children, correct?

24         A.   Yes.

25         Q.   At the time you were hired by

Haran vs                                             Patricia Haran
Orange Business Services Inc.                        April 26, 2023

                                                              112

1              P. HARAN

2    Orange, you were also a daughter to your

3    mother, correct?

4         A.   Yes.

5         Q.   Other than what you just

6    mentioned, are you there any other ways

7    you believe that Orange discriminated

8    against you based upon your status as a

9    mother?

10        A.   No.

11        Q.   If you could go back to

12   Exhibit 7, the Interrogatory Responses,

13   specifically Interrogatory Number 8?

14        A.   Okay.

15        Q.   And do you see that this

16   interrogatory asked you to identify each

17   employee, agent, representative of

18   defendant who you purport subjected you

19   to discrimination or retaliation; do you

20   see that?

21        A.   Yes.

22        Q.   You identified Mr. Kimmick and

23   Mr. Youkhanna?

24        A.   Yes.

25        Q.   Is that answer accurate and

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                               April 26, 2023

113

```
 1                    P. HARAN
 2    complete?
 3         A.   Yes.
 4         Q.   If you could turn to the next
 5    page, Interrogatory Number 9.  It asks
 6    to you identify each and every
 7    discriminatory and/or retaliatory
 8    comment, behavior or action that you
 9    contend defendant or defendant's agents,
10    representatives and/or employees made
11    two or concerning you; do you see that?
12         A.   Yes.
13         Q.   And do you see your response
14    below?
15         A.   Yes.
16         Q.   Okay.  And is your response --
17    your response to this interrogatory
18    accurate?
19         A.   Yes.
20         Q.   Is this response complete?
21         A.   Yes.
22         Q.   Did anyone at Orange ever make
23    any negative comments about your
24    daughter's illness?
25         A.   Can you explain what you mean
```

Haran vs
Orange Business Services Inc.

Patricia Haran
April 26, 2023

114

```
 1              P. HARAN

 2   by negative comments?

 3       Q.   Did anyone at Orange make any

 4   disparaging comments about your

 5   daughter's illness?

 6       A.   No.

 7       Q.   Did anyone at Orange ever make

 8   any negative or disparaging comments

 9   about you taking days off in connection

10   with your daughter's illness?

11       A.   Not specifically about taking

12   days off.  It was about the lack of

13   focus.

14       Q.   Move to strike.

15            My question was did anyone at

16   Orange ever make any negative or

17   disparaging comments about you taking

18   days off --

19       A.   No.

20       Q.    -- in connection with --

21   okay.

22            Did anyone at Orange ever make

23   any negative or disparaging comments

24   about your mother's illness?

25       A.   No.
```

Haran vs                                                    Patricia Haran
Orange Business Services Inc.                                April 26, 2023

                                                                   115

1                    P. HARAN

2        Q.    Did anyone at Orange ever make

3   any negative or disparaging comments

4   about you taking days off in connection

5   with your mother's illness?

6        A.    No.

7        Q.    During your employment with

8   Orange, did you ever report

9   discrimination or retaliation to anyone

10  at Orange?

11       A.    No.

12       Q.    Why not?

13       A.    I was afraid that I would

14  ruffle feathers if I went and took up my

15  request to human resources, or to higher

16  up the leadership chain.  I just thought

17  that it was -- I was already feeling --

18  yeah, so I -- I was afraid to.

19       Q.    And you're aware that as part

20  of this lawsuit you're seeking damages

21  in this case?

22       A.    Yes.

23       Q.    And are you aware of what

24  damages you're seeking here?

25       A.    Yes.

Haran vs                                                                    Patricia Haran
Orange Business Services Inc.                                              April 26, 2023

157

```
 1                    C E R T I F I C A T E

 2                    I, AMBRIA IANAZZI, a Registered

 3   Professional Reporter, Certified Realtime

 4   Reporter, New York Association Certified Reporter,

 5   New York Realtime Certified Reporter, Certified

 6   Shorthand Reporter and Notary Public in New York

 7   do hereby certify:

 8                    That PATRICIA HARAN whose

 9   examination is hereinbefore set forth, was duly

10   sworn, and that such examination is a true record

11   of the testimony given by PATRICIA HARAN.

12                    I further certify that I am not

13   related to any of the parties to this action by

14   blood or marriage; and that I am in no way

15   interested in the outcome of this matter.

16

17         In  witness  whereof,  I   have   hereunto   set

18   my hand this 2nd day of May, 2023.

19

20

21   _____

22              AMBRIA IANAZZI, RPR, CRR, CSR

23

24

25
```

---

**-**

**-o0o-** 156:7

---

**0**

**0** 8:2,9

---

**1**

**1** 25:9 71:24 72:12
**10** 32:14 60:8,10 65:19 92:15 95:6
**11** 23:18 25:12,25 28:21 65:3,7
  109:19
**11741** 9:9
**12** 69:3,5 71:10
**128,000-dollar** 132:7
**12th** 109:21
**13** 28:10 107:10,12
**14** 143:3 147:16
**14th** 109:16
**15** 108:24 109:4,7 147:17,21
**150** 138:23 139:3
**15th** 109:17
**17** 127:17,20
**18** 29:15 48:13 109:19 128:4
**18th** 48:9
**19** 17:22 109:12
**1972** 17:6
**1990** 18:9
**1994** 18:15 19:18
**1995** 21:2
**1997** 21:2,24
**1999** 16:16
**19th** 109:17

---

**2**

**2** 28:4,6
**2/24/2021** 143:22
**20** 16:17 27:22 83:15 123:20

---

**2004** 22:4
**2005** 22:11
**2006** 22:11
**200K** 132:14
**2017** 23:18 24:15 26:2 28:22 29:15
**2019** 33:12 92:12
**2020** 27:23 31:15 32:25 33:10,19
  34:12,18,22 48:13 55:4,9 74:25
  82:23,25 83:2,6,11,15,20 86:12 91:14
  103:18 108:2 140:19
**2021** 38:19 54:2 55:12,15 65:19
  89:15 123:21 138:14,17 140:16
**2022** 122:9 131:11 140:20,24
**2023** 25:10 28:7 29:4 30:24 35:20
  44:5 45:5 52:18 56:20 60:11 65:8
  69:6 107:13 143:4 147:22
**24** 12:14 54:2 138:17
**24th** 57:15 67:11,19,25 144:5
**26th** 25:10 28:7 29:4 30:24 35:20
  44:5 45:5 52:18 56:20 60:11 65:8
  69:6 107:13 143:4 147:22
**28th** 109:20
**2:08** 156:9

---

**3**

**3** 23:15,21 24:2 28:25 29:3
**30** 34:22 109:20
**30th** 34:17
**343** 30:22 31:3
**353** 35:18,25
**383** 56:18,23

---

**4**

**4** 30:21,23
**40** 48:17
**40-minute** 52:3
**4th** 138:13

---

**5**

**5** 25:11 35:17,19
**53** 9:8 16:12

---

**576** 107:11,15

---

**6**

**6** 44:2,4 116:7

---

**7**

**7** 45:2,4 52:13 71:6,8 92:15 108:21
  112:12 127:16

---

**8**

**8** 32:14 52:15,17 110:4 112:13
**8th** 108:2

---

**9**

**9** 56:17,19 113:5
**90** 20:23
**911** 143:2,7
**919** 147:20,25
**927** 65:5,6
**931** 69:4,9
**94** 20:24
**95** 20:24 21:2
**97** 21:2
**98** 16:17

---

**A**

**A-END** 27:2,6,13 83:4 86:22
**ability** 12:16
**access** 142:16 144:12,14
**accommodation** 81:15 111:6,18,19
**account** 24:18,21 26:22 41:6,11
  69:25 77:3 81:15 84:20,22 85:4,8
  87:5 88:24 89:9,17,21 90:11 142:17,
  18,20,21 144:3 149:9 153:11
**accounts** 26:14,20,21 27:2,6,13,14
  33:13 40:25 68:8,14 77:13,17,20 78:5
  80:17 83:4,8,9 85:25 86:15,22,23
  87:7,22 91:2,3 97:13 145:6 146:4,21
  147:3 151:8,18,21 152:7,11 153:6,14
**accurate** 44:21 71:24 109:24 110:18
  112:25 113:18 128:13

---

Haran
Orange Business Services Inc.

Patricia Haran
April 26, 2023

**accurately** 12:24

**achievement** 55:8

**acknowledgment** 28:15 34:17

**acquired** 22:2 23:15

**acquisition** 22:2,4 23:14,19

**action** 113:8

**actions** 147:2,7

**activities** 40:3,18 68:10,13 80:5 145:5 146:18

**activity** 146:22

**Adam** 29:19,20 30:17 31:19 32:4,11 33:22 36:12 39:7,12,18 53:19 54:3,25 55:10,18 56:6,11 59:20 66:17 68:19 77:9 79:25 80:12 85:20 87:25 93:11, 14 97:17 99:17,23 100:14 102:14 103:5 107:24 110:12 120:19

**Adam's** 95:13

**add** 89:17

**added** 74:23 126:4

**adding** 90:11,15

**additional** 72:3 73:10 83:23 131:12

**address** 9:7 16:13,24 17:2 60:22 143:25

**addresses** 16:20

**adequate** 55:11

**administered** 10:9

**advance** 43:20 101:13 117:18

**advice** 51:17

**affect** 12:15

**affected** 50:10

**affiliated** 127:22

**afraid** 115:13,18

**aftermath** 40:8

**age** 51:19

**agent** 110:7 112:17

**agents** 113:9 127:22

**Agreement** 25:21

**agreements** 25:2

**ahead** 47:5 102:17 145:19,20

**alleged** 109:12

**allowed** 12:2 48:24

**alternatives** 94:23

**amended** 52:8

**American** 152:13

**amount** 141:18

**ample** 33:15

**and/or** 92:17,20 93:22 113:7,10

**announcement** 68:20

**anti-inflammatory** 124:13 125:5

**anxiety** 119:13,21 120:7 126:17

**apartment** 17:3

**apologize** 128:2 145:19 154:3

**apologized** 50:19

**appears** 31:16 65:15,18 107:25

**applications** 134:25

**applied** 142:4

**apply** 10:20

**applying** 131:18

**appointment** 48:11

**appointments** 40:7 74:21 109:11

**approved** 49:8

**April** 25:10 28:7 29:4 30:24 35:20 44:5 45:5 52:18 56:20 60:11 65:8 69:6 107:13 123:20 138:13 143:4 147:22

**architect** 88:7,8

**archive** 136:17

**area** 131:3

**areas** 50:3

**arrange** 48:2

**asks** 72:12 109:9 110:6 113:5 123:24 127:20 128:5

**assessment** 39:24 43:9

**assigned** 34:6 38:18 89:19

**associate** 54:15

**assume** 32:2

**assuming** 118:9

**assumption** 38:21 39:24

**AT&T** 22:3

**attend** 18:16 74:2

**attention** 31:22 32:14,18 36:14 71:5 116:7 149:13

**attorney** 9:16 12:3 13:5,9,14,20 14:16 118:20

**audible** 11:4

**availability** 123:5

**avoid** 46:25

**aware** 74:4,5 75:9,13,18 76:21 77:8, 11 79:16 84:9 85:13,14 86:10 87:20, 23,24 88:4,17 89:5,14 90:5,7,8 93:21 111:15 115:19,23 121:3 140:11 152:24

**awareness** 79:6

**B**

**B-END** 33:13 86:22,23

**BA** 18:10

**Bachelor's** 18:3

**back** 20:24 37:13,15 48:25 52:4 59:18 71:5 85:22 97:25 103:13 108:20 112:11 120:23 126:20 127:2, 15 133:20 144:12,14

**backpay** 118:15,24

**Baker** 9:16

**balance** 22:24 43:18

**Bank** 151:21

**banter** 64:8

**base** 132:5,9

**based** 38:21 112:8

**basic** 10:25

**basis** 116:18,23

**Bates** 25:8 28:5,10 30:22 31:2 35:18 56:18,22 65:5,6 69:4,9 107:11,15 143:2 147:20,25

**bearing** 28:10 31:2 56:22 65:5 69:8 143:6 147:25

**bears** 25:11

**beginning** 83:13

**behavior** 113:8

**belief** 75:15 146:10

**believed** 37:6 82:20 92:19 93:21

**benefits** 141:11,12,15,19,22 142:5, 11

**big** 28:16 29:11

Case 1:21-cv-10585-DEH-JW    Document 67-4    Filed 02/13/24    Page 49 of 62

Haran                                                                    Patricia Haran
Orange Business Services Inc.                                           April 26, 2023

**bit** 47:8 49:10 78:14 79:20

**bits** 74:22

**Blue** 16:25 17:3

**board** 28:18

**boat** 51:20

**bones** 50:3,9

**bonuses** 140:2

**born** 17:5,8,9

**Boudreau** 59:23 66:19 76:7,11 93:2 95:5

**Boudreau's** 96:13

**break** 12:6,11 46:25

**breaks** 12:7

**briefing** 22:16

**Briefly** 148:23

**bring** 31:22 32:13,17 36:13 42:21 71:4 76:16 91:4 116:6 149:12

**bringing** 42:22 85:3 88:2 91:6,21

**Brook** 18:12

**Brookhaven** 17:9

**brought** 27:11 42:3 47:17

**build** 38:24 89:15,20

**bunch** 133:11,13

**business** 9:18 19:7,11 21:8 23:24 24:6,8 41:13 70:4,9 91:4 137:13,15

**businesses** 137:19

---

**C**

**C-A-R** 19:21

**cadence** 123:4

**calculate** 118:23

**calculations** 118:13

**call** 15:3 53:16,18 61:19 62:9 68:20 85:19,21 86:14 127:5 140:18,23 142:8 155:14

**called** 67:2 85:17 130:17

**calls** 38:15,16 63:21 90:19 94:15 95:17 96:12 104:12 155:5

**Capgemini** 85:6 150:3,8,13

**Car** 19:11,21 20:15,18

**card** 137:24

**care** 74:6 81:12 94:11 105:10 111:7 117:9

**careful** 58:21

**caregiver** 111:5

**caregiving** 59:4

**case** 38:6 45:18,24 98:20 108:5 115:21 116:16 124:9

**cases** 68:9

**Cassandra** 92:25 128:11

**categorized** 117:12

**caused** 117:15 120:8

**causing** 75:17

**cease** 142:5

**cellular** 137:20,24

**cellular-related** 138:7

**center** 22:16

**chain** 115:16

**challenge** 33:2 51:4

**challenged** 64:12

**challenges** 51:8

**chance** 144:16

**change** 26:11,13,16 82:4

**changed** 26:8,15 81:11,23 82:20,23, 25

**charity** 47:22

**chat** 60:18,19 65:16

**check** 91:18

**children** 17:15,17 22:20,24 111:23

**Christophe** 67:7 88:22

**Cirrus** 9:8 16:12

**City** 76:2,5 110:22,25

**claim** 38:7 92:17 105:6 108:5 110:20 111:13

**claiming** 119:2 124:9 127:11

**class** 49:3

**client** 22:12,19 137:9,11 150:25

**client-partner** 89:25

**clients** 86:5 127:23 153:5,14

**close** 22:21 51:9 80:3 81:6 82:2 85:16

**closed** 41:13 78:8 80:9

**closely** 84:22

**closer** 51:18

**cloud** 88:7,8,11

**coaches** 40:25

**coffee** 75:25

**coincided** 80:3

**cold** 80:22

**collaboration** 76:8

**college** 19:9 51:19

**combined** 58:23

**comment** 37:21 113:8

**commentary** 43:6 80:15 95:14 97:17

**comments** 32:19,24 36:22,25 40:23 113:23 114:2,4,8,17,23 115:3

**commission** 139:13,14 144:22,24

**commissions** 139:4,12

**common** 61:22 62:16 63:18

**communicate** 12:3 145:3

**communicated** 73:24 127:24 149:16,21

**communication** 94:17 128:24

**communications** 21:19 23:15 150:16,20

**companies** 20:4,5 132:24 133:5,6 134:14 149:17 150:6

**company** 20:17 27:7,17 31:25 43:19 70:13 100:10 130:20 132:25 133:2 140:8,11 145:8

**comparable** 132:9

**compensated** 77:18

**compensation** 132:8,10,12 139:10

**compensations** 139:5

**competing** 51:11

**complained** 92:18

**complaint** 14:7 44:14 71:15 72:4,15, 24 73:11,22 75:8 76:12 77:6 78:2,17 79:22 84:8,12 85:12 86:8 87:10,19 88:14 89:4,13 90:4 109:13 116:8 127:11,14

**complete** 113:2,20

Haran                                                                      Patricia Haran
Orange Business Services Inc.                                               April 26, 2023

**completed** 18:2 34:21 80:20

**complexities** 101:17

**complies** 34:15

**computer** 144:12,14

**concerned** 93:18

**concerns** 58:9

**concluded** 156:9

**conclusions** 36:22

**condition** 74:4 78:10 80:11 81:22 87:23 120:5,6

**conditions** 73:16,19

**confidence** 120:2,23 126:24

**confidential** 152:4

**Confidentiality** 25:20

**confirmation** 48:12

**conjunction** 86:14

**connected** 137:21

**connection** 37:8 41:17,22 42:18 43:4 75:15 114:9,20 115:4 127:6 137:25 155:16

**constant** 61:9 90:25

**contact** 144:2

**contacted** 96:6

**contacting** 61:16

**contained** 44:20

**contempt** 120:21

**contend** 105:7 108:6 110:23 113:9

**contention** 111:8

**contents** 32:9

**contest** 47:22

**context** 93:24

**continued** 120:25

**contract** 41:8 154:25

**control** 41:20

**conversation** 15:3 38:12 39:15 43:7 52:2 55:14 58:24 59:8 64:10,20 68:25 74:8,10 79:4 90:25 92:5 93:23 97:6,7 103:4,8 123:23,24 126:21

**conversations** 13:19 15:13 59:11 62:19 64:24 67:10 68:4,6,8,16 73:15 75:20,22 78:6 93:13 94:12 95:2,16,20 96:4,8,25 98:6,10,12,23 99:6,21

101:3,19,21,23 102:8 103:21 104:7, 10,19,21 105:3 118:20 133:18 135:13,23 136:4,6

**copiers** 19:25

**copies** 144:20

**copy** 46:16 136:12 155:6 156:4

**Core** 19:20

**corner** 32:15,16

**correct** 16:14 32:8,12 36:23 45:21 55:18,19,21,22 56:14 65:20 70:16 75:2 79:11 84:2 93:6 95:25 109:2 110:15 111:23 112:3 121:16,17 129:24 143:19 145:25 146:8 151:2,16

**correspond** 155:3

**correspondence** 53:7 129:3,9

**counted** 105:12

**counterclaims** 72:18,19 152:25

**counts** 139:21

**court** 9:2,6 10:7,15,22 11:5 14:9 44:15 121:13 156:3

**courtesy** 11:14

**coverage** 103:5

**coworkers** 121:5

**create** 38:20

**created** 31:17,19,24,25 32:6 33:12 128:17

**creating** 40:24

**credit** 100:15,17,19 152:13

**current** 126:14 138:19 152:17 153:5

**customer** 22:10 68:13

**customers** 20:4 137:13,15 153:10

**cycle** 41:4

──────────

**D**

**damages** 115:20,24 116:3,4,15,19, 23 117:4,19 119:3 124:9 127:12 128:7

**Daniel** 76:23

**Danielle** 59:23 66:21 77:2 93:3 97:4, 5 98:15

**data** 137:21

**date** 46:16 50:21 57:12,15 67:12 74:10,17 75:24 76:3 79:17 83:17

91:8,9,13 103:11,14 122:5 125:18 138:17 143:21

**dated** 28:21 29:14 65:19

**dates** 19:14 67:14,16,23,25 98:10 121:10

**daughter** 40:19 50:23 51:20 73:19 74:14 76:18 78:10 81:12 85:18 93:15 94:11 95:13 99:15 102:15 103:12 104:5 105:11 109:10 111:5 112:2 117:9

**daughter's** 37:8 40:2 41:23 42:7,19 43:5,21 48:20 49:15 73:25 74:4 75:14 76:14 77:12 79:13 80:4,10 81:21 82:5 85:14 87:23 90:7 101:11 105:22 113:24 114:5,10

**day** 57:18 85:17 103:12 109:9,16 144:5

**day-by-day** 50:15

**days** 43:4 105:25 106:7,10,11,15,18, 19,25 107:2,7 114:9,12,18 115:4

**de** 86:24

**deal** 100:16,20

**dealing** 39:25 40:2 42:6,7 49:11 101:18 120:8,17 127:7

**deals** 51:9 101:13 146:15

**dealt** 119:15

**deaths** 126:7

**December** 109:19,20

**decide** 18:24

**decision** 15:24 55:24 56:5,7,9

**defendant** 9:17 110:8 112:18 113:9

**defendant's** 25:7 72:17,18,19 113:9 127:22

**defenses** 72:17,19

**defer** 122:23 124:17 125:14

**degree** 18:3,14

**demands** 51:5

**depending** 123:5 139:14

**depends** 139:8

**deposition** 9:22 10:2,4 11:3,25 13:4, 18,25 14:17,23 15:14 16:3 24:9 46:19 128:18

**Deraedt** 60:3 66:25 84:19 93:4 101:6,25

**describe** 119:6

**designate** 152:3

**designing** 88:10

**details** 111:3 121:11

**developing** 41:10 75:12 80:16

**devices** 138:2

**DGC** 86:15 87:7

**diagnose** 123:14

**diagnosed** 74:15 121:19

**diagnosis** 40:8 49:19 50:2 74:16,20, 24 123:12,17

**difficult** 42:9 49:13 64:7 109:6

**direct** 20:3

**director** 29:22 30:2 56:10 69:25 75:4 84:4 85:8 87:6

**disagreed** 39:23

**disciplined** 20:14 21:13 22:5,25 23:25

**disclosing** 13:8

**discounted** 139:22

**discoveries** 74:20

**discovery** 135:15 138:22

**discriminated** 92:20 93:22 110:23 112:7

**discrimination** 94:6 110:9,21 111:14 112:19 115:9

**discriminatory** 113:7

**discuss** 30:14 42:2 58:4,7,9 62:2 66:12 93:9 95:4 97:3 99:10 101:5 102:10 103:23

**discussed** 13:9 14:16 66:17,18,19, 20,21,22,23,24 72:5,25 73:12 78:18, 22 79:19 93:10,12 95:23 99:12 101:7 102:13,16 104:2,22 118:16

**discussing** 91:6,21

**discussion** 14:24 52:4 97:8 153:21

**discussions** 90:14 96:14 102:19

**disease** 50:5

**disheartening** 96:23

**disparaging** 114:4,8,17,23 115:3

**distress** 117:16 119:3,7 121:24

**DNA** 64:15

**doctor** 49:2,19 50:5 76:5 106:23 107:3 123:17

**doctor's** 109:11

**document** 25:6,13,17 28:9,12,25 29:2,6 30:21 31:2,5,10,12 35:15,22 36:3 43:25 44:3,7,10,13,17,21,24 45:3,7,11,23 46:3,9 52:15,16,20,24 56:16,22 57:2,5 60:7,9,14 65:4,10,13, 14 69:8,12,17,19 99:20 107:17,22 110:5 142:23 143:6,9,14 147:24 148:4

**documenter** 28:4

**documents** 13:24 14:3,7 15:19 29:6 118:4,7,10 122:7 124:18,21 128:6 135:7,15,18 138:22 142:9 144:16,19, 21 145:2,3,10,14,23 148:10,12 155:14

**drugs** 12:14

**due** 37:7 41:7

**duly** 8:5

**Dupixent** 125:4,13,17

**duties** 137:10 151:4

**E**

**earlier** 35:11 42:5 55:12 59:20 73:3 80:13 83:5 100:5 128:15

**early** 123:20

**early-october** 74:19

**Eddy** 56:8 73:21 110:13

**educated** 19:6

**education** 18:2 19:5 131:13

**educational** 18:17

**efficient** 52:6

**effort** 146:17,19

**efforts** 86:16 132:17 135:19 136:23 155:15

**Eighteen** 17:24

**elaborate** 40:20

**eligible** 139:25 144:23

**email** 60:22 142:20,21 143:18,23,24 144:3 148:13 149:8 155:8

**emailed** 57:17,18

**emails** 14:13 53:9 91:10,19 135:2,5 147:12 148:3,22,25 149:4,5,7,18,23

**emotional** 117:16 119:3,7 121:24 125:20

**employed** 20:21 61:13 62:6 63:2 67:19 108:18 140:12

**employee** 28:14 34:17 47:9 110:7 112:17

**employees** 65:25 66:4,15 113:10 127:21 150:21

**employer** 70:6,13 137:5

**employment** 19:14 20:10,15 21:9, 14 23:2 24:2 29:18 30:9 53:14 55:24 57:24 58:11 59:13 61:14,17 94:3 115:7

**enabled** 41:2

**end** 20:11 21:9 35:2,7,13 127:19

**engaged** 62:23

**engagement** 154:24

**engineer** 77:23 78:3 87:15,21

**enjoyed** 150:5

**ensure** 144:21

**ENT** 120:9 124:10,24

**entertaining** 133:17

**entire** 26:5 63:12

**entitled** 117:4 118:14 142:4

**environment** 51:8 96:22

**episodes** 81:21

**essentially** 21:22 23:10 137:25

**established** 49:7

**estimate** 132:3

**evaluation** 36:19 38:8 41:25

**evaluations** 30:11,14

**event** 47:22

**events** 42:8

**evidence** 52:9 100:23

**exact** 17:2 62:7 67:13,16,22,25 70:12 74:10,16 75:24 83:17 91:8,9,13 103:11,14 105:3 121:10 122:5

**examination** 9:10 156:8

**examined** 8:6

**examples** 41:15

**exchange** 69:20,21 107:23 129:3

**excuse** 16:9

**executive** 22:16 86:4 137:9,11 151:2

**exhibit** 25:9 28:6 29:3 30:23 35:19 44:4 45:4 46:18 52:8,13,17 56:19 60:10 65:7 69:5 71:6,8 92:15 107:12 108:21 112:12 116:7 127:16 143:3 147:21

