# 24-2312

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

❖

PATRICIA HARAN,

*Plaintiff-Counter-Defendant-Appellant,*

—against—

ORANGE BUSINESS SERVICES INC.,

*Defendant-Counter-Claimant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT

MICHAEL TAUBENFELD
LIANE FISHER
FISHER TAUBENFELD LLP
225 Broadway, Suite 1700
New York, New York 10007
(212) 571-0700

*Attorneys for Plaintiff-Counter-
Defendant-Appellant*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………ii

PRELIMINARY STATEMENT……………………………………………...1

STATEMENT OF JURISDICTION…………………………………………..2

QUESTIONS PRESENTED …………………………………………………..2

STATEMENT OF THE CASE ………………………………………………..3

SUMMARY OF ARGUMENT………………………………………………..3

STATEMENT OF FACTS ……………………………………………………4

ARGUMENT…………………………………………………………………8

   I.    The Lower Court Erred in Granting Appellee's Summary Judgment Motion
on Ms. Haran's FMLA Interference Claim…………………………………8

       A. Appellee Interfered with Ms. Haran's FMLA Rights by Failing to
Apprise Her of Her FMLA Rights.…………………………………...8

       B. Appellee's Conduct in Subjecting Ms. Haran to Threats and
Heightened Criticism and Scrutiny Constitutes Discouragement
Sufficient to Establish an Interference Claim………………………..11

   II.   The Lower Court Erred in Granting Summary Judgment on Ms. Haran's
FMLA Retaliation Claim…………………………………………………..13

       A. Ms. Haran Exercised Rights Protected by the FMLA By Providing
Sufficient Notice For Appellee to Determine That the FMLA May
Apply………………………………………………………………...14

       B. Where Appellee Failed to Request Further Information from Ms.
Haran, Ms. Haran's Notice Was Sufficient…………………………16

       C. The Lower Court's Reliance on Wahl v. Cty. Of Suffolk and Its
Progeny is Misplaced………………………………………………..17

CONCLUSION………………………………………………………………...18

i

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Columbia/HCA of New Orleans, Inc.*
2023 WL 2346241 *5 (5th Cir. March 3, 2023)…………………………….........11

*Avila-Blum v. Casa de Cambio Delgado, Inc.*
519 F. Supp. 2d 423 (S.D.N.Y. 2007)………………………………………...12

*Branham v. Delta Airlines*
678 Fed. Appx. 702 (10th Cir. 2017)…………………………………………15

*Browning v. Liberty Mutual Insurance, Co.*
178 F.3d 1043 (8th Cir. 1999)…………………………………………………14

*Carter v. TD Bank, N.A.*
No. 23 Civ. 950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024)…………………14

*Cerda v. Blue Cube Operations, L.L.C.*
95 F.4th 996 (5th Cir. 2024)…………………………………………..…………15

*Coutard v. Mun. Credit Union*
848 F.3d 111-12 (2d Cir. 2017)……………………………………………14, 15, 16

*De Oliveira v. Cair-Durham Central School Dist.*
634 Fed. Appx. 320 (2nd Cir. 2016)………………………………………...9, 10

*Escriba v. Foster Poultry Farms, Inc.*
743 F.3d 1236 (9th Cir. 2014)…………………………...……………………15

*Gardiner v. City of Philadelphia*
809 Fed.Appx. 92 (3rd Cir. 2020)……………………………………………..15

*Garland-Gonzalez v. Universal Group, Inc.*
2024 WL 3252657, *1 (1st Cir. July 1, 2024)……………………………………14

*Graziadio v. Culinary Institute of America*
817 F.3d 415 (2nd Cir. 2016)………………………………………...9, 10, 14

*Hannah P. v. Coats*
916 F.3d 327 (4th Cir. 2019)……………………………………………………15

*Haran v. Orange Business Servies Inc.*
21-CV-10585 (VSB), 2022 WL 2306945 (S.D.N.Y. June 27, 2022)……………..3

*Hurt v. International Services, Inc.*
627 F. App'x 414 (6th Cir. 2015)………………………….……………………11

*Kemp v. Regeneron Pharmaceuticals, Inc.*
117 F.4th 63 (2d Cir. 2024)……………………………………………...…11

*Preddie v. Bartholomew Consol.Sch.Corp.*
799 F.3d 806, 818 (7th Cir. 2015)…………………………………………….11

*Ramji v. Hospital Housekeeping Systems, LLC*
992 F.3d 1233, 1243 (11th Cir. 2021)…………………………………………15

*Smyer v. Kroger Limited Partnership I*
2024 WL 1007116, *5 (6th Cir. March 8, 2024)………………………………15

*Thomas v. District of Columbia*
197 F.Supp.3d 100 (D.C. Cir. 2016)…………………………………………15

*Wahl v. Cnty. Of Suffolk*
466 F. App'x 17 (2d Cir. 2012)………………………………………………17

*Ziccarelli v. Dart*
35 F.4th 1079 (7th Cir. 2022)……………………………..…………………14

*Ziccarelli v. NYU Hosps. Ctr.*
No. 15-CV-9307 (JGK), 2021 WL 797668, *5 (S.D.N.Y. Feb. 27, 2021)…………12

**Statutes**

28 U.S.C. § 1331…………………………………………………………………2

28 U.S.C. § 1291……………………………………………………………....2

29 U.S.C. § 2601, *et seq*………………………………………………………2

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*………3, 7

**Regulations**

29 C.F.R. § 825.300(a) – (d)…………………………………………………..9

29 C.F.R. § 825.300(e)……………………………………………........9, 10

29 C.F.R. § 825.301(a)………………………………………………………16

29 C.F.R. § 825.301(b)………………………………………………………14

29 C.F.R. § 825.303(a)………………………………………………………14

29 C.F.R. § 825.303(b)…………………………………………………...14, 15

## PRELIMINARY STATEMENT

In late September or early October 2020, Ms. Haran's daughter, Julia Haran, was diagnosed with a condition that was believed to a be a tumor in her femur bone, necessitating surgery, a long period of convalescence and homeschooling, and potential surgeries in the future. Ms. Haran informed her direct manager, Adam Kimmick, that she needed leave to care for her daughter throughout the surgery and recovery period. Ms. Haran also subsequently informed a member of human resources, Michelle Rocco ("Rocco"), of the same. At no time did Kimmick or Rocco apprise her of her FMLA rights or provide her with FMLA paperwork. In the months that followed, Ms. Haran took intermittent leave that should have been designated as FMLA. During this time, Kimmick threatened to remove her from an account, constantly checked up on her demanding to know the status of her accounts, and criticized her for having a "lack of focus", among other things. The threats, pressure and criticism forced Ms. Haran to take less time than she otherwise would have to care for her daughter out of fear that her job was in jeopardy. Ms. Haran's fears were ultimately validated when, in February 2021, within two weeks of Ms. Haran taking a half-day's leave to accompany her mother to a doctor's appointment for an FMLA-qualifying condition (Macular degeneration), Appellee terminated her employment.