**exit** 66:18

**expand** 33:14

**expectation** 81:10 100:12 101:12

**expectations** 33:4 81:18,19 82:3,20 100:4

**experience** 35:3

**experienced** 96:23 97:15

**experiencing** 51:7 81:8 97:16

**explain** 113:25

**explained** 97:7

**exploring** 33:13

**Express** 152:13

**expressed** 126:17

**extend** 134:14

**extended** 134:10

**extensively** 88:19

**eye** 106:23 107:3

---

### F

**fact** 59:3 66:8 80:15 92:19 93:21 100:14 111:9

**factors** 40:16

**failure** 120:3

**fair** 62:22 83:18 96:18 101:14 102:5 131:7 136:21

**familiarize** 148:16

**family** 92:24 126:4,7 128:10

**Fargo** 151:23

**fax** 19:25

**feathers** 115:14

**February** 54:2 65:19 67:11,19 75:23, 25 109:21 138:17

**federal** 71:14

**feedback** 39:6 100:7

**feel** 34:9 57:24

**feeling** 59:12 115:17 121:6

**fell** 33:4

**felt** 41:15 80:12 96:21 120:2 121:2

**Fernandez** 122:12,17 123:11,20 128:11

**Fifteen** 108:25 147:18

**file** 121:13

**filed** 14:8 44:15,18 111:2 118:10

**filings** 14:10

**filled** 31:23

**fills** 32:3

**final** 100:22

**financial** 33:11,20 126:9

**find** 102:25 103:15 140:4

**finding** 100:9 125:25

**fine** 141:6 148:8 152:5

**finish** 11:12

**firing** 108:9

**firm** 140:10

**first-half** 34:25

**FISHER** 39:13 46:20 47:3 52:10 70:20 82:7 116:20 117:7 128:22 129:2,8,13,17,20 140:25 141:5 147:17 152:2 156:2,5

**fit** 61:21

**fixed** 138:4

**flurry** 133:8

**FMLA** 105:6,8,12,18 108:5,8,12,14, 17 117:12

**focus** 37:20,22 38:4,9 39:6,12,18,22 40:5,15,21 43:6,8,13 58:17 80:14 95:11 114:13

**focused** 41:9,16 80:16 81:24

**follow** 11:2 141:3 142:11 155:17

**forecast** 34:3,11 38:17,21 55:11

**forecasts** 34:4

**forget** 19:17

**forgot** 17:2 67:6

**formal** 18:2 44:14

**forms** 139:10

**forwarded** 149:8

**Foulon-belkacemi** 86:3

**found** 50:2

**France** 70:10,12,15 84:21 86:5,15 87:6 88:25 89:10 90:23 92:4,11

**freely** 12:7

**friend** 100:10

**friends** 68:15 130:20

**friendship** 68:15

**friendships** 126:11

**front** 10:21

**frustrating** 49:13

**funnel** 38:24 80:2 89:15,16,20 90:13, 16 91:7,21

**future** 51:17

---

### G

**Gal** 86:24

**gap** 141:25

**gave** 100:5

**gears** 47:8

**general** 49:12

**generally** 132:4

**geographic** 130:23

**German** 59:24 66:20 77:22

**give** 11:13 12:16,20 90:12 100:14,17 147:10 153:17

**global** 18:21 69:25 84:20 85:8 87:5 88:24

**Gmail** 149:9

**good** 9:13,14 22:23 61:21 129:19

**govern** 9:23 10:18

**graduate** 18:4,7

**graduated** 19:8 20:23

**grass** 64:17

**Great** 156:2

**greener** 64:17

**ground** 9:21 10:25 13:17

**group** 21:19 86:18 87:7

**guess** 20:23 23:21 27:22 56:3 62:13 63:3,7 72:9 131:25 132:2

**guessing** 39:3

**Guilfoyle** 9:11,12,15 25:15 28:8
30:25 35:16,24 37:12,18 39:8,16
42:13 44:25 46:24 47:6,7 52:5,12
56:21 65:2 69:7 70:17,21,24 82:8
87:2 107:9,14 116:21 128:25 129:5,
11,14,18,22 140:23 141:3,6,8 142:8,
13 143:5 147:14,18,23 152:5 153:19,
23 155:13,19

---

**H**

**half** 31:14 32:25 35:7 106:7,11,14
107:2 109:16

**Hames** 84:3

**Handbook** 28:14

**handing** 68:9

**handle** 27:5 85:24

**handwritten** 136:22

**Hang** 104:15

**happened** 49:16 50:14 62:21 67:24
120:3

**happening** 50:13 64:18 102:6 103:2

**Haran** 9:1,5,13 10:1 11:1 12:1 13:1
14:1 15:1 16:1,6 17:1 18:1 19:1 20:1
21:1 22:1 23:1 24:1 25:1,16 26:1 27:1
28:1,4,11,25 29:1 30:1,21 31:1,4 32:1
33:1 34:1 35:1,17 36:1 37:1 38:1 39:1
40:1 41:1 42:1 43:1 44:1,2,10 45:1,2
46:1 47:1 48:1 49:1 50:1 51:1 52:1,15
53:1 54:1 55:1 56:1,17,24 57:1 58:1
59:1 60:1,8 61:1 62:1 63:1 64:1 65:1,
3 66:1 67:1 68:1 69:1,3 70:1,25 71:1
72:1 73:1 74:1 75:1 76:1 77:1 78:1
79:1 80:1 81:1 82:1 83:1 84:1 85:1
86:1 87:1 88:1 89:1 90:1 91:1 92:1
93:1 94:1 95:1 96:1 97:1 98:1 99:1
100:1 101:1 102:1 103:1 104:1 105:1
106:1 107:1,10 108:1 109:1 110:1
111:1 112:1 113:1 114:1 115:1 116:1
117:1 118:1 119:1 120:1 121:1 122:1
123:1 124:1 125:1 126:1 127:1 128:1
129:1,23 130:1 131:1 132:1 133:1
134:1 135:1 136:1 137:1 138:1 139:1
140:1 141:1 142:1 143:1,8 144:1
145:1 146:1 147:1,16 148:1,2 149:1
150:1 151:1 152:1 153:1,24 154:1
155:1 156:1,9,13

**Haran@orange** 143:25

**hard** 64:13 82:10

**hardships** 126:9

**head** 11:5 29:22 118:5 138:24

**health** 73:16,19 139:16

**hear** 81:5

**heard** 67:3 68:17

**heightened** 81:20

**held** 19:10 98:3 105:14 117:10
136:25 153:21

**helped** 41:11 51:15

**helping** 90:10

**Hernandez** 92:25

**Hey** 58:24 61:20 64:10 67:3

**high** 18:4,7 148:23

**higher** 56:13 115:15

**highest** 17:25

**HIPAA** 122:6,24

**hired** 24:5,12,14,17 111:21,25

**hiring** 47:17

**history** 125:20

**Holbrook** 9:9 16:12

**hold** 20:6 23:11

**Holtsville** 17:4

**home** 22:21 49:17 50:24

**homeschooled** 49:4

**homeschooling** 48:23 49:8

**honestly** 12:24

**hope** 97:19

**hopeful** 49:18

**hoping** 49:22

**hospital** 49:6 50:24 85:18

**Hostetler** 9:16

**hour** 70:18 124:2

**hourly** 106:17

**hours** 12:14 13:16 104:24

**HR** 79:10

**Hubert** 60:6 67:9 89:23 90:18 91:7
93:5 103:24

**human** 11:9 47:14 54:14 110:22,25
115:15

**hundred** 56:4 138:15

**Hunter** 84:5

**husband** 14:20,23

**husband's** 17:13 139:18

**hyper** 121:3

---

**I**

**IBM** 89:22 90:11,15 91:6,22 133:23

**identification** 25:9 28:6 29:3 30:23
35:19 44:4 45:4 52:17 56:19 60:10
65:7 69:5 107:12 143:3 147:21

**identified** 36:14 110:12 112:22
117:5 149:17,22 152:8

**identifies** 109:16

**identify** 72:13 109:9 110:7 112:16
113:6 127:21 128:5,10

**identifying** 37:23

**illness** 37:9 40:2,8 42:7,19 43:5,22
48:20 74:15 75:14 76:14 79:13 82:5
85:14 90:7 101:11 113:24 114:5,10,
24 115:5

**illnesses** 41:24 126:3

**imagine** 136:14

**immediately** 16:23 130:11

**impact** 119:17

**impacted** 119:22

**impacts** 120:12,13

**impasse** 41:6,7

**improvement** 36:18 37:6

**inability** 74:2

**inaccurately** 63:8

**includes** 138:2

**including** 10:19 138:2

**incorrect** 126:19,22

**incorrectly** 62:13

**increase** 51:6

**increased** 75:10,17 76:15 77:10
78:7 79:24 80:7 85:15 87:24 90:6
93:10 94:7 95:8,10 97:9 99:14 101:10
102:14 104:4

**increasing** 59:2

**individual** 20:4

**individuals** 64:23 71:12 92:16
104:22 127:21 128:6 149:22

Haran Case 1:21-cv-10585-DEH-JW    Document 67-4    Filed 02/13/24    Page 54 of 62 Patricia Haran
Orange Business Services Inc.                                                          April 26, 2023

**industry** 130:19

**infection** 50:4

**infectious** 50:5

**inflammation** 120:12

**information** 13:19 44:20 51:24
71:13 72:3,14,23 73:7,10,21 74:23
75:6 76:10,14 77:4,24 78:15 79:21,24
84:6 85:10 86:6 87:8,17 89:2,11 90:2
145:12,15,23

**informed** 38:7 82:21 92:18 93:20

**initiative** 38:20

**input** 36:8

**inputted** 32:11

**insomnia** 120:16 121:18,20

**instance** 64:7

**instances** 61:24

**institutions** 18:17

**instruct** 146:25 147:5

**insurance** 139:16 142:10

**integration** 77:3,15 97:23

**Intelenet** 20:19

**interested** 130:21 153:6

**interfered** 105:8,18

**interference** 105:7

**international** 89:24

**Internet** 137:23 138:5

**Interrogatories** 45:15,20 71:7 92:14

**interrogatory** 71:17,24 72:12 78:25
93:19 95:6 108:21 109:4,9 110:4,6
112:12,13,16 113:5,17 127:16,17,18,
20 128:3

**interrupt** 11:10

**interview** 133:22

**interviews** 132:16,19,22 134:4,10

**introduce** 46:18

**investigation** 40:10

**invited** 53:16,19

**involuntary** 68:23

**involved** 47:23 97:13

**IOT** 137:22

**issue** 100:6 120:13 121:25 127:3

**issues** 41:19 48:22

**ITHELPDESK@ORANGE.COM**
143:19

---

### J

**January** 27:21,23 49:3 83:6,12,14,20
86:12

**Jennifer** 54:12,13 55:2 66:23 78:14

**jeopardy** 57:25 58:10 59:13

**job** 19:9 21:11,17,18 22:8,9,19 23:5
40:5 42:12 61:3,5,20 63:23 64:2
90:20 93:18 94:24 96:19 102:24,25
120:24 125:25 126:14,18 127:8
130:4,10,24 132:15 133:12 134:9,10,
14,21,25 135:19 136:22 137:10 138:9
140:5 151:4,6 152:17 154:7

**jobs** 130:12,14,15,25 131:18 136:5,
25

**joined** 20:18

**judge** 10:15,21

**juggle** 42:10 81:17 90:9 106:9

**juggling** 51:4 59:5 78:11

**Julia** 17:20,23

**July** 34:18,22 35:2,13

**jump** 11:10

**jumped** 55:10

**June** 35:11

**jury** 10:16,22

**Justin** 9:15

---

### K

**key** 88:24

**kickoff** 86:19

**kid** 104:15

**Kimmick** 29:19 30:17 31:19 36:12
38:7 40:20 41:21 42:17 53:19 55:18
56:6,13 57:21 59:21 66:17 73:9 85:20
110:13 112:22

**Kimmick's** 29:20

**kind** 11:9 15:23 19:5 22:21 26:23
52:4 61:9 64:24 80:22 81:4,22 84:15
86:9 93:15 100:3 104:15 120:20,22
134:24

**kinds** 133:17

**knew** 15:20 47:18 76:17 84:12,25
130:18,19

**knowledge** 45:17 70:5 71:13 72:14,
23 73:17 88:13 110:2 153:8,12

**Kyndryl** 133:25

---

### L

**lack** 37:20 38:3,9 39:5,12,18,22
40:21 43:8,13 58:17 80:21 114:12

**lacked** 80:13

**Lacosto** 88:6

**lamenting** 68:16,25

**laptops** 137:22

**larger** 34:5 90:12

**late** 35:8

**late-september** 74:18

**Laurie** 86:24

**law** 10:19 110:22,25 111:11

**laws** 142:2

**Lawson** 54:12,13 55:20 57:21 66:23
78:15,16

**lawsuit** 15:25 44:16 105:6 115:20
119:4 153:2

**lawyer** 111:2 118:17 135:10

**leader** 86:17

**leadership** 115:16

**Leading** 98:7

**learn** 53:14

**leave** 23:20 53:10 102:24 108:14,18

**leaving** 146:23

**led** 86:15

**left** 10:8 27:4,7,25 145:24 150:2

**legal** 41:5,6,7,19 100:6,9

**Lesterson** 154:12,16

**letter** 57:9,13,16,20 154:25

**level** 17:25 23:14,15,21 24:2 56:12
148:23

**Liam** 17:20,21

**library** 33:18

Haran
Orange Business Services Inc.

Patricia Haran
April 26, 2023

**life** 125:23 126:5

**lines** 55:5

**Linkedin** 130:16

**list** 59:18 66:6 70:13 71:11 92:16

**listed** 45:17 84:14

**litigation** 135:7 150:17,22

**live** 16:18

**lived** 16:12,15,25

**LMHC** 92:25

**log** 129:15

**long** 13:13 16:15 20:6,24 21:23 64:10 125:9,12

**longer** 125:13

**looked** 14:6 136:15

**Lorna** 28:2 83:5

**loss** 126:11

**losses** 97:14

**lost** 117:23 118:2 120:16

**lot** 73:14 85:2 97:12 148:6

**Lou** 59:22 66:19 76:7 93:2 95:5,17,23

**lower** 32:15,16

**Lumen** 23:16,22 24:3

**lunch** 129:19

---

**M**

**M-A-T-E-J-O-V-I-C** 16:10

**M.J.** 60:6 67:9 89:23 92:7 93:5 103:23

**M.j.'s** 104:13

**machines** 19:12 20:2

**made** 22:17 55:23 56:5,6 68:19 85:19 93:21 113:10 134:13

**maiden** 16:7

**maintaining** 83:9

**major** 86:5 87:7 89:9

**make** 39:2 41:16,17 50:7 55:4 59:6 62:13 82:17 113:22 114:3,7,16,22 115:2 118:19 129:11

**makes** 42:24,25 43:2 56:3 62:21 120:13

**making** 15:24 75:12

**manage** 43:21 90:21 100:8 119:14, 20 120:11,18 124:13 133:12

**manager** 24:18,22 54:15 76:8 77:3, 15 84:21 87:5 88:24 89:9 97:23 121:5

**manager's** 32:18,23 36:21,25

**managing** 40:7

**manifestations** 121:23

**Marie-cecile** 60:2 66:25 84:19 93:4 101:6,24

**Mark** 28:4

**marked** 25:6,9 28:5,25 29:2 30:21,23 35:19 44:3 45:3 52:15,16 56:16,19 60:8,9 65:3,7 69:3,5 71:5 107:10,12 143:3 147:16,21

**marketing** 22:15

**married** 17:11

**match** 131:20

**Matejovic** 16:10

**matter** 9:18 71:14 72:15 116:8 128:7

**matters** 145:24 146:2

**matured** 33:15

**MBA** 18:20,25 131:8

**means** 33:22,25 151:12

**meant** 40:21 99:4

**medical** 77:12 78:10 80:4 121:19 123:16

**medically** 76:20

**medication** 12:14 124:5 125:5

**medications** 124:16,23 125:7,10

**meet** 30:13 33:10,19 34:11 43:10 48:2 50:20,21 152:22

**meeting** 53:21 54:4,9,19 57:20 122:21

**Melegrito** 60:5 67:6 87:13

**Mellon** 151:22

**member** 79:10

**members** 92:24 128:11

**memory** 48:9

**mental** 125:20

**mentioned** 29:7 38:13 39:12,15,18 41:4 42:4 55:12 80:7,13 82:19 83:5 103:3 111:17 112:6 121:18 128:16

131:8 145:16,21 150:24 154:5

**message** 62:10

**messages** 98:20

**met** 48:6,14,17 73:4 75:22 92:3 93:15

**method** 94:16

**metrics** 100:21

**metro** 131:3

**MFS** 20:19 21:6,16,17

**mh-hm** 10:12 72:16 83:21 103:7 108:3 109:18 110:11 127:25 128:9

**Michel** 67:6 88:6

**Michelle** 47:10,13,14,22 48:2,14 53:8,11 59:19 72:2

**middle** 116:13

**midway** 15:10

**midwest** 30:6

**mind** 46:6

**mine** 22:13

**minutes** 48:18 70:19 147:11 153:17

**misquote** 124:19

**missed** 150:12

**missing** 133:16 139:24 152:15

**mitigating** 40:16

**mixture** 148:12

**module** 83:9 89:18 90:12 91:2

**mom** 107:3

**moment** 9:21 35:22 44:7 45:6 56:25 65:10 69:12 107:16

**monetary** 116:4

**money** 117:22

**month** 19:17

**monthly** 123:8

**Moody's** 77:19 150:10

**Morgan** 151:22

**morning** 9:13,14

**mother** 14:21,25 42:6 73:20 76:4 94:11 105:10 106:22 111:5,22 112:3, 9 117:9

**mother's** 37:9 41:23 42:19 114:24 115:5

**move** 26:22 39:9 42:14 79:25 85:16

114:14

**moved** 150:4

**moving** 37:23 80:9

**multiple-page** 147:24

---

**N**

**NA** 9:18 24:8 70:3

**Nadine** 86:2

**named** 47:9

**names** 16:6 17:19 71:19 87:3 92:21 124:19 133:3,5,6

**Natalie** 67:8 89:8 91:25

**nature** 11:9 63:23 119:7 122:16

**navigate** 41:12

**needed** 36:18 37:6 49:4 74:6 80:18, 19 103:6 144:21 145:4 146:21

**needing** 81:4,11 111:6

**negative** 113:23 114:2,8,16,23 115:3

**neglect** 46:22

**negotiated** 89:16

**network** 88:11

**Nodding** 18:19

**nods** 11:5

**Non-solicitation** 25:21

**nonresponsive** 39:9 42:14

**northeast** 30:6

**Notary** 8:5

**note** 37:4 62:15

**notes** 136:22 150:3,7

**notice** 92:17

**notified** 65:22 67:20 142:15 144:7 146:7

**November** 109:19

**number** 39:3,4 54:24 71:17,24 72:12 92:15,24 95:6 108:24 109:4,7 110:4 112:13 113:5 127:17,20 128:3

**numbers** 75:13 76:16 82:22,24 100:15,18 109:5

---

**O**

**oath** 10:7,9,13,14 71:2 129:24 153:25

**Objection** 82:7 116:20 117:7

**objective** 43:10

**objectives** 33:11,20

**OBS** 24:9 25:11 28:10 85:9 86:5

**OBS11** 25:8

**OBS13** 28:5

**OBS334** 30:22 31:3

**OBS344** 35:18,25

**OBS381** 56:18,23

**OBS5** 25:8

**OBS575** 107:11,15

**OBS821** 147:20,25

**OBS910** 143:2,6

**OBS926** 65:5,6

**OBS930** 69:4,9

**obstacle** 41:12 100:9,11

**obstacles** 41:3

**obtain** 18:11 138:9 144:15,17,19

**occasions** 38:14

**occurrence** 61:23 62:17 63:18

**October** 43:5 48:9,13 74:12 103:18 108:2 109:16,17

**offended** 40:13

**offer** 61:25 134:14

**offered** 105:13

**offers** 134:10

**office** 47:19

**onboard** 47:18

**onboarded** 29:13

**onboarding** 29:8

**one-page** 28:9

**onerous** 41:19

**ongoing** 14:24 15:2 48:21,22 50:4 51:3,11 64:20

**online** 18:22 131:8

**opportunities** 33:12,14,16 34:10 37:23 61:5 95:19

**opportunity** 10:5 20:13 36:21 69:13 107:18 143:10 148:5,22

**option** 105:13 139:19

**options** 124:13

**Orange** 9:17 23:24 24:5,8,9,13,20 25:3,22 26:6,13 29:18 30:10 32:7 36:20 45:21 46:12 47:9 53:14 55:25 60:23 61:2,14 62:6 63:2,25 64:2,5 65:23,25 66:3,10,15 70:2,3,4,9,11,14 75:5 76:9 84:5 87:16 88:7,25 89:10, 25 90:22,23 97:22 105:8,18,21 106:21 108:6,11,15,18 110:23 111:19,22 112:2,7 113:22 114:3,7,16, 22 115:2,8,10 121:16 125:24 130:3,6 131:14,20 132:12 134:22 137:2 138:17 141:10 142:17,18 143:24 144:3 145:25 146:12 149:8,19,24 150:21 151:6,14 152:19 153:5,11,14

**Orange's** 152:24

**Oranges's** 92:14

**order** 50:6 90:12

**ordering** 156:4

**orders** 33:6

**overcome** 100:9

**overlay** 77:14 87:21 88:9

**oversee** 90:21

---

**P**

**p.m.** 156:9

**paid** 106:2,10,19 107:6 144:22,24

**Paine** 28:2 83:6

**paper** 28:17

**papers** 29:12

**paperwork** 49:7

**paragraph** 109:12 116:13

**part** 27:3 38:6,8 47:15,17 56:9 58:20 63:22 64:15 79:3 90:20 98:20 105:4 115:19 135:7,15 136:2 146:16 150:16 152:3

**partial** 106:7

**partner** 137:9,11 150:25

**partnership** 33:13

**parts** 50:9

**pass** 41:18

**past** 41:2,12

**Patricia** 9:5 16:6,9 156:8,13

**Patrick** 17:14

Orange Business Services Inc.