The lower court erred in dismissing Ms. Haran's FMLA interference claim where Appellee failed to inform Ms. Haran of her FMLA rights or provide her with FMLA notices and discouraged Ms. Haran from using FMLA leave by threatening and criticizing her. The lower court also erroneously dismissed Ms. Haran's FMLA retaliation claim where, contrary to its decision, Ms. Haran did not need to expressly invoke the FMLA to receive its protection and provided information sufficient to notify Appellee that the FMLA *may* apply. At that point, in order to determine whether the FMLA, in fact, applied, Appellee was required to make further inquiry of

1

Ms. Haran, which it did not do. Given Appellee's failure to inquire, Ms. Haran's notice was sufficient and, when coupled with her subsequent leave, constitutes an exercise of rights under the FMLA sufficient to establish a retaliation claim. Accordingly, the Court should reverse the lower court's dismissal of Ms. Haran's FMLA interference and retaliation claims.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 (federal question) because Ms. Haran asserted claims under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The district court's order dismissing this action was entered on July 29, 2024 (JA833 – JA844). Ms. Haran filed her Notice of Appeal on August 28, 2024 (JA845).

## QUESTIONS PRESENTED

1. Whether the lower court improperly dismissed Ms. Haran's FMLA interference claim where Appellee failed to notify her of her rights under the FMLA.

2. Whether the district court erred in dismissing Ms. Haran's FMLA interference claim where Appellee discouraged Ms. Haran from taking leave by threatening her and subjecting her to heightened scrutiny and criticism.

3. Whether the district court erroneously dismissed Ms. Haran's FMLA retaliation claim on the basis that she did not expressly invoke the FMLA, where the FMLA's implementing regulations eliminate such a requirement.

4. Whether the lower court wrongly dismissed Ms. Haran's FMLA retaliation claim on the basis that she did not exercise rights under the FMLA even though Ms. Haran provided information sufficient to notify Appellee that the FMLA may apply and Appelle failed to further inquire.

## STATEMENT OF THE CASE

On December 10, 2021, Ms. Haran brought this case against Orange Business Services Inc. ("Appellee" or "Orange") asserting claims of interference and retaliation under the FMLA and familial status discrimination under New York City Human Rights Law, the Administrative Code of the City of New York, § 8-101 *et seq.* ("City Law"). The case was assigned to District Judge Dale E. Ho. On February 25, 2022, Appellee filed an answer and counterclaims against Ms. Haran. Appellee later voluntarily withdrew its counterclaims. On February 13, 2024, Appellee filed a motion for summary judgment as to Ms. Haran's FMLA interference and retaliation claims and City Law claim. The lower court granted Appellee's motion as to Ms. Haran's FMLA claims and declined to exercise supplemental jurisdiction over the City Law claim, which it dismissed without prejudice. The decision is reported at Haran v. Orange Business Servies Inc., 21-CV-10585 (VSB), 2022 WL 2306945 (S.D.N.Y. June 27, 2022).

## SUMMARY OF ARGUMENT

1.  The district court erred in dismissing Ms. Haran's FMLA interference claim even though Appellee failed to inform her of her FMLA rights or provide her with FMLA notices and discouraged her from taking leave. The FMLA's implementing regulations state that a failure to provide notice may constitute interference. The threats, scrutiny and criticism to which Appellee subjected Ms. Haran are sufficient evidence of discouragement.

2.  The district court erred in dismissing Ms. Haran's FMLA retaliation claim on grounds that Ms. Haran did not expressly invoke the FMLA. The FMLA's implementing regulations make clear that the FMLA need not be expressly invoked in order to receive its protection. Ms. Haran provided information sufficient for Appellee to determine that

her leave may qualify for FMLA protection, which is all that is required, and Appellee failed to further inquire in order to determine whether the FMLA, in fact, applied. In the absence of such inquiry, Ms. Haran's notice of her intent to take FMLA leave was sufficient.

## STATEMENT OF FACTS

Patricia Haran worked for Appellee from May 2017 to February 24, 2021 (JA544 24:12-15; J786 ¶ 31). Throughout her employment, she reported directly to Adam Kimmick ("Kimmick") (JA353 26:4-14). In late September or early October 2020, Ms. Haran's daughter, Julia Haran, was diagnosed with what was believed to be a possible tumor in her femur bone (JA594 74:14-75:2; JA783 ¶¶ 2-4). In October 2020, Ms. Haran informed Kimmick that her daughter required surgery followed by a period of convalescence and homeschooling (JA783 ¶ 3). Ms. Haran informed Kimmick that she would need to take time off work to care for her daughter (JA390 63:10-14; JA783 ¶¶ 3-4). At the time, Kimmick was sufficiently aware of the FMLA to know that "people should have the time and ability to take time off from work if…required in order to support a family member" (JA389 62:3-7). From October to December 2020, Ms. Haran took intermittent days off work to care for her daughter (JA784 ¶ 6; JA629 109:15-25). Despite knowing that Julia had a "severe" and "significant" condition and that there were "procedures being done", Kimmick never provided Ms. Haran with any information regarding her FMLA rights and did not refer her human resources or other employees of the Company who were equipped to discuss family leave (JA390 63:10 - JA392 65:9; JA784 ¶ 6). Despite her daughter having limited mobility and needing assistance with her daily care, Ms. Haran returned to work on October 20, 2020, before her daughter fully recovered (JA784 ¶¶ 8-9).

On October 23rd, Ms. Haran met with a human resources employee, Michelle Rocco ("Rocco") (JA743 16:15-21). During this meeting, Ms. Haran told Rocco about her daughter's condition and surgery, her daughter's possible need for additional surgery in the future, and the potential need for Ms. Haran to take further leave going forward (JA568 48:17- JA572 52:4; JA783 ¶ 4). Ms. Haran also explained that her daughter was being homeschooled while she recovered from surgery for 6 weeks and that her daughter had ongoing doctor's appointments and treatment (JA568 48:17- JA572 52:4; JA783 ¶ 4). At no time did Rocco inform Ms. Haran about her FMLA rights or provide her with FMLA paperwork (JA784 ¶ 6; JA568 48:17 - JA572 52:4; JA745 18:10-13).

Ms. Haran's daughter was at home recovering from surgery from October 15, 2020, to November 18, 2020 (JA784 ¶ 8). After Ms. Haran informed Kimmick about her daughter's condition and began taking intermittent leave to care for her daughter, Kimmick suddenly began subjecting Ms. Haran to threats and heightened scrutiny and criticism (JA784 ¶ 10). Kimmick constantly asked Ms. Haran if she was able to maintain the pace of conversations with her Pfizer account and constantly checked on Ms. Haran's status in completing lengthy assignments (JA784-85 ¶¶ 12-16). After coming home from sleeping at the hospital with her daughter for five nights, Ms. Haran received a call from a peer, Paul Reticker ("Reticker"), late one evening; Reticker told Ms. Haran that if she was unable to participate in upcoming conversations with Pfizer the account would be transferred to him, per Kimmick (JA785 ¶ 14). In addition, Kimmick was unwilling to advocate internally to help Ms. Haran finalize terms on her Pfizer account, but he provided support to Ms. Haran's peers to secure deals by advocating internally on their behalf (JA785 ¶¶ 14, 18, 19, 20). Due to Kimmick's negative treatment, Ms. Haran avoided taking more time off work, even though her daughter had not completely recovered from surgery (JA784 ¶¶ 10-11).