Patricia Haran
April 26, 2023

**Patty** 33:2 143:25

**Patty.haran@orange.com** 60:23

**Paul** 60:3 67:4 85:7 93:4 102:10,12 103:4,21

**Paul's** 102:22,23

**pay** 106:14 117:23 118:2

**paying** 139:20

**pending** 12:9 142:25

**people** 45:16 64:4 66:6,8,9,25 68:6, 10,20 93:20 132:23 145:7 146:17,19

**percent** 56:5 138:15

**perception** 58:18

**perform** 76:16

**performance** 30:10,14 31:13,18 32:2,6 34:21,25 36:7 37:5 39:19,20 41:24 58:2,12,13,15,20,25 59:15 81:10 86:11,13 87:12 88:3,16,20 89:6

**perjury** 10:20

**persistent** 81:25

**person** 27:16,24 75:22 88:10,12 109:3

**personal** 149:9

**persons** 72:13

**Perusing** 44:8 45:8 52:21

**Peter** 59:22 60:21 65:16 66:18 67:4 75:3 92:25 93:9,24

**Pfizer** 41:6 77:19 100:6,16,21

**Phillipe** 60:4 67:5 87:13

**phone** 94:15 95:21 96:12 99:19 101:22 104:11,21 137:21 155:5,11

**phones** 138:3

**phrase** 38:3

**physical** 121:23

**Physically** 54:5

**Pichon** 66:24 69:21,24 79:20 93:3 99:10 101:3

**pick** 146:23

**pile** 28:16 29:11

**pipe** 33:18

**pipeline** 33:9 34:3,7,8 37:25 38:25

**pizza** 73:5

**pizzeria** 48:3,15

**place** 67:11,18 73:5 95:16 96:4 103:9 104:23

**Plaintiff's** 155:15

**plan** 32:2 38:17,23 139:18,19

**plans** 137:20,21,22

**point** 15:8 16:25 17:3 47:25 50:25 74:11 76:19 82:23 83:2 91:12 92:4 123:10 133:18,24

**Pons** 86:25

**poor** 121:7

**populated** 32:4

**portfolio** 33:15

**portion** 37:14 39:9

**position** 19:19,24 20:7 21:3 23:12 24:16 62:25 137:7

**positive** 86:10,12 87:12 88:16,20 89:6

**possession** 46:12 72:7,10

**possibility** 92:6

**potential** 27:12 50:3 62:2 91:3 136:5

**praying** 49:22

**preceding** 16:24 42:8

**preexisting** 120:5

**preparation** 13:6,24 128:17 129:7

**prepare** 13:4

**presales** 77:23 87:15

**prescribed** 124:4,24,25

**present** 54:8 94:25 96:24 99:5 101:2 102:7 103:20 104:18

**presented** 38:16,23

**pressing** 59:4

**pressure** 51:6 59:2 75:10,17 76:15 77:10 78:7 79:24 80:7 85:2,15 87:24 90:6 93:11 94:8 95:8 97:10,11,16 99:14 101:10 102:14 104:4

**presume** 11:20

**pretty** 14:8 138:6 150:12 155:10

**previous** 14:9 38:22 125:19 130:18

**previously** 78:13 79:19 83:10,24

**primarily** 130:20,25 150:13 155:5

**prior** 44:18 45:24 57:23 59:10 60:25 63:24 79:5 83:20 92:4 98:15

**priorities** 51:12

**privilege** 129:15

**privileged** 13:21 128:23

**prize** 47:23 48:3,7

**problem** 52:7

**procedure** 105:23

**process** 36:20 51:21 56:10 135:16

**produce** 135:20

**produced** 98:19 135:6 150:15,22

**producing** 135:8

**production** 128:21 129:16 140:19, 24 141:7 142:9,12 155:14,18

**products** 137:14,17 151:15

**professional** 121:20

**program** 18:22 131:8,10

**progressively** 37:24

**prohibit** 105:21 106:21

**promoted** 87:6

**pronouncing** 154:11

**properly** 11:21

**Proprietary** 25:20

**prospect** 91:6

**provide** 54:17

**provided** 54:21 145:12,14 148:11

**providing** 146:11

**PTO** 106:2 107:4

**Public** 8:6

**pull** 144:25

**pulled** 144:25 148:13

**purchase** 139:19

**Purdue** 18:21 131:9

**purport** 110:9 112:18

**purpose** 9:22 68:3

**purposes** 11:2 100:21 118:15 145:22

**pursuing** 18:20

**put** 14:6 92:7 129:14 141:2

**Q**

**qualified** 33:9,18

**question** 11:11,12,16 12:9,10 37:10 39:11 42:16 58:8 59:9 66:7 72:11,22 82:18 102:18 114:15 116:5,25 126:22 142:25 147:4

**questions** 10:6,7 11:20 12:2 148:14, 18

**quickly** 76:17 80:2,9,17 101:14

**quota** 34:5,11 38:18,22 55:5,9,13,15 64:19 75:12 82:22 89:18 100:15,18 137:13

**quotas** 152:22

**quote** 55:6

**R**

**ran** 140:9

**range** 132:7

**rating** 36:16,17 37:6 43:3,11

**reached** 62:24 153:4,13

**reaching** 62:18

**read** 32:22 37:12,15 71:18 92:21

**real** 80:21

**realistic** 101:15,16

**reason** 12:20,23 46:8,11 54:17,24

**reasons** 54:20,23

**recall** 13:11 16:2 24:25 27:18,20 28:19 34:20 53:23 54:7 55:2 57:12,14 59:10 62:7,11 63:4,14,15 64:7,25 67:13,15,22,25 74:17 83:16 91:8,9,15 92:8 94:14,16 96:3,11 98:9 103:11,13 104:10 118:4 121:10 122:5 123:19 124:15 125:18 128:18 131:9,21,24 132:11 135:14 141:20,21 142:2 145:9,13 150:9 154:7

**receive** 30:10 57:19 139:4,7 140:15, 20 141:10

**received** 57:10,13 142:4

**receiving** 59:2 79:25 85:16 87:25 93:11 119:19 141:22

**recess** 70:23 129:21 147:13

**recognize** 25:16 28:11,13 29:5,9 31:4,9 36:2,5 44:9 45:10,13 52:23 53:2,5,7 57:4,7 60:13,17 65:12 69:16

**recognized** 86:11,18

**recollection** 64:22 124:23 134:3

**recommended** 49:2

**record** 9:3,20 24:7 28:9 31:2 35:17, 25 56:22 65:4 69:8 107:15 135:11 136:11 143:6 147:24 153:20,22

**recorded** 126:16

**records** 46:17 91:19 103:15 121:12 122:24,25 125:15 133:21 134:20,24 136:13 138:25

**recovering** 49:17

**recovery** 40:9 105:23

**recruited** 23:23 47:16

**recruiter** 61:12,15,19,25 62:18,24 140:6,7 154:5,25 155:4,16

**recruiters** 61:8,16 130:17

**refer** 91:10 145:11

**reference** 84:16 86:9 87:11 88:16,21

**referenced** 73:23

**referred** 121:25 129:5

**referring** 24:7 27:25 111:12 118:8

**refresh** 14:10

**regain** 119:25 120:22 121:4 142:16

**regard** 75:7 76:11 77:5,25 78:16 84:7 85:11 86:7 87:9,18 89:3,12 90:3 93:9 95:6,14 97:4 99:11 102:11 103:24

**region** 30:3 91:4

**regions** 30:6

**regular** 78:5 90:19 95:17,19

**regularly** 77:9 79:23 84:24

**related** 40:4,17 45:17 50:17 95:20 111:11 119:13 126:23

**relating** 124:8 128:6 135:18 142:9 155:15

**relation** 50:13

**relations** 90:22

**relationship** 41:10

**release** 15:18 122:7,25 124:21

**released** 85:18

**relocate** 131:5

**remember** 20:20 57:17 63:9 74:9

107:21 143:13 148:25 149:3

**recognized** 86:11,18

**remembering** 134:7

**remotely** 131:3

**removed** 100:11

**rep** 19:22 21:4,6,21 22:18 23:10

**repeat** 37:10 82:17

**repercussions** 117:20

**rephrase** 11:18

**report** 29:17 30:7 115:8

**reported** 29:19 55:17 56:11

**reporter** 9:2,6 10:8 11:6 37:15 156:3

**reporting** 123:19

**represent** 9:17

**representative** 110:8 112:17

**representatives** 113:10 132:25 133:4

**request** 53:10 85:20 108:17 111:18 115:15 128:20 129:12,16 141:7 142:12 155:18

**requested** 15:18 27:9 37:14

**reschedule** 51:2

**resign** 83:11

**resigned** 20:12 21:10 26:19 27:4,16 83:6,22

**resources** 47:15 54:14 115:15

**respect** 86:21 99:24 147:2,8

**respond** 36:21

**responded** 42:22

**response** 11:4 39:17,22 71:16,23 92:15,23 93:16 94:18 96:14 101:25 102:22,23 104:13,14 109:15 110:3 113:13,16,17,20

**responses** 45:19 46:13 71:6,11 92:13 108:21 112:12 127:16

**responsibilities** 19:24 21:5 26:12 27:2 40:6 42:11 59:5 78:9 83:3,20,24 90:9 151:6

**responsibility** 83:7 90:21

**responsible** 30:5 77:16 83:10 137:12 152:20 153:15

**result** 81:11 126:13,18 132:16 134:9

**results** 33:3 88:2

98:16 133:7,15 135:8,11 154:19

Haran
Orange Business Services Inc.

Patricia Haran
April 26, 2023

**resume** 155:6,9

**retaliated** 92:20 93:22 105:16 108:7, 11

**retaliation** 93:25 94:5 108:5 110:10 111:10,14 112:19 115:9

**retaliatory** 113:7

**Reticker** 60:4 67:4 85:7 93:5 102:11, 12

**return** 49:2

**returning** 129:9

**revenue** 33:3

**review** 13:23 14:12 31:13,18 32:2,6 34:21 36:7,9 37:5 38:12 39:19,21 44:7,17 45:7,23 56:25 65:10 69:12 71:15,20 107:17 148:3,9,22

**reviewed** 14:5 128:16 129:6

**reviews** 34:25

**rights** 25:20 105:8,19 110:22,25

**Road** 9:8 16:12,25 17:3

**Robert** 67:8 88:23 89:3

**Rocco** 47:10 48:2,6 53:8,11 59:19 72:2,6,23

**role** 21:20 22:18 23:8 26:5 62:2 84:18 151:5

**roles** 26:8

**Romero** 59:25 66:21 77:22,25

**roughly** 20:22 123:2

**ruffle** 115:14

**rule** 13:17

**rules** 9:21,23 10:18,25

---

**S**

**Saint** 86:24

**salary** 106:17 131:16,20,21 132:6 138:19 139:11

**sales** 19:21 20:3 21:4,6,21 22:18 23:10 29:22,23 30:2 34:3,4,10 41:3 43:20 51:7 55:7 56:10 61:4 64:15 78:3,7 79:25 80:8,9,20 81:6 82:2,22 84:4 85:3,16 86:16,19 87:6,21 89:16 90:15 91:7,21 95:19 130:14 137:12 146:19 152:20

**salespeople** 61:23

**salesperson** 63:19

**Samsung** 152:12

**scare** 76:20

**scholarship** 51:21

**school** 18:5,8 48:23,25 49:11 51:16

**schools** 49:12

**scope** 130:23

**scrutiny** 75:11 94:8 95:10 100:7 101:9 102:15

**search** 130:15,24 132:16 134:21 135:19 136:23 155:15

**secondary** 18:16

**seek** 18:24 131:12

**seeking** 115:20,24 116:16 117:22,25

**self-confidence** 119:23 127:3

**self-induced** 127:4

**sell** 33:14 139:9,14 151:13

**selling** 19:25 21:7 137:13,14,18,20, 22

**send** 62:9

**sender** 143:17

**sending** 46:23 135:9 155:9

**sense** 42:24,25 56:3 62:21

**sentence** 33:7 37:25

**sentences** 32:23

**separated** 151:7

**separation** 125:24 131:14 134:21 137:2 141:9 149:18,23

**September** 74:12 122:8 131:11

**series** 74:20

**served** 45:24

**serves** 48:9

**service** 138:4,5

**services** 9:18 21:8 23:24 24:6,8 70:4,9 77:3,15,16 97:23 137:15,18,23 146:11 151:15 153:7

**session** 10:11 13:6

**sessions** 15:10 122:18

**set** 83:19 151:9,10

**Shaman** 154:12,23 155:16

**share** 51:23

**shared** 15:19,21 51:25 59:19

**short** 22:10 33:5 70:23 129:21 147:13

**show** 25:5 28:3,24 30:20 35:14 43:24 44:23 52:14 56:15 60:7 65:3 69:2 107:10 122:25 142:22 147:15

**sic** 110:13

**side** 70:11

**sign** 29:12 41:8 46:9,10,16

**signature** 25:25 28:20 29:10,14 46:3,13

**signed** 24:25 25:22 28:17 29:7 100:20 122:25

**SIM** 137:24

**Simal** 22:11

**similar** 76:20 152:18

**simultaneous** 29:25 70:7 135:3 145:17

**Singh** 59:22 60:21 65:16 66:18 75:3, 7,20 93:2,9,24 94:13 95:2

**Singh's** 94:18

**single** 67:24

**sinus** 120:13 121:24

**sinuses** 120:6

**Sitting** 134:2

**situated** 48:24

**situation** 77:12 79:12 81:7 94:21 96:17 102:4 117:21 120:19 124:14

**situations** 120:16

**sleep** 120:16

**small** 22:20,24

**social** 49:5 51:14,15

**sold** 77:18

**solution** 151:9,10

**solutions** 88:11

**son** 51:18

**sort** 14:24 26:18 41:14 47:21 50:15 53:10 58:24 64:20 68:16,24 139:25 141:10

**sorts** 138:2

**sought** 122:17 142:16

**sound** 122:9

**space** 19:6

Haran
Orange Business Services Inc.

Patricia Haran
April 26, 2023

**speak** 12:3 13:13 14:22 63:25 65:24

**speaking** 29:25 47:19 70:7 135:3 145:17

**specific** 24:19 30:3 32:10 64:23 68:12 98:9 134:3 145:9

**specifically** 28:19 38:3 95:5 112:13 114:11

**specifics** 64:25 92:9 94:14,16 98:16

**speculate** 56:2 82:11,15

**speculating** 33:22

**spend** 124:2

**spin** 133:25

**spoke** 15:7 48:18,19 49:14 67:5,6,7, 8,9,14,16 77:9 79:23

**spoken** 27:12 95:24

**spokesperson** 79:8

**Stanley** 151:22

**start** 91:5 121:8 123:25 130:9

**started** 19:15 25:2,22 26:25 125:16 128:15 130:4,11 131:9 138:13 141:21 142:6

**state** 8:6 9:2 63:7 111:11 141:11 142:2,10

**stated** 16:11

**statement** 42:5 100:22

**States** 28:15 30:4

**status** 112:8

**stay** 64:11,18

**stayed** 22:4

**stemming** 127:3

**step** 22:17 85:24

**steps** 118:23

**steroids** 124:25 125:11

**stock** 139:19

**stonewalled** 93:16

**stonewalling** 81:2 99:25 120:20

**Stony** 18:12

**stop** 88:4

**stopped** 122:3

**stress** 15:23 75:10 119:14,17,21 120:12 125:20 126:13,17 127:5

**stressors** 125:23 126:4

**strike** 39:9 42:14 114:14 128:2 132:20 140:19

**struggle** 50:17 51:12

**stuff** 104:6

**subject** 71:14 72:15 94:9 121:7

**subjected** 110:9 112:18

**submit** 136:10

**submitted** 136:9 138:21 139:2

**submitting** 135:14

**subset** 77:16

**substance** 36:9

**successful** 40:24

**sufficient** 33:10,19 34:9 38:25 39:2

**Suisse** 152:13

**summary** 111:3

**supervisor** 55:21

**support** 88:10

**supported** 78:4 87:22

**supposed** 50:20

**surgery** 40:9 49:16,21,23 73:25 74:13 103:13

**Switching** 47:8

**sworn** 8:5

**sympathetic** 94:20 96:16 97:19 102:3

**system** 106:13 142:17

━━━━━━━━━━━

**T**

**T-MOBILE** 126:18 133:9 134:15 137:6,8 138:10,20 140:2,5,13,16,21 142:6 151:2,5,14,19 152:7,18,22 153:7 154:6

**T-Mobile's** 137:14,18

**tablets** 138:3

**takes** 137:24

**taking** 26:25 41:22 42:18 50:18 58:17 67:11 94:10,24 95:12 104:23 105:22 106:22 111:10 114:9,11,17 115:4 124:12 125:6,17

**talk** 13:10 48:15 61:22 63:21 66:7 99:13 120:25 122:19

**talked** 15:11 39:21 49:10 50:16 51:3, 5,13,21 59:17,19,20,21,22,23,24 60:2,3,4,5 73:3,14 78:6,8,14 81:3 84:10,23 90:23 93:17 94:4,6,22 95:8, 9 99:13,14 101:8,10,12 133:14 134:8

**talking** 16:3 124:2

**target** 33:5 34:11

**targets** 152:21

**tax** 140:16

**team** 47:17 84:5 86:17,20

**teaming** 68:12 146:16

**teams** 60:18,19 65:16 69:20 75:21 98:21,22 99:3,21 101:23 104:9 107:23 146:14

**technical** 24:24 75:4 88:9,10

**technologies** 22:12 23:17 138:8

**technology** 130:14

**Telecom** 23:7

**telecommunication** 21:7

**Teleport** 21:18,23,24

**templates** 32:5

**ten** 36:15 70:18

**tenure** 26:5,18 63:12

**term** 99:3 125:13

**termed** 39:2

**terminate** 55:24

**terminated** 53:15 55:3 57:11 59:11 66:9,11 67:3 68:21 95:25 105:16 111:9 117:14 121:16 144:4

**termination** 54:18 57:9,23 60:25 63:24 65:23,24 66:13 67:21 68:23 79:3,9,17 94:2,4 95:9,23 98:8 120:4 130:3,5 138:16 141:24 142:15 144:8 146:8

**terms** 51:7 86:15 101:8

**territory** 33:3

**testified** 8:7 55:17

**testify** 12:25

**testimony** 10:19 12:16,21 154:7

**text** 36:9 69:20 98:15,19,25

**texts** 135:25 136:2,3

**that'll** 52:12

**therapist** 14:20 15:6,13 119:25

Harate
Orange Business Services Inc.

Patricia Haran
April 26, 2023

121:2,9,14 122:4,11 123:14 124:7
126:16

**therapy** 15:9 119:9,10,13 122:18,19

**Theron** 67:8 89:8 91:22,23

**thing** 15:4 26:23 43:19,20 53:21
58:19 63:20 95:7 104:16

**things** 11:6 15:23 22:24 48:19 61:9
64:11,14 68:14 74:22 78:17 80:3
85:17 91:11,19 100:4,5 102:17
103:25 106:8 119:12,14 124:19
135:13,23 136:16 137:23 139:12,21
144:23 151:12

**thinks** 34:7

**thought** 22:22 40:13 43:9 61:10
80:14 81:13 115:16

**thoughts** 15:22

**three-and-a-half** 13:15

**Thursday** 13:12

**tied** 59:3

**time** 12:7 19:16 20:25 21:14 22:6,10
23:21 26:13,24 27:10 31:7 37:7 41:22
42:18 43:14 47:25 49:19 50:18,25
53:11 58:16 61:13 62:5,20 63:5,9
67:20 69:18 74:5 75:24 76:4,19 81:3,
4,12,23 83:12,14 87:25 88:19 93:12
94:10,24 95:12 97:9,18 99:15 102:15
103:6,17 104:4 105:10,11,14,22
106:2,22 111:10,25 117:8,12,17
119:16 129:19 130:2 134:8 136:10
141:23 142:14 146:6,12 148:3,9

**timeframe** 27:23 74:19 103:16

**timeline** 14:5 128:17,21,22 129:6

**times** 26:17 49:13 61:17 62:8 63:11,
15,16,17 80:8 105:3

**title** 24:19,24 29:21 54:16 97:21,24
98:2

**titles** 21:21 26:9,10

**today** 10:20 12:17,21,25 72:5,25
73:12 78:18 134:2

**today's** 10:11 13:4,24 14:16,23 16:3

**Todd** 84:3,4

**told** 48:20,21 49:9,14,21,24 50:11
51:14,23 68:19 73:3,18 79:4,16 85:20
94:19 103:4

**top** 32:19 118:5 138:24

**total** 119:10 132:7,10,11

**training** 74:2 131:13

**transcript** 152:4

**transition** 68:7 145:4,24 146:2,22,24

**transitioning** 145:6 146:13 147:3,8

**travel** 92:10

**treatment** 99:16,23 102:13 104:3
109:12 119:19 121:7 122:17

**tress** 120:7

**trust** 121:4 126:25

**turn** 25:24 34:13 108:20 110:3 113:4
116:10 127:15 128:3

**TW** 23:6,13

**two-page** 69:8

**twofold** 59:8

**type** 15:3 53:21 68:16,25 123:4
124:13 125:4

**types** 124:12 130:12 137:17

**typical** 34:24

**typically** 34:4 35:6

**typo** 76:25

---

**U**

**U.S.** 25:21 90:22

**uh-huhs** 11:5

**ultimately** 23:21 48:6

**unaware** 79:14

**understand** 10:16,23 11:7,17 44:12
70:25 82:6,17 83:19 116:5 117:2
129:23 153:24

**understanding** 9:19 33:25 34:2

**understood** 11:21

**underway** 15:16 68:10 145:5

**unemployment** 141:11,15,18,22
142:3,10

**unfair** 99:18,24 100:3,12 101:8

**United** 28:15 30:4

**University** 18:12,21

**unlock** 144:3

**unrealistic** 100:3

**unsympathetic** 80:23

**urgent** 37:22

**utilizing** 153:7

---

**V**

**Vaguely** 28:13

**varied** 21:22

**vary** 139:15

**venture** 63:7

**verification** 46:22

**verifying** 134:20

**Verizon** 133:14 134:17

**violation** 108:7,12 110:24

**virtual** 53:21

**visits** 50:5

**VP** 86:4

---

**W**

**W-2** 140:15,20,24

**wanted** 15:16 19:4 74:3 144:11,15,
19,20,25 145:2,22

**ways** 105:17 108:10 112:6

**Webex** 53:20

**websites** 130:21

**Wednesday** 13:12

**week** 13:6 85:23 141:25

**weekly** 15:3 38:14,16 53:18 78:6
123:3,4

**Wells** 151:22

**what'll** 65:3

**Willins** 59:24 66:22 76:23 77:2,5
93:3 97:4,5,21 98:6 99:7

**wireless** 138:4

**WITNES** 9:5

**woman** 77:2 83:22

**won** 47:23

**wondering** 70:8

**word** 98:25 135:17

**words** 34:8

**work** 23:23 26:20 27:15 43:17 84:10,
16 85:4,22 86:11,19 87:12 88:16,20

Haran     Patricia Haran
Orange Business Services Inc.     April 26, 2023

89:6 104:16 109:10 119:18,24 120:9
131:2,3

**worked** 19:11 22:10,11 66:10 70:15
77:13,21 84:21 119:12 151:24 152:6,
12

**worker** 49:5 51:14,15

**working** 25:2 26:15 27:13 50:18
86:20 88:18 89:6,15 90:8 95:18
104:23 125:3 126:24 130:22 133:10
142:6 146:14,15,20 150:5 151:19,20

**works** 97:20 138:6

**worse** 120:14

**worsened** 120:6

**wound** 133:9

**wrap** 153:18

**writing** 10:10 94:13 96:9 98:13,18
101:20 102:20 104:8 129:12 136:7
141:2,4 142:11 155:17

**written** 78:21,23

**wrong** 40:11 154:11

**wrote** 53:6 149:6

---

**X**

---

**Xavier** 66:24 69:21,23 79:20 93:3
99:10

---

**Y**

---

**year** 17:5 18:13 20:9 38:22 64:19
83:13 122:8 140:16

**years** 15:8 16:17 20:20 23:11,18
27:11 47:20 119:10 136:20

**York** 8:6 9:9 17:4,10 75:25 76:5
110:21,24 111:11 131:2 142:2,10
151:22

**Youhanna** 110:13

**Youkhanna** 56:9 73:22 74:8 110:14
112:23

# EXHIBIT E

For all U.S. Based Employees of
Orange Business Services

employee handbook

# Employee Handbook Acknowledgement for United States

I acknowledge that I have received a copy of the Company's Employee Handbook.

The employee handbook describes important information about the Company, and I understand that I should consult my immediate supervisor or a Human Resources representative regarding any questions not answered in the handbook. I have entered into my employment relationship with the Company voluntarily and acknowledge that there is no specified length of employment. Accordingly, either the Company or I can terminate the relationship at will, for any reason, at any time.

The policies described in the handbook take effect immediately and supersede and replace all previous personnel practices, guidelines, and any oral or written representations made by any Company employee. I understand that the only exceptions to the above are express, written agreements between an individual employee and the Company that are signed by both the employee and an authorized agent of the Company.

Because the information, policies, and benefits described in the handbook are necessarily subject to change, I acknowledge that revisions to the handbook may occur, except as to the Company's policy of employment-at-will. All such changes will be communicated through official written notices, and I understand that revised information may supersede, modify, or eliminate existing policies. Any other alteration or modification of the policies must be in writing signed by an authorized representative. I acknowledge that this handbook is not a contract of employment and does not guarantee employment for a particular period nor does it guarantee any specific process prior to termination. I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it.

EMPLOYEE'S NAME (printed): *Patricia Havan*

EMPLOYEE'S SIGNATURE: *P Havan*

DATE: *5/11/17*

This document is a policy statement of Orange Business Services U.S., Inc. Although Orange Business Services U.S., Inc. offers its services under the Orange brand used by companies within the France Telecom Group, Orange Business Services U.S., Inc. is the sole employer for purposes of this policy statement and other personnel matters.

© Copyright Orange Business Services U.S., Inc.
Internal Use Only

January 15, 2013
57 of 57

Confidential

OBS_00013

# EXHIBIT F

For all U.S.-Based Employees of
Orange Business Services                                    Employee Handbook

---

**injury or an emergency:** An employee must comply with the call-in requirements described in the Attendance and Punctuality Policy. Upon return from any unscheduled absences the employee must enter their period of absence into AMS.

- **For absences due to the employee's medical condition:** If an employee is absent three or more days because of illness, the employee must have a doctor's note to return to work.

### How PTO is Paid

PTO is paid at the employee's base rate of pay when he or she takes the time off. It does not reflect bonuses, commissions or other special pay.

### Reporting PTO Use

Each time PTO is taken, an employee must submit PTO hours taken in AMS for pay periods in which PTO is taken.

### Payment of PTO When Employees Leave

Upon the termination of employment, an employee will be paid for half of his or her accrued PTO balance (which will be deemed to consist of unused vacation pay earned during the year of departure). If the departing employee has used PTO time in advance of when it is earned, the final paycheck will be adjusted to reflect the value of PTO used but not yet earned. Various states, including California and New Jersey, have different requirements, and the Company will comply with applicable law. For additional information, employees should contact their designated Human Resources Consultant.

## 6.3    Family and Medical Leave

The Company will grant a leave of absence to eligible employees for certain medical and family-related reasons as provided under the Family and Medical Leave Act ("FMLA") and applicable state or local law. If an employee has questions about his or her eligibility for leave or believes that he or she has been denied any rights provided by this policy, the FMLA or applicable state or local law, the employee is encouraged to discuss the matter with their designated Human Resources Consultant immediately.

### Eligibility

To be eligible for a leave under the FMLA, an employee must have completed at least 12 months of service with the Company and have worked a minimum of 1,250 hours of service in the 12-month period prior to the leave. Because the laws of certain states provide greater or different protection to employees, employees should always contact your designated Human Resources Consultant to determine eligibility and leave entitlements under their specific circumstances.

### Reasons for Leave and Amount of Leave

Eligible employees may take up to 12 weeks total of unpaid leave during a 12-month period (or longer, if required by state law) for one or more of the following reasons:

a.  to care for the employee's child upon the birth of the child or upon the placement of the child with the employee for adoption or foster care;

b.  to care for the employee's parent, spouse, established same sex domestic partner (hereinafter referred to as "domestic partner") or child who has a serious health condition;

c.  when the employee is unable to work because of the employee's own serious health condition (including disability due to pregnancy or childbirth); or

---

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.                    November 5, 2018
Internal Use Only                                                   27 of 57

For all U.S.-Based Employees of
Orange Business Services                                    Employee Handbook

    d.  because of any qualifying exigency that arises because the employee's spouse, son, daughter or parent is a covered military member on active duty (or has been notified of an impending call or order to active duty) in support of a contingency operation. A "qualifying exigency" may include attending certain military events, arranging alternative childcare, addressing certain financial and legal arrangements, attending certain counseling sessions, and attending post-deployment reintegration briefings.

A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either (1) inpatient care (i.e. an overnight stay) in a hospital, hospice, or residential medical care facility (including any period of incapacity or any subsequent treatment in connection with the inpatient care), or (2) continuing treatment by a health care provider in certain circumstances. For further information regarding what is considered a "serious health condition," employees should contact their Human Resources representative.