5

Despite meeting her revenue quota for 2020 and receiving a positive performance review in June 2020, in a December 2020 performance review, Kimmick gave Ms. Haran an overall rating of "2" (Needs Improvement) (JA417 90 4:15; JA758-JA768). In the performance review meeting, Kimmick told Ms. Haran that she had a "lack of focus", which Ms. Haran interpreted as referring to her absences and obligations due to her daughter's illness (JA558 38:17- JA561 41:20). Ms. Haran had never received this feedback from Kimmick before taking leave (JA784 ¶ 7).

On February 8, 2021, Ms. Haran informed Kimmick that she would need to take a half-day off work to take her mother to the eye doctor due to her mother's condition of Macular degeneration (JA786 ¶ 29). At the time, Ms. Haran's mother was under the ongoing care of an eye doctor, requiring regular treatment and visits (JA 786 ¶ 26). Due to the Macular degeneration, Ms. Haran's mother was unable to drive at night or navigate unfamiliar settings, such as hospitals and doctor's offices (Id. ¶ 27). Since the diagnosis, Ms. Haran's mother had been following a treatment plan involving several follow-up appointments and eye injections every 3 months to slow the progression of the disease (JA786 ¶ 28). On February 12, 2021, Ms. Haran took a half day's leave to accompany her mother to the eye doctor (JA786 ¶ 30). Less than two weeks later, on February 24, 2021, Kimmick and a human resources representative, Jennifer Lawson, met with Ms. Haran virtually and terminated her employment (JA573 53:13 – JA574 54:10; JA786 ¶ 31). They gave conflicting reasons for her termination. At first, Lawson told Ms. Haran that she was terminated for failing to meet her 2020 quota (JA574 54:17 – JA757 55:16). When Ms. Haran retorted that she had, in fact, met her 2020 quota, Kimmick jumped in and said that she was being terminated because she was not *expected* to meet her 2021 quota. Id. Ms. Haran protested that she had not yet been given her 2021 quota. Id.

**The District Court's Dismissal of this Action**

On December 12, 2021, Ms. Haran filed a complaint in district court alleging FMLA retaliation and interference and familial status discrimination under City Law (JA2). On July 29, 2024, the district court dismissed Ms. Haran's FMLA retaliation and interference claims and declined to exercise supplemental jurisdiction of her City Law claim, which it dismissed with prejudice (JA80; JA833-844). The district court determined that Ms. Haran did not establish a claim for FMLA interference even though the court recognized that Appellee's failure to inform Ms. Haran of her FMLA rights "properly goes to a claim for interference under the FMLA" and "sounds in interference" (JA840, JA842). The court held that Ms. Haran failed to establish the fifth element of a prima facie case of interference—that she was denied benefits to which she was entitled under the FMLA (JA837). While recognizing that a denial of benefits can arise from discouraging an employee from taking FMLA leave, the court nevertheless found that the threats to remove Ms. Haran from an account and the heightened scrutiny and criticism to which she was subject were insufficient to establish discouragement (JA837-840; JA843). Although Ms. Haran stated that she would have taken leave for the duration of her daughter's full recovery period following surgery, the court found that Ms. Haran "offer[ed] only conclusory statements that she would have taken more leave, rather than identifying specific instances in which she was dissuaded from doing so" (JA838).

In dismissing Ms. Haran's FMLA retaliation claim, the court held that Ms. Haran failed to establish the first element of a prima facie case—that she exercised rights under the FMLA— because she did not expressly invoke the FMLA (JA840). Therefore, the court found that Ms. Haran took non-FMLA paid leave to care for her mother and daughter (JA841). The court recognized that Ms. Haran offered evidence that she was not apprised of her FMLA rights (JA842).

However, the court held that "it is difficult to square how an employer could both interfere with an employee's right to take FMLA leave by failing to give her adequate information, while also retaliate against her for "actually exercising her rights or opposing perceived unlawful conduct under the FMLA" (Id.) The court went on to say that "even assuming that Plaintiff was eligible for FMLA leave and that Defendants retaliated against her, the undisputed fact that Plaintiff took *non-FMLA leave* to care for her daughter and mother is fatal to her retaliation claim under the Second Circuit's decision in *Wahl*" (JA841). The district court did not determine whether Ms. Haran had established any of the other elements of a *prima facie* case or proven pretext for her claims. Ms. Haran timely filed a notice of appeal on August 28, 2024 (JA81; JA845). This Appeal follows.

## ARGUMENT

### I. The Lower Court Erred in Granting Appellee's Summary Judgment Motion on Ms. Haran's FMLA Interference Claim.

Although the lower court acknowledged that the failure to provide FMLA notice "properly goes to a claim for interference under the FMLA" and "sounds in interference", it erroneously dismissed Ms. Haran's FMLA interference claim on the basis that all of Ms. Haran's requests for leave were granted and she did not introduce sufficient evidence of discouraging behavior by Appellee. By failing to meet the FMLA's explicit notice requirements and subjecting Ms. Haran to threats and heightened scrutiny when she began taking intermittent leave, Appellee interfered with Ms. Haran's FMLA Rights.

### A. Appellee Interfered with Ms. Haran's FMLA Rights by Failing to Apprise Her of Her FMLA Rights.

Appellee interfered with Ms. Haran's FMLA rights by failing to comply with the FMLA's strict notice requirements. The regulations implementing the FMLA ("FMLA Regulations")

outline four stringent notice requirements that an employer must provide: (a) a general notice of the FMLA's provisions and complaint procedures, conspicuously posted in the workplace and also provided individually to eligible employees via written materials (such as an employee handbook); (b) an eligibility notice informing an employee of his or her eligibility for FMLA leave, provided within five business days of such employee's request for FMLA leave or upon acquiring knowledge that leave may be for an FMLA-qualifying reason; (c) a rights and responsibilities notice that details the expectations and obligations of the employee and consequences of failure to meet such obligations, provided simultaneously with the eligibility notice; and (d) a designation notice provided within five days of acquiring sufficient information to determine whether leave is being taken for an FMLA-qualifying reason, informing the employee whether and how much of the leave is being designated as FMLA leave and whether medical certification will be required. 29 C.F.R. §825.300 (a) – (d).  The FMLA Regulations explicitly state that the failure to provide these notices may constitute "an interference with, restraint, or denial of the exercise of an employee's FMLA rights." Id. at §825.300 (e).