Eligible employees may take up to 26 weeks of unpaid "Service member Family Leave" leave during a single 12-month period to care for a spouse, son, daughter, parent or next of kin who is a member of the Armed Forces (including the National Guard or Reserves) and who is undergoing medical treatment, recuperation, or therapy, is otherwise in outpatient status, or is otherwise on the temporary disability retired list, for a serious injury or illness. A "serious injury or illness" is one incurred by a member of the Armed Forces in the line of duty on active duty that may render the member medically unfit to perform the duties of the member's office, grade, rank, or rating.

When leave is taken under this policy to care for an injured or ill service member, that leave, when combined with any other FMLA-qualifying leave, may not exceed 26 weeks in any single 12-month period.

Where a leave is properly counted as FMLA leave, it runs concurrently with any other leave taken pursuant to Company policy. For example, where an employee is on an FMLA leave because of his or her own injury that is also covered by the Workers' Compensation policy, the entire duration of the leave will count toward the 12 week entitlement under FMLA.

The 12-month period within which an employee may take his or her 12 or 26 weeks of family and medical leave is calculated backwards from the date the employee uses any family and medical leave. In other words, each time an employee takes family and medical leave, the remaining leave entitlement will consist of any balance of the 12 or 26 weeks which has not been used during the immediately preceding 12 months.

Leave for the birth of a child or placement of a child for adoption or foster care must be taken in consecutive workweeks and must conclude within 12 months of the birth or placement.

If the Company employs two individuals who are married to each other, there may be additional limitations imposed on the amount of leave each can take for certain purposes.

If leave is taken because of the employee's serious health condition or to care for a family member with a serious health condition or for the serious injury or illness of a qualifying service member, the employee may take the leave intermittently or on a reduced work schedule if it is medically necessary. If leave is taken because of a qualifying exigency that arises because the employee's spouse, son, daughter, or parent is on active duty or has been called to active duty in the Armed Forces in support of a contingency operation, the employee may take the leave intermittently or on a reduced work schedule when necessary because of the exigency.

Employees who are on an approved family and medical leave of absence may not perform work for any other employer during that leave.

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.
Internal Use Only

### Notice by Employee

An employee who wants to take family and medical leave ordinarily must provide his or her supervisor with at least 30 days' notice of the need for leave, if the need is foreseeable. If the employee's need for leave is not foreseeable, the employee should give the Company as much notice as is practicable (normally, within one or two business days of the date the need for leave becomes known to the employee). Requests for leave (or for an extension of leave) should be submitted in writing to the supervisor and HR using the Family and Medical Leave Act Form. When leave is needed for planned medical treatment, the employee must try to schedule the treatment in such a way as to limit disruptions of the employee's schedule. While on leave, employees must update the Human Resources Department at least every four weeks concerning their expected return to work date, unless the facts and circumstances of the leave situation dictate otherwise.

In providing notice of a need for FMLA leave, employees must provide enough information to permit the Company to determine if the leave may qualify for FMLA and the expected timing and duration of leave. Sufficient information may include that the employee is unable to perform daily activities, the need for hospitalization or continuing treatment by a healthcare provider, or circumstances supporting the need for military family leave. Calling in sick is not sufficient and will not provide the Company with enough information to make an FMLA assessment. Employees must provide reasons for the leave to permit the Company to assess whether the FMLA may be implicated. If the request is for leave that previously was designated as FMLA leave, the employee must inform the Company of this when again requesting leave.

### Certification of a Serious Health Condition

Employees who request leave for their own or a family member's serious health condition or for the serious injury or illness of a qualifying service member must provide medical certification of the serious health condition, illness or injury from a health care provider. The appropriate medical certification form can be obtained on the HR Portal, iris or from Human Resources. The Company may, at its own discretion, also require a second or third opinion (at the Company's expense), periodic re-certifications of the serious health condition, illness or injury, and, when the leave is a result of the employee's own serious health condition, a fitness for duty report before permitting the employee to return to work. Once the employee has provided the Company with notice of the leave and certification as required, the Company will determine whether the leave is designated as family and medical leave which counts toward the employee's 12 or 26 weeks of leave.

Failure to provide proper advance notice or certification for leave may result in a delay in the commencement of leave until the Company receives such certification or in a denial of the leave request. In the event of an unforeseeable leave, the failure to provide certification within a reasonable period (i.e., fifteen calendar days or as soon as practicable under the circumstances) may result in the termination of the leave or in a determination by the Company that the leave will not be counted as FMLA leave. In addition, a refusal to provide the required certification may result in disciplinary action, up to and including termination of employment.

### Compensation and Benefits

Leave taken under this policy may consist of both paid and unpaid leave. Generally, the Company requires employees to take accrued paid leave concurrently with FMLA leave. If leave is requested for the birth or adoption of a child, to care for a family member with a serious health condition, to address a qualifying exigency arising from a family member's National Guard or Reserves duty, or to care for a service member with a serious illness or injury, then the employee must first use any accrued paid time off (PTO). If leave is requested for the employee's own serious health condition, the employee must first use any grandfathered sick leave days, then any accrued PTO, and then short-term disability benefits. After any paid time off has been exhausted, the remainder of the employee's FMLA leave will be unpaid leave. If an

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.    November 5, 2018
Internal Use Only    29 of 57

employee is on short-term disability or workers' compensation for a condition which is also a serious health condition under the FMLA, the employee's short-term disability absence, and/or workers' compensation absence will be counted against the employee's family and medical leave entitlement.

Except as stated in the paragraph immediately above, an employee's use of family and medical leave will not result in the loss of any employment benefit that accrued prior to the start of the employee's leave. However, benefits that accrue according to length of service (such as PTO) do not accrue during periods of leave.

During an employee's family and medical leave, the employee will be retained on the Company's health insurance plan under the same conditions that applied before the leave began. To continue health coverage, the employee must continue to contribute his or her portion of the premiums as he or she did before taking leave. Failure of the employee to pay his or her share of the health insurance premiums may result in loss of coverage. The Company's obligation to maintain health insurance ceases if the employee is over thirty (30) days late in paying his or her portion of the insurance premium or if the employee does not return from leave or states his or her intention not to return from leave.

If the employee fails to return to work after his or her family and medical leave has expired, the employee may be required to reimburse the Company for the health insurance premiums the Company paid during the leave (unless the employee failed to return to work due to the continuance, recurrence, or onset of a serious health condition of the employee or a family member or due to some other circumstances beyond the employee's control).

An employee's participation in the 401(k) Plan will continue during the course of an FMLA leave in accordance with the terms of the 401(k) Plan.

### Return to Work

The Company will reinstate an employee returning from family and medical leave to the same or an equivalent position with equivalent pay, benefits, and other terms and conditions of employment. However, an employee on family and medical leave does not have any greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously working for the Company during the leave period. Certain highly compensated key employees may be denied reinstatement when necessary to prevent "substantial and grievous economic injury" to the Company's operations.

When practicable, employees should provide at least two weeks of notice prior to their anticipated return to work. Employees who have taken leave because of their own serious health condition must provide a fitness for duty report from their health care provider in order to return to work. The Company also reserves the right, in certain circumstances and subject to applicable law, to require the covered family member to submit to medical examinations by physicians designated by the Company. All such medical examinations will be paid for by the Company.

### Non-Retaliation Under the FMLA

The Company supports its employees' right to the protections available under the FMLA and will not interfere with, restrain, or deny employees the opportunity to exercise their FMLA rights, nor will the Company discharge or discriminate against any employee for opposing practices prohibited by the FMLA or being involved in any FMLA proceedings. Employees who believe that their rights to FMLA have been violated in any way should bring the matter to the attention of Human Resources promptly. The Company will not retaliate against any employee who asserts a right to take FMLA leave, who takes leave in compliance with Company policies, or who lodges or supports a complaint concerning his or her FMLA rights. Any employee who

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

For all U.S.-Based Employees of
Orange Business Services

Employee Handbook

believes that he or she is being retaliated against should immediately notify the employee's supervisor or Human Resources so that appropriate action can be taken.

## 6.4     Maternity/Paternity Leave

Employees who have or adopt a child may be entitled to leave under the FMLA or disability plan. They may also take time off under the Paid Time Off Policy. The Company does not provide other, separate maternity/paternity leave to employees. However, employees of the following Orange entities who were on active duty as of January 1, 2007 will have their prior maternity/paternity leave grandfathered: Etrali, FTNA, FTRD East, and Orange Service.

## 6.5     Bereavement Leave

Regular full-time employees are eligible for paid bereavement leave of up to three days in the event of a death of an immediate family member who lived in the state in which the employee works, up to five days if the relative lived out of state, up to six days if the employee must travel more than 200 miles for the funeral and up to seven days if the employee must travel more than ten hours (round trip) for the funeral. For purposes of this policy, immediate family member means an employee's spouse, child, stepchild, parent, stepparent, domestic partner, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law, sibling, stepsibling, grandparent, or grandchild.

Employees who wish to take time off due to the death of an immediate family member should promptly notify their supervisors. While it will not normally be necessary, the Company reserves the right to require proof of death or travel for a funeral.

## 6.6     Voting Time Off

The Company encourages employees to fulfill their civic responsibilities by voting in elections. Generally, employees should be able to find time to vote either before or after their regular work schedules. If they are unable to vote in an election during their non-working hours, the Company will grant up to two hours of unpaid time off to vote, unless applicable state law requires another form of voting accommodation.

Employees should request time off to vote from their supervisor at least two working days prior to the Election Day. Advance notice enables the supervisor to schedule the necessary time off in order to provide the least disruption to the normal work schedule.

## 6.7     Jury Duty Leave

The Company encourages employees to fulfill their civic responsibilities by serving jury duty when required. Regular full-time employees may request up to two weeks of paid jury duty leave during any one year period, or such additional time as may be required for employees under applicable state laws. If an employee is required to serve on jury duty for a period that may exceed two weeks, the employee should notify their designated Human Resources Consultant and, in its sole discretion, the Company may grant an extension of the paid leave. An employee may use any available paid time off during the remainder of the jury duty leave period, which will otherwise be unpaid. Employees receiving a stipend or other compensation for their jury duty service are not required to reimburse the Company.

An employee who is summoned for jury duty must promptly show the jury duty summons to his or her immediate supervisor. Similarly, upon being selected to serve on a jury, the employee must notify his or her immediate supervisor and provide any information in his or her possession concerning the anticipated duration of the jury service and the likely court schedule so the supervisor can make arrangements to accommodate the absence. Employees are expected to

This document is a policy statement of Orange Business Services U.S., Inc., which operates under the "Orange Business Services" brand used by companies within the Orange S.A. Group. For purposes of this policy statement and other personnel matters, Orange Business Services U.S., Inc. is the sole employer.

© Copyright Orange Business Services U.S., Inc.
Internal Use Only

Confidential

OBS_00265

# EXHIBIT G

## Appendix C to Part 825—Notice to Employees Of Rights Under FMLA (WHD Publication 1420)

## EMPLOYEE RIGHTS AND RESPONSIBILITIES
### UNDER THE FAMILY AND MEDICAL LEAVE ACT

**Basic Leave Entitlement**

FMLA requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to eligible employees for the following reasons:

- For incapacity due to pregnancy, prenatal medical care or child birth;
- To care for the employee's child after birth, or placement for adoption or foster care;
- To care for the employee's spouse, son or daughter, or parent who has a serious health condition; or
- For a serious health condition that makes the employee unable to perform the employee's job.

**Military Family Leave Entitlements**

Eligible employees with a spouse, son, daughter, or parent on active duty or call to active duty status in the National Guard or Reserves in support of a contingency operation may use their 12-week leave entitlement to address certain qualifying exigencies. Qualifying exigencies may include attending certain military events, arranging for alternative childcare, addressing certain financial and legal arrangements, attending certain counseling sessions, and attending post-deployment reintegration briefings.

FMLA also includes a special leave entitlement that permits eligible employees to take up to 26 weeks of leave to care for a covered servicemember during a single 12-month period. A covered servicemember is a current member of the Armed Forces, including a member of the National Guard or Reserves, who has a serious injury or illness incurred in the line of duty on active duty that may render the servicemember medically unfit to perform his or her duties for which the servicemember is undergoing medical treatment, recuperation, or therapy; or is in the outpatient status; or is on the temporary disability retired list.

**Benefits and Protections**

During FMLA leave, the employer must maintain the employee's health coverage under any "group health plan" on the same terms as if the employee had continued to work. Upon return from FMLA leave, most employees must be restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms.

Use of FMLA leave cannot result in the loss of any employment benefit that accrued prior to the start of an

**Eligibility Requirements**

Employees are eligible if they have worked for a covere employer for at least one year, for 1,250 hours over the previous 12 months, and if at least 50 employees are employed by the employer within 75 miles.

**Definition of Serious Health Condition**

A serious health condition is an illness, injury, impairment, or physical or mental condition that involves either an overnight stay in a medical care facility, or continuing treatment by a health care provide for a condition that either prevents the employee from performing the functions of the employee's job, or prevents the qualified family member from participatin in school or other daily activities.

Subject to certain conditions, the continuing treatment requirement may be met by a period of incapacity of more than 3 consecutive calendar days combined with least two visits to a health care provider or one visit ar a regimen of continuing treatment, or incapacity due t pregnancy, or incapacity due to a chronic condition. Other conditions may meet the definition of continuin treatment.

**Use of Leave**

An employee does not need to use this leave entitlem in one block. Leave can be taken intermittently or on reduced leave schedule when medically necessary. Employees must make reasonable efforts to schedule leave for planned medical treatment so as not to undu disrupt the employer's operations. Leave due to qualifying exigencies may also be taken on an intermittent basis.

**Substitution of Paid Leave for Unpaid Leave**

Employees may choose or employers may require us accrued paid leave while taking FMLA leave. In ord to use paid leave for FMLA leave, employees must comply with the employer's normal paid leave polic

**Employee Responsibilities**

Employees must provide 30 days advance notice of need to take FMLA leave when the need is foreseeab When 30 days notice is not possible, the employee r provide notice as soon as practicable and generally r comply with an employer's normal call-in procedure

OBS_00052

Employees must provide sufficient information for the employer to determine if the leave may qualify for FMLA protection and the anticipated timing and duration of the leave. Sufficient information may include that the employee is unable to perform job functions, the family member is unable to perform daily activities, the need for hospitalization or continuing treatment by a health care provider, or circumstances supporting the need for military family leave. Employees also must inform the employer if the requested leave is for a reason for which FMLA leave was previously taken or certified. Employees also may be required to provide a certification and periodic recertification supporting the need for leave.

1-866-4US WAGE (1-866-487-9243) TTY: 1-877-899-5627
WWW.WAGEHOUR.DOL.GOV

### Employer's Responsibilities

Covered employers must inform employees requesting leave whether they are eligible under FMLA. If they are, the notice must specify any additional information required as well as the employees' rights and responsibilities. If they are not eligible, the employer must provide a reason for ineligibility.

Covered employers must inform employees if leave will be designated as FMLA-protected and the amount of leave counted against the employee's leave entitlement. If the employer determines that the leave is not FMLA-protected, the employer must notify the employee.

### Unlawful Acts by Employers
FMLA makes it unlawful for any employer to:
- Interfere with, restrain or deny the exercise of any right provided under FMLA;
- Discharge or discriminate against any person for opposing any practice made unlawful by FMLA or for involvement in any proceeding under or relating to FMLA.

### Enforcement
An employee may file a complaint with the U.S. Department of Labor or may bring a private lawsuit against an employer.

FMLA does not affect any Federal or State law prohibiting discrimination, or supersede any State or local law or collective bargaining agreement which provides greater family or medical leave rights.

**FMLA section 109 (29 U.S.C. § 2619) requires FMLA covered employers to post the text of this notice. Regulations 29 C.F.R. § 825.300(a) may require additional disclosures.**

**For additional information:**

P. Havan

Employee Signature

5/18/17

Date

OBS_00054

# EXHIBIT H

 **performance review**

## PATTY HARAN

Semester 1 - 2020 Performance Review
from 01-jan-2020 to 30-jun-2020.



## Review

| | |
|---|---|
| **Evaluated by :** | ADAM KIMMICK |
| **Department :** | Sales NAM 3 |
| **Document completed on :** | 30-jul-2020 |
| **Date of preparation meeting :** | -- |
| **Date of review meeting :** | 27-jul-2020 |
| **Attachment(s) :** | -- |

--

## Job description

| | |
|---|---|
| **Job :** | (CUS81K) |
| **Job starting date :** | 10-apr-2017 |
| **Job title :** | Local account manager (farmer) |
| **Assignment and main activities :** | Develop relationships in support of selling across the OBS portfolio- act as local account manager as part of global team. Continue to support B End for 11 global accounts also new responsibility  in 2020 for new module including A end for Pfizer, Moodys, Cleary, Coty, NBA and B end Sanofi. |

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

1/10

OBS_00334

# Content

The performance review is a privileged time for exchange between the employee and their manager. The dialogue that takes place on this occasion serves three purposes:

- Give a feedback on the action of everyone, in a broader context, that of business and enterprise, but also in the specificity of his job,

- Recognize and develop the performance of everyone,

- Anticipate and prepare the career evolutions.

Competencies........................................................................................................................3
   Job.................................................................................................................................3
   Main competencies observed...........................................................................................3
   Main competencies to strengthen.....................................................................................4
   Known languages............................................................................................................4

Objectives...........................................................................................................................5
   Objectives, Semester 1 - 2020........................................................................................5

Training...............................................................................................................................7
   Development needs..........................................................................................................7

Overall rating......................................................................................................................8
   Overall rating.................................................................................................................8
   Manager's comments.......................................................................................................8
   Employee's comments.....................................................................................................8

Career plan........................................................................................................................10
   Development wishes.......................................................................................................10
   Action plan...................................................................................................................10
   Manager view...............................................................................................................10

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00335

 # Competencies

The dialogue focused on competencies enables the identification of possible development and training activities in line with company operational needs and employee career development aspirations.

The Job has a profile of core competencies which are listed in the section "Job Competencies".

## Job

| Detail (group referential): |
|---|
|  |

## Main competencies observed

| › **Strategic approach to customers** |
|---|
| **Comments from preparation step :** Handling two modules consisting of 20 accounts currently. Focused on developing relationships, understanding business priorities, landscape and new OBS solutions with new A end strategic accounts Pfizer, Moody's, Coty, NBA and Cleary as well as B end for Sanofi. |
| **Comments from self-assessment / evaluation steps :** |

| › **High level customer relationship** |
|---|
| **Comments from preparation step :** Develop alignment between OBS team and clients across service lines and continue to develop local relationships on B end. |
| **Comments from self-assessment / evaluation steps :** |

| › **Knows our products & services** |
|---|
| **Comments from preparation step :** |
| **Comments from self-assessment / evaluation steps :** |

| › **Being results oriented** |
|---|
| **Comments from preparation step :** |
| **Comments from self-assessment / evaluation steps :** |

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00336

> **Being creative and innovative**

**Comments from preparation step :**

**Comments from self-assessment / evaluation steps :**

## Main competencies to strengthen

> **Knows our tools and processes**

**Comments from preparation step :**

**Comments from assessment step :**

## Known languages

| Language | Proficiency levels |
| --- | --- |
| English | |

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00337

 Objectives

### Objectives, Semester 1 - 2020

> **Global Account Teaming**

| | |
|---|---|
| **Objective description :** | Act as a leader of the global team – gain commitment and engagement as required to ensure the right expertise is in place when required by the client to move opportunities to closure, attain CSAT targets and ensure internal and external customer satisfaction. Continue to further develop a leadership role with the global team in order to effect a structure and successful team.  Manage the budget process to ensure AME is recording results commensurate to region anticipation. |
| **Measurement :** | Direct Management of team objectives, subjective and Customer feedback |
| **Due date :** | 30-jun-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : Good client feedback for professional transition of outgoing DGC accounts and account manager transition, assisted in training new AM on process and client environments for LVMH, Chanel, Atos. Client feedback good on new account-Moody's impressed with our initiative on ERS/IS opportunities and overall improved responsiveness to them in sales.  support. Hosted workshop for business development on sell with for Capgemini North America. |

> **Customer Satisfaction**

| | |
|---|---|
| **Objective description :** | Ensure customer satisfaction rating is high, both in terms of CLI and in general customer loyalty.  Address and resolve key areas of concern.  Manage and grow a leardership and consultative relationship with assigned accounts. |
| **Measurement :** | Meet CSAT objectves for 2019 as defined on goal sheet. |
| **Due date :** | 30-jun-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : No CSAT done in Q1 due to COVID. For Ampacet we closed out SIP related to slow responsiveness from 2019. Ampacet feels we have improved in this regard.Create and executing on contact plans for all accounts. Reach out to C levels based on business drivers. Met with VP of Moody's and Pfizer to understand strategic roadmap and communicate OBS value proposition

Additional preparation is needed to develop a baseline in knowledge of the client's business (beyond technology) in order to drive a more consultative discussion.  This should include an open dialogue, with openness to new ideas and information,  from the full team.  This comment could also be applied to the "Sell Strategically" objective. |

> **Target Achievement**

| | |
|---|---|
| **Objective description :** | Achieve order, revenue, strategic orders and profitability targets for 2019 YTD as agreed in 2019 Compensation Plan and Goal Sheet.  Ensure a healthy funnel to achieve order target and focus on strategic products. |
| **Measurement :** | Achieve Revenue, orderbook, strategic orders, AR and profitability targets for second half 2019 |

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00338

**JA221**

| | |
|---|---|
| **Due date :** | 30-jun-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : Annual Achievement |

Revenue 95.83%
Orders N&G Core 104.61%
Orders N&G Strategic 74.74%
Orders Keep 128.35%

Results for 2020 are "in progress" -  New territory as of May - Results show 101% revenue,  74% N&G, 0% Strategic, 15% keep.

> **Sell Strategically**

| | |
|---|---|
| **Objective description :** | Use consulative sales technicques to sell services that meet our client's business needs, and also achieve Orange's goal to add uniques value in the marketplace. |
| **Measurement :** | Meet strategic sales targets, build active and adequate funnel with qualified Create a comprehensive area (account) plan to sell managed services, Security, SDWAN, Cloud services, Voice services and collaboration opportunities that meet client business needs. |
| **Due date :** | 30-jun-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : Continue to engage with partners and expand reach into assigned accounts utilizing strategic product portfolio, digital & data, Orange Healthcare, wholesale for subsea cable and high capacity connectivity( for Moody's performance hub architecture) and other divisions to expand our value proposition within assigned accounts. Look for new business units and teaming with other Orange entities.Working with Juniper and Palo Alto as well as Zoom on Moody's as example. Collaborating with RVBD on Pfizer to expand scope. |

> **Maintain Activity level to attain Acqusition Objectives**

| | |
|---|---|
| **Objective description :** | Create and develop a healthy pipeline of new business opportunities in line with the achievement of Annual Order goals.<br>Focus should be on New business. |
| **Measurement :** | At least three client meetings per week to discuss and qualify new business opportunities.<br>Partner alignment and opportunity sharing.  Two direct partner meetings per month<br>At least one "C" level meeting per month to discuss and develop a new business opportunity. |
| **Due date :** | 30-jun-2020 |
| **Evaluation :** | 2-Partially Achieved |
| **Comments :** | Activity level marks a "point in time" - which currently is muted by COVID as well as Patty's work in transitioning her prior territory.  This is also challenging right now because Patty is building relationships in a new territory.<br>Looking forward to added pipeline in new areas during 2H 2020 which will lead to achievement in this area. |

OBS_00339

 Training

**Development needs**

No written content for this section.

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

 # Overall rating

⇨ Overall rating

**Rating : 3-Fully Successful**

## Manager's comments

1H 2020 was a challenge for Patty in her new territory.  Results on revenue were in line with expectations, but fell short of target in both keep and N&G orders. Her qualified pipeline is not currently sufficient to meet her 2020 financial objectives, and the new opportunities created in 2019 with her B-end accounts, exploring partnership and "sell with" opportunities to expand our portfolio, have not yet matured as winnable opportunities. A mitigating factor in attainment is that Patty has been assisting to manage an extended transition from her old territory, which has been appreciated.  Her new accounts are difficult, and their technology direction and response to COVID have not always been aligned with Orange's products.   She has not yet built an agreed consensus on strategy with her team in response to these difficult situations, and this has led to some miscommunication.   There was also a miscommunication with a client.  These episodes resulted some concern that Patty may not be fully understanding feedback, or has not had the time to "read between the lines" regarding indirect or non-verbal cues which are critical for a sales leader. This has not been typical of past experience, so I am expecting and predicting future leadership and team alignment to meet objectives and grow our business.   I trust that, based on Patty's prior performance, 2H2020 will be on track to meet business objectives.

## Employee's comments

In terms of N&G orders, there are several open issues related to compensation and quota that have not been resolved from 1H2020. These open issues are negatively impacting my 2020 financial results to date.
On "sell with" opportunities, I've been directed multiple times by sales management to cease pursuit of opportunities in favor of another sales person directly pursuing them instead as "sell to". Given these decisions, quota wasn't adjusted to align accordingly.
Aggressive quotas were set in 2020 in my new territory including on two accounts despite the fact that they had announced to Orange in 2019, prior to my arrival, they were already executing on plans to disconnect most or all of their Orange services in 2020.
Management pressure to continue pursuit for one of the disconnecting accounts resulted in the customer knowingly stringing the account team along on false pretenses, and a negative episode when the deception was finally revealed.
With regards to team strategy, I made a clear request to replace a crucial member of an account team where this individual was clashing unproductively both with a key client contact and others on the Orange account team. My requests for a change were first downplayed, then outright denied. It's not reasonable to resist clear and repeated calls for support from multiple parties and expect no negative influence on the 'strategy'. The distraction of constant undermining, argument, and lack of focus/follow-thru dominate and consume time and resources, to the detriment of the actual commercial goals at hand. This individual has also communicated an inability to effectively support me in his job because of an overburdened workload as well as direction from leadership to prioritize other accounts over those in my territory.
I've been asked to continue providing training and guidance to a newly hired account manager as well as to continue supporting some of my previous territory accounts. This situation is waning but still ongoing into 2H2020.
In my new territory, the accounts were transitioned to me in a rushed and inadequate manner and with significant issues to resolve. I've developed account plans for key accounts and alignment with global team members, where they previously didn't exist. The plans will need continued development and execution in 2H2020 to meet sales objectives. With proper alignment, coaching, support and clear

8/10

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00341

guidance from sales leadership, I'll be on track to meet business objectives in 2H2020.