This Court has recognized that the failure to provide notice of an employee's FMLA rights may constitute FMLA interference. In Graziadio v. Culinary Institute of America, the Court reversed the lower court's grant of summary judgment and held that the plaintiff may have established interference where the defendant had failed to properly request FMLA certifications, respond to the employee's questions, and communicate with the employee about what further information was required for leave. 817 F.3d 415, 228-29 (2nd Cir. 2016). Similarly, in De Oliveira v. Cair-Durham Central School Dist., this Court reversed summary judgment as to the plaintiff's failure-to-provide-notice interference claim where, before the plaintiff took FMLA leave, the defendant failed to inform her in writing about her rights upon returning from FMLA leave. 634

Fed. Appx. 320, 322-23 (2nd Cir. 2016). In reversing the lower court's decision, the Court found a violation of the FMLA notice requirements and concluded that "there is a genuine issue of material fact as to whether the notice violation 'constitute[d] an interference with, restraint, or denial of the exercise of [plaintiff's] FMLA rights,' 29 C.F.R. § 825.300(e)—for instance, whether the plaintiff would have taken unpaid FMLA leave had she been properly notified about the policy regarding restoration of tenure." Id.

Here, despite Ms. Haran making her manager, Adam Kimmick, aware that she needed to care for her daughter who was diagnosed with a possible tumor requiring surgery, Kimmick never advised Ms. Haran of her FMLA rights or directed her to employees of the Company who were equipped to discuss family leave (JA 391 64:12-13; JA392 65:6-9; JA784 ¶ 6). Kimmick was aware that Ms. Haran's daughter's condition was "severe," "significant," and "beyond just a normal injury," and he was aware that there were "procedures being done" (JA465 138:18 – JA469 142:4). Human Resources Representative Michelle Rocco, with whom Ms. Haran also discussed her daughter's condition, recovery from surgery, ongoing doctor's appointments, and homeschooling, also failed to apprise Ms. Haran of her FMLA rights or provide Ms. Haran with FMLA notices (JA568 48:14-52:4 – JA572 52:4; JA783 ¶ 4). Indeed, no one at the Company informed Ms. Haran of her rights under the FMLA or provided the requisites notices (JA745 18:10-13; JA784 ¶ 6; JA392 65:6-9). Therefore, Appellees' failure to comply with the FMLA's notice requirement constituted interference, and although the lower court acknowledged that the failure to provide notice "properly goes to a claim for interference under the FMLA", it erroneously dismissed Ms. Haran's FMLA interference claim. Graziadio, 817 F.3d at 228-29; De Oliveira, 634 Fed. Appx. at 322-23.

**B. Appellee's Conduct in Subjecting Ms. Haran to Threats and Heightened Criticism and Scrutiny Constitutes Discouragement Sufficient to Establish an Interference Claim.**

Further, the lower court incorrectly dismissed Ms. Haran's FMLA interference claim on the basis that all of Ms. Haran's leave was granted and there was insufficient evidence that Ms. Haran was discouraged from taking further leave. Even though Ms. Haran's leave requests were granted, Appellee interfered with Ms. Haran's FMLA rights by discouraging her from taking more leave when it threatened to remove an account from her and subjected her to heightened scrutiny and undue criticism.

"An employee is not required to demonstrate an actual denial of benefits to establish an [FMLA] violation." Kemp v. Regeneron Pharmaceuticals, Inc., 117 F.4th 63, 69 (2d Cir. 2024). Even where FMLA leave is granted, an FMLA interference claim lies where an employer interfered with leave by discouraging an employee from taking it. Id. Courts have found that indirectly threatening an employee's employment for taking leave amounts to discouragement. Preddie v. Bartholomew Consol.Sch.Corp., 799 F.3d 806, 818 (7th Cir. 2015). In Preddie, the 7th Circuit found discouragement sufficient to establish interference where the appellant's supervisor criticized the appellant for taking off time and stated that the time missed was affecting the appellant's performance, effectively conveying the message that additional leave would result in adverse consequences. Id. Similarly, in Hurt v. International Services, Inc., the 6th Circuit held that the fact that the appellee did not literally interfere with the appellant's FMLA leave did not impede an interference claim because a reasonable jury could find that the appellant stated an interference claim where the employer discouraged him from taking leave by threatening to and ultimately taking away compensation. 627 F. App'x 414, 424 (6th Cir. 2015). Also, in Adams v. Columbia/HCA of New Orleans, Inc., the Fifth Circuit reversed the grant of summary judgment

on the employee's FMLA interference claim because even though the employer approved her for FMLA intermittent leave, her supervisor explicitly advised her "that FMLA leave [was] not to be applied to tardy occurrences." No. 22-30389, 2023 WL 2346241, *5 (5th Cir. March 3, 2023). The court held that the employer's comment therefore could have discouraged a reasonable person from taking FMLA leave when she came to work late. Id. Further, in Ziccarelli v. NYU Hosps. Ctr., while the appellant was on FMLA leave, the employee's new supervisor told the appellant to return to work sooner than scheduled and stated that the appellant's job was "safe for now", implying that further leave would jeopardize his employment. No. 15-CV-9307 (JGK), 2021 WL 797668, *5 (S.D.N.Y. Feb. 27, 2021). The court denied summary judgment finding that "a reasonable jury could conclude that a person of ordinary resolve confronted with the statements (1) "I am the new director," (2) "I would like you to come back to work sooner," and (3) "your job is safe for now," would be justified in feeling threatened and compelled to end leave sooner. Id.; see also Avila-Blum v. Casa de Cambio Delgado, Inc., 519 F. Supp. 2d 423 (S.D.N.Y. 2007) (denying summary judgment where manager threatened the appellant's employment if she took leave).

Here, Appellee's threats and heightened scrutiny and criticism amounted to discouragement, chilling Ms. Haran's assertion of her FMLA rights. After Ms. Haran took FMLA-qualifying time off and was still caring for her sick daughter, Kimmick warned her that she would be removed from the Pfizer account if she could not participate in upcoming conversations with Pfizer (JA785 ¶ 14). Additionally, while Ms. Haran was still taking care of her recovering daughter, Kimmick constantly checked up on her to ascertain the status of her deals and pressured her for updates (Id. ¶ 15-16). Kimmick also, for the first time, issued a negative performance evaluation to Ms. Haran, citing her "lack of focus," which could only relate to her absences due to her

daughter's illness (JA558 38:6 – JA561 41:20). Ms. Haran had never before received this feedback from Kimmick in the years she worked for the company (JA784 ¶ 7). The negative treatment left Ms. Haran so uncertain of her future at the company that she told a coworker that "things are intense" and that she was "not sure how safe [she was]" (JA774). Ms. Haran maintains that if Kimmick had not subjected her to threats and increased pressure and scrutiny, she would have taken the necessary time off to care for her daughter for the full duration of her daughter's recovery (JA785 ¶ 20). Instead, Ms. Haran only took eight days off work and returned to work while her daughter was still recovering and being homeschooled (JA629 109:8-25). A person of ordinary resolve in Ms. Haran's shoes being threatened and subjected to heightened scrutiny and criticism would have been discouraged from taking further FMLA leave. That Ms. Haran was ultimately terminated shortly after taking an additional half day to accompany her mother to the doctor for an FMLA-qualifying condition (macular degeneration) validates Ms. Haran's apprehensions and underscores Appellee's intent to discourage Ms. Haran from taking FMLA leave (JA 573 53:13-20; JA786 ¶¶ 30-31). Therefore, Ms. Haran has established a claim for FMLA interference.