Acknowledgement by the employee the : 30-jul-2020.
Document completed (by the manager) the : 30-jul-2020.

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00342

 # Career plan

Career development plan taking into account competencies, motivation and real career-enhancing opportunities.

## Development wishes

| | |
|---|---|
| **Expected due date :** | 12 months |
| **Development wishes :** | ▪ Stay in my business area |
| **Specify :** | Manager, ADAM KIMMICK : Employee, PATTY HARAN : Short list of key B end accounts, focus on largest opportunity development in Atos, Capgemini, LVMH & L'oreal with additional solutions areas and business units. Explore identifying additional A end account(s) to focus on developing in '19. |
| | Employee, PATTY HARAN : Employee, PATTY HARAN : Short list of key B end accounts, focus on largest opportunity development in Atos, Capgemini, LVMH & L'oreal with additional solutions areas and business units. Explore identifying additional A end account(s) to focus on developing in '19. |

## Action plan

No written content for this section.

| Action | Due date |
|---|---|
| | |

⇨ Manager view

| View : 1-Favourable |
|---|
| **Specify :** |

PH_Performance_Review_01-jan-2020_30-jun-2020.pdf
Document completed the : 30-jul-2020.

OBS_00343

# EXHIBIT I

 **performance review**

## PATTY HARAN

Semester 2 - 2020 Performance Review
from 01-jul-2020 to 31-dec-2020.



## Review

| | |
|---|---|
| **Evaluated by :** | ADAM KIMMICK |
| **Department :** | Sales NAM 3 |
| **Document completed on :** | 04-feb-2021 |
| **Date of preparation meeting :** | 04-jan-2021 |
| **Date of review meeting :** | 28-jan-2021 |
| **Attachment(s) :** | -- |

--

## Job description

| | |
|---|---|
| **Job :** | (F00860) |
| **Job starting date :** | 10-apr-2017 |
| **Job title :** | Local account manager (farmer) |
| **Assignment and main activities :** | Develop relationships in support of selling across the OBS portfolio- act as local account manager as part of global team. B End for 3 GAM accounts, develop A end accounts Pfizer and Moody's. |

1/10

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00344

# Content

The **performance review is** a privileged time for exchange between the employee and their manager. The dialogue that takes place on this occasion serves three purposes:

- Give a feedback on the action of everyone, in a broader context, that of business and enterprise, but also in the specificity of his job,

- Recognize and develop the performance of everyone,

- Anticipate and prepare the career evolutions.

Competencies......................................................................................................................3
  Job.....................................................................................................................................3
  Main competencies observed..............................................................................................3
  Main competencies to strengthen........................................................................................4
  Known languages................................................................................................................4

Objectives...........................................................................................................................5
  Objectives, Semester 2 - 2020............................................................................................5

Training...............................................................................................................................8
  Development needs.............................................................................................................8

Overall rating......................................................................................................................9
  Overall rating......................................................................................................................9
  Manager's comments..........................................................................................................9
  Employee's comments.........................................................................................................9

Career plan........................................................................................................................10
  Development wishes...........................................................................................................10
  Action plan.......................................................................................................................10
  Manager view....................................................................................................................10

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00345

 # Competencies

The dialogue focused on competencies enables the identification of possible development and training activities in line with company operational needs and employee career development aspirations.

The Job has a profile of core competencies which are listed in the section "Job Competencies".

## Job

| Detail (group referential): |
|---|
| |

## Main competencies observed

### › Strategic approach to customers

| Comments from preparation step : | Develop account plans and sales strategies for new A end accounts in module: Moody's and Pfizer. Continue to refine them for existing B end accounts including KPMG, Sanofi & Capgemini. Research business drivers and how Orange solutions can support them. Meet with strategic partners to understand landscape and strategic opportunities to pursue on all accounts. |
|---|---|
| Comments from self-assessment / evaluation steps : | Employee, PATTY HARAN : Developed plans for all assigned accounts. Worked to engage with newly identified and existing decision makers. As a result Orange was invited to bid on new projects including: KPMG global FinOps and Canadian member firm security initiative. Capgemini contact center sell to and sell with, Pfizer contact center, Moody's Riverbed refresh, Pfizer Riverbed hw. license & prof. services support. |

### › High level customer relationship

| Comments from preparation step : | Create and execute on contact plans for all accounts. Reach out to C levels based on business drivers. Met with VP of Moody's and Pfizer to understand strategic roadmap and communicate OBS value proposition. Hosted workshop for business development on sell with for Capgemini North America. Complete transition for accounts moving to new B end DGC AM: L'Oreal and LVMH brands in Americas. |
|---|---|
| Comments from self-assessment / evaluation steps : | Employee, PATTY HARAN : Developed account plans for Pfizer & Moody's. Engaged with ZScaler team on joint pursuit at Moody's. Engaged with Genesys on Pfizer and also with Orange affiliate BlueSoft on discovery for joint development to compliment digital launch platform - such as implementation and cloud hosting support in various regions. Supported L'Oreal transition and supported warm introduction for new LAM with global CIO. |

### › Knows our products & services

| Comments from preparation step : | Continue completing solution trainings as assigned. Focus on Altify to support strategic deal development. Understand software and data analytics portfolios and applications within assigned verticals such as pharma and financial. |
|---|---|

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00346

| Comments from self-assessment / evaluation steps : | Employee, PATTY HARAN : Participated in contact center trainings with Genesys and in practice to develop solution for client. Engaged with new partner CloudCheckr to introduce service to AME teams FinOps from KPMG oppty. Started utilizing LinkedIn Sales Navigator to identify and engage with new contacts - followed Orange  training. ALso participated in several other trainings including UC and conferencing, HR related trainings, OJ calls etc. |

### Being results oriented

| Comments from preparation step : | Attain sales targets for strategic accounts and execute to further to close revenue gap due to losses on departing accounts such as NBA and Coty. |
| Comments from self-assessment / evaluation steps : | Employee, PATTY HARAN : Pending FT transfer and true-up  on $2.3M remaining to reach SCORE in new/get for 2020. |

### Being creative and innovative

| Comments from preparation step : | Continue to engage with partners and expand reach into assigned accounts utilizing strategic product portfolio, digital & data, Orange Healthcare, wholesale for subsea cable and high capacity connectivity and other divisions to expand our value proposition within assigned accounts. Look for new business units and teaming with other Orange entities. |
| Comments from self-assessment / evaluation steps : | Employee, PATTY HARAN : In addition to previously mentioned areas of FinOps, security, Capgemini sell with areas and engagement with partners, on Sanofi account was able to engage with 3rd party consultant Mobitz and identify activity involving SDWAN pilot with Palo Alto. Meeting in January with Mobitz \, based in CA, to introduce Orange and determine possible joint partnership with them. |

## Main competencies to strengthen

### Knows our tools and processes

| Comments from preparation step : | Follow DAC processes and engage early. Utilize resources and overlay support such as contact center, IS and software specialists to bring opportunities to closure efficiently. |
| Comments from assessment step : | Employee, PATTY HARAN : Engaged directly on DAC and got Moody's renewal SRB adjustments approved for 2 year term. Working with overlay teams such as contact center on several opptys. Worked with presales consultants and IS overlay on refining sales strategy on Moody's and Pfizer accounts in series of sessions to develop account plan. |

## Known languages

| Language | Proficiency levels |
|----------|--------------------|
| English  |                    |

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

4/10

OBS_00347

 # Objectives

## Objectives, Semester 2 - 2020

### › Global Account Teaming

| | |
|---|---|
| **Objective description :** | Act as a leader of the global team – gain commitment and engagement as required to ensure the right expertise is in place when required by the client to move opportunities to closure, attain CSAT targets and ensure internal and external customer satisfaction. Continue to further develop a leadership role with the global team in order to effect a structure and successful team.  Manage the budget process to ensure AME is recording results commensurate to region anticipation. |
| **Measurement :** | Direct Management of team objectives, subjective and Customer feedback |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : Acted as a team lead on Moody's, Pfizer. B end for Sanofi & Capgemini. On Capgemini good teaming example is  business development on contact center BsV oppty. I discovered opportunity with client and engaged global DGC team,  BU and Cisco team to develop multifaceted approach to partnership and opportunity development. This continues in 2021.<br>On Pfizer led plan for global team including mgmt, legal and CISO to refresh & update MSA terms. Engaged with partners including new partnership with CloudCheckr. C level meetings with procurement and IT to review areas of business development and renewal of existing EAM and cobrand. On Sanofi made contact and introduction to new consultant Mobiz engaged with Sanofi on SDWAN. Also scheduled meeting with regional IT leaders, BU and I to review SDWAN roadmap and capabilities. Brought in presales support with Ampacet for voice SIP, network monitoring. For L'Oreal handover I arranged warm handover and meeting for new AM to meet with global CIO. |

### › Customer Satisfaction

| | |
|---|---|
| **Objective description :** | Ensure customer satisfaction rating is high, both in terms of CLI and in general customer loyalty.  Address and resolve key areas of concern.  Manage and grow a leardership and consultative relationship with assigned accounts. |
| **Measurement :** | Meet CSAT objectves for 2020 as defined on goal sheet. |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | 2-Partially Achieved |

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

5/10

OBS_00348

| | |
|---|---|
| **Comments :** | Employee, PATTY HARAN : Moody's: renewal of MSA & BVPN secured for 2 years. Working to rebuild loyalty and develop new relationships in support of earning new business. We have grown voice business in 2020, added new BVPN & have been invited to participate in new bids for ERS/IS space such as Riverbed and Juniper. Working to improve CSAT feedback by ensuring Moody's key contacts are included in ops reviews, and are updated on Orange team resources and processes. Hosted meetings with Moody's key IT and procurement contacts to review network transformation plans and Orange alignment. Developed Zoom Phone BYOC opportunity for 2021 pipeline. |
| | Capgemini: CSAT result-Myself and IS AA both got called out for kudos from IT procurement contact at Capgemini on good responsiveness and support overall in the space of ERS/ IS. Met with global Procurement and CIS BU executives to expand scope of contacts. Engaged on expansion of Software sales IR prognosis with migration to MS Teams and alignment with BYOC oppty. |
| | Ampacet: SIP opened after negative CSAT review by Dan Batten at Ampacet. I also directly reviewed and clarified with him the features of My Service Space platform including proactive incident notifications. CSM to schedule refresh training and further review of improvement on service delivery and other possible areas of improvement with client experience. |

### › Target Achievement

| | |
|---|---|
| **Objective description :** | Achieve order, revenue, strategic orders and profitability targets for 2020 YTD as agreed in 2020 Compensation Plan and Goal Sheet.  Ensure a healthy funnel to achieve order target and focus on strategic products. |
| **Measurement :** | Achieve Revenue, orderbook, strategic orders, AR and profitability targets for second half 2020 |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : 2020 results (pending December results): expect to be 100% on revenue, order book 100%. Funnel was approximately 4 times quota for 2H '20. As of Oct '20 funnel for 2021 pipeline was in line with target of $22M per person @ $26M. |
| | AR: Worked with collections and sales ops to resolved AR issues on Pfizer account (tax exempt) & Sanofi (double billing) |
| | Although overall pipeline activity is approximately 26M the pipeline velocity needs to improve as does the win rate - especially for renewals. |

### › Sell Strategically

| | |
|---|---|
| **Objective description :** | Use consulative sales technicques to sell services that meet our client's business needs, and also achieve Orange's goal to add uniques value in the marketplace. |
| **Measurement :** | Meet strategic sales targets, build active and adequate funnel with qualified Create a comprehensive area (account) plan to sell managed services, Security, SDWAN, Cloud services, Voice services and collaboration opportunities that meet client business needs. |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | 3-Achieved |
| **Comments :** | Employee, PATTY HARAN : Developed plans for all assigned accounts. Worked to engage with newly identified and existing decision makers. As a result Orange was invited to bid on new projects including: KPMG global FinOps and Canadian member firm security initiative. Capgemini contact center sell to and sell with, Pfizer contact center, Moody's Riverbed refresh, Pfizer Riverbed hw. license & prof. services support, Ampacet MS teams DR, Moody's Zoom Phone BYOC and expanded BTALK, Capgemini bid on software subscription for WCC, IR Prognosis, video device deployment, and various software and hardware maintenance renewals. |

6/10

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00349

> **Maintain Activity level to attain Acquisition Objectives**

| | |
|---|---|
| **Objective description :** | Create and develop a healthy pipeline of new business opportunities in line with the achievement of Annual Order goals.<br>Focus should be on New business. |
| **Measurement :** | At least three client meetings per week to discuss and qualify new business opportunities.<br>Partner alignment and opportunity sharing. Two direct partner meetings per month<br>At least one "C" level meeting per month to discuss and develop a new business opportunity. |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | 2-Partially Achieved |
| **Comments :** | Employee, PATTY HARAN : Moodys: Developing several oppty tracks with leadership and Flint Barber as well as new contact (George Kurion): Palo and/ or ZSCaler interest in micro-segmentation- Orange value add to be developed. Met with Zscaler, Cisco, Fortinet, Zoom teams for Pfizer. On Pfizer worked extensively with Genesys team on contact center oppty. For Sanofi engaged with Cisco & Palo Alto to discuss SDWAN partnering. KPMG engagement with Cisco on development with KPMG US and Canada member firms- met with KPMG Canada on security initiatives, ongoing. ALso proposed to KPMG FinOps with new partner CloudCheckr- provided demo, budgetary pricing. Presented Orange capabilities  update to several clients including: Cleary, Ampacet, Pfizer, Capgemini acquisition Altran & IBM as new B end for 2021.<br>As I mentioned above, although Patty is good administratively I'm noting partial attainment here related to pipeline velocity. |

> **Maintain Activity level to attain Acquisition Objectives**

| | |
|---|---|
| **Objective description :** | Create and develop a healthy pipeline of new business opportunities in line with the achievement of Annual Order goals.<br>Focus should be on New business as well as strategic products. |
| **Measurement :** | At least three client meetings per week to discuss and qualify new business opportunities.<br>Partner alignment and opportunity sharing. Two direct partner meetings per month<br>At least one "C" level meeting per month to discuss and develop a new business opportunity. |
| **Due date :** | 31-dec-2020 |
| **Evaluation :** | N-Not applicable |
| **Comments :** | Employee, PATTY HARAN : duplicate of above metric<br><br>This is a duplicate of the prior objective and should not be considered. |

7/10

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00350

 Training

**Development needs**

No written content for this section.

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00351

 # Overall rating

⇨ Overall rating

**Rating : 2-Improvement Needed**

## Manager's comments

I noted the 1H 2020 was a huge challenge for Patty in her newly assigned territory, this remained the case in 2H2020. She has met her objectives related to her B-end accounts, but the largest A-end accounts (Moody's, COTY and Pfizer) have made decisions to move away from Orange products and services. These decisions were being fomented before Patty took on responsibility for managing the accounts. And in the case of Pfizer, Orange was unable to accept some onerous contract terms. Nevertheless, this difficult situation has created a gap in the business Patty manages. She has made progress during 2H2020 in building an agreed consensus on her strategy with her team. However, this strategy has not resulted in an increased in proposed services. In fact, her pipeline velocity is potentially not sufficient to meet her 2021 financial growth objectives, and this will be a critical discussion as we set targets for 2021. The new opportunities created in 2020 (largely with B-end accounts), are exploring partnership and "sell with" opportunities to expand our portfolio. These have not matured, and no new deals in this space have been moved through the funnel to negotiation. I recognize that some of the challenges (and consequences) in building and growing a healthy business were exceptional, especially during the CVD19 crisis. That said, fragile prospects for stability and growth in Patty's business remain. Urgent focus needs to be on identifying new opportunities and moving these aggressively through the funnel.

## Employee's comments

We will need to look at account assignment mix for 2021 and discuss to consider adding select targeted A or B end acquisition accounts to augment current deck. Considering in particular Coty, Pfizer accounts currently in inactive status. Overall Moody's was expected to be a loss due to problems with Orange inventory scope on previous renewal.
In 2H delivered increase in SIP voice for Moody's and usage by $ 360K monthly. New BVPN service wins in $120k TCV in H2. $2M BVPN renewal was won and support from new coach sets stage for add'l growth. New bids for GigE internet services. New opptys identified with SDWAN with Cloudgenix, new hosted voice solution identified $1M forecasted.
On Pfizer uncovered new contact center oppty with Pfizer valued at $600K and potential to expand voice footprint as well as expanding contact center scope with other BU's with stated support from Pfizer Medical division. Also uncovered, but lost, new scope of professional services and software with Riverbed on Pfizer. Uncovered private cloud oppty to support e-health in regional data centers in Europe. Pfizer: MS Team DR oppty uncovered. Capgemini I Closed $ 600K in ERS/IS in 2020

Acknowledgement by the employee the : 29-jan-2021.
Document completed (by the manager) the : 04-feb-2021.

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

9/10

OBS_00352

 # Career plan

Career development plan taking into account competencies, motivation and real career-enhancing opportunities.

## Development wishes

| | |
|---|---|
| **Expected due date :** | 12 months |
| **Development wishes :** | ▪ Stay in my business area |
| **Specify :** | Manager, ADAM KIMMICK : Manager, ADAM KIMMICK : Employee, PATTY HARAN : Develop new A end accounts globally, continue support on short list of key B end accounts, focus on largest opportunity development in Moody's Pfizer, Capgemini, & Sanofi with additional solutions areas and business units. Look to consider a hybrid sales model with development in select new acquisition accounts Employee, PATTY HARAN : Manager, ADAM KIMMICK : Employee, PATTY HARAN : Develop new A end accounts globally, continue support on short list of key B end accounts, focus on largest opportunity development in Moody's Pfizer, Capgemini, & Sanofi with additional solutions areas and business units. Look to consider a hybrid sales model with development in select new acquisition accounts |

## Action plan

| Action | Due date |
|---|---|
| Develop A end accounts existing and new | 31-dec-2020 |

⇒ **Manager view**

**View : 1-Favourable**

**Specify :**

Although I agree that additional opportunities need to be generated, and that it might happen through the addition of new accounts, this will require a change in structure to the sales team and sales compensation structure.  I will support the recommendation, but the implementation of this plan is outside my purview.   In the meantime, Patty needs to work within her assigned territory.

PH_Performance_Review_01-jul-2020_31-dec-2020.pdf
Document completed the : 04-feb-2021.

OBS_00353

# EXHIBIT J



**Business
Services**

February 24, 2021

Patricia Haran
53 Cirrus Road
Holbrook, NY 11741

Dear Patty:

With your termination of employment from Orange Business Services U.S. Inc. this letter generally explains the terms and conditions of your separation from employment with Orange Business Services U.S. Inc. Your last day of employment will be **February 24, 2021** (the "Termination Date").

## Final Paycheck

- **Earned and Unpaid Salary.** You will be paid all earned and unpaid salary, less deductions required or authorized by law, in your final paycheck. Your final paycheck will include pay for the days through **February 24, 2021** (your "**Termination Date**").
- **Paid Time Off.** In accordance with our PTO Policy, we pay 50% of any accrued but unused PTO in the final paycheck. Therefore, in your final paycheck you will receive a lump sum payment for **21.28** hours of accrued/unused PTO.

## Separation Benefits

You will receive the following benefits upon termination of your employment:

- **Insurance Coverage**

    **COBRA Continuation Coverage**: Your medical, dental and vision coverage will continue until the last day of the month that includes your Termination Date. You will receive a separate packet describing the COBRA continuation coverage medical benefits that are available to you at your cost. If you elect to continue your medical benefits through COBRA, it will be your responsibility to return your election form within **60 days** and pay the required premiums in a timely manner.

    **Short-term and long-term disability:** Your insurance coverage under the Orange Business Services U.S. Inc. Short-Term Disability Plan and the Orange Business Services U.S. Inc. Long-Term Disability Plan and your life insurance and accidental death and dismemberment coverage will remain in effect through your Termination Date. A portion of your basic and supplemental life insurance is portable during the **31 days** following your Termination Date. The accidental death and dismemberment components may be converted to an individual policy. Please refer to your CIGNA Certificates of Coverage or contact CIGNA's portability department at 800-759-0101 for more information on your insurance portability and conversion rights.

- **Flexible Spending Accounts**

    **Healthcare Flexible Spending Account:** You may no longer make pre-tax contributions to your Healthcare Flexible Spending Account, if applicable, after your Termination Date and you may not withdraw the remaining balance in this account. You will be entitled to elect COBRA coverage if your contributions to your Healthcare Flexible Spending Account exceed the reimbursements you have received from your account. If you qualify for and elect COBRA coverage for your Healthcare Flexible Spending Account, you can make after-tax contributions to your account, and you would be entitled to reimbursement for eligible expenses incurred during that plan year. If your COBRA coverage ceases during the plan year, you would only be entitled to reimbursement for eligible expenses incurred through the date your COBRA coverage ceases and you can submit your claim(s) for reimbursement within 90 days of the date your COBRA coverage ceases. If you do not elect COBRA, you may claim reimbursement from your Healthcare Flexible Spending Account for eligible expenses incurred on or

 **Business Services**

Patricia Haran
Page - 2

before the last day of the month of your Termination Date and you can submit your claim(s) for reimbursement within 90 days of your Termination Date.

**Health Savings Account (HSA):** You may no longer make pre-tax contributions to your Health Savings Account after your Termination Date. However, you may continue contribute pre-tax dollars or withdraw from the remaining balance in your account at any time. The debit card issued when you opened your HSA will active, until plan is no longer active Please note there will be a $3.00 monthly administration fee assessed to your account, paid via automatic withdrawal, for as long as your account remains open with Discovery Benefits. Access to the Consumer Portal will continue to be available to you, for as long as the account maintains a balance. Additional documentation regarding the terms of use / closure / transfer of your HSA can be found on the Consumer Portal.

**Dependent Care Flexible Spending Account:** You may no longer make pre-tax contributions to your Dependent Care Flexible Spending Account, if applicable, after your Termination Date and you may not withdraw the remaining balance in this account. You may claim reimbursement from your Dependent Care Flexible Spending Account for eligible expenses incurred on or before the last day of the month of your Termination Date and you can submit your claim(s) for reimbursement within 90 days of your Termination Date.

**Commuter Benefits (Parking and Transit):** Your Commuter Benefit(s), if applicable, will cease on your Termination Date. You may submit Commuter claims for reimbursement of qualified expenses incurred on or before your Termination Date within 90 days following your Termination Date.

- **Supplemental Benefits (Cigna)**

    **Accident Insurance / Hospital Indemnity / Critical Illness:** If you were enrolled in any our supplemental plans, you may no longer make pre-tax contributions for the payment of premiums. Within 30-days of your date of separation, you will receive a portability letter from Cigna, requesting premium payment, if you wish to continue your coverage. You will have **10 days** from the date of receipt to submit payment and retain your coverage. To find more information about your policy or payment options, you may visit Cigna's self-service portal at: www.cigna.com, or call them at 1-800-754-3207.

    **Allstate Permanent Life:** Upon your separation you may no longer make pre-tax contributions for the payment of premiums. Within 30-days of your date of separation, you will receive a portability letter from Allstate requesting premium payment. You will have **60 days** from the date of receipt to submit payment and retain your coverage.

    **InfoArmor Identity Theft:** Upon your separation you may no longer make pre-tax contributions for the payment of premiums. Within 30-days of your date of separation, you will receive a portability letter from InfoArmor with instructions for setting up direct billing, should you wish to continue coverage.

    **MetLife Hyatt Legal**: Upon your separation you may no longer make pre-tax contributions for the payment of premiums. Should you wish to continue to participate in this program, you will need to contact MetLife Hyatt Legal at +1 800-821-6400, Monday through Friday 8 am to 8 pm (EST/EDT). Or you can access your legal plan online.

    **Nationwide Pet Insurance:** Upon your separation you may no longer make pre-tax contributions for the payment of premiums. Should you wish to continue to participate in this program, you will need to contact Nationwide at +1 .888-803-4874 or you may log into your account and update your contact and payment information.

    **Metlife Auto & Home:** Upon your separation you may no longer make pre-tax contributions for the payment of premiums. Within 30-days of your date of separation, you will receive a portability letter from MetLife requesting premium payment. For additional information, you contact the P&C team at mydirectcustomersupport@metlife.com

- **Orange Business Services 401(k) Plan** (the "**OBS 401(k) Plan**"). You will be entitled to all vested amounts credited to your accounts under the Orange Business Services 401(k) Plan. You may either leave your account balances in the plan until a later date (at the latest, until you attain age 70½), have your account rolled over to an individual retirement account or a qualified plan of another employer that accepts rollovers, or take a distribution and pay the resulting taxes (including any early withdrawal additional tax). If you have an outstanding plan loan, you should contact T. Rowe Price, the plan's record keeper, to make arrangements to



Patricia Haran
Page - 3

continue paying down the loan or accelerating it and paying it off in full; in most cases, you may not take a distribution from the OBS 401(k) Plan without repaying the loan or having it offset from your distribution. Within a few weeks after your Termination Date, T. Rowe Price will automatically forward all necessary forms to you to enable you to take a distribution from the OBS 401(k) Plan, if you elect to do so. T. Rowe Price has established a special hotline for you to call to assist you with the distribution process and to answer any questions you may have. The T. Rowe Price Hotline number is 888-445-4226.