## II.  The Lower Court Erred in Granting Summary Judgment on Ms. Haran's FMLA Retaliation Claim.

The lower court erred in granting summary judgment as to Ms. Haran's FMLA retaliation claim on the basis that Ms. Haran did not exercise her FMLA rights since she did not invoke the FMLA. In so ruling, the lower court ignored the plain language of the FMLA, which expressly eliminates the need to invoke the statute in order to receive its protection. By communicating that she needed to leave to care for her daughter who had a possible tumor requiring surgery and mother who suffered from macular degeneration, Ms. Haran provided information sufficient to notify Appellee that the FMLA may apply. This triggered Appellee's obligation to further inquire in order to determine whether, in fact, the FMLA applied, which it did not do. Having provided adequate

notice to Appellee that the FMLA may apply and having subsequently taken leave for which she was terminated, Ms. Haran exercised rights under the FMLA, giving rise to a retaliation claim.

### A. **Ms. Haran Exercised Rights Protected by the FMLA By Providing Sufficient Notice For Appellee to Determine That the FMLA May Apply.**

FMLA retaliation claims are subject to the McDonnell Douglas burden shifting framework. Carter v. TD Bank, N.A., No. 23 Civ. 950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024). In order to establish a *prima facie* case of FMLA retaliation, "a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Graziadio, 817 F.3d at 429. The lower court incorrectly determined that Ms. Haran failed to exercise rights protected by the FMLA. The lower court did not make any determination as to the remaining elements of a prima facie case or to the issue of pretext.

In order to establish the first prong of the prima facie test for FMLA retaliation—an exercise of FMLA rights—an employee must first provide notice of leave. 29 C.F.R § 825.303. Where, as here, leave is unforeseeable, an employee must give notice "as soon as practicable under the facts and circumstances of the particular case." Id. at § 825.303(a). As for the content of the notice, the FMLA's implementing regulations make clear that an employee need "not explicitly assert rights under the FMLA or even mention the statute." Id. at §§ 825.301(b) and 825.303(b).

Every circuit including this one recognizes that an employee need not expressly invoke the FMLA to receive its protection. Coutard v. Municipal Credit Union, 848 F.3d 102, 111-12 (2nd Cir. 2017); Garland-Gonzalez v. Universal Group, Inc., No. 19-1998, 2024 WL 3252657, *1 (1st Cir. July 1, 2024) (holding that employee need not have explicitly invoked the FMLA); Ziccarelli v. Dart, 35 F.4th 1079, 1086 (7th Cir. 2022); Browning v. Liberty Mutual Insurance, Co., 178 F.3d

1043, 1049 (8th Cir. 1999). <u>Cerda v. Blue Cube Operations, L.L.C.</u>, 95 F.4th 996, 1002 (5th Cir. 2024); <u>Smyer v. Kroger Limited Partnership I</u>, 2024 WL 1007116, *5 (6th Cir. March 8, 2024); <u>Gardiner v. City of Philadelphia</u>, 809 Fed.Appx. 92, 95-96 (3rd Cir. 2020); <u>Hannah P. v. Coats</u>, 916 F.3d 327, 345-46 (4th Cir. 2019); <u>Escriba v. Foster Poultry Farms, Inc.</u>, 743 F.3d 1236, 1243-44 (9th Cir. 2014); <u>Branham v. Delta Airlines</u>, 678 Fed. Appx. 702, 706 (10th Cir. 2017); <u>Ramji v. Hospital Housekeeping Systems, LLC</u>, 992 F.3d 1233, 1243 (11th Cir. 2021); <u>Thomas v. District of Columbia</u>, 197 F.Supp.3d 100, 111 (D.C. Cir. 2016).

To provide notice that constitutes an exercise of FMLA rights, an employee need only include information sufficient for an employer to reasonably determine whether the FMLA *may* apply. 29 C.F.R. 825.303(b); <u>Coutard</u>, 848 F.3d at 111. This Court made clear that the FMLA's notice obligation does not require an employee to provide "all of the details to permit a definitive determination of the FMLA's applicability at or before the time of the request." <u>Coutard</u>, 848 F.3d at 111. In <u>Coutard</u>, the appellant failed to inform his employer of the *in loco parentis* relationship with his grandfather, for whom he sought leave to provide care. The Court found that the plaintiff provided sufficient notice to exercise his FMLA rights where it was reasonable to understand based on the information provided that the leave *may* come within the FMLA and therefore vacated the lower court's grant of summary judgment. <u>Id.</u> at 113.

Contradicting the express language of the FMLA and precedent established by all the circuit courts including this one, the lower court erroneously granted summary judgment on the basis that Ms. Haran did not exercise FMLA rights because she did not expressly invoke the FMLA. Contrary to this incorrect holding, Ms. Haran was only obligated to and did, in fact, provide information sufficient to apprise Appellee that the FMLA may apply to her requests for leave to care for her daughter and mother. In October 2020, Ms. Haran verbally informed Kimmick

about the precise nature of her daughter's serious medical condition (i.e., an infection believed at that time to be a bone tumor) and that the condition necessitated surgery, a period of convalescence, and homeschooling (JA783 ¶¶ 3 and 5). She further stated that her daughter would need on-going medical treatment and potentially further surgery in the future. Id. Ms. Haran told Kimmick that for these reasons she needed to take leave to care for her daughter. Id. Ms. Haran also provided adequate notice to Rocco when she discussed her daughter's surgery, need for on-going medical treatment and long period of recovery and homeschooling (Id. ¶ 4; JA568 48:14- JA572 52:4). Similarly, Ms. Haran provided adequate notice of FMLA leave when she notified Kimmick about her mother's diagnosis of Macular degeneration and her need for leave to accompany her mother to a doctor's appointment (JA786 ¶¶ 25-29). Despite Ms. Haran not expressly mentioning the FMLA, this information was sufficient to inform Appellee that the FMLA may apply to both leaves–to care for her daughter and mother. Accordingly, Ms. Haran's notice and subsequent leave to care for her daughter and mother constitutes an exercise of rights under the FMLA.

### B. Where Appellee Failed to Request Further Information from Ms. Haran, Ms. Haran's Notice Was Sufficient.

Upon receiving notice of leave, the burden shifts to the employer to obtain further details of the leave in order to ascertain if it is protected by the FMLA. 29 CFR § 825.301(a). Where an employer does not perform such an inquiry, it cannot argue that the employee failed to provide adequate notice. Coutard, 848 F.3d at 113. In Coutard, this Court held that the employee's mere mention of the grandparent relationship when requesting leave provided sufficient notice to the appellee that the FMLA might apply, triggering the appellee's obligation to make further inquiry. Coutard, 848 F.3d at 111; 29 CFR § 825.301(a). The Court held that "in the absence of a request for additional information, an employee has provided sufficient notice to his employer if that notice indicates reasonably that the FMLA may apply." Coutard, 848 F.3d at 111.