- **Share Plan programs:** If you participated in any of the share purchase schemes, the rules of the individual schemes apply. In reference to the Orange Ambition Program 2016, under the current terms of the plan you are eligible for an early release from the lock up period of 5 years. You may of course leave the shares with our current service provider or choose to sell them. In order to take this option you will have to send in your request for early release to your local HR consultant for completion of this process.

- **Orange Employee Solutions Program:** Your coverage under the Orange Business Services U.S. Inc. Orange Employee Solutions Program will continue for 90-days following the last day of the month that includes your Termination Date.

- **Unemployment Compensation:** State law determines eligibility for unemployment benefits. You may submit this letter to the appropriate department in support of an application for benefits.

## Confidential Information

As a reminder, with the commencement of your employment with the Company, you signed a Confidentiality Agreement to keep in strictest confidence all secret, confidential and proprietary information of the Company and its business. Your confidentiality obligations will remain in effect after you leave the Company.

## Return of Company Property and Repayment of Debts

Please return all Company property to your manager on your Last Reporting Day. You must also repay to the Company, prior to your Termination Date, all debts of any kind owed to the Company, including but not limited to travel and cash advances, taxes paid on behalf of or for your benefit, overpayments of salary or other compensation, and any other obligations.

## Benefit Plan Documents

Please note that the above explanation of the benefits available to you under the Company's benefit plans and programs on termination of your employment is intended as general guidance only. If there is any discrepancy between this letter and the formal documents governing those plans and programs, the formal documents will control.

If you have any questions at all in relation to this letter or its attachments, or in relation to the benefits you may be entitled to on your termination of employment, please do not hesitate to contact me. On behalf of Orange Business Services U.S. Inc., I would like to thank you for your service and wish you all the very best in your new ventures.

If your mailing address changes, please advise us so your W-2 information can be sent to the correct address.

If you have any questions, please feel free to contact me at **678.346.3145**.

Sincerely,

Jennifer Lawson
HR Services – International, NAM

# EXHIBIT K

Message

| | |
|---|---|
| **From:** | SINGH Peter OBS/S EUR [peter1.singh@orange.com] |
| **Sent:** | 2/10/2021 4:39:26 PM |
| **To:** | SINGH Peter OBS/S EUR [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LJWM0335]; HARAN Patty OBS/S AME [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LNSJ0690] |
| **Subject:** | Conversation with SINGH Peter OBS/S EUR |

SINGH Peter OBS/S EUR 3:43 PM:

Hi Dear Patty...

HARAN Patty OBS/S AME 4:12 PM:

Hi Peter

hows it going?

SINGH Peter OBS/S EUR 4:12 PM:

Hey, it's going OK.

HARAN Patty OBS/S AME 4:13 PM:

just okay?

SINGH Peter OBS/S EUR 4:13 PM:

Working on handover stuff for 3M.

Tired of being locked in.

how are you?

HARAN Patty OBS/S AME 4:16 PM:

same here actually. starting to look around at  what's next for me, I think.

SINGH Peter OBS/S EUR 4:18 PM:

Do you mean external

HARAN Patty OBS/S AME 4:19 PM:

yes

not much to be had internally that i have seen. what about you?

SINGH Peter OBS/S EUR 4:20 PM:

yep, I've been looking around as well

HARAN Patty OBS/S AME 4:20 PM:

we should chat and compare notes

i have a call in 10 mins though

SINGH Peter OBS/S EUR 4:20 PM:

But more effort in the last 7 days on house hunting

Are you coming to city on Friday

HARAN Patty OBS/S AME 4:22 PM:

yes i am. i asked my mom to check, hopefully they don't allow anyone to go in with the patient and i will have an hour or so of freedom

he appt is at 2 PM i think

SINGH Peter OBS/S EUR 4:24 PM:

Meeting you will be a respite from doldrums this week

**HARAN Patty OBS/S AME 4:25 PM:**
i know. i'd like to also. I'll follow up with her. I asked he to email me the address and name of DR. so I can check myself

just texted her.

**SINGH Peter OBS/S EUR 4:26 PM:**
.Ok I've put it in my calerdar.  Let me know and I can meet you in that neighborhood

**HARAN Patty OBS/S AME 4:29 PM:**
ok i will

**SINGH Peter OBS/S EUR 4:34 PM:**
cool

OBS_00927

# EXHIBIT L

Message
_____

**From:**      HARAN Patty OBS/S AME [patty.haran@orange.com]
**Sent:**      2/1/2021 5:33:09 PM
**To:**        SINGH Peter OBS/S EUR [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP
               (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LJWM0335]; HARAN Patty OBS/S AME [/O=EXC-CORP/OU=EXCHANGE
               ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LNSJ0690]
**Subject:**   Conversation with SINGH Peter OBS/S EUR


**HARAN Patty OBS/S AME 4:16 PM:**

Hi There

**SINGH Peter OBS/S EUR 4:20 PM:**
Hi Patty - Are you covered in snow ?

**HARAN Patty OBS/S AME 4:22 PM:**
not personally, but yes. Still coming down. No way to escape, right?

**SINGH Peter OBS/S EUR 4:23 PM:**
No.. still coming down in the city as well.  Kids are in the courtyard burying themselves currently.

at least 12 inches

Maybe 14

How are you?  I miss our chats.

**HARAN Patty OBS/S AME 4:26 PM:**
wow! Let them make some snowpeople. Julia is out sledding in the woods w/ friend. A winter baby, she loves the
snow. 1st morning all year, she is up, made her bed and all smiles. How are you?

**SINGH Peter OBS/S EUR 4:27 PM:**
Nice.  I'm good, counting the days to when I can get a vaccine.  Sort of focused on work, sort of not.

I'm rolling off 3M.

Transition to the Justin, who I hired in Minneapolis.

3M now a NAM account.  And new CBU Director Ann Lim taking over.

so, until I get assigned, you can have me fully for KPMG ;-)

**HARAN Patty OBS/S AME 4:33 PM:**
wow, interesting on the changes. What do you think you will get assigned next?

I will be in your area I think- my mom is seeing a DR at 167th Street area and I am driving her in a few weeks. where
are you?

**SINGH Peter OBS/S EUR 4:35 PM:**
Excellent... can we meet?  Sounds like you're visiting NY Presbyterian.

I'm at 116 close to 5th ave.

But can meet you near 167 also.

**HARAN Patty OBS/S AME 4:37 PM:**
I think so, I don't know if they will let me go in with my mom. most appt's now unless with a minor are just for the
patient. so I may have a little time

would be nice. I need to get the name of DR and exact address. I just know its a eye specialist. Friday, 2/12 at 2PM

OBS_00922

SINGH Peter OBS/S EUR 4:39 PM:
That sounds good.  Hopefully she'll have a good visit, and we can have a good catch up as well.

166-168 and Broadway is the NY P complex.

I know it well, both kids born there :)

HARAN Patty OBS/S AME 4:42 PM:
makes sense. I dont think my mom realizes its at NYP. She keeps saying the Dr.'s office.

SINGH Peter OBS/S EUR 4:45 PM:
As far as next challenge, dunno... maybe Goodyear or GSK

How is your year starting off?

HARAN Patty OBS/S AME 4:50 PM:
Nice to have a little break while it's figured out, right?

I finally closed Moody's renewal, so that helps a bit. But honestly things are intense as far as pressure for more business quickly. Not sure how safe I am

SINGH Peter OBS/S EUR 4:55 PM:
Yeah, I know about the heat.  Congrats on Moody's!

HARAN Patty OBS/S AME 4:58 PM:
you feeling the heat too?

or just heard from me already about my heat?

SINGH Peter OBS/S EUR 4:59 PM:
Whenever I think about you, I start of heat up.... that's what you meant right?

:-)

HARAN Patty OBS/S AME 5:00 PM:
that was good

nice pivot

made me smile, which I can use right about now.

thanks

SINGH Peter OBS/S EUR 5:02 PM:
I think I'm OK, but if we don't sign GSK things can get a bit dicey for me.

I'm not too worried about it.  If it happens change is good.  And you shouldn't worry either.

HARAN Patty OBS/S AME 5:05 PM:
yes, it is good. We can go always go somewhere else- just might take a little longer right now.

SINGH Peter OBS/S EUR 5:06 PM:
I think once the economy opens up again, I think lots of people will look to start fresh in new jobs, maybe new geography, etc.  There will be opportunities.

HARAN Patty OBS/S AME 5:07 PM:
yes for sure. 2022 will be a big year of job change. i was hoping to hang in here for a bit longer until things open up a bit more

SINGH Peter OBS/S EUR 5:08 PM:
Btw, I'm actively looking for a country cabin or cottage.

HARAN Patty OBS/S AME 5:09 PM:

really?

**SINGH Peter OBS/S EUR 5:09 PM:**
I went house viewing upstate recently to look at houses in the Rock Hill area.  Do you know it?

**HARAN Patty OBS/S AME 5:09 PM:**
i haven't heard of it. NY or CT?

**SINGH Peter OBS/S EUR 5:10 PM:**
NY, lower Catskills north of Middletown which is the big town in teh area.

Nice lake community

I found a place I really liked, but HOA and taxes were too high, so I passed.

I'm also looking in Poconos.

**HARAN Patty OBS/S AME 5:14 PM:**
we have stayed near candlewood Lake area in CT (New Fairfield, New Milford). There are a few lake communities there. Not too far from NY. Also Squantz Pond which is nicer than it sounds

if you want to be near a lake.... otherwise lots of other options

**SINGH Peter OBS/S EUR 5:16 PM:**
I'll take another look.  I haven't come across anything in CT though.  I'd like to stay in NY.  But the market is hot right now.  People leaving the city.

I'm trying to balance lake and mountains, which I like.  Lake community with some amenities is good for the kids.

In Rock Hill, there is a pool, tennis courts, basketball courts, playground, etc.

**HARAN Patty OBS/S AME 5:20 PM:**
yes same. Candlewood Shores, they all have tennis, bb. not sure on pool. that would be nice through. Lots of options to explore. Now is the time while your kids are young to enjoy

**SINGH Peter OBS/S EUR 5:20 PM:**
Yeah, before they don't want to be seen with me...lol

I'll check out CS.

**HARAN Patty OBS/S AME 5:21 PM:**
yep. we waited o long. too worried about spending the $$. llake houses aren't investments for the most part. but nice to enjoy, you can use it in winter too.

**SINGH Peter OBS/S EUR 5:23 PM:**
Yeah, I don't think I'll make money as an investment, but this is what working hard is about, right?

**HARAN Patty OBS/S AME 5:23 PM:**
yes. and if its not too costly, it can stay in the family

**SINGH Peter OBS/S EUR 5:23 PM:**
To be able to add these things to enjoy life.

yep

Thinking long term as well.

**HARAN Patty OBS/S AME 5:24 PM:**
I hope you find the right spot. maybe rent for a summer 1st to make sure you like it

the area

**SINGH Peter OBS/S EUR 5:25 PM:**

Plus I had a banner year in my market investments, and think I should convert to a hard asset.  So, good investment from this perspective.

**HARAN Patty OBS/S AME 5:26 PM:**
yes true. I did well too all things considered.

**SINGH Peter OBS/S EUR 5:26 PM:**
Yep, lets see. I started literally on Jan 2 thinking about this.

And thought, why not.  Now's the time.

Something different in 2021.

**HARAN Patty OBS/S AME 5:28 PM:**
Good for you. I hope it works out. candlewood Isles is another spot. the real estate lady I spoke with last summer has me on her mailing list :-)

**SINGH Peter OBS/S EUR 5:29 PM:**
Let's both buy in the same spot... lol

I want dangerous liaisons...

**HARAN Patty OBS/S AME 5:30 PM:**
sounds like fun

**SINGH Peter OBS/S EUR 5:30 PM:**
A little distraction., excitment

I can day dream....

And reality will coming storming back soon when they return, so I'll go figure out the dinner menu now.

Wishing you a good evening!  ciao ciao bela.

**HARAN Patty OBS/S AME 5:32 PM:**
yes you too. same here. TTYL

OBS_00925

# EXHIBIT M

---

Message

| | |
|---|---|
| **From:** | HARAN Patty OBS/S AME [patty.haran@orange.com] |
| **Sent:** | 2/24/2021 12:19:55 PM |
| **To:** | PICHON Xavier DGC/IND IT [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=KDSQ7320]; HARAN Patty OBS/S AME [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LNSJ0690] |
| **Subject:** | Conversation with PICHON Xavier DGC/IND IT |

HARAN Patty OBS/S AME 11:59 AM:

Hi Xavier

PICHON Xavier DGC/IND IT 11:59 AM:

Hi Patty

Was thinking about you

can we talk?

HARAN Patty OBS/S AME 12:00 PM:

i have some bad news

sure

PICHON Xavier DGC/IND IT 12:00 PM:

What about?

HARAN Patty OBS/S AME 12:00 PM:

i have been let go, effective today

PICHON Xavier DGC/IND IT 12:01 PM:

Are you kidding?

HARAN Patty OBS/S AME 12:01 PM:

no severance. they say they don't think my module has enough business to support my salary

i wish i was.

you will be hearing from my manager soon I suppose. my email will be cut off soon so you can whatsapp me

PICHON Xavier DGC/IND IT 12:02 PM:

I am so sad to read this Patty

I don't know what to say...

HARAN Patty OBS/S AME 12:02 PM:

me too. i just wanted you to know. this is the down side of life in america. they can let people go at any time with no warning

i can give you a debrief on what i was working on

PICHON Xavier DGC/IND IT 12:04 PM:

Yeah

HARAN Patty OBS/S AME 12:04 PM:

i will forward you a meeting i had lined up for Friday after my effort with Tom Gallagher

PICHON Xavier DGC/IND IT 12:05 PM:

unfortunately I have seen this many times at Dimension DAta

and my wife is working for a US company

she saw that many times with former colleagues which were US based.

They learnt by email after a conference call they were those selected to leave...

HARAN Patty OBS/S AME 12:07 PM:
i feel that due to my daughter's illness in Q4 that I should have taken family medical leave off but I didn't want to let the company down. I cannot believe they gave me no severance. And they didnt pay me my owed commission on capgemini for 2020.

i just forwarded you the invite for friday call with Tom Gallagher's direct report with agenda she would like to discuss

PICHON Xavier DGC/IND IT 12:07 PM:
NOted

can I call you in 10mns?

# EXHIBIT N

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA HARAN,

               Plaintiff,

          -against-

ORANGE BUSINESS SERVICES INC.,

              Defendants.

Case No.: 1:21-cv-10585 VSB

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

      Plaintiff Patricia Haran ("Plaintiff") for her Objections and Responses to Defendant's First Set of Interrogatories, by and through her undersigned attorneys, Fisher Taubenfeld LLP, hereby states as follows:

## GENERAL OBJECTIONS, COMMENTS AND QUALIFICATIONS

      Plaintiff makes the objections and answers contained herein without waiver of any right or privilege to object to the introduction in evidence, in this or any other action or proceeding, of any information contained herein or in any of the documents or the introduction of any of the documents themselves, upon the grounds of competency, relevancy, hearsay, lack of foundation, authenticity or any other proper ground.

      The information contained here in and the documents furnished herewith have been compiled based on information currently known to Plaintiff. Plaintiff reserves the right to supplement these answers if, and when, appropriate.

## INTERROGATORY NO. 8

Identify each employee, agent, or representative of Defendant who you purport subjected you to discrimination or retaliation.

## RESPONSE

Adam Kimmick and Eddy Youhanna

## INTERROGATORY NO. 15

Identify each day off work you took to take your daughter to doctor's appointments and for treatment as alleged in Paragraph 19 of the Complaint.

## RESPONSE

Plaintiff recalls taking time off work on the below-listed days. Plaintiff may have taken additional time off work in connection with her daughter's illness.  Some of those days may be recorded in the Company's PTO system and other days may have been approved informally by Adam Kimmick but not recorded.

October 14th – half day

October 15th, 2020 – October 19th 2020 – PTO for Plaintiffs daughter's surgery

November 11th, 2020 – PTO for Ms. Haran's doctor's appointment

December 18th, 2020 – PTO for doctor's appointment

December 28th, 2020 – PTO for Plaintiff's daughters doctor's appointment

December 30th, 2020 - PTO for Plaintiff's daughters doctor's appointment

February 12th, 2021 – PTO for Plaintiffs mother's doctor's appointment

Plaintiff reserves the right to amend or supplement these responses up to and including trial.

Dated: July 26, 2022          By: _____
       New York, New York
                                   Liane Fisher
                                   FISHER TAUBENFELD LLP
                                   225 Broadway, Suite 1700
                                   New York, New York 10007
                                   (212) 571-0700
                                   *ATTORNEYS FOR PLAINTIFF*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA HARAN,

           Plaintiff,

        -against-

ORANGE BUSINESS SERVICES INC.,

           Defendants.

Case No.: 1:21-cv-10585 VSB

**VERIFICATION**

STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF NEW YORK  )

        PATRICIA HARAN, being duly sworn, deposes and says:

        1.    I am a plaintiff in the above-captioned matter.

        2.    I have reviewed PLAINTIFF'S OBJECTIONS AND RESPONSES TO

DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF.

        3.    I know the contents of my responses and they are true to my knowledge or

to the best of my information and belief.

Sworn to and subscribed before me
this _____ day of ~~February~~ 2023
April

_____
Notary Public

PATRICIA HARAN

Lauran Margaret D'Agostino
Notary Public, State of New York
No. 01DA6067853
Qualified in Suffolk County
Commission Expires April 30, 2023

EXHIBIT O

---

**Message**

| | |
|---|---|
| **From:** | HARAN Patty OBS/S AME [patty.haran@orange.com] |
| **Sent:** | 10/8/2020 3:25:42 PM |
| **To:** | KIMMICK Adam OBS/S AME [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=ZRPK4373]; HARAN Patty OBS/S AME [/O=EXC-CORP/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LNSJ0690] |
| **Subject:** | Conversation with KIMMICK Adam OBS/S AME |

**HARAN Patty OBS/S AME 2:58 PM:**

Hi Adam

**KIMMICK Adam OBS/S AME 2:59 PM:**

Hi Patty

**HARAN Patty OBS/S AME 3:02 PM:**

Eddy had reached out asking me to participate in training 3 days next week.... i said I could but now looks like i iwll need to take a few days off for my daughter's situation

should i let him know directly I won't be able to participate in full session so he can open the spot for someone else

i think it was tuesday-thursday training

tues, wed, thurs

**KIMMICK Adam OBS/S AME 3:04 PM:**

OK.  I haven't told anyone (eddy) yet about your doughter

so if you can't join, I can tell Eddy.  He'll certainly understand

I can call him if you want

**HARAN Patty OBS/S AME 3:06 PM:**

me either. he just needed to fill some training spots so he asked and at time i thought I could participate but today we found out she will need surgery and it will likely be on wed.

**KIMMICK Adam OBS/S AME 3:06 PM:**

just take the time Patty

I'll let Eddy know

just called Eddy

**HARAN Patty OBS/S AME 3:08 PM:**

yes. do you want to just select someone else to join? he has Paul renassia and Ken McDonald from your team for differentiated selling 10/13-1/15 9 AM-1 PM

**KIMMICK Adam OBS/S AME 3:08 PM:**

no problem

**HARAN Patty OBS/S AME 3:08 PM:**

ok thanks.

**KIMMICK Adam OBS/S AME 3:08 PM:**

Eddy will find someone else

take care of your daughter Patty.  Will think of you!

**HARAN Patty OBS/S AME 3:12 PM:**

thanks. i will firm up when i will be out once I know. insurance has to approve etc. details but she will be in hospital for 3 days Wed-Fri is the plan

KIMMICK Adam OBS/S AME 3:12 PM:
understand.  Let me know i you need anything.  Eddy offered as well

HARAN Patty OBS/S AME 3:13 PM:
okay thanks. will do.

OBS_00576

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA HARAN, | |
| *Plaintiff,* | CASE NO.: 1:21-CV-10585-DEH-JW |
| -against- | |
| ORANGE BUSINESS SERVICES INC., | **DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| *Defendant.* | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York, Defendant Orange Business Services U.S. Inc.[1] ("Defendant") submits the following statement of material facts as to which there is no genuine issue to be tried in support of Defendant's Motion for Summary Judgment seeking the dismissal of Plaintiff Patricia Haran's ("Plaintiff's") claims against it in their entirety with prejudice.

**Defendant and Its Commitment to Non-Discrimination and Non-Retaliation**

1.      Defendant is a telecommunications company and global integrator of communications products and services for multinational corporations.  (Complaint [Dkt. No. 1] at ¶ 10)

2.      Defendant maintains a Policy Against Unlawful Discrimination and Harassment, which strictly prohibits discrimination, harassment, and retaliation.  (Exhibit A to the

---

[1] Plaintiff incorrectly sued "Orange Business Services Inc."   At all relevant times, Orange Business Services U.S., Inc. was Plaintiff's employer.

Declaration of Amy J. Traub, Esq., dated February 13, 2024 ("Traub Decl.") – Defendant's Policy Against Unlawful Discrimination and Harassment).

3.    Defendant not only encourages, but requires, employees to report violations of its Policy Against Unlawful Discrimination and Harassment.  (*Id.*).

4.    Adam Kimmick ("Kimmick") and Eddy Youkhanna ("Youkhanna") received anti-discrimination training while employed at Defendant.  (Exhibit B to Traub Decl. – Excerpts from Transcript of October 5, 2023 Deposition of Adam Kimmick ("Kimmick Dep.") at 58:10-59:16; Exhibit C to Traub Decl. – Excerpts from Transcript of October 4, 2023 Deposition of Eddy Youkhanna ("Youkhanna Dep.") at 9:6-24).

5.    Neither Defendant nor Kimmick tolerate discrimination in the workplace. (Kimmick Dep. at 59:17-23; Exhibit A to Traub Decl.).

**Plaintiff's Employment**

6.    Plaintiff commenced her employment at Defendant in May 2017.  (Exhibit D to Traub Decl. – Excerpts from Transcript of April 26, 2023 Deposition of Plaintiff Patricia Haran ("Pl. Dep.") at 24:5-15).

7.    As part of the onboarding process, Defendant provided Plaintiff with its Employee Handbook, and Plaintiff signed an Employee Handbook Acknowledgement for Defendant's United States Employee Handbook on May 11, 2017.  (Pl. Dep. at 28:3-23; Exhibit E to Traub Decl. – Plaintiff's Acknowledgement of Defendant's Employee Handbook).

8.    Defendant's Family and Medical Leave Act ("FMLA") policy contained within its Employee Handbook required Plaintiff to submit a request in writing to both her direct

supervisor and to Human Resources on Defendant's FMLA form.  (Exhibit F to Traub Decl. –

Defendant's FMLA Policy).

9.      As part of the onboarding process, Defendant also provided Plaintiff with a

copy of Employee Rights and Responsibilities under the FMLA, which Plaintiff acknowledged

on May 18, 2017.  (Exhibit G to Traub Decl. – Plaintiff's Acknowledgment of Employee Notice

of FMLA Rights; Pl. Dep. at 28:24-29:16).

10.     Kimmick was Plaintiff's direct supervisor from the beginning of her employment

until the termination thereof.  (Pl. Dep. at 29:17-19; Kimmick Dep. at 26:8-11).

11.     Plaintiff reported exclusively to Kimmick and to no one else at Defendant

during her employment.  (Pl. Dep. at 30:7-8, 55:16-19; Kimmick Dep. at 26:12-19; Youkhanna

Dep. at 12:5-6).

12.     Youkhanna was Kimmick's supervisor during the time Plaintiff was employed at

Defendant.  (Youkhanna Dep. at 7:21-25, 8:6-18).

13.     Kimmick hired Plaintiff.  (Kimmick Dep. at 26:4-5).

14.     Kimmick hired Plaintiff as a Senior Account Manager to manage "B-end"

accounts, which are accounts that are headquartered outside of the United States.  (Kimmick

Dep. at 69:15-19, 70:14-71:11)

**Plaintiff's 2019 Job Performance**

15.     For the first and second halves of 2019, Plaintiff was fully successful in her role,

which involved only "B-end" accounts that were being managed by a person outside of the

United States and for which Plaintiff was Defendant's United States representative.  (Kimmick

Dep. at 74:4-22).

16.    Plaintiff met only with Kimmick to discuss her performance evaluations during her employment with Defendant.  (Pl. Dep. at 30:9-19).

**Plaintiff's Deficient 2020 Job Performance**

17.    Plaintiff began working with "A-end" accounts in or about January 2020.  (Pl. Dep. at 26:24-27:23).

18.    Plaintiff working with A-end accounts was not a promotion nor was it a more senior role.  (Kimmick Dep. at 69:20-70:13).

19.    Plaintiff's first half 2020 performance evaluation was prepared by Kimmick and Plaintiff.  (Pl. Dep. at 30:20-32:12; Kimmick Dep. at 88:8-17).

20.    Kimmick noted in Plaintiff's first half 2020 performance evaluation, *inter alia*, that "1H 2020 was a challenge for Patty in her new territory." (Exhibit H to Traub Decl. at p. 8 – Plaintiff's First Half 2020 Performance Evaluation; Pl. Dep. 30:20-31:16).

21.    Kimmick noted in Plaintiff's first half 2020 performance evaluation, *inter alia*, that her "qualified pipeline is not currently sufficient to meet her 2020 financial objectives, and the new opportunities created in 2019 with her B-end accounts exploring partnership and sell with opportunities to expand our portfolio, have not yet matured as ample opportunities." (Exhibit H to Traub Decl. at p. 8; Pl. Dep. at 33:7-16).

22.    Plaintiff understood Kimmick's statement regarding her qualified pipeline to mean that it was "not sufficient" and that Kimmick does not feel that she had "enough opportunities in [her] sales forecast to meet [the] target quota for 2020."  (Pl. Dep. at 33:17-34:12).

23.     Kimmick stated in Plaintiff's first half 2020 performance evaluation, *inter alia*, that Plaintiff "has not yet built an agreed consensus on strategy with her team in response to these difficult situations, and this has lead to some miscommunication." (Exhibit H to Traub Decl. at p. 8).