16

Here, not only did Appellee fail to apprise Ms. Haran of her FMLA rights in the first place, but at no point during their conversations with Ms. Haran did Kimmick or Rocco further inquire into Ms. Haran's leave requests to determine if the FMLA was applicable (JA625 105:5-20). It belies reason and fairness that Ms. Haran should be punished for Appellee's failure to fulfill its obligations. As stated above, the information Ms. Haran provided was sufficient to notify Appellee that the FMLA may apply and triggered Appellee's obligation to inquire. Accordingly, when Ms. Haran took leave to care for her daughter and mother, she exercised rights under the FMLA.

**C. <u>The Lower Court's Reliance on <em>Wahl v. Cty. Of Suffolk</em> and Its Progeny is Misplaced.</u>**

The lower court erroneously relied upon <u>Wahl v. Cnty. Of Suffolk</u> and its progeny to find that because Ms. Haran used sick leave instead of FMLA leave, she cannot establish an FMLA retaliation claim. 466 F. App'x 17, 20 (2d Cir. 2012). In <u>Wahl</u>, however, the employer notified the employee of his right to take FMLA leave, but the employee *chose* not to because he wanted to use his accrued sick time instead. <u>Id</u>. The <u>Wahl</u> employer fulfilled its duty to notify the appellant of his right to take FMLA leave and the appellant refused to exercise his FMLA rights. <u>Id.</u> Conversely, here, Appellee never counseled or notified Ms. Haran of her right to take FMLA leave instead of sick leave (JA635 105:5-20). Nor did Ms. Haran refuse to utilize FMLA leave. <u>Id.</u> Thus, the Court should reject <u>Wahl's</u> application to this case.

## **CONCLUSION**

For the reasons stated herein, the Court should reverse the lower court's dismissal of Ms. Haran's FMLA interference and retaliation claims and grant all other relief the Court deems just and proper.

Respectfully submitted,

Liane Fisher

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

The foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because this brief contains 5, 435 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 with 12-point Times New Roman font.

Dated: December 11, 2024

# SPECIAL APPENDIX

## TABLE OF CONTENTS

PAGE

Opinion and Order of the Honorable Dale E. Ho, dated July 29, 2024 . . .  SPA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA HARAN, | |
| Plaintiff, | 21 Civ. 10585 (DEH) |
| v. | **OPINION**<br>**AND ORDER** |
| ORANGE BUSINESS SERVICES INC., | |
| Defendant. | |

DALE E. HO, United States District Judge:

In this action, Plaintiff Patricia Haran sues her former employer Orange Business Services U.S., Inc. ("OBS") regarding the termination of her employment. Plaintiff alleges that she was dissuaded from taking leave and unlawfully terminated because of her caregiving responsibilities to her daughter and mother, in violation of the Family and Medical Leave Act (the "FMLA") and the New York City Human Rights Law (the "NYCHRL"). Following discovery, Defendant moves for summary judgment on all claims. *See* ECF No. 65. For the reasons given below, Defendant's motion is **GRANTED**.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and evidentiary submissions in connection with Defendant's motion. The facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in her favor. *See Horn v. Med. Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).[1] The facts reflect that when reviewing motions for summary judgment on claims

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

of employment discrimination, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).

OBS is a telecommunications company, providing communications products and services for multinational corporations. *See* Pl.'s Resp. to Def.'s Statement of Material Facts ("Def.'s SMF") ¶ 1, ECF No. 72. Plaintiff worked at OBS from May 2017 to February 2021 as a Senior Account Manager. *Id.* ¶¶ 6, 14, 18, 38; Def.'s Resp. to Pl.'s Rule 56.1 Counterstatement of Facts ("Pl.'s SMF") ¶¶ 1-2 (giving Plaintiff's title as "senior account manager farmer"), ECF No. 78. Throughout her employment, she reported to Adam Kimmick ("Kimmick"). Def.'s SMF ¶¶ 10-11. Plaintiff initially managed "B-end" accounts, which are located outside the United States, and in or around January 2020, began working with "A-end" accounts. *See id.* ¶¶ 14, 17.

OBS's FMLA policy requires employees to submit a request for FMLA leave in writing to their direct supervisor and Human Resources ("HR"). *See id.* ¶ 8; Traub Decl. Ex. F, ECF No. 67-6 ("Requests for leave . . . should be submitted in writing to the supervisor and HR using the [FMLA] Form. . . . In providing notice . . . , employees must provide enough information to permit the Company to determine if the leave may qualify for FMLA and the expected timing and duration of leave."). When she joined OBS, Plaintiff acknowledged receipt of an employee handbook containing this policy and a separate document describing employee rights and responsibilities under the FMLA. *See* Def.'s SMF ¶¶ 7, 9.

During her employment, Plaintiff met with Kimmick to discuss her performance. *Id.* ¶ 16. In Plaintiff's performance evaluation for the first half of 2020, dated July 27, 2020, Kimmick rated her as "3-Fully Successful." *See* First Half of 2020 Performance Evaluation, Traub Decl. Ex. 8 at 9, ECF No. 67-8. In the narrative section of the evaluation, Kimmick

flagged that Plaintiff's revenue results "were in line with expectations, but fell short of target in both keep and N&G [new and get] orders," and that "[h]er qualified pipeline is not currently sufficient to meet her 2020 financial objectives." *Id.* He also noted communication issues within her team and with a client. *Id.* (noting further that "[t]hese episodes resulted [in] some concern that [Plaintiff] may not be fully understanding feedback, or has not had the time to 'read between the lines' regarding indirect or non-verbal cues," and that these issues "ha[ve] not been typical of past experience").

During the relevant period, Plaintiff's daughter and mother suffered from serious health conditions. On October 1, 2020, Plaintiff's fifteen-year-old daughter was diagnosed with a possible tumor in her femur bone, requiring prompt surgery. Haran Decl. ¶¶ 2-3, ECF No. 73. Plaintiff informed Kimmick about her daughter's diagnosis and that she anticipated needing to take leave to care for her daughter. *See* Pl.'s SMF ¶ 4. Plaintiff also informed Michelle Rocco, an employee in Human Resources, about her daughter's diagnosis and her need for surgery, ongoing medical treatment, and care. *See* Haran Decl. ¶ 4. Plaintiff began requesting leave to care for her daughter in October 2020, and OBS granted all requests for leave. *See id.* ¶ 6; Def.'s SMF ¶¶ 57, 59. Plaintiff did not request or take leave formally characterized as FMLA leave. Def.'s SMF ¶¶ 63-64. In total, Plaintiff took eight and a half workdays off to care for her daughter. *See id.* ¶ 49.

After Plaintiff informed Kimmick of her daughter's condition and her need to take leave, Kimmick subjected her to heightened scrutiny and pressure at work. *See* Haran Decl. ¶ 10. He asked Plaintiff whether she would be able to maintain the schedule and pace of conversations with Pfizer, a key client, in light of her caregiving responsibilities and threatened to take her off the account. *Id.* ¶¶ 12-13. Plaintiff felt intimidated and avoided taking additional leave in response. *Id.* ¶¶ 11, 20.