24.     Kimmick stated in Plaintiff's first half 2020 performance evaluation, *inter alia*, that, "There was also a miscommunication with a client.  These episodes resulted [in] some concern that Patty may not be fully understanding [of] feedback, or has not had the time to 'read between the lines' regarding indirect or non-verbal cues which are critical for a sales leader." (*Id.*).

25.     The above issues are examples of Plaintiff's interpersonal shortcomings with Defendant's clients and employees that Kimmick noted in his performance evaluation for Plaintiff and were also addressed verbally with Plaintiff at other times. (Kimmick Dep. at 99:2-100:18, 77:2-24).

26.     Plaintiff' second half 2020 Performance Evaluation was prepared by Kimmick and Plaintiff. (Pl. Dep. at 35:16-36:12; Kimmick Dep. at 90:4-21).

27.     Plaintiff received an "overall rating" of "2-Improvement Needed" for her second half 2020 job performance.  (Exhibit I to Traub Decl. at p. 9 – Plaintiff's Second Half 2020 Performance Evaluation; Pl. Dep. at 36:13-18; Kimmick Dep. at 90:12-15).

28.     Kimmick stated in Plaintiff's second half 2020 Performance Evaluation, *inter alia*, that although Plaintiff had made progress in building an agreed consensus on her strategy with her team, "this strategy has not resulted in an increase[] in proposed services." (Exhibit I to Traub Decl. at p. 9; Kimmick Dep. at 75:5-12).

29.     Kimmick stated in Plaintiff's second half 2020 Performance Evaluation, *inter alia*, that "her pipeline velocity is not currently sufficient to meet her 2021 financial growth objectives." (Exhibit I to Traub Decl. at p. 9).

30.     Kimmick stated in Plaintiff's second half 2020 Performance Evaluation, *inter alia*, that "opportunities to expand our portfolio ... have not matured, and no new deals in this space have been moved through the funnel to negotiation." (*Id.*).

31.     Kimmick stated in Plaintiff's second half 2020 Performance Evaluation, *inter alia*, that "fragile prospects for stability and growth in Patty's business remain.  Urgent focus needs to be on identifying new opportunities and move these aggressively through the funnel." (*Id.*).

32.     Plaintiff herself admitted that she had a lack of focus on her job during this time.  (Pl. Dep. at 43:12-23).

33.     Despite responding to Kimmick's comments and conclusions in her second half 2020 Performance Evaluation, Plaintiff did not claim that her "Improvement Needed" rating was in any way due to her having taken time off in connection with her daughter's illness.  (Pl. Dep. at 36:19-37:17; Exhibit I to Traub Decl. at p. 9).

34.     There is no mention of Plaintiff having taken days off in connection with her daughter's or mother's illnesses, or for any other reason, in Plaintiff's second half 2020 Performance Evaluation.  (Exhibit I to Traub Decl.).

35.     Kimmick did not bring up Plaintiff having taken days off in connection with her daughter's or mother's illnesses during their meeting to discuss Plaintiff's second half 2020 Performance Evaluation.  (Pl. Dep. at 42:16-23).

36.     One of Defendant's clients complained to Kimmick in 2020 about Plaintiff's communication, responsiveness, and ability to deliver timely responses to complaints. (Kimmick Dep. at 75:18-21, 77:19-78:7).

37.     Plaintiff's co-workers complained to Kimmick in 2020 about their dissatisfaction with how Plaintiff was requesting their help and the way in which Plaintiff pressured them. (Kimmick Dep. at 81:2-9, 82:5-12, 84:22-85:4).

**Termination of Plaintiff's Employment**

38.     Plaintiff's employment was terminated effective February 24, 2021.  (Exhibit J to Traub Decl.; Pl. Dep. at 53:13-54:2, 56:15-57:11).

39.     Kimmick was the individual who made the decision to terminate Plaintiff's employment, and he conferred with Youkhanna and Defendant's Human Resources about his decision.  (Kimmick Dep. at 144:21-145:14).

40.     Because Kimmick was Plaintiff's direct supervisor, Kimmick is the best source of information regarding the reasons why Plaintiff's employment was terminated.  (Youkhanna Dep. at 32:19-25).

41.     Kimmick made the decision to terminate Plaintiff's employment due to her lack of performance, specifically, her inability to produce enough sales pipeline for the business to be healthy in the future, the insufficient velocity for opportunities already in the pipeline, and the interpersonal issues she had with Defendant's clients and employees.  (Kimmick Dep. at 98:14-25, 150:18-151:7, 151:24-152:14).

42.     Plaintiff's pipeline and pipeline velocity were insufficient to support Defendant's business because Plaintiff's identified opportunities were not maturing, they were

not being proposed, they were not being negotiated, and they were not moving towards closure. (Kimmick Dep. at 105:23-106:14).

43.    On February 10, 2021, prior to her termination, Plaintiff communicated to her co-worker, Peter Singh, that she was "starting to look around at what's next for [her]." (Exhibit K to Traub Decl. at p. 1 – Microsoft Teams Chats (1); Pl. Dep. at 65:2-21).

44.    Prior to her termination, Plaintiff thought that her employment at Defendant was in jeopardy because of her performance. (Pl. Dep. at 57:23-58:3).

45.    Prior to her termination, on February 1, 2021, Plaintiff communicated to her co-worker, Peter Singh, that "things are intense as far as pressure for more business quickly," that she was not sure how safe her job was, and that she was "hoping to hang in here for a bit longer." (Exhibit L to Traub Decl. at p. 2 – Microsoft Teams Chats (2); Pl. Dep. at 60:7-24).

46.    On February 24, 2021, following notification of the termination of her employment, Plaintiff communicated to her former co-worker, Xavier Pichon, that she should have taken family medical leave, but she did not want to let the company down. (Exhibit M to Traub Decl. at p. 2 – Microsoft Teams Chats (3); Pl. Dep. at 69:2-22).

47.    In addition to Plaintiff, Kimmick terminated several other employees from the time Plaintiff was hired in May 2017 until October 2023. (Kimmick Dep. at 54:6-19).

**Plaintiff's Daughter's and Mother's Illnesses**

48.    Plaintiff's daughter was diagnosed with her illness in or around late September or early October of 2020. (Pl. Dep. at 74:14-75:2).

49.    Plaintiff only took 8.5 workdays off to care for her daughter from the onset of her illness in October 2020 through the end of Plaintiff's employment with Defendant. (Exhibit

8

N to Traub Decl. at p. 3 – Excerpt from Plaintiff's Interrogatory Responses; Pl. Dep. at 109:8-110:2).

50.     Kimmick told Plaintiff to take off whatever time she needed to take care of her daughter, that he would be thinking of her, and to let him know if she needed anything. (Kimmick Dep. at 142:5-25, 143:6-25; Exhibit O to Traub Decl. – Microsoft Teams Chats (4); Pl. Dep. at 107:9-108:3).

51.     Plaintiff perceived increased pressure from Kimmick for her to get sales closed and move sales along quickly and believed this increased pressure was related to her daughter's condition because Kimmick was "cold" and "unsympathetic" and just wanted her "to close these sales." (Pl. Dep. at 80:6-81:8).

52.     Despite feeling an increased pressure from Kimmick, Plaintiff's 2020 performance expectations did not change at any time. (Pl. Dep. at 82:19-25).

53.     No one at Defendant made disparaging comments about Plaintiff's daughter's illness. (Pl. Dep. at 114:3-6).

54.     No one at Defendant made negative or disparaging comments about Plaintiff's mother's illness. (Pl. Dep. at 114:22-25).

55.     No one at Defendant made disparaging or negative comments about Plaintiff having taken days off in connection with her daughter's illness. (Pl. Dep. at 114:15-21).

56.     No one at Defendant made disparaging or negative comments about Plaintiff having taken days off in connection with her mother's illness. (Pl. Dep. at 115:2-6).

57.     Defendant never prohibited Plaintiff from taking any time off due to her daughter's illness. (Pl. Dep. at 105:21-105:24; Kimmick Dep. at 63:10-17).

58.    Defendant never prohibited Plaintiff from taking any time off due to her mother's illness.  (Pl. Dep. at 106:21-24).

59.    Plaintiff was paid for the days she took off to care for her daughter.  (Pl. Dep. at 105:21-106:20).

60.    Plaintiff was paid for the days she took off to care for her mother.  (Pl. Dep. at 106:25-107:8).

**Plaintiff's Claims in this Lawsuit**

61.    The only basis for Plaintiff's FMLA interference claim is her belief that despite being given the time off to care for her daughter and mother, Defendant should have categorized the time off as FMLA leave.  (Pl. Dep. at 105:5-20).

62.    The only basis for Plaintiff's FMLA retaliation claim is the fact that Defendant terminated her employment.  (Pl. Dep. at 108:4-13).

63.    Plaintiff did not request FMLA leave while employed by Defendant.  (Pl. Dep. at 108:17-19; Kimmick Dep. at 62:15-18).

64.    Plaintiff did not take FMLA leave while employed by Defendant.  (Pl. Dep. at 108:14-16).

65.    The basis for Plaintiff's NYCHRL caregiver discrimination claim is the alleged fact that she was a caregiver to her daughter and mother, that she needed an accommodation to care for them, and that she was terminated for having taken time off.  (Pl. Dep. at 110:20-112:10).

66.    Plaintiff never requested an accommodation while employed by Defendant.  (Pl. Dep. at 111:17-20).

67.    The only individuals Plaintiff claims subjected her to discrimination or retaliation are Kimmick and Youkhanna.  (Pl. Dep. at 110:3-19, 112:11-113:3; Exhibit N to Traub Decl. at p. 2).

68.    Plaintiff never reported discrimination or retaliation to anyone at Defendant. (Pl. Dep. at 115:7-11).

69.    No employees working under Kimmick at Defendant complained about discrimination.  (Kimmick Dep. at 153:19-22).

70.    No employees working under Kimmick at Defendant complained about violations of the FMLA.  (Kimmick Dep. at 153:23-154:2).


Dated: February 13, 2024
      New York, New York

**BAKER & HOSTETLER LLP**

 / s /  *Amy J. Traub*      
Amy J. Traub
Justin A. Guilfoyle
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: jguilfoyle@bakerlaw.com

*Attorneys for Defendant*
*Orange Business Services U.S. Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA HARAN,

            Plaintiff,

            -against-

ORANGE BUSINESS SERVICES INC.,

           Defendant.

Case No.: 21-cv-10585-DEH-JW

 

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Liane Fisher, Esq.**
Fisher Taubenfeld LLP
*Attorneys for Plaintiff*
233 Broadway, Suite 2340
New York, New York 10279
(212) 571-0700
*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

Table of Contents ..................................................................................... i

Table of Authorities ............................................................................. iii

Preliminary Statement ........................................................................... 1

Statement of Facts .................................................................................. 1

    1.  Factual and Procedural Background .............................................. 2

        a.  Factual Background of the Action ..................................... 2

        b.  Procedural History ............................................................ 7


Argument................................................................................................ 7

   I.  THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA INTERFERENCE CLAIM BECAUSE PLAINTIFF HAS SATISFIED HER PRIMA FACIE BURDEN ................................................................................ 8

     A.  Plaintiff Provided Adequate Notice of her Intention to Take FMLA Leave..........................................................................8

        1.  FMLA Notice Is Construed Practically ............................. 8

        2.  Plaintiff Was Not Required to Provide Written Notice of FMLA Leave in the First Instance .......................................................... 10

        3.  The Cases Defendant Cites are Easily Distinguishable from the Instant Case.......................................................................11

     B.  Plaintiff Was Denied Benefits to Which She Was Entitled Under the FMLA......................................................................... 12

II.  THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA

RETALIATION CLAIM BECAUSE HER PRIMA FACIE BURDEN IS MET AND SHE

CAN SHOW PRETEXT. .................................................................................. 14

A.  Plaintiff Has Established a Prima Facie Case for FMLA Retaliation ............ 15

1.  Plaintiff Exercised Rights Protected by the FMLA When She Took Leave

to Care for Her Daughter and Mother .................................................. 16

2.  Plaintiff Was Qualified for Her Position ............................................... 16

3.  Plaintiff Has Established a Causal Relationship Between Her FMLA Leave

and Termination. .................................................................................. 18

B.  Defendant's Proffered Reason for Terminating Plaintiff is Pretextual.......... 16

1.  The Circumstances Surrounding Defendant's Expectations for Plaintiff's

2021 Sales Establish Pretext ................................................................. 20

2.  Defendant's Shifting Reasons for Termination Are Evidence of

Pretext .................................................................................................. 21

3.  The Close Temporal Proximity Between Plaintiff's FMLA Leave and

Termination Establishes Pretext............................................................ 22

III. THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO PLAINTIFF'S

CAREGIVER DISCRIMINATION CLAIM WHERE PLAINTIFF WAS TREATED

LESS WELL THAN OTHER EMPLOYEES, AND, IN ANY EVENT, PLAINTIFF HAS

ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION AND EVIDENCE OF

PRETEXT ........................................................................................................ 22

A.  Plaintiff Has Established Her Caregiver Discrimination Claim Where She Was

Treated "Less Well" Than Other Employees ................................................ 23

B. Assuming *Arguendo* that the McDonnell Douglas Burden-Shifting Framework Applies to Plaintiff's Caregiver Status Discrimination Claim, Plaintiff Has Established a Prima Facie Case of Discrimination and That Defendant's Reason for Terminating Her Is Pretextual ........................................................................... 25

Conclusion........................................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

Amley v. Sumitomo Mitsui Banking Corp.
2021 WL 4429784 (S.D.N.Y. Sept. 27, 2021) ............................................................11

Avila-Blum v. Casa de Cambio Delgado, Inc.
519 F. Supp. 2d 423 (S.D.N.Y. 2007) .......................................................................13

Balchan v. City Sch. Dist. of New Rochelle
No. 21-CV-04798 (PMH), 2023 WL 4684653 (S.D.N.Y. July 21, 2023) ......................................7

Barnett v. Revere Smelting & Ref. Corp.
67 F.Supp.2d 378 (S.D.N.Y.1999) ...........................................................................8

Barr v. New York City Transit Auth.
No. 99-CV-7927(FB), 2002 WL 257823 (E.D.N.Y. Feb. 20, 2002) ..............................................8

Blake v. Recovery Network of Programs, Inc.
655 F. Supp. 3d 39 (D. Conn. 2023) .........................................................................18

Brown v. Pension Bds.
488 F.Supp.2d 395 (S.D.N.Y.2007) ..........................................................................9

Casseus v. Verizon N.Y., Inc.
722 F. Supp. 2d 326 (E.D.N.Y. 2010) .......................................................................13

Conklin v. U.S. Immigr. & Customs Enf't
661 F. Supp. 3d 239 (S.D.N.Y. 2023) .........................................................................7

Coutard v. Mun. Credit Union
848 F.3d 102 (2d Cir. 2017) ..................................................................................9

Danzer v. Norden Sys.
151 F.3d 50 (2d Cir. 1998) ..................................................................................19

Debell v. Maimonides Med. Ctr.
No. 09-CV-3491 SLT RER, 2011 WL 4710818 (E.D.N.Y. Sept. 30, 2011) ...............................8

Delo v. Paul Taylor Dance Found., Inc.
No. 22-CV-9416 (RA), 2023 WL 4883337 (S.D.N.Y. Aug. 1, 2023) ..........................................23

Digilov v. JPMorgan Chase Bank, N.A.
No. 13 CIV. 975 KPF, 2015 WL 685178 (S.D.N.Y. Feb. 18, 2015) ...........................................22

Donnelly v. Greenburgh Cent. Sch. Dist. No. 7
691 F.3d 134 (2d Cir.2012) .................................................................................................14

Clarke v. New York City Dep't of Educ.
No. 18CV1850NGGJO, 2020 WL 6047426 (E.D.N.Y. Oct. 13, 2020) .......................................23

Forgione v. City of New York
No. 11-CV-5248, 2012 WL 4049832 (E.D.N.Y. Sept. 13, 2012) ..................................................23

Gorokhovsky v. New York City Hous. Auth.
552 F. App'x 100 (2d Cir. 2014) ..........................................................................................24

Graziadio v. Culinary Inst. of Am.
817 F.3d 415 (2d Cir. 2016) ................................................................................................11

Kamtaprassad v. Chase Manhattan Corp.
No. 00 CIV. 8834 (DLC), 2001 WL 1662071 (S.D.N.Y. Dec. 28, 2001) .....................................9

Kirsch v. Fleet Street, Ltd.
148 F.3d 149 (2d Cir. 1998) ................................................................................................25

McDonell Douglas Corp. v. Green
411 U.S. 792 (1973) ..........................................................................................................14

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.
715 F.3d 102 (2d Cir. 2013) ...............................................................................................23

Orlando v. BNP Paribas N. Am., Inc.
No. 14 CIV. 4102 AJP, 2015 WL 6387531 (S.D.N.Y. Oct. 22, 2015) ........................................22

Perry v. Jaguar of Troy
353 F.3d 510 (6th Cir.2003) ...............................................................................................11

Richards v. N.Y.C. Dep't of Educ.
2015 WL 4164746 (S.D.N.Y. July 10, 2015) ..........................................................................12

iv

Risco v. McHugh
868 F. Supp. 2d 75 (S.D.N.Y. 2012) ................................................................18

Saad v. ASML US, LLC
2020 WL 12904711 (D. Conn. Sept. 4, 2020) ..................................................12

Tomassi v. Insignia Fin. Grp., Inc.
478 F.3d 111 (2d Cir. 2007) ............................................................................12

Ziccarelli v. NYU Hosps. Ctr.
No. 15-CV-9307 (JGK), 2021 WL 797668 (S.D.N.Y. Feb. 27, 2021) ..........12

## **Rules and Statutes**

29 CFR § 825.302(c) .........................................................................................9

29 CFR § 825.114(a)(2) ...............................................................................15,16

29 C.F.R. § 825.305(a) ...................................................................................11

29 U.S.C. 2601 et seq., as amended, the Family and Medical Leave Act ......7

29 U.S.C. § 2611(11) .....................................................................................15

NYC Admin. Code § 8-101 et. seq., NYC Human Rights Law ....................7

Fed.R.Civ.P 56(a),(b) .....................................................................................8

## PRELIMINARY STATEMENT

Defendant's motion for summary judgment should be denied in entirety. Plaintiff exercised rights under the Family Medical Leave Act (FMLA) when she took leave to care for her daughter and mother, both of whom suffered from serious health conditions of which Defendant was aware. Defendant interfered with Plaintiff's FMLA rights by subjecting her to criticism and heightened scrutiny and threatening to remove one of her key accounts because she took FMLA leave, thereby discouraging her from taking further FMLA leave. Defendant retaliated against Plaintiff by terminating her employment a mere two weeks after she took FMLA leave for care for her mother and fewer than two months after she took leave to care for her daughter. Defendant also discriminated against Plaintiff by treating her less well than other employees based on her status as a caregiver. Defendant's alleged reason for terminating Plaintiff (i.e., a deficient pipeline and anticipated failure to meet her 2021 sales goal) is demonstrably pretextual. Accordingly, Defendant's motion should be denied in entirety.

## STATEMENT OF FACTS

**1. Factual and Procedural Background.**

    **a. Factual Background of the Action.**

Plaintiff was employed by Defendant from May 2017 until February 2021, and reported directly to Adam Kimmick throughout that time. Exhibit A, Kimmick Dep. 26:4-14. Plaintiff's title when she began working for Defendants was "senior account manager farmer." Kimmick Dep. 30:2-6. In late September or early October 2020, Ms. Haran's 15-year-old daughter, Julia Haran, was diagnosed with a possible tumor in her femur bone. Exhibit B, Plaintiff's Dep. at 74:14-75:2; Plaintiff's Decl. ¶¶ 2,3,4. In October 2020, Plaintiff informed her supervisor, Sales Director Adam Kimmick, about Julia's diagnosis and her anticipated need for time off work to care for her

1

daughter. Kimmick Dep. 63:10-14. Plaintiff's Decl. ¶ 3,4. Kimmick was sufficiently aware of the FMLA to know that "people should have the time and the ability to take time off from work if …required in order to support a family member." Kimmick Dep. 62:3-7. In the coming months, Ms. Haran took intermittent days off work to take Julia to doctor's appointments and for treatment, including a half day on October 14, between October 15th and 19th for major surgery, November 11, December 18, December 28, December 30, and February 12, 2021 (for Plaintiff's mother's appointment). Plaintiff Dep. 109:8-25, Exhibit C, Plaintiff's Responses to Defendant's Interrogatories No. 15. At all times, Ms. Haran apprised Mr. Kimmick of her need for leave and the status of Julia's condition. Plaintiff's Decl. ¶ 3,6.

Plaintiff provided notice of her need for family leave to care for her daughter to Adam Kimmick in clear terms, as he recalled in his deposition:

> "Q. Did she ever take any time off work to care for a family member?
> A. I believe so, yes. She asked for paid leave, paid time off.
> Q. Which family member did she take time off of work to care for?
> A. I believe it was her daughter."

Kimmick deposition, 62:19-25

> "Q. Did Patty come to you and ask you if she could take time off work to care for her daughter?
> A. As I said, yes. I believe she did, yes."

Kimmick deposition, 63:10-17

Kimmick was aware that Plaintiff's daughter's condition was "severe," "significant," "beyond just a normal injury," and he was aware that she needed medical procedures to be done. Kimmick Dep. 138:18-142:4. However, Kimmick at that time failed to provide Plaintiff with any information regarding her FMLA rights, and did not refer her to the employees of the Company who were equipped to discuss family leave. Kimmick Dep., 64:12-13; Plaintiff's Decl. ¶ 6.

On October 23rd, Plaintiff met with Human Resources employee Michelle Rocco to

receive an award for her participation in a fundraising event. Exhibit D, Rocco Dep. 16:15-21. At that time, Plaintiff communicated her daughter's condition to Ms. Rocco along with the potential need for her to take further leave going forward.  Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶4. Ms. Haran explained that Julia might need another surgery, which remained to be determined by her surgeon. Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶4. Plaintiff also explained that Julia was being homeschooled while she recovered from surgery for 6 weeks, and that Julia had ongoing doctor's appointments and treatment. Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶4. At no time did Ms. Rocco inform Ms. Haran about her FMLA rights or provide her with FMLA paperwork. Plaintiff Dep. 48:17-52:4; Rocco Dep. 18:10-13; Plaintiff Decl. ¶6. Plaintiff informed both Michelle Rocco and Mr. Kimmick that her daughter might need additional surgery in the future. Plaintiff Decl. ¶5.

Plaintiff's daughter, Julia, was home recovering from surgery from October 15, 2020 to November 18, 2020. Plaintiff Decl. ¶8. Plaintiff  returned to work on October 20, 2020, before her daughter was fully recovered. Plaintiff Decl. ¶8. Julia was on crutches with limited mobility during the period of her recovery. Plaintiff Decl. ¶9. She had a wound that required cleaning and dressing on a daily basis, and needed help with showering, going to the bathroom and other day-to-day activities. Plaintiff Decl. ¶9.

After Plaintiff informed Mr. Kimmick about Julia's condition and began taking intermittent leave to care for Julia, Mr. Kimmick suddenly began subjecting Plaintiff to heightened scrutiny and pressure.  Plaintiff Decl. ¶10. Plaintiff was intimidated by negative performance feedback she received from Mr. Kimmick, and avoided taking more time off work while her daughter continued to recuperate, receive treatment, and attend homeschooling. Plaintiff Decl. ¶11. Mr. Kimmick constantly asked Plaintiff whether she was going to be able to maintain the schedule and pace of

conversations with one of her accounts, Pfizer, given her caregiving obligations. Plaintiff Decl. ¶12. After coming home from sleeping at the hospital with her daughter for five nights, Plaintiff received a call from a peer, Mr. Paul Reticker, late one evening; Mr. Reticker told Plaintiff that if she was unable to participate in the upcoming conversations with Pfizer, the account would be transferred to him, per Mr. Kimmick. Plaintiff Decl. ¶14. During this time, Mr. Kimmick was constantly checking up on Plaintiff to ascertain the status of her deals, even when he was fully aware of the status. Plaintiff Decl. ¶15. For example, with respect to a renewal of Plaintiff's account with Moody's, Mr. Kimmick repeatedly asked Plaintiff on a day-to-day basis when she was going to get the contract executed by the customer. Plaintiff Decl. ¶16. He was aware that it took time for the deal to finalize, yet he persistently asked Plaintiff for updates. Plaintiff Decl. ¶16. Mr. Kimmick was responsible for facilitating negotiations with clients by encouraging the Company internally to agree to contractual terms with clients. Plaintiff Decl. ¶17. With respect to Plaintiff, Mr. Kimmick was unwilling to advocate internally to help Plaintiff finalize the terms of a Master Agreement with Pfizer; instead, he put pressure on Plaintiff to get Pfizer to change its position. Plaintiff Decl. ¶18. Conversely, Mr. Kimmick helped Plaintiff's peers, Messrs. Reticker and Renassia, to secure deals by advocating internally on their behalf to get certain unusual contractual terms approved by Orange. Plaintiff Decl. ¶19. If Mr. Kimmick had not subjected Plaintiff to increased pressure and scrutiny, Plaintiff would have taken off the time necessary to care for her daughter for the full duration of her recovery. Plaintiff Decl. ¶20.