On January 28, 2021, Plaintiff and Kimmick met to discuss her performance for the second half of 2020. *See* Second Half of 2020 Performance Evaluation, Traub Decl. Ex. 9 at 1, ECF No. 67-9. This performance evaluation rated Plaintiff's performance as "2-Improvement Needed." *Id.* at 10. Kimmick's narrative in the written evaluation notes the loss of several large accounts in Plaintiff's portfolio, though it flags that some of these decisions "were being fomented" before Plaintiff assumed responsibility. *Id.* It further notes that Plaintiff's "pipeline velocity is potentially not sufficient to meet her 2021 financial growth objectives" and that, notwithstanding challenges of COVID-19, "fragile prospects for stability and growth in [Plaintiff's] business remain." *Id.* It calls for "[u]rgent focus" on identifying new opportunities. However, Kimmick also gave Plaintiff positive feedback in the meeting, including regarding the renewal of a $2.5 million contract and Plaintiff's identification of further promising opportunities. Haran Decl. ¶ 21.

On December 10, 2020, Plaintiff's mother was diagnosed with macular degeneration, a condition which limits her vision and requires ongoing care. *Id.* ¶¶ 25-26. On February 8, 2021, Plaintiff informed Kimmick that she needed to take half a day off to take her mother to the doctor to treat her macular degeneration. *See id.* ¶ 29. Plaintiff did so, taking a half day off on February 12, 2021, to help her mother. *See id.* ¶ 30.

On February 24, 2021, Kimmick terminated Plaintiff's employment. *See* Def.'s SMF ¶¶ 38-39. This lawsuit followed.

## LEGAL STANDARDS

Summary judgment is appropriate when a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d

4

Cir. 2020). A party opposing summary judgment must establish a genuine issue of fact by citing to particular parts of materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

## DISCUSSION

The Complaint alleges three claims: interference with Plaintiff's FMLA rights, retaliation for taking FMLA leave, and discrimination on the basis of caregiver status in violation of the NYCHRL. *See* Compl. ¶¶ 38-49, ECF No. 1. Defendant moves for summary judgment on all claims. For the reasons given below, the motion is **GRANTED**.

### A.    FMLA Interference Claim

Summary judgment is granted to Defendant on Plaintiff's FMLA interference claim because Plaintiff does not introduce sufficient evidence that she was denied benefits under the FMLA.

"To succeed on a claim of FMLA interference, a plaintiff must establish that the defendant denied or otherwise interfered with a benefit to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016). To establish a *prima facie* case of interference with FMLA rights, a plaintiff must show:

> 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA.

*Id.* Relevant here is the fifth element: whether Plaintiff has introduced sufficient evidence to allow a jury to conclude that she was denied benefits under the FMLA.

It is undisputed that Defendant never directly prohibited Plaintiff from taking time off due to her daughter's or mother's illnesses by, e.g., denying a request for leave.  *See* Def.'s SMF ¶¶ 57-58.  However, this is not inherently fatal to Plaintiff's claim, because "[i]nterfering with the exercise of an employee's rights . . . include[s] . . . not only refusing FMLA leave, but discouraging an employee from using such leave."  29 U.S.C. § 825.220; *accord Potenza v. City of N.Y.*, 365 F.3d 165, 167 (2d Cir. 2004) (quoting § 825.220).

Plaintiff introduces evidence that after she began taking leave to care for her daughter, "Mr. Kimmick suddenly began subjecting me to heightened scrutiny and pressure."  Haran Decl. ¶ 10.  She further testifies that Kimmick "constantly asked me whether I was going to be able to maintain the schedule and pace of conversations with Pfizer," a key client, and threatened to take her off the account.  *See id.* ¶¶ 12-14 (noting that a coworker warned her that if she was unable to participate in conversations with Pfizer, the account would be transferred to him).  She also testifies that Kimmick asked her daily about the status of certain deals, despite being aware that it took time to finalize a deal, and that he failed to support her internally by seeking approval of unusual contract terms, instead pressuring Plaintiff to cause Pfizer to change its negotiating position.  *See id.* ¶¶ 16-19.  As a result, Plaintiff states that she was discouraged from taking all of the leave necessary to care for her daughter.  *See id.* ¶¶ 11, 20.

Even accepting these allegations as true, this evidence is insufficient to establish the denial or interference with FMLA rights.  Plaintiff offers only conclusory statements that she would have taken more leave, rather than identifying specific instances in which she was dissuaded from doing so.  *See Golden v. N.Y.C. Dep't of Educ.*, No. 06 Civ. 1587, 2007 WL 4258241, at *3 (S.D.N.Y. Dec. 3, 2007) (granting summary judgment to employer on a discouragement theory, because the plaintiff failed to "identif[y] any occasions on which he arrived at work earlier than he desired because of a fear that leave would be denied him"), *aff'd*

354 F. App'x 577 (2d Cir. 2009). With respect to Plaintiff's allegations regarding Kimmick's behavior, courts in this District have found more egregious behavior insufficient to dissuade an employee from taking FMLA leave. *See, e.g.*, *id.* ("While the supervisor's ridicule of his medical conditions . . . [may have been] unprofessional and hurtful, Golden has not shown that that conduct would have deterred an employee of ordinary firmness, in a situation similar to his, from requesting or taking FMLA leave."); *Hockenjos v. Metro. Transp. Auth.*, No. 14 Civ. 1679, 2016 WL 2903269, at *9 (S.D.N.Y. May 18, 2016) ("Criticizing, even berating an employee's substantive job performance is not enough to assert a claim for interference under a discouragement theory."); *Di Giovanna v. Beth Isr. Med. Ctr.*, 651 F. Supp. 2d 193, 200 (S.D.N.Y. 2009) (holding that the fact that a supervisor "interrogated and harassed [a plaintiff] with barrages of questions about his father's condition at inappropriate times" was insufficient to "dissuade[] a similarly situated employee of ordinary resolve from exercising or attempting to exercise FMLA rights," in large part because the plaintiff "took the days off he wanted when he wanted them"). It is also noteworthy that Kimmick's behavior, even as alleged, did not refer to Plaintiff's FMLA leave. *See Hockenjos*, 2016 WL 2903269, at *9 (finding it "critical[]" that there was no allegation that the plaintiff's supervisors "made any reference to his FMLA leave whatsoever" in giving him negative feedback).

The cases Plaintiff cites are not binding and, in any event, do not change this result. In *Casseus v. Verizon N.Y., Inc.*, the existence of a *prima facie* case was not in dispute, and the issues of fact precluding summary judgment centered on whether the plaintiff's termination was pretextual, not whether he was discouraged from taking leave. 722 F. Supp. 2d 326, 338 (E.D.N.Y. 2010). In *Avila-Blum v. Casa de Cambio Delgado, Inc.*, the employer allegedly "told [the plaintiff] outright that she would be fired if she took a period of leave to undergo treatment for her medical condition." 519 F. Supp. 2d 423, 428 (S.D.N.Y. 2007). Finally, *Ziccarelli v.*

7

*New York University Hospitals Center* found that statements from a supervisor that "I would like you to come back to work sooner" and "your job is safe for now" would compel a person of ordinary resolve to end their FMLA leave early, in part because the plaintiff did, in fact, end his leave early.  *See* No. 15 Civ. 9307, 2021 WL 797668, at *5 (S.D.N.Y. Feb. 27, 2021).  Plaintiff here offers no evidence of something equivalent to a thinly-veiled threat of "your job is safe for now," or specific dates on which she intended to take leave but was dissuaded from doing so.

Plaintiff does not dispute that all of her requests for leave were granted and does not introduce sufficient evidence to establish interference with her FMLA rights by discouraging her from taking further leave.  Accordingly, summary judgment is granted to Defendant on the FMLA interference claim.

**B.    FMLA Retaliation Claim**

Summary judgment is granted to Defendant on Plaintiff's FMLA retaliation claim because Plaintiff does not establish that she exercised rights protected by the FMLA.

"Retaliation claims [under the FMLA] . . . involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer."  *Woods v. START Treatment & Recovery Ctrs.*, 864 F.3d 158, 166-67 (2d Cir. 2017) (holding that a retaliation claim emerges out of the FMLA's prohibition on "interfer[ing] with [or] restrain[ing]" the exercise of FMLA rights).  "FMLA retaliation claims are . . . subject to the *McDonnell Douglas* burden shifting framework."  *Carter v. TD Bank, N.A.*, No. 23 Civ. 950, 2024 WL 2828470, at *4 (2d Cir. June 4, 2024).

At the first step, the *prima facie* case, "a plaintiff must establish that 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Graziadio*, 817 F.3d at 429.

Summary judgment is granted to Defendant because the undisputed facts show that Plaintiff did not exercise rights protected under the FMLA.  Plaintiff does not dispute that she did not request or take leave under the FMLA.  Def.'s SMF ¶¶ 63-64.  Instead, Plaintiff took non-FMLA paid leave to care for her mother and daughter, and was given all of the time off she requested.  *See id.* ¶¶ 57-60.  The Second Circuit has affirmed a grant of summary judgment on an FMLA retaliation claim, where the plaintiff used accrued non-FMLA sick leave instead of FMLA child care leave.  *See Wahl v. Cnty. of Suffolk*, 466 F. App'x 17, 20 (2d Cir. 2012).  District courts in this Circuit have applied *Wahl* to hold that a plaintiff must invoke the FMLA leave to establish the required element of the *prima facie* case, and that a plaintiff who alleges retaliation based on the use of non-FMLA leave cannot bring an FMLA retaliation claim.  *See Hahn v. Off. & Pro. Emps. Int'l Union, Loc. 153*, No. 13 Civ. 946, 2016 WL 4120517, at *5 (S.D.N.Y. July 22, 2016) ("A plaintiff fails to exercise rights protected under the FMLA when the employee does not explicitly invoke the FMLA."); *accord Amley v. Sumitomo Mitsui Banking Corp.*, No. 19 Civ. 3777, 2021 WL 4429784, at *12 (S.D.N.Y. Sept. 27, 2021) (same); *see also Ottley-Cousin v. MMC Holdings, Inc.*, No. 16 Civ. 577, 2019 WL 1994488, at *17 (E.D.N.Y. May 6, 2019) ("In order to exercise rights protected under the FMLA, an employee must request FMLA leave due to a qualifying illness or condition."); *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 410 (S.D.N.Y. 2007) (describing a plaintiff "avail[ing] himself of the rights that flow from the FMLA [as] a necessary element of [a] retaliation claim").

This is the case even when the plaintiff was eligible for leave under the FMLA.  *See, e.g.*, *Robles v. Medisys Health Network, Inc.*, No. 19 Civ. 6651, 2020 WL 3403191, at *18 (E.D.N.Y. June 19, 2020) ("[I]t is plausible that Robles qualified for FMLA leave from November 3 until his release from the Hospital on November 4.  However, Robles does not allege that he exercised any FMLA-protected right to leave at that time."); *Vives v. N.Y.C. Dep't of Corrs.*, No. 15 Civ.

6127, 2019 WL 1386738, at *18 (E.D.N.Y. Mar. 27, 2019) (holding that the plaintiff failed to show that she exercised FMLA rights for purposes of a retaliation claim, when she used paid medical leave offered by her employer). Thus, even assuming that Plaintiff was eligible for FMLA leave and that Defendants retaliated against her, the undisputed fact that Plaintiff took *non-FMLA leave* to care for her daughter and mother is fatal to her retaliation claim under the Second Circuit's decision in *Wahl*.

It is true that Plaintiff offers evidence that she was not apprised of her rights under FMLA at the time her need for leave arose. *See* Haran Decl. ¶ 6. Crediting this testimony, as the Court must on summary judgment, it would therefore seem perverse to require Plaintiff to explicitly invoke her FMLA rights to establish her retaliation claim. However, Defendant's alleged failure to provide sufficient information about Plaintiff's FMLA rights properly goes to a claim for interference under the FMLA. *See Woods*, 864 F.3d at 166 ("[A]n employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA."). In contrast, it is difficult to square how an employer could both interfere with an employee's right to take FMLA leave by failing to give her adequate information, while also retaliate against her for "actually exercising her rights or opposing perceived unlawful conduct under the FMLA." *Id.* Plaintiff's allegations about the lack of information given to her about her FMLA rights suggest that her claim sounds in interference, rather than retaliation—and her interference claim fails for the reasons given above.

Because Plaintiff does not establish the required elements for a *prima facie* case, summary judgment is granted to Defendant on her FMLA retaliation claim.

C.    **NYCHRL Claim**

Plaintiff's final claim arises out of New York City law and is brought under the Court's supplemental jurisdiction.  *See* Compl. ¶ 5, ECF No. 1.  Summary judgment has been granted to Defendant on Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over the NYCHRL claim.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 404 (2d Cir. 2017) (Calabresi, J., concurring) ("[A]fter all federal claims have been dismissed, the default rule is that federal courts should not decide related state–law claims unless there is good reason for doing so.").  Plaintiff's NYCHRL claim is dismissed without prejudice to refiling in state court.  *See Russell v. N.Y. Univ.*, No. 37, slip. op. 2226, 2024 WL 1773218, at *3 (N.Y. 2024) (noting that employment discrimination plaintiffs "not infrequently" opt to pursue "claims brought under the City and State HRLs" in state courts, after a federal court "grant[s] summary judgment on the federal claims, and decline[s] to exercise supplemental jurisdiction").

**CONCLUSION**

For the reasons given above, Defendant's motion is **GRANTED**.  Summary judgment is granted to Defendant on the FMLA claims.  The Court declines to exercise supplemental jurisdiction over the NYCHRL claim, so it is dismissed without prejudice to re-filing in state court.

The Clerk of Court is respectfully directed to close the motion at ECF. No. 65.

SO ORDERED.

Dated: July 29, 2024
        New York, New York

_____
          DALE E. HO
    United States District Judge