Despite the personal difficulties Plaintiff was experiencing, she met her revenue quota for the year in 2020, and at the end of June 2020 she received a performance review rating her as "fully successful." Kimmick Dep. 111:19-22, 88:11-23. In January 2021, Ms. Haran met with Mr. Kimmick to discuss her performance review for the second half of 2020. Kimmick Dep. 90:4-

92:10. In 2020, Plaintiff had achieved 100.58% of her revenue goal and managed both her old territory and new territory while a new employee was being onboarded. Kimmick Dep. 111:15-22, 115:4-7. Mr. Kimmick recognized that Plaintiff "stepped up to take...a series of responsibilities that helped [him] and the business" over the course of [2020]. Kimmick Dep. 126:16-19.  During the review, Mr. Kimmick delivered positive feedback to her but also attributed two lost business opportunities to her, which he used as the basis for giving her an overall rating of "2" (Needs Improvement). See Exhibit E, Plaintiff's December 2020 Performance Review; Kimmick Dep. 90:12-15. Mr. Kimmick had known and had discussed several times with Plaintiff that it would be highly unlikely that Defendant would successfully retain these two accounts. See Exhibit E, page 9, where Mr. Kimmick stated that "the largest A-end accounts…have made decisions to move away from Orange products and services. These decisions were being fomented before Patty took on responsibility for managing the accounts. And in the case of Pfizer, Orange was unable to accept some onerous contract terms."

In the same performance review meeting, Mr. Kimmick also told Ms. Haran that she had a "lack of focus" in general, which Plaintiff interpreted as referring to her absences and obligations due to her daughter's illness.  Plaintiff's Dep. 39:17-41:20. Plaintiff had never received this feedback from Mr. Kimmick before. Plaintiff Decl. ¶7. Plaintiff brought up the time she had taken off to support her daughter and the two spoke explicitly about the connection between Plaintiff taking time off and her lack of "focus" on work. Plaintiff's Dep. 38:6-43:23. The "2" rating on Plaintiff's performance review did not reflect all the positive feedback she received, or the large renewal deal he had just congratulated her for making. See Exhibit F, Moody's Renewal Email; Plaintiff's Decl. ¶24. This review left Plaintiff so uncertain of her future at the Company that she mentioned to a coworker that "things are intense" and that she was "not sure how safe I am."

Exhibit G, Instant Messages with Peter Singh. In or around January or February of 2021, Plaintiff presented Mr. Kimmick with a proposed plan for improving her deal pipeline for the following year. Kimmick Dep. 92:23-93:6; Plaintiff's Decl. ¶27. Plaintiff had a viable plan to increase her sales pipeline for 2021, which she presented to Mr. Kimmick on or about February 8, approximately two weeks prior to her termination. Plaintiff's Decl. ¶27. During that presentation, Mr. Kimmick did not raise any concerns about Plaintiff being able to generate satisfactory revenue for the 2021 fiscal year. Plaintiff's Decl. ¶27.

On February 8, 2021, Ms. Haran informed Mr. Kimmick that she would need to take a half day off work to take her mother to the eye doctor. Plaintiff's Dep. 16:21-107:5. On or about December 10, 2020, Plaintiff's mother was diagnosed with Macular degeneration, which limits her vision and requires ongoing care by an eye doctor, requiring regular treatment and visits. Plaintiff's Decl. ¶28-32. Due to her Macular degeneration, Plaintiff's mother is unable to drive at night or navigate unfamiliar settings, such as hospitals and doctor's offices. Plaintiff's Decl. ¶28-32. Since her diagnosis, Plaintiff's mother has been following a regimen of treatment involving several follow-up appointments, including eye injections every 3 months to slow the progression of the disease. Plaintiff's Decl. ¶28-32.

Ms. Haran proceeded to take time off as scheduled on February 12. See Exhibit C, No. 15. Less than two weeks later, on February 24, 2021, Mr. Kimmick and an HR representative, Jennifer Lawson, met with Ms. Haran virtually and summarily terminated her employment. Plaintiff Dep. 53:13-16. Ms. Lawson told Ms. Haran that the reason for her termination was that she did not meet her "number" for 2020. Plaintiff Dep. 54:20-55:90. However, Plaintiff had met her goal number for 2020. Kimmick Dep. 111:19-22, 88:11-23. Mr. Kimmick jumped in and said, instead, that she was being terminated because she was not expected to meet her 2021 number. Plaintiff Dep. 55:9-

6

15. Ms. Haran protested that she had not yet been given her 2021 number.  Plaintiff Dep. 55:13-15; Plaintiff's Decl. ¶26. During Plaintiff's termination meeting, Mr. Kimmick never mentioned anything about alleged interpersonal issues with clients or coworkers. Plaintiff's Decl. ¶35. After this termination meeting, Plaintiff instant messaged a coworker saying: "[I] feel that due to my daughter's illness in Q4 that I should have taken family medical leave off but I didn't want to let the company down." Exhibit H, Instant Messages with Xavier Pichon. To Plaintiff's knowledge, she was the only employee terminated at that time. Plaintiff's Decl. ¶34.

    **b.  Procedural History.**

Plaintiff brought this action, alleging that Defendant interfered with her FMLA rights, retaliated against her for exercising her FMLA rights, and discriminated against her under the New York City Human Rights Law ("NYCHRL"). DE 1. Defendant answered, and brought counterclaims that they later dismissed. DE 8, 59.  Defendant now moves for summary judgment.

## ARGUMENT

### I.  THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA INTERFERENCE CLAIM BECAUSE PLAINTIFF HAS SATISFIED HER PRIMA FACIE BURDEN.

To establish a prima facie case of FMLA interference, a plaintiff must plead: "(1) that [she] is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that [she] was entitled to leave under FMLA; (4) that [she] gave notice to the defendant of [her] intention to take leave; and (5) that [she] was denied benefits to which [s]he was entitled under the FMLA." Balchan v. City Sch. Dist. of New Rochelle, No. 21-CV-04798 (PMH), 2023 WL 4684653, at *9 (S.D.N.Y. July 21, 2023). Here, Defendant does not contest elements one through three, and has therefore waived summary judgment as to these elements. "An argument not addressed" in summary judgment motion papers "is considered waived." Conklin v. U.S.

Immigr. & Customs Enf't, 661 F. Supp. 3d 239, 264 (S.D.N.Y. 2023) ("An argument not addressed" in summary judgment motion papers "is considered waived.") Defendant solely argues that Plaintiff failed to establish (a) she gave adequate notice of her intent to take leave (element #4); and (b) that she was denied any benefits under the FMLA (element #5). Plaintiff, however, provided adequate notice of FMLA leave and was denied FMLA benefits.

**A.  Plaintiff Provided Adequate Notice of her Intention to Take FMLA Leave.**

Plaintiff provided FMLA notice when she informed Defendant about the severity of her daughter's condition (a possible bone tumor), need for surgery and ongoing treatment, lengthy recovery time, and resulting homeschooling, which sufficiently apprised Defendant that Plaintiff needed FMLA leave. Plaintiff was not required to expressly invoke the FMLA to receive its protection. Accordingly, Plaintiff satisfies the fourth element of her FMLA interference claim.

**1.  FMLA Notice Is Construed Practically.**

In determining whether adequate FMLA notice was given to an employer, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Barr v. New York City Transit Auth., No. 99-CV-7927(FB), 2002 WL 257823 (E.D.N.Y. Feb. 20, 2002). Notice is adequate where the employer "should have known" that an employee's absences were related to a serious medical condition. Id. at *7 (denying summary judgment because defendant should have known that FMLA applied where plaintiff verbally informed supervisor of "swelling and tightness in legs" and submitted doctor's certification citing "serious health condition"). Barnett v. Revere Smelting & Ref. Corp., 67 F.Supp.2d 378, 386 (S.D.N.Y.1999) (denying summary judgment where plaintiff provided adequate notice by informing employer that he was suffering from chest pains, had difficulty breathing, and would be unable to work that day); Debell v. Maimonides

Med. Ctr., No. 09-CV-3491 SLT RER, 2011 WL 4710818 (E.D.N.Y. Sept. 30, 2011) (denying summary judgment where plaintiff provided adequate notice by informing supervisor that his chronic illness was bothering him and prevented him from working that day); Kamtaprassad v. Chase Manhattan Corp., No. 00 CIV. 8834 (DLC), 2001 WL 1662071 (S.D.N.Y. Dec. 28, 2001) (denying summary judgment where plaintiff provided adequate notice by submitting doctor's note identifying her as totally disabled).

An employee need not expressly assert rights under the FMLA or even mention the FMLA when requesting leave. 29 CFR § 825.302(c); Brown v. Pension Bds., 488 F.Supp.2d 395, 408–09 (S.D.N.Y.2007). It is notice of the qualifying reason for leave, and not notice of the FMLA basis for that leave, that must be communicated. Coutard v. Mun. Credit Union, 848 F.3d 102, 107 (2d Cir. 2017) ("[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA.")

Here, Plaintiff provided her manager, Adam Kimmick, with adequate notice of her need for FMLA leave to care for her daughter. Plaintiff informed Mr. Kimmick that Julia might have a tumor in her femur bone and that she needed surgery, on-going medical treatment, and a long period of recovery. Kimmick Dep. 138:18-142:4; Plaintiff's Decl. ¶ 3. Plaintiff also informed Mr. Kimmick that Julia may need another surgery and additional recovery time. Plaintiff's Decl. ¶ 5. Plaintiff and Mr. Kimmick communicated about her daughter's condition. Exhibit I, instant messages between Kimmick and Plaintiff. Indeed, Mr. Kimmick acknowledges that he knew that Julia's condition was "severe," "significant," and "beyond just a normal injury." Kimmick dep., 62:19-25; 63:10-17. Accordingly, Mr. Kimmick received more than adequate notice that Plaintiff's leave would qualify for protection under the FMLA.

Plaintiff also provided Michelle Rocco of Defendant's Human Resources Department (HR) with adequate notice of her need for FMLA leave. Plaintiff Dep. 47:8-52:4. Plaintiff informed Ms. Rocco of her daughter's condition in detail, including the fact that Julia might have a tumor in her femur bone, already had one surgery, may require another surgery, and was at home recovering and being homeschooled. Plaintiff's Decl. ¶ 4. Plaintiff also informed Ms. Rocco that she would more than likely need to take further leave to support her daughter through future treatment and recovery. Plaintiff Dep. 47:8-52:4, Plaintiff's Decl. ¶ 5. Therefore, Ms. Rocco was also on notice of Plaintiff's need for FMLA leave.

Despite being on notice of Plaintiff's need for FMLA leave, Mr. Kimmick and Ms. Rocco failed to: (a) provide Plaintiff with any information regarding her FMLA rights, (b) provide her with the form Defendant claims she should have *somehow* completed; (c) provide her with any other FMLA paperwork, (d) refer her to any other individual within the Company who could apprise her of her FMLA rights, and (e) inform her whether her leave would be designated as FMLA leave. Kimmick deposition, 64:12-13; Rocco; Plaintiff Dep. 47:8-52:4, Plaintiff's Declaration ¶ 6.

### 2.  Plaintiff Was Not Required to Provide Written Notice of FMLA Leave in the First Instance.

Defendant argues disingenuously that its Employee Handbook requires that Plaintiff provide FMLA notice in writing. Contrary to this argument, Defendant's Employee Handbook states merely that an employee in the first instance "must provide his or her supervisor with at least 30 days' notice of the need for leave, if the need is foreseeable." The need here was not foreseeable; Plaintiff first learned of the possibility that her daughter might have a serious medical condition on October 1, 2020, and informed Mr. Kimmick immediately afterwards. Plaintiff's Decl. ¶ 21. When the approximate timing of a need for leave is not foreseeable, an employee must provide

notice to the employer as soon as "practicable." <u>Coutard</u>  at 109. Although the Employee Handbook goes on to state that the request should be "submitted in writing to the supervisor and HR using the Family Medical Leave Act Form," Defendant failed to provide this form to Plaintiff at the time of her leave requests, therefore Plaintiff could not complete or submit it.

Defendant cannot argue that Plaintiff failed to provide a written medical certification form because Defendant did not request that such a form be completed and did not provide the form to Plaintiff. Plaintiff's Decl. ¶6. An employee need not submit a medical certification "*unless and until one is specifically requested by her employer.*" *See* 29 C.F.R. § 825.305(a). Even where an employee handbook requires medical certification and an employee is provided with an FMLA Notice of Rights and Responsibilities explaining the medical certification requirement, it is not sufficient to notify an employee that medical certification is required. "An employer must give notice of a requirement for certification each time a certification is required." <u>Id.</u>; <u>see also</u> <u>Perry v. Jaguar of Troy</u>, 353 F.3d 510, 514 (6th Cir.2003) ("Even though the need for medical certification was stated in defendant's employee handbook, the regulations required defendant again to ask for certification after [plaintiff] told his supervisor he wanted leave...") <u>See</u> <u>Graziadio v. Culinary Inst. of Am.</u>, 817 F.3d 415 (2d Cir. 2016) (recent general notices or certification requirements, e.g. in employee handbook, did not suffice to put employee on notice that medical certification was required for a specific FMLA leave claim). Here, Defendant did not provide a medical certification form to Plaintiff to complete and did not ask that Plaintiff complete such a form, therefore a certification was not required.

### 3. <u>The Cases Defendant Cites are Easily Distinguishable from the Instant Case.</u>

The cases Defendant cites in support of its argument that Plaintiff did not provide sufficient FMLA notice are easily distinguished from this case. In <u>Amley v. Sumitomo Mitsui Banking</u>

Corp., 2021 WL 4429784 (S.D.N.Y. Sept. 27, 2021), the plaintiff only mentioned that he had a "condition affecting his feet," and "failed to provide any information that would have alerted them to the fact that he was requesting time off for a serious health condition." at *16. Richards v. N.Y.C. Dep't of Educ. does not address the issue of notice at all, but only reaches an analysis of whether the employer acted willfully due to the event being outside the statute of limitations. 2015 WL 4164746 (S.D.N.Y. July 10, 2015). And Saad v. ASML US, LLC is a case determined by the District Court of Connecticut, which is not dispositive. 2020 WL 12904711 (D. Conn. Sept. 4, 2020). Here, Plaintiff indisputably informed her supervisor and HR of the precise nature of her daughter's serious medical condition (i.e., an infection believed at that time to be a bone tumor) and that the condition necessitated surgery, a period of convalescence, and homeschooling. Plaintiff's Decl. ¶ 3,4,5. This information was sufficient for Defendant to determine that Plaintiff needed FMLA leave. Because Plaintiff provided adequate notice of her need for FMLA leave to her manager and HR, she has satisfied the fourth prong of her FMLA interference claim and summary judgment should be denied.

**B.  Plaintiff Was Denied Benefits to Which She Was Entitled Under the FMLA.**

Plaintiff satisfies the fifth element of her prima facie case for FMLA interference where Defendant discouraged Plaintiff from taking further leave to care for her daughter. While Plaintiff was given the time off she requested, she purposefully abstained from requesting and taking further leave for fear of losing her job. Plaintiff's Decl. ¶ 8, Exhibit H. Accordingly, Defendant denied Plaintiff benefits to which she was entitled.

"Interference with the exercise of an employee's rights includes discouraging an employee from using a leave." Ziccarelli v. NYU Hosps. Ctr., No. 15-CV-9307 (JGK), 2021 WL 797668, at *4 (S.D.N.Y. Feb. 27, 2021) (citing 29 C.F.R. § 825.220(b)). Courts find discouragement in the

FMLA interference context where an employer's acts "would have dissuaded a similarly situated employee of ordinary resolve from attempting to exercise his or her FMLA rights," Id. at *4, and where the employee was in some way prejudiced by the violation, such as returning early from leave. See Ziccarelli, denying summary judgment on FMLA interference claim where employee ended his leave early due to feeling threatened by his employer making the statements: "I would like you to come back to work sooner" and "your job is safe for now." Ziccarelli at *5. Threats of termination are "discouraging" behavior sufficient to prove FMLA interference. Avila-Blum v. Casa de Cambio Delgado, Inc., 519 F. Supp. 2d 423 (S.D.N.Y. 2007). Summary judgment should be denied where there is evidence that an employer "overly scrutiniz[ed]" an employee after he made a medical leave request. Casseus v. Verizon N.Y., Inc., 722 F. Supp. 2d 326, 337 (E.D.N.Y. 2010).

Here, after Plaintiff requested time off work to care for her daughter, Mr. Kimmick criticized Plaintiff for a "lack of focus" stemming directly from Plaintiff taking leave to care for her daughter. Plaintiff Dep. 38:6-39:7. Because she took leave, he also subjected her to increased pressure, stress, and scrutiny to develop her quota and make her numbers. Plaintiff's Decl. ¶14-23. He further threatened to take away one of her key accounts, Pfizer, because she took leave. Plaintiff's Decl. ¶14-23. He directed one of Plaintiff's peers to contact Plaintiff late one evening (after she returned home from spending five days in the hospital with her daughter) and threaten to take the Pfizer account away from her. Plaintiff's Decl. ¶17. Plaintiff was so uncertain of her future at the Company that she avoided taking more time off work to care for her daughter while her daughter recovered from a major surgery and continued to receive treatment. Plaintiff's Decl. ¶8. Plaintiff confided in a coworker that "things are intense" and that she was "not sure how safe" she was. Exhibit G, Instant Messages with Peter Singh. After her termination, Plaintiff further

confided in a work friend, saying: "[I] feel that due to my daughter's illness in Q4 that I should have taken family medical leave off but I didn't want to let the company down." Exhibit H, Instant Messages with Xavier Pichon.

Plaintiff was dissuaded from exercising her FMLA rights due to Mr. Kimmick's criticisms of her and the intense pressure he placed on her. Mr. Kimmick constantly asked her whether she was going to be able to maintain the necessary schedule and pace of conversations with Pfizer given her caregiving obligations. Plaintiff's Decl. ¶12. He threatened to take her off of the account and constantly checked up on her to ascertain the status of her deals, even when he was fully aware of the status. Plaintiff's Decl. ¶10-20. Had Defendant not unfairly subjected Plaintiff to increased pressure and scrutiny, Plaintiff would have taken a longer leave of absence so that she could render aid to Julia. Plaintiff's Decl. ¶20.

Because Defendant's actions discouraged Plaintiff from taking further FMLA leave, Defendant interfered with Plaintiff's FMLA rights and the Court should deny summary judgment.

**II. THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO PLAINTIFF'S FMLA RETALIATION CLAIM BECAUSE HER PRIMA FACIE BURDEN IS MET AND SHE CAN SHOW PRETEXT.**

FMLA retaliation claims are analyzed under the burden-shifting test set forth in McDonell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973). Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 429 (2d Cir. 2016). First, Plaintiff must establish her prima facie case of FMLA retaliation by showing that "(1) [she] exercised rights protected under the FMLA; (2) [she] was qualified for [her] position; (3) [she] suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of retaliatory intent." Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 147 (2d Cir.2012). Then, Defendant must demonstrate a legitimate, non-discriminatory reason for its actions. Plaintiff must then show that

14

Defendant's proffered reason is pretextual. <u>Graziado</u> 817 F.3d at 429. Here, Plaintiff satisfies her prima facie burden and Defendant's proffered reason for her termination is pretextual. Accordingly, summary judgment is unwarranted for Plaintiff's FMLA retaliation claim.

**A. <u>Plaintiff Has Established a Prima Facie Case for FMLA Retaliation.</u>**

Plaintiff has established a prima facie case of FMLA retaliation because (a) she took FMLA protected leave to care for her daughter and mother; (b) she was qualified for her position; (c) she was terminated; and (d) there is a causal nexus between Plaintiff's termination and her leave to care for her daughter and mother. <u>Graziado</u> 817 F.3d at 429.

**1. <u>Plaintiff Exercised Rights Protected by the FMLA When She Took Leave to Care for Her Daughter and Mother.</u>**

Plaintiff establishes the first element of her FMLA retaliation case because she requested and took leave that was protected by the FMLA to care for her daughter and mother. Even though Plaintiff did not expressly invoke the FMLA, she provided information sufficient to apprise Defendant that her daughter suffered from an FMLA-qualifying medical condition. (Supra at Section I(A)(1)). Similarly, Plaintiff provided information sufficient to inform Defendant that her mother suffered from an FMLA-qualifying condition.  On February 8, 2021, Ms. Haran informed Mr. Kimmick that she would need to take a half day off work to take her mother to the eye doctor because her mother suffered from Macular degeneration. Plaintiff's Decl. ¶ 25-29. Ms. Haran took off a half day as scheduled on February 12th. Exhibit C, No. 15.

Macular degeneration constitutes a serious health condition. The FMLA defines a "serious health condition" to include "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); 29 CFR § 825.114(a)(2). An employee requiring FMLA leave for a serious health condition involving continuing treatment

by a health care provider must demonstrate a period of incapacity lasting more than three consecutive days. See 29 CFR § 825.114(a)(2)(i). "Incapacity" includes the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 CFR § 825.114(a)(2)(i). <u>Kamtaprassad at</u> *5. Plaintiff's mother suffers from Macular degeneration, which limits her vision, making it difficult for her perform certain daily activities and navigate unfamiliar settings, such as doctor's offices. Plaintiff's Decl. ¶ 28-30. She is under the ongoing care of an eye doctor, requiring regular treatment and visits. Plaintiff's Decl. ¶ 31. Accordingly, Plaintiff's mother suffers from a serious health condition for which Plaintiff exercised her FMLA rights.

### 2.  <u>Plaintiff Was Qualified for Her Position.</u>

Plaintiff was qualified for her position where she had a history of satisfactory performance and alleged deficiencies in her performance were due to reasons that Defendant acknowledges were beyond her control.  Indeed, Defendant does not argue, nor can argue, that Plaintiff's prior performance was at issue. Mr. Kimmick acknowledged that as of 2020 year-end—merely seven weeks prior to her termination—Plaintiff achieved 100.58% of her 2020 revenue goal and managed both her old territory and new territory while a new employee was being onboarded. Kimmick Dep. 111:15-22, 115:4-7. Mr. Kimmick further recognized that Plaintiff "stepped up to take...a series of responsibilities that helped [him] and the business" over the course of [2020]. Kimmick Dep. 126:16-19. Mr. Kimmick evaluated Plaintiff as "fully successful" in her role for the first half of 2020 and in 2019. Kimmick Dep. 88:8-23; 74:4-22. On January 25, 2021, one month prior to terminating Ms. Haran, Mr. Kimmick delivered positive feedback to Plaintiff during their meeting to discuss her performance throughout the second half of 2020. Plaintiff's Decl. ¶ 24. He acknowledged that Plaintiff had secured several deals, including

16

renewal of a $2.5 million contract, and that she had identified many other promising opportunities that could contribute to her sales going forward.  Plaintiff's Decl. ¶ 24. That is why it came as such a surprise to Plaintiff that Mr. Kimmick rated her overall performance a 2 ("Improvement Needed") in her written performance review, conspicuously ignoring Plaintiff's many accomplishments during the second half of 2020. Exhibit G, Performance Review. Notably, Mr. Kimmick began preparing for the performance review on January 4, 2021, a few days after Plaintiff had taken her most recent leave to care for her daughter. Exhibit E. The sole basis for Defendant's argument that Plaintiff was unqualified for her position is her *anticipated* failure to meet her revenue goal in 2021 based on an inadequate pipeline. Defendant's argument is unavailing for several reasons. First, Defendant made this prediction a mere seven weeks into the fiscal year, thereby depriving Plaintiff of any meaningful opportunity to develop her pipeline and achieve her goals.  Second, Plaintiff's prior performance indicated that Plaintiff would be successful in 2021, contrary to Defendant's baseless forecast. Third, Plaintiff was never even given a revenue quota for the 2021 fiscal year, therefore she was not aware of the benchmark against which she was expected to perform. To date, Defendant has failed to identify the 2021 revenue quota that Plaintiff was not expected to meet and that rendered her "unqualified." Kimmick Dep. 101:18-23, 102:9-14, Plaintiff's Decl. ¶ 26. Fourth, Plaintiff had a viable plan to increase her 2021 sales pipeline, which she presented to Mr. Kimmick on or about February 8, 2021, mere weeks prior to her termination. Plaintiff's Decl. Plaintiff's Decl. ¶ 27. During the presentation, Mr. Kimmick did not raise any concerns or doubts about Plaintiff being able to generate sufficient revenue for the 2021 fiscal year. Plaintiff's Decl. ¶ 27. Plaintiff was deprived of the opportunity to carry out her plan when she was prematurely terminated on February 24, 2020 (Plaintiff Dep. 53:13-16), undoubtedly for taking time off to care for her mother's serious health condition two weeks earlier.

17

Fifth and most critically, Mr. Kimmick recognized that challenges in Plaintiff's pipeline were due to reasons that predated Plaintiff's handling of A-end accounts and were outside of Plaintiff's control. Mr. Kimmick had known and had discussed several times with Plaintiff that it would be highly unlikely that Defendant would successfully retain two key accounts. See Exhibit E, page 9, where Mr. Kimmick stated that "the largest A-end accounts…have made decisions to move away from Orange products and services. These decisions were being fomented before Patty took on responsibility for managing the accounts. And in the case of Pfizer, Orange was unable to accept some onerous contract terms." Exhibit E. Therefore, Plaintiff's alleged lack of sales pipeline was not the result of Plaintiff's performance or lack of qualifications. Accordingly, Plaintiff was amply qualified for her position.

### 3. Plaintiff Has Established a Causal Relationship Between Her FMLA Leave and Termination.

Plaintiff has established a nexus between her FMLA leave and termination given the close temporal proximity between these events and Mr. Kimmick's negative comments, heightened scrutiny, and threats mere weeks prior to her termination. Accordingly, the Court should deny summary judgment as to Plaintiff's FMLA retaliation claim.

Temporal proximity is sufficient to establish a causal connection between protected activity and the materially adverse action suffered in retaliation for that protected activity. Blake v. Recovery Network of Programs, Inc., 655 F. Supp. 3d 39 (D. Conn. 2023), citing Risco v. McHugh, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012) (holding that two month gap between protected activity and termination was sufficient for causal connection); Graziadio at 431 (2d Cir. 2016) (two months between request for leave and termination was "very close temporal proximity" sufficient to establish connection.) Here, Plaintiff can establish a nexus between her FMLA leave and termination based on the close temporal proximity between those events. Plaintiff was

